**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LOUIS FRANCK,
Individually and on Behalf of All Others
Similarly Situated,

                                  Plaintiff,

              v.

NEW YORK HEALTH CARE INC.,

                                  Defendant.

**CLASS AND COLLECTIVE ACTION
COMPLAINT**

Jury Trial Demanded

Plaintiff Louis Franck ("Plaintiff") by his attorneys Wittels McInturff Palikovic and Kheyfits Belenky LLP brings this action individually and on behalf of a class of persons defined below, against Defendant New York Health Care Inc., ("Defendant," "NYHC" or the "Company") and alleges the following with knowledge as to his own acts, and upon information and belief as to all other acts:

**SUMMARY OF THIS CLASS AND COLLECTIVE ACTION
TO RECOVER FOR DEFENDANT'S WAGE AND HOUR VIOLATIONS**

1.      This suit seeks to remedy NYHC's illegal pay practices.  Defendant is a home health care agency whose workers provide home-based aid to individuals in need of medical or other home care assistance.  Plaintiff and the Class are hard-working home health and personal care aides (collectively, "home care workers") employed by NYHC.

2.      NYHC is a sizeable home health care company, servicing hundreds of individuals in the New York City metropolitan area.  NYHC's success is attributable to the devoted service of its home care workers.  Nevertheless, Defendant failed to pay its home care workers for all hours worked, failed to pay on time, failed to pay the full compensation owed under New York's

Wage Parity Act, and failed to pay for workers' travel time between two patients on the same day.

3.     While Defendant's labor practices undoubtedly benefit its bottom line, they are in stark violation of New York State Labor Law ("NYLL" or "N.Y. Labor Law"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and its supporting regulations.

4.     Home care workers perform vitally important work that is physically and psychologically demanding.  The importance of home care workers' role has become even more apparent during the COVID-19 pandemic.  These workers are crucial for ensuring access to the care that many individuals need to remain healthy and independent, and they should be compensated fairly and, at the very least, in accordance with the law.

5.     The home care industry has grown dramatically over the past thirty years as more individuals choose to stay at home rather than seek care in nursing homes.  Today, there are approximately 2 million home care workers nationwide supporting their patients' independence. Yet despite the industry's growth, home care workers remain among the lowest paid service industry workers.  The average wage for a home care worker in the United States—comprised overwhelmingly of immigrant women and women of color—is less than $20,000 a year. Further, the lack of basic employment protections, including compliance with state and federal wage and hour laws, results in an approximately 50% turnover rate in the home care industry and leaves those who do stay in the industry unable to take care of their own families.

6.     Plaintiff Mr. Franck brings this action on behalf of himself and all similarly situated employees, both as a class action under Rule 23 of the Federal Rules of Civil Procedure, and as a collective action under the FLSA, 29 U.S.C. § 216(b).

7.     Only by joining together in a class and collective action can the Company's

employees remedy NYHC's ongoing wrongdoing. Because the monetary damages suffered by each employee are small compared to the much higher cost a single employee would incur in trying to challenge NYHC's unlawful pay practices, it makes no financial sense for an individual employee to bring his own lawsuit. Further, many, if not most, Defendant's current and former employees do not realize they are victims of wage and hour violations.

8.      With this class action, Plaintiff and the Class seek to level the playing field and ensure that companies like NYHC engage in fair and upright business practices. Plaintiff therefore seeks equitable relief in addition to monetary damages. Plaintiff also asks that the Court declare Defendant's wage and hour practices impermissible, enjoin Defendant from continuing its abusive labor practices, require that Defendant return all misappropriated monies, and compensate Plaintiff and the Class for all harms they have suffered because of Defendant's unlawful conduct.

## PARTIES

9.      Plaintiff Louis Franck is a New York citizen, residing in Brooklyn, NY. Plaintiff Franck was employed by NYHC from around January 2019 until around June 2019. Plaintiff Franck's Consent to Join the Collective Action portion of this case is attached hereto as **Exhibit A**.

10.     At all relevant times, Plaintiff Franck worked as a home care worker for Defendant in Manhattan and Brooklyn.

11.     Defendant NYHC is a New York corporation with its headquarters located at 33 West Hawthorne Ave, 3rd Floor, Valley Stream, New York, 11580. NYHC is primarily in the business of placing home health and personal care aides at the homes of patients in the New York metropolitan area with medical and personal care needs.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1337 and 29 U.S.C. § 216(b) because Plaintiff seeks relief under federal law,

specifically the FLSA, 29 U.S.C. § 201 *et seq*.

13.     This Court has jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. §

1332 (the "Class Action Fairness Act").  This action meets the prerequisites of the Class Action

Fairness Act because the aggregate claims of the Class exceed the sum or value of $5,000,000,

the Class has more than 100 members, and diversity of citizenship exists between at least one

member of the Class and Defendant.

14.     This Court also possesses supplemental jurisdiction over Plaintiff's NYLL claims

pursuant to 28 U.S.C. § 1367 because those claims arise out of the same case or controversy.

15.     This Court has personal jurisdiction over Defendant because it is a New York

limited liability company headquartered in New York.

16.     Venue is proper in this district under 28 USC § 1391 because a substantial part of

the events giving rise to Plaintiff's claims occurred in Manhattan.

## FACTUAL ALLEGATIONS

17.     Upon information and belief, NYHC was established in 1983.  On information

and belief, the Company's revenues have been well in excess of $500,000 in each year from

2015 to the present.

18.     NYHC's employees' work also regularly involves them in interstate commerce.

Yet NYHC has committed multiple wage and hour violations, which are detailed in the

following paragraphs.

**A.     <u>Failure to Pay Wages Promptly</u>**

19.     Plaintiff Franck and the Class are manual workers within the meaning of NYLL §

191(1)(a)(i).  They spend well in excess of 25% of their working time performing physical labor.

20.     NYLL § 191(1)(a)(i) requires that Plaintiff and the Class be paid weekly and that wages be paid with no more than a 7-day lag—i.e. not later than seven calendar days after the end of the week in which the wages are earned.

21.     The FLSA requires that wages be promptly paid and that they not be unreasonably delayed.

22.     Defendant failed to pay earned compensation to Plaintiff and the Class with the frequency and timeliness required by NYLL § 191(1)(a)(i).

23.     Defendant delayed payment to Plaintiff and the Collective for longer than is reasonable under the FLSA.

24.     Through Plaintiff Franck's employment with NYHC, the Company's uniform payroll practice was to pay its employees like Plaintiff Franck every Friday but to delay all payments by at least one week.  Thus, each Friday paycheck represented wages for the work week commencing on the Saturday 13 days before the payday and ending on the following Friday, 7 days before the payday.

25.     Further, as Plaintiff Franck's wage statements demonstrate, the Company also routinely delayed payment for certain shifts even more than its standard 7-day lag.  For example, Plaintiff's April 5, 2019 paystub that reflects compensation for the pay period from March 23, 2019 to March 29, 2019 shows late payment for shifts worked on March 16, March 18, and March 20, 2019.  *See* paystub attached as **Exhibit B**.  In another example, the April 19, 2019 paystub, which covers April 6 to April 12, 2019, shows late payment for shifts worked March 30, April 1, April 3, and April 5, 2019.  *See* paytub attached as **Exhibit C**.  Another example is the May 10, 2019 paystub which covers the pay period from April 27 to May 3, 2019 but shows late

payment for Mr. Franck's shifts worked on April 10, April 17, April 19, April 20, April 22, April 24, and April 26, 2019.  *See* paytub attached as **Exhibit D**.

26.     Defendant's failure to promptly pay Plaintiff and the Class was willful, unreasonable, and was motivated by illegitimate business purposes, including NYHC's desire to hold on to its employee's wages for a longer period of time instead of paying with reasonable promptness.

**B.     Failure to Pay the Entire Earned Compensation Under the Wage Parity Law**

27.     As part of its effort to improve the quality of care for New Yorkers who receive home health care services, in 2011, the New York Legislature enacted Public Health Law § 3614-c, which went into effect as of March 1, 2012.  Commonly known as the Wage Parity Law, the statute conditions Medicaid reimbursement for home health care services provided in New York City and the surrounding counties of Westchester, Suffolk, and Nassau upon a home health care agency's certification that its home care workers are paid a statutorily defined minimum wage.  That wage is determined by reference to New York City's Living Wage Law (*see* Administrative Code of City of NY § 6-109[b][1][a], [b][3]), which sets a minimum wage and health benefits supplement rate that must be paid by any City service contractor or subcontractor to its employees who provide home care services.  By referring to the New York City Living Wage Law, the Wage Parity Law aims to bring total compensation for Medicaid-reimbursed home care aides in the metropolitan New York area into line with compensation paid to aides who are under contract with New York City, thereby furthering the legislative purpose of stabilizing the home care workforce, reducing turnover, and enhancing recruitment and retention of home care workers.

28.     The Wage Parity Law applies to entities like NYHC that contract with managed care plans for Medicaid reimbursements.  NYPHL § 3614-c(6).  The Wage Parity Law applies

"equally to services provided by home care aides who work on episodes of care as direct employees of certified home health agencies, long term home health care programs, or managed care plans, or as employees of licensed home care services agencies, limited licensed home care services agencies, or under any other arrangement."  NYPHL § 3614-c(4).

29.   NYHC has been and continues to be a licensed home care services agency.

30.   NYHC has entered into agreements with one or more managed care plans.  Under the terms of these agreements, managed care plans reimburse NYHC for the services performed by its employees with New York state Medicaid funds.  Under the terms of these agreements, NYHC was obligated to compensate its home care aides according to the Wage Parity Law.

31.   NYHC received reimbursements from managed care plans.  These reimbursements were funded, at least in part, by New York state Medicaid funds.

32.   Plaintiff Franck was a home care aide as defined by the Wage Parity Law.

33.   NYHC received reimbursements funded by New York state Medicaid funds for Plaintiff Franck's services from a managed care plan.

34.   The New York State Department of Health periodically publishes official notices of the home care worker wage parity minimum rate of total compensation, which provide the breakdown of total hourly compensation required to be paid to home care workers covered by the Wage Parity Law.  The minimum rates differ depending on the size of the employer and whether the worker worked in or outside New York City.  The minimum rates below reflect Mr. Franck's circumstances of being employed by a large employer and working in New York City.

35.   For the period of in 2019 (when Mr. Franck was employed for NYHC), the minimum required rate home care workers' total compensation was $19.09 per hour, consisting of a Base Wage of at least $15.00 per hour, Additional Wages of up to $1.69 per hour, and

Supplemental (benefit) Wages of up to $2.40 per hour.

36.     NYHC failed to pay Plaintiff Franck the compensation required by the Wage

Parity Law.  Mr. Franck's wage statements show that NYHC paid him only the hourly rate of

$15.00 per hour as set forth above, which was insufficient to fulfill the NYHC payment

obligations under the Wage Parity Law.  Accordingly, NYHC failed to pay Plaintiff Franck and

other members of the Class the total minimum compensation required under the Wage Parity

Law.

### C.     Failure to Compensate for All Hours Worked

37.     Defendant undercounts its home care workers' actual hours worked in at least two

ways.  First, NYHC fails to compensate its home care workers for time traveled between two or

more NYHC's clients on the same day.  For example, Plaintiff Franck's wage statements show

that he served two clients residing at separate addresses on the same day.  NYHC failed to pay

Plaintiff for the travel time between the two clients.  For example, on April 22, 2019, Mr. Franck

served one client "D" for 3 hours and another client "J" for 3 hours.  Ex. D.  Likewise, On April

24, 2019, Mr. Frank served client "D" for 3 hours and client "J" for 2 hours.  *Id.*  And on May 1,

2019, Mr. Frank served client "D" for 3 hours and client "J" for 4 hours.  *Id.*  On each of these

days, it took Mr. Franck approximately 45 minutes to travel between the residences of these two

clients, but as evident from the wage statement, he received no compensation for that travel time.

38.     Under the applicable FLSA regulations, 29 C.F.R. § 785.38 and 29 C.F.R. Part

552, and NYLL regulations, 12 N.Y.C.R.R. § 142-2.2, starting on January 1, 2015, NYHC was

required to pay all members of the Class for the travel time between two clients served on the

same day.

39.     To the extent such travel time was overtime, i.e., hours worked in excess of 40

hours per week, NYHC failed to compensate the Class for such travel time at the required

overtime rate.  To the extent such travel time was straight time, NYHC failed to compensate Mr.

Franck and the Class for such travel time at the regular pay rate as required under the NYLL and

the Wage Parity Law.

40.     Second, Plaintiff's wage statements demonstrate that Defendant falsifies its home

care workers' clock-in and clock out times.  For example, from the available wage statements, all

of shifts that Plaintiff Franck worked for NYHC are in whole-hour increments.  All available

Start Time and End Time were recorded to occur ***exactly*** on the hour.  *See, e.g.*, Exs. B–D.  It is

not plausible that for his entire course of employment with NYHC, Plaintiff Franck worked in

only exact whole hour increments.

41.     Defendant knows that its home care workers are not actually working exact

whole-hour increments.  Defendant's automated time clock contains data regarding employees'

actual clock in and out times, which data are later altered by Defendant or one of its agents to

reflect neat, whole-hour increments. Defendant's time shaving practices result in the substantial

under-compensation of NYHC's home care workers.

**D.     Wage Theft Prevention Act Violations**

42.     Defendant failed to provide Plaintiff and the Class with accurate wage statements,

which is required by NYLL § 195(3).  For example, Mr. Franck's wage statements did not reflect

any compensation required by New York's Wage Parity Law, did not reflect accurate clock-in

and clock-out times and thus failed to reflect actual amounts owed to Plaintiff, did not reflect

travel time, and did not reflect all the hours worked during a given pay period due to

unreasonably delayed compensation.

**COLLECTIVE ACTION ALLEGATIONS**

43.     Plaintiff brings Count I under the FLSA on behalf of himself and all other

similarly situated current and former home health and personal care aides (collectively "home

care workers") employed by Defendant at any time within the three years prior to the date of the filing of this action and thereafter (the "FLSA Collective").

44.     At all relevant times, Plaintiff and the FLSA Collective are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing to pay Plaintiff his wages promptly and willfully failing to pay for Plaintiff's time traveled between two clients on the same workday.

45.     Defendant's unlawful conduct, as described in this Class and Collective Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs.

46.     Defendant is aware or should have been aware that the FLSA requires prompt payment of wages.

47.     Defendant is aware or should have been aware that the FLSA requires payment of workers' travel time between clients served during the same workday.

48.     Counts I-II are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

49.     The members of the FLSA Collective are readily ascertainable, can be located through Defendant's records, and would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join the lawsuit.

50.     Notice should be sent to the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings Counts II–VI pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a Class of NYHC employees preliminarily defined as

follows:

> All persons who were employed by NYHC as home care workers
> who, at any time within six years prior to the date of the filing of
> this action and thereafter, did not receive full compensation for all
> overtime and straight hours worked.

52.     Excluded from the Class are Defendant, Defendant's legal representatives,

officers, directors, assigns, and successors, or any individual who has, or who at any time during

the class period has had, a controlling interest in NYHC; and the Judge(s) to whom this case is

assigned, their judicial staffs, and any member of the Judges' immediate family.

53.     The claims of Plaintiff and the Class may properly be maintained as a class action

against Defendant pursuant to the provisions of Federal Rule of Civil Procedure 23.

54.     The size of the Class is more than 100 individuals.  The persons in the Class are

so numerous that the joinder of all such persons is impracticable.

55.     Plaintiff is a member of the Class.  His claims are typical of the claims of the

Class and do not conflict with the interests of any other members of the Class.  All members of

the Class have been subject to and affected by the same or similar conduct.

56.     Plaintiff will fairly and adequately protect the interests of all Class members

because it is in his best interest to vigorously prosecute the claims alleged herein and to obtain

full compensation due to his for the illegal conduct of which he complains.  Plaintiff has retained

competent and experienced class action attorneys to represent his interests and those of the Class.

57.     Questions of law and fact are common to the Class and predominate over any

questions affecting only individual members, and a class action will generate common answers

to the questions below, which are apt to drive the resolution of this action:

a.   Whether Defendant failed to pay its employees promptly in violation of N.Y. Labor
     Law § 191;

b.  Whether Defendant failed to pay its employees all compensation for straight time earned in violation of N.Y. Labor Law §§ 198 *et seq*.;

c.  Whether Defendant failed to pay its employees all Wage Parity Act minimum wages in violation of Public Health Law § 3614-c, and NYLL §§ 198, 191, and 663(1);

d.  Whether Defendant failed to furnish the Class with accurate wage statements, as required by NYLL § 195(3);

e.  Whether, and to what extent, equitable relief should be imposed on Defendant to prevent the Company from continuing its unlawful labor policies; and

f.  The extent of class-wide injury and the measure of damages for those injuries.

58.     A class action is superior to all other available methods for resolving this controversy because i) the prosecution of separate actions by Class members will create a risk of adjudications with respect to individual Class members that will, as a practical matter, be dispositive of the interests of the other Class members not parties to this action, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by Class members will create a risk of inconsistent or varying adjudications with respect to individual Class members, which will establish incompatible standards for Defendant's conduct; iii) Defendant has acted or refused to act on grounds generally applicable to all Class members; and iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

59.     Accordingly, this action satisfies the requirements set forth under Fed. R. Civ. P. 23(a) and 23(b).

### COUNT I
### (FLSA – Failure to Pay Wages Promptly)

60.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.     The FLSA mandates that wages be promptly paid and that they not be

unreasonably delayed.

62.     In violation of the FLSA, NYHC has engaged in a widespread pattern, policy, and practice of failing to promptly pay Plaintiff and the FLSA Collective.

63.     Defendant's unlawful conduct has been willful and intentional.  Defendant was aware or should have been aware that its practices with respect to the compensation of Plaintiff and the FLSA Collective are unlawful.  Because Defendant willfully violated the FLSA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

64.     Defendant has not made a good faith effort to comply with the FLSA's prompt payment requirement.

65.     As a result of Defendant's unlawful acts, Plaintiff and the FLSA Collective have been deprived of compensation in amounts to be determined at trial and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

## COUNT II
### (FLSA – Failure to Pay for Travel Time)

66.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

67.     The FLSA's wage provisions, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, 29 CFR Part 552 effective as of January 1, 2015, require NYHC to compensate Plaintiff and the FLSA Collective for the time spent traveling between clients served on the same day.

68.     To the extent such travel time is overtime, NYHC failed to compensate Plaintiff and the FLSA Collective at $15.00 per hour.

69.     To the extent such travel time is straight time, NYHC failed to compensate

13

Plaintiff and the FLSA Collective for this time.

70.     Defendant failed to make, keep, and preserve accurate records with respect to Plaintiff and the FLSA Collective, including hours worked each workday and total hours worked each workweek.

71.     As a result of Defendant's unlawful acts, Plaintiff and the FLSA Collective have been deprived of compensation in amounts to be determined at trial and are entitled to recovery of such amounts as well as liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

## COUNT III
### (NYLL – Violations Related to Timeliness Of Pay)

72.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73.     Plaintiff and the Class are manual workers within the meaning of NYLL § 191(1)(a)(i).

74.     NYHC willfully failed to pay Plaintiff and the Class earned compensation in a timely manner in violation of NYLL § 191(1)(a)(i).

75.     Due to Defendant's willful violations of the N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant damages for late payments of wages in the amount of liquidated damages equal to one hundred percent of all late payments, as well as reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to N.Y. Labor Law § 198.

## COUNT IV
### (NYLL – Unpaid Straight Time Wages)

76.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77.     The wage provisions of Article 19 of the N.Y. Labor Law and its supporting regulations apply to Defendant and protect Plaintiff and the Class.

78.     In violation of N.Y. Labor Law applicable regulations NYHC has engaged in a widespread pattern and practice of time shaving, including (a) failing to compensate workers for time spent traveling between two or more of Defendant's clients on the same workday, and (b) falsifying its home care workers' time clock entries.

79.     By Defendant's knowing or intentional failure to pay Plaintiff and the Class the lawfully owed wages, Defendant has willfully violated N.Y. Labor Law Art. 19, §§ 191 and 198, and the supporting New York State Department of Labor Regulations.

80.     Due to Defendant's willful violations, Plaintiff and the Class are entitled to recover from Defendant their unpaid wages earned and due during the six years prior to the commencement of this action and thereafter, as well as liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest, pursuant to the N.Y. Labor Law.

## COUNT V
### (NYLL – Failure to Provide Accurate Wage Statements)

81.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82.     NYHC willfully failed to provide Plaintiff and the Class with accurate statements of wages, as required by N.Y. Labor Law § 195(3) by, among others, omitting the work time spent traveling between clients on the same day.

83.     Through its knowing or intentional failure to provide Plaintiff and the Class with the accurate wage statements required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

84.     Due to Defendant's willful violations of NYLL, Article 6, § 195(3), Plaintiff and the Class are entitled to statutory penalties of $250 for each workweek that Defendant failed to provide them with accurate wage statements, or a total of up to $5,000, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

## COUNT VI
### (NYLL – Failure to Pay Earned Wages Mandated by Wage Parity Law)

85.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

86.     New York Labor Law § 190(1) defines "Wages" as "earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis.  The term "wages' also includes benefits or wage supplements as defined in section one hundred ninety-eight-c of this article, except for the purposes of sections one hundred ninety-one and one hundred ninety-two of this article."

87.     New York Labor Law § 198-c(2) further provides; "As used in this section, the term "benefits or wage supplements" includes, but is not limited to, reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay."

88.     Pursuant to New York Labor Law § 198 employers such as the Defendant who fail to pay hourly employees wages in conformance with New York Labor Law shall be liable to the hourly employees for the wages that were not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

89.     The Total Compensation for home care workers as mandated by Wage Parity Law is wages under New York Labor Law.

90.     Defendant was obligated to pay its home care worker employees the total

compensation of $19.09 (in 2019) under the Wage Parity Law because it entered into agreements with managed care plans and was receiving reimbursements funded by the New York Medicaid program.

91.     Plaintiff and the Class were entitled to receive the total compensation of as set forth above per hour under the Wage Parity Law.

92.     Defendant never paid Plaintiff and the Class the Total Compensation as required by the Wage Parity Law.

93.     Defendant's failure to pay Plaintiff and the Class the total compensation as required by the Wage Parity Law was without good faith basis to believe that such failure was in compliance with the law.

94.     Due to Defendant's violations of the Wage Parity Law and N.Y. Labor Law, Plaintiff and the Class are entitled to recover from Defendant their wages earned and due during the six years previous to commencing this action and thereafter, as well as liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT VII
### (NYLL – In the Alternative to Count V, Unjust Enrichment)

95.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

96.     If Plaintiff's and the Class' New York Labor Law claim for wages required by the Wage Parity Law fails for any reason, Defendant was unjustly enriched by failing to pay Plaintiff and the Class the total compensation required by the Wage Parity Law.

97.     Defendant was enriched by keeping the underpayment, which is the difference between what it should have paid under the Wage Parity Law and what it actually paid.

98.     By keeping the underpayment, Defendant was enriched at Plaintiff's and the Class

members' expense.

99.     The circumstances of the enrichment are such that equity and good conscience require restitution to which Plaintiff and the Class are entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Louis Franck on his own behalf and on behalf of all other similarly situated persons, seeks the following relief:

A.      Designation of this action as a collective action on behalf of the FLSA Collective members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA and state law claims;

B.      Designation of Plaintiff as the Representative of the FLSA Collective;

C.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201, *et seq.*;

D.      An award of damages, according to proof, including liquidated damages, to be paid by Defendant, as authorized by the FLSA;

E.      Certification of this case as a class action pursuant to Rule 23;

F.      Designation of Plaintiff as the Representative of the Class and counsel of record as Class Counsel;

G.      Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful under the NYLL, Article 6, §§ 190, *et seq.*, NYLL, Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor Regulations;

H.      An award of unpaid overtime pay, spread of hours pay, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor

Regulations;

I.      Statutory penalties of $250 for each workweek that Defendant failed to provide

Plaintiff and the Class with accurate wage statements, or a total of $5,000, as provided for by the

NYLL, Article 6 § 198;

J.      Pre-judgment interest and post-judgment interest;

K.      Issuance of an injunction requiring Defendant to pay all statutorily required wages

pursuant to the N.Y. Labor Law and an order enjoining Defendant from continuing its unlawful

policies and practices as described herein with respect to the Class and Collective;

L.      Punitive damages;

M.      Penalties, as provided by law;

N.      Reasonable attorneys' fees and costs of the action; and

O.      Such other relief as this Court shall deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Franck requests

trial by jury in this action of all issues so triable.

Dated:  June 4, 2021
          Armonk, New York

**WITTELS MCINTURFF PALIKOVIC**

By:      <u>/s/ J. Burkett McInturff          </u>
          J. Burkett McInturff (JM-4564)
          Tiasha Palikovic (TP-5697)

          18 HALF MILE ROAD
          ARMONK, NEW YORK 10504
          Telephone: (914) 319-9945
          Facsimile: (914) 273-2563
          jbm@wittelslaw.com
          tpalikovic@wittelslaw.com

          *Counsel for Plaintiff and the Class*

Andrey Belenky (AB-1976)
Dmitry Kheyfits (DK-9799)
KHEYFITS BELENKY LLP
80 Broad Street, 5th FL
New York, New York 10004
Telephone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com
dkheyfits@kblit.com

*Co-Counsel for Plaintiff and the Class*