

November 10, 2021

**Via ECF**
The Hon. James L. Cott
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *Franck, et al. v. New York Health Care Inc. at al.*, Case No. 21 Civ. 4955 (GHW)

Dear Judge Cott:

On behalf of Plaintiffs and the proposed FLSA Collective and Rule 23 Class we write to request a pre-motion conference under the Court's Individual Rule II.B.2 for non-discovery motions.

Plaintiffs' application concerns Defendants' latest attempt to short-circuit this important workers' rights case, this time by improperly trying to force absent Class and Collective members into arbitration by sending employees arbitration agreements in violation of black letter law in this Circuit.  Plaintiffs intend to move the Court for an order **(a)** invalidating any signed arbitration agreements, and **(b)** providing for corrective notice to the employees who were issued Defendants' arbitration agreement.  Finally, because Defendants' arbitration agreement is an indisputable admission that their workers are similarly situated to the Named Plaintiffs, Plaintiffs request **(c)** that the Court conditionally certify the proposed Collective, direct the parties to confer on a notice plan, and refocus the pending conditional certification briefing to any unresolved notice issues. *See* ECF No. 40 (current briefing schedule).[1]

**I.    Relevant Background**

Plaintiff Louis Franck filed this action on June 4, 2021, seeking monetary and equitable relief on behalf of himself and roughly 4,000 other home care workers harmed by Defendants' transparent wage violations.  ECF No. 1.  Plaintiff Li Zhen Feng opted in and joined the First Amended Complaint on September 21, 2021.  ECF No. 20.  Since this action began, Defendants have repeatedly attempted to "pick off" Named Plaintiffs or otherwise interfere with the orderly administration of this class action.  *See* ECF No. 26 at 1–2 (detailing Defendants' $50,000 Rule 68 Offer of Judgment to Plaintiff Franck); ECF Nos. 34–34-2 (detailing Defendants' harassing phone calls to Plaintiff Feng offering her a bribe because Defendants "did not want to talk to Ms. Feng's lawyers" because "we want to avoid the legal thing" and "any legal problems.").

Now that Defendants' initial attempts to sidestep litigating this case on the merits have failed, Defendants have opted for yet another improper stratagem.  On Monday, undersigned Class Counsel learned that Defendants are circulating the arbitration provision attached hereto as **Exhibit A**.  This document purports to deny workers' their right to pursue their claims in this suit,

---

[1] At the outset, the Court should know that we attempted to gain Defendants' consent to remedial notice and a cessation of further improper communications with its employees regarding this lawsuit absent court approval, but defense counsel refused; instead, Defendants ignored the clear law we sent them and without any legitimate grounds defense counsel stated they wanted to delay any response.

or in any other court. Plaintiffs immediately advised defense counsel that such tactics have long been prohibited by courts in this Circuit and beyond, but Defendants have not committed to cease and correct their improper interference with absent Class and Collective members.

## II. Defendants' Arbitration Agreement is an Invalid Attempt to Interfere with Class Members' Rights and Runs Roughshod Over Settled Case Law

Courts specifically prohibit defendants from imposing arbitration on potential class members in proposed class action litigation. For example, in *OConner v. Agilant Solutions, Inc.*, 444 F. Supp. 3d 593, 597 (S.D.N.Y. 2020), Judge Woods, the very District Judge overseeing this case, recently invalidated an employer's arbitration clause enacted during the pendency of a wage and hour class action. Following many other courts, Judge Woods wrote in *OConner* that when a defendant contacts a potential class member "for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization." *Id.* at 601–02 (quoting *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005)). Based on this settled law, Judge Woods correctly concluded that imposing an arbitration agreement on absent class members "pose[d] a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *Id.* at 605 (quotation omitted).

As Judge Woods did in *OConner*, Your Honor should invalidate any signed arbitration agreements as they are clearly being used "for the purpose of foreclosing plaintiffs from participating in this litigation" and Defendants are implementing the "new [arbitration] policy in bad faith." *Id.* at 603; *see also Balasanyan v. Nordstrom, Inc.*, No. 11 Civ. 2609 (JTM), 2012 WL 760566, at *2–4 (S.D. Cal. Mar. 8, 2012) (invalidating agreements signed by workers in pending wage and hour action).[2]

The First Department's decision in *Weinstein v. Jenny Craig Operations*, 132 A.D.3d 446 (1st Dep't 2015) is also instructive. In that case, an employer imposed an arbitration agreement the same day it was sued and then continued to have employees sign the agreements after it was served with the complaint. *Id.* at 446. Considering these facts, the First Department easily concluded that "[g]iven the authority granted to the court to protect putative class members and the fairness of the process, the court properly exercised its discretion by drawing the inference that the agreements had been implemented in response to this litigation and to preclude putative class members." *Id.* at 447 (citations omitted). Thus, it was proper that the trial court "declined to enforce those agreements signed after commencement of [that] litigation." *Id.*; *see also Alfaro v. Vardaris Tech, Inc.*, 69 A.D.3d 436, 436 (1st Dep't 2010) ("inescapable inference" that arbitration agreements executed after litigation were for preventing participation in the lawsuit).[3] Defendants' efforts to

---

[2] *See also Mueller v. Chesapeake Bay Seafood House Assocs., LLC*, No. 17 Civ. 1638 (ELH), 2018 WL 1898557, at *8 (D. Md. Apr. 20, 2018) (potential class members who received arbitration agreement two months after a collective action was filed "are entitled to new notice, including language making clear that the Arbitration Agreement does not prevent them from joining this litigation."); *DeGidio v. Crazy Horse Saloon & Rest., Inc.*, No. 13 Civ. 2136 (BHH), 2017 WL 5624310, at *8 (D.S.C. Jan. 26, 2017) ("because the arbitration agreements constituted improper communications between Defendant and putative class members during litigation, the Court exercises its managerial powers and refuses to enforce these agreements"), *aff'd* 880 F.3d 135 (4th Cir. 2018).

[3] Plaintiffs anticipate Defendants will attempt to distinguish the clear law that the arbitration agreement is invalid on the ground that because it mentions this case by name, employees were sufficiently notified of the rights they purportedly forfeited. Defendants are wrong. The prolix agreement's bare-bones description of this case is patently insufficient to notify Defendants' home health care workers, many of whom either do not speak English or speak

*Footnote continued on next page.*

have their workers relinquish their rights in an already filed class action is unconscionable, and the workers should be clearly and promptly advised that their rights remain intact.

### III. Corrective Notice and Limits on Defendants' Further Communications are Needed

"A district court may prevent confusion and unfairness by prohibiting and correcting communication that is inaccurate, unbalanced, misleading, or coercive, or which improperly attempts to encourage class members not to join the suit." *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841 (JPO) (JCF), 2015 WL 6473005, at *3 (S.D.N.Y. Oct. 27, 2015); *see also Zamboni v. Pepe W. 48th St. LLC*, No. 12 Civ. 3157 (AJN) (JCF), 2013 WL 978935, at *4 (S.D.N.Y. Mar. 12, 2013) (ordering curative notice after employer tried to discourage participation).

That is exactly what is required here. Defendants are using their ongoing employment relationship to pressure workers to give up their right to participate in this lawsuit. Ex. A at ¶ 2. Defendants' communications have been unbalanced, misleading, and coercive and they plainly amount to an attempt to dissuade Class and Collective members from exercising their rights.

Indeed, the danger of such patently improper communications is heightened because Defendants' "workplace relationship with current employees, and their knowledge of sensitive information about . . . employees, put them in a position to exercise strong coercion in connection with potential class members' decisions regarding participation" in this case. *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012); *see also Austen v. Catterton Partners V, LP*, 831 F.Supp.2d 559, 568 (D. Conn. 2011) (noting that where there is "an ongoing . . . employment relationship [with members of a potential class], it may be prudent to preempt the defendant's ability to use the relationship and pressure class members to make factual concessions or settle claims.").

Because Defendants plowed ahead without seeking judicial approval of their arbitration gambit, corrective notice to the class is now required. *OConner*, 444 F. Supp. 3d at 606; *see also Agerbrink*, 2015 WL 6473005, at *3 (notice to correct "inaccurate, unbalanced, misleading [and] coercive" communications was necessary to "prevent confusion and unfairness"); *Zamboni*, 2013 WL 978935, at *4 ("The appropriate remedy, then, is to require notice alerting employees that they have not waived any FLSA rights . . . .").

Here, corrective notice is needed to ensure that the workers given Defendants' arbitration agreement know that they can join this lawsuit without retaliation, and to afford them the opportunity to do so. Additionally, Plaintiffs request that Defendants be ordered to cease further communications with absent Class and Collective members regarding this lawsuit.

To implement these remedies, Your Honor should direct Defendants to promptly provide Plaintiffs with the names, languages spoken (for notice translation purposes), employment start and end dates, and most current contact information, including email and mailing addresses for absent Class and Collective members given the arbitration agreement so that we may distribute corrective notice and Consent to Join forms advising workers that they may join the lawsuit and are protected against retaliation. Plaintiffs' Proposed Corrective Notice and Consent to Join is attached hereto

---

English only as a second language, that they are forfeiting their right to pursue potentially many thousands of dollars in wages. And even if workers were somehow to understand this fact, being asked by a current employer to waive such rights is signing only at the proverbial barrel of a gun.

as **Exhibit B** and is designed in consideration of the Federal Judicial Center's longstanding guidance on class action notices.[4,5]

### IV. The Court Should Also Now Conditionally Certify the Collective

Plaintiffs' initial pre-motion conditional certification application outlined the multiple indisputable facts demonstrating the existence of similarly situated workers, including transparent illegal pay practices on both Named Plaintiffs' paystubs and the Verified Complaint of Defendants' former payroll manager who describes numerous intentional wage and hour violations. ECF No. 26 at 2–3. At the October 18, 2021 conference, Your Honor felt further proof was needed and accordingly set a discovery and briefing schedule on conditional certification issues. ECF No. 40. However, Defendants' arbitration agreement now dispels any possible doubt as to whether conditional certification is warranted. Indeed, the arbitration agreement explicitly names this very action, Ex. A at ¶ 19, as one that Defendants' employees are purportedly forfeiting their right to join. This is a clear admission by Defendants that conditional certification is warranted—for if there were no similarly situated workers, there would be no need to improperly and explicitly try to bar workers from joining this case. Plaintiffs therefore respectfully request that in the interest of saving the Court's and the parties' resources, the Court should conditionally certify the collective and refocus the pending conditional certification briefing to any unresolved notice issues.

Thank you for Your Honor's attention to these requests.

Respectfully submitted,

/s/ J. Burkett McInturff
J. Burkett McInturff

*Counsel for Plaintiffs and the Proposed Collective and Class*

cc: All Counsel of Record (*via ECF*)

---

[4] *Available at:* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

[5] The enclosed proposed corrective notice is directed at absent Collective members. Plaintiffs would also send a similar notice to absent Class members, except that those notices would not include consent to join forms.