USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/24/2022__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Louis Franck and Li Zhen Feng, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>New York Health Care Inc., Murry Englard, and Glen Persaud<br><br>Defendants. | Case No. 21 Civ. 04955 (GHW) (JLC) |

DISCOVERY PLAN FOR ELECTRONICALLY STORED INFORMATION

Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs Louis Franck and Li Zhen Feng ("Plaintiffs") and Defendants New York Health Care Inc., Murry Englard, and Glen Persaud ("Defendants" or "NYHC") (collectively, "the Parties" and each a "Party"), by their respective counsel in the above-captioned action, stipulate and agree that the following discovery plan shall govern the search and production of ESI in this matter (the "Discovery Plan").

I.   SCOPE

1. This Discovery Plan ("Plan") is intended to govern the discovery and production of documents and electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.   The parties each reserve the right to seek exceptions, amendments, or modifications to this Plan for good cause shown.  This Plan will govern the production of computer-generated information, or data of any kind stored in electronic form, or on any electronic storage media, including but not limited to, computers, file servers, disks, tape or other real or virtualized devices or media and the production of paper documents.

2. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout ESI discovery.

3. The parties agree that this Plan shall not impose discovery obligations upon any party beyond those prescribed under the Federal Rules of Civil Procedure (including but not limited to Rules 26 and 34), the Local Civil Rules for the United States Court for the Southern District of New York, or other applicable rules or laws, unless otherwise expressly set forth herein.

4. Defendants identify the following categories of ESI that they believe to be relevant to the Parties' claims or defenses or discoverable in this matter. While this categorical identification is not intended as an exhaustive list of potential materials and shall not be construed to limit preservation or collection of ESI or to waive a Party's right to request additional ESI, or any Party's right to object to production, the following represent the categories of ESI most likely to result in the production of information relevant to the issues in the case. Defendants identify the following sources of ESI, which are subject to the application of search terms, date restrictions, and other parameters to be agreed upon by the parties for identifying and/or culling the ESI prior to collection, processing, and/or review:

   (a) Emails stored on New York Health Care Inc.'s Microsoft Exchange email server;

   (b) Files stored on New York Health Care Inc.'s file server;

   (c) Non-Custodial and Third-Party Data Sources;

   (d) Electronic files stored on the server maintained by Murry Englard.

5. Plaintiffs identify the following categories of ESI that they believe to be relevant to the Parties' claims or defenses or discoverable in this matter. While this categorical identification is not intended as an exhaustive list of potential materials and shall not be construed to limit preservation or collection of ESI or to waive a Party's right to request additional ESI, or any Party's right to object to production, the following represent the categories of ESI most likely to result in the production of information relevant to the issues in the case. Plaintiffs identify the following sources of ESI, which are subject to the application of search terms, date restrictions, and other parameters to be agreed upon by the parties for identifying and/or culling the ESI prior to collection, processing, and/or review:

   (a) None

6. Each Party is responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody, or control. To reduce the costs and burdens of preservation and to ensure relevant and discoverable ESI is preserved, the Parties agree that:

   (a) Plaintiffs and Defendants shall document and disclose their collection methodologies and ascertain that the selected methodology will not overwrite or alter pre-existing metadata such as file creation date or last modified date.

   (b) Plaintiffs and Defendants will determine, record, and disclose their sources of potentially relevant ESI for preservation and collection consistent with their duty to assess the scope of preservation of potentially relevant ESI, documents, and tangible things.

    (c) Collection of e-discovery will be limited to ESI created on or after January 1, 2015.

7. Defendants identify the following Third Parties likely to have ESI relevant to this matter:

    (a) ADS Payroll

    (b) HHA Exchange

    (c) Leading Edge Administrators

    (d) FileScan Solutions

    (e) Apploi

    (f) Defendants will promptly notify Plaintiffs if they become aware of any additional third parties with potentially relevant ESI.

8. Plaintiffs identify the following Third Parties likely to have ESI relevant to this matter:

    (a) Former employees of Defendant; and

    (b) HOCS Inc.

9. As a result of investigation and/or discovery, the Parties may identify additional data sources that may or may not need to be searched or preserved pursuant to the foregoing and will disclose any additional data sources that may contain relevant or responsive information. The Parties will meet and confer about preserving such ESI as any additional data sources are identified.

## II. IDENTIFICATION AND SEARCHING OF ESI

1. The Parties agree to meet and confer and use their best efforts to reach agreement regarding the identification of relevant sources of potentially responsive documents and ESI, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties. Agreement on an ESI source, search term, or search methodology does not relieve the Party of its obligations under the Federal Rules to conduct a reasonable search and produce all relevant and responsive materials of which it is aware.

2. Except as otherwise agreed upon in this Plan, the Parties will continue to meet and confer in good faith and will agree upon the following prior to Defendants' or Plaintiffs' collection or culling of ESI:

    (a) The custodians and non-custodial data sources with relevant or discoverable information;

    (b) Collection of relevant data sources including custodial and non-custodial data; and

    (c) Any methods proposed by Defendants or Plaintiffs to cull the universe of ESI prior to collection and processing.

3. Inaccessible data: The following types of data stores are presumed to be inaccessible and are not subject to discovery absent a particularized need for the data as established by the facts and legal issues of the case:

    (a) deleted, slack, fragmented, or other data only accessible by forensics;

    (b) temporary data stored in a computer's random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

    (c) residual, fragmented, or damaged data;

    (d) on-line access data such as temporary Internet files, history, cache, cookies, and the like;

    (e) information stored in unallocated space in file systems on magnetic media; and Electronic data (e.g., email, calendars, contact data, and notes) that exist only on a mobile device (e.g., iPhone, iPad, Android, and Blackberry devices), provided that such electronic data is identified and located elsewhere (e.g., on a server, laptop, desktop computer, or "cloud" storage).

4. De-Duplication, Email Threading and De-Nisting

    (a) Deduplication. Parties may deduplicate within each custodian (Custodian/Vertical Deduplication) using hash values. The hash values of email families shall be calculated on the entire email family, and the hash values of emails which contain BCC values shall include those BCC values in the calculation. A party shall not be required to produce duplicates of documents; however, if a duplicate document is attached to multiple distinct parent files, the duplicate attachment shall be produced with each parent unless withheld for privilege, and no document which is not an attachment shall be withheld because it is a duplicate of a document which has been produced as an attachment to a parent file.

    (b) Email Threading. No email or email attachment may be withheld from production because it is included in whole or in part in a produced more inclusive email. Parties may use email threading for their own internal review and other internal processes.

    (c) NIST files. Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced. Identification of NIST list matches will be through MD5 Hash values.

5. If the producing party intends to use technology-assisted review ("TAR") for the purpose of identifying or culling the ESI to be reviewed or produced, the producing party will notify the opposing party with ample time to meet and confer in good faith and the parties will agree on a protocol for the use of such technologies or alternatives.

    Prior to such meet and confer, the producing party will disclose:

    a. The composition of the ESI population to which it seeks to apply TAR;

    b. Whether any culling measures or other methodologies, including the use of search terms, were or will be taken prior to the application of TAR;

    c. The vendor being used to manage the application of the technology;

    d. The TAR software being used (including version number);

    e. The TAR processes and procedures to be used, including the processes and procedures for training, stopping training, setting a cut-off, and validation.

6. If a producing party intends to use search terms for the purpose of identifying or culling ESI to be reviewed or produced, the producing party will notify the opposing party with ample time to meet and confer in good faith and the parties will agree on a protocol for the use of search terms. Prior to such meet and confer, the producing party will disclose:

    a. With respect to the search platform:

        i. The software to be used for searching, including any installed modules and the version numbers of the software and any such modules;

        ii. A full description of the software's query syntax and operators;

        iii. A list of the software's default stop words and operators for software;

        iv. A list of any other default parameters, such as minimum indexed word length, of the software;

        v. A list of characters that cannot be searched or are treated as spaces or ignored by the software, or must be searched using alternate methodologies or syntax;

        vi. Whether the platform supports regular expressions, searching for numbers and single characters, and case-sensitive searches;

        vii. How diacritics are resolved;

      viii. Whether, if proximity limitations are supported, proximity-limited search terms are subject to an evaluation order, e.g., will terms structured X w/5 Y yield hits if the text reads Y w/5 X;

      ix. Whether synonym searching is supported;

      x. Whether and how the tool can identify collection terms which may be misspellings of search terms;

      xi. Whether stemming is applied in indexing or searching the collection, and if so, what stemming algorithm is used; and

      xii. Any parameters/options being used in setting up the index or in searching.

For search platforms with adequate on-line public documentation for items 2-11 above, a link to a url for the documentation will be a sufficient response.

  b. With respect to the document collection(s) to be searched:

      i. A full description of any prior filtering or culling applied or to be applied to the collection prior to application of the proposed search terms;

      ii. The data sources included in the collection against which the terms are to be run;

      iii. The number of documents in the collection; and

      iv. All relevant project and code names.

7. **Documents with Insufficient Text:** Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, etc., must be reviewed without culling by search terms, TAR, or other technologies that rely primarily on text.

8. **Additional or Alternate Methodologies for Documents from Certain Custodians and Non-Custodial Data Sources:** Upon request, the Parties will meet and confer to address the need for and implementation of additional or alternate methodologies for identifying possibly responsive documents from custodians and non-custodial data sources that may warrant such treatment.

9. **Mobile and Handheld Device Documents and Data:** To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

10. Other Filtering or Culling Technologies: Prior to use by any Party, the Parties must meet and confer to disclose, discuss, and agree upon any other proposed or use of technologies not specified herein to reduce the number of documents identified for classification or to be processed, reviewed, or produced (*e.g.*, keyword searching, file type culling, e-mail thread suppression, etc.). Use of these technologies to reduce the reviewable collection or production, other than as described, will be subject to a separate mutually agreeable protocol for the use of such technologies to be negotiated by the Parties.

### III.  PRODUCTION FORMAT

1. As detailed below, email, non-redacted Excel documents and non-redacted electronic files should be produced in native format accompanied by extracted text (.txt), metadata and TIFF placeholders. All scanned documents and redacted documents other than Excel files should be converted/processed to TIFF files, Bates numbered, and be accompanied by metadata, and fully searchable OCR text. For documents attached to emails that contain redactions, the parent email will be produced in image format.

2. Bates Numbering Documents

   (a) All images must be assigned a Bates number that shall always: (1) be unique across the entire document production; (2) maintain a constant length across the entire production; and (3) be sequential within a given document.

   (b) If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

3. Images.

   (a) Except as otherwise provided, all black and white documents produced as images shall be converted to black and white 300 dpi TIFF format image files with Group IV compression and one TIFF file per page. If an imaged document cannot be rendered in TIFF format, the Parties will provide a placeholder TIFF image displaying information sufficient to explain why the document could not be rendered (e.g. "encrypted," "Corrupt," etc.);

   (b) Color documents produced as images shall be produced as single-page, 300 JPEG images, images with JPG compression and a high-quality setting as to not degrade the original image. Each color document image file shall be named with the unique Bates Number of the first page of the document followed by the file extension "JPG."

   (c) Images of redacted ESI shall include all non-redacted elements and formatting, including but not limited to comments, tracked changes, hidden slides, etc., which are visible in any view of the document in its native application and each redacted area must bear a label containing the reason for the redaction.

    (d) Each image file shall be named with its unique Bates number and branded with the Bates number and confidentiality designation (if any) on the face of the image in a location that does not cover up any of the document's original text or images.

    (e) Bates numbers should be endorsed on the lower right corner of all images and confidentiality should be endorsed in the middle or lower left corner of all images.

Image Load file: An image identification file shall be provided containing a row of information for every image included in the production. The format of the file should be industry standard IPRO format (LFP), Concordance Image format (OPT) or other delimited file format using common ASCII (American Standard Code for Information Interchange) characters for field identification that includes one row of information for each image with fields for image Bates number, relative path to the image, image filename, page number, and document start identifier to designate the first page of a document.

4. Production and Use of Native Files

    (a) The default production format for all file common files types, including but not limited to email, spreadsheet, word processing, presentation, PDF, audio/visual, and image files, shall be native format.

    (b) The Parties will meet and confer on the production format of less-commonly used file types, such as CAD, GIS data, materials and prototypes testing, etc.

    (c) To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

    (d) The full path of the native file, as it exists in the production, must be provided in the .DAT file for the NATIVEFILELINK field.

    (e) The number of native files per folder should not exceed 1,000 files.

    (f) A Bates-stamped placeholder TIFF, bearing the legend "This document has been produced in native format" shall be provided for ESI produced in native format; these placeholders will be Bates numbered in the same way as any other TIFF, and the Bates number of that single page shall be used as the BegBates and EndBates of the associated document. The file name of the native file produced shall be the Bates number of the corresponding TIFF slip sheet.

    (g) To the extent a native file produced cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to discuss options.

5. Text

(a) Searchable text of the entire document encoded as UTF-8 must be provided for every record, at the document level. Extracted text must be provided for all documents that originated in electronic format, and electronic text must be extracted directly from the native electronic file unless it is a redacted document other than an Excel file, an image file, or a hard copy document. In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces.

(b) Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments. This provision shall not apply to emails that have been redacted, for which OCR text will be provided for all unredacted text.

6. OCR: OCR software should be set to the highest quality setting during processing. Documents containing foreign language text shall be OCR'ed using the appropriate settings for that language, e.g., OCR of German documents will use settings that properly capture umlauts. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

7. Parent-Child Relationships: Parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved.

8. Family Groups: A document and all other documents in its attachment range, emails with attachments and files embedded or referenced via hyperlink all constitute family groups. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged.

9. Metadata Load Files: All document information and metadata for each document shall be produced in a delimited data load file with one row for each document produced and shall include the document information and metadata identified in the table below to the extent it is available. The format of the file shall be industry standard Concordance DAT file format or a delimited text file that uses ASCII character delimiters as follows: Field Delimiter= ""ASCII (020), Text Quote= "]l" ASCII (254), Multi-Entry=";" ASCII (059).

10. All ESI should be produced with the following metadata:

- BEGBATES: Beginning Bates Number
- ENDBATES: Ending Bates Number
- BEGATTACH: Beginning Bates number of the first document in an attachment range
- ENDATTACH: Ending Bates number of the last document in attachment range

- CUSTODIAN: Name of the Custodian of the File(s) Produced – Last Name, First Name format
- FILENAME: Filename of the original digital file name
- FILEPATH: Original file/path of the location where the item was located at the time of collection. This should include location, and, for e-documents and e-attachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path.
- NATIVELINK: Path and filename to produced Native file (if document produced in native)
- EMAILSUBJECT: Subject line extracted from an email message
- TITLE: Title field extracted from the metadata of a non-email document
- AUTHOR: Author field extracted from the metadata of a non-email document
- FROM: From field extracted from an email message
- TO: To or Recipient field extracted from an email message
- CC: CC or Carbon Copy field extracted from an email message
- BCC: BCC or Blind Carbon Copy field extracted from an email message
- DATETIMERCVD: Received date and time of an email message (mm/dd/yyyy format)
- DATETIMESENT: Sent date and time of an email message (mm/dd/yyyy format)
- CONVERSATIONID: email thread identification ID
- DATECREATED: Date that a file was created (mm/dd/yyyy format)
- DATEMODIFIED: Modification date(s) of a non-email document
- ATTACHMENTCOUNT: number of attachments to a document
- ATTACHMENTNAMES: names of documents attached to a document, separated by semi-colons
- LASTMODIFIEDBY: internal document last modified or last saved by property
- FINGERPRINT: MD5 or SHA-1 has value generated by creating a binary stream of the file
- PRODVOLUME: Identifies production media deliverable
- EXTRACTEDTEXT: File path to Extracted Text/OCR File
- REDACTED: "Yes," for redacted documents; otherwise, blank
- REDACTIONREASON: basis of redaction. If more than one, separate reasons by semi-colons
- HASREVISIONS: Y if a Word document with revisions, otherwise N or empty
- HASCOMMENTS: Y if a Word or Excel document with comments, otherwise N or empty
- HASHIDDENDATA: Indication of the existence of hidden document data such as hidden text in a Word document, hidden columns, rows, or worksheets in Excel, or slide notes in PowerPoint
- HASHIDDENSLIDES: Y if a PowerPoint document with hidden slides, otherwise N or empty
- HASSPEAKERNOTES: Y if a PowerPoint document with speaker's notes, otherwise N or empty

- HASHIDDENROWS: Y if a Excel document with hidden rows, otherwise N or empty
- HASHIDDENCOLUMS: Y if a Excel document with hidden columns, otherwise N or empty
- HASHIDDENWORKSHEETS: Y if a Excel document with hidden worksheets, otherwise N or empty
- HASVERYHIDDENWORKSHEETS: Y if a Excel document with very hidden worksheets, otherwise N or empty
- ALL CUSTODIANS
- DEDUPED FILE PATH

11. Shared Resources: Shared resources should be produced as separate custodians if responsive custodians have access to them or if they contain responsive documents. The name of the group having access would be used as the custodian name, i.e. Human Resources Dept.

12. Paper Documents: Paper Documents, including spreadsheets maintained in paper form, will be produced as TIFF images production will include the appropriate Load File which will contain the following fields, if available:

    - Beginning Production Number (PRODBEGBATES)
    - Ending Production Number (PRODENDBATES)
    - Beginning Attachment Production Number (PRODBEGATTACH)
    - Ending Attachment Production Number (PRODENDATTACH)
    - Custodian
    - Page Counts (PGCOUNT)
    - Text Path (TEXTPATH).

13. Social Media: To the extent social media is discoverable in this matter, parties will meet and confer on acceptable formats and collection methodologies.

14. Databases: Production of databases or other structured data ("databases") or other aggregated or application data will be the subject of separate agreements, as needed, and is excluded from this order. To the extent a response to discovery requires production of information contained in databases, the Parties will cooperate in the exchange of information concerning such databases and data sources to facilitate discussions on productions and production format and agree to meet and confer to discuss an appropriate production protocol for information from such databases, including but not limited to whether native production is warranted for some or all of such data. Defendants will not produce database data prior to meeting and conferring and reaching agreement with Plaintiffs on a production format and protocol.

15. Exception Files: The Parties will use reasonable efforts and standard industry practices to address documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and

process Exception Files. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

16. Additional Processing Treatment for Files

    (a) Embedded Objects: Embedded files in Microsoft Office and .RTF files will be extracted as separate files and produced as attachments to the file in which they were embedded, except for images embedded in emails, which shall not be produced separately.

    (b) Compressed files: Compression file types (*i.e.*, .CAB, .GZ, .TAR., .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

    (c) Time Zone: The preferred time zone of processing ESI is Eastern Standard Time. Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original metadata of that ESI. The producing party shall consistently produce all ESI processed using the same time zone.

17. Replacement Productions. Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

## IV.   THIRD-PARTY ESI

1. A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Discovery Plan with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

2. The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties.

3. If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Discovery Plan, and then produce the processed documents to all other Parties.

4. However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

5. If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

V. **PRIVILEGE AND REDACTIONS**

1. No redactions for relevance may be made within a produced document or ESI item without good cause. The redacting party shall provide the receiving party with a log that sets forth the Bates number(s) of any documents containing redactions, a description of the nature of the redacted information that will enable the receiving party to understand the subject matter of any redacted information, and the good cause basis for the redaction (annoyance, embarrassment, oppression, or undue burden or expense, etc.). For redacted items which were originally ESI, all metadata fields will be provided and will include all non-redacted data. Redacted documents shall be identified as such in the load file provided with the production. A document's status as redacted does not relieve the producing party from providing all of the metadata required herein, unless that metadata contains privileged information and is appropriately reflected on a privilege log. Only documents that are entirely privileged shall be fully withheld from production; documents containing a combination of privileged and non-privileged information shall be produced with privileged portions redacted.

2. If any document within a family is fully withheld on account of privilege, to avoid the loss of context due to an "orphaned" email or attachment the entire message-attachment shall still be produced with the withheld document slip-sheeted with a bates stamped TIFF image, and the Bates number will be identified on the privilege log. If a claim of privilege applies to only a portion of a document, the document should be produced, and the portion claimed to be privileged obscured and stamped "redacted."

3. Privilege and redaction logs should be produced within 14 days after each production and shall be accompanied by an Excel copy of the log. The PDF copy will be the official log of record. Each successive privilege and redaction log shall include each prior log such that the privilege log is a running log. Each time a party produces their respective privilege and redaction log the producing party shall identify the location of all new entries.

4. The following documents presumptively need not be included on a privilege log:

   (a) The Parties do not need to log any withheld documents or communications sent directly (but not copied) to or from outside counsel created on or after June 4, 2021.

   (b) The Parties shall use a bucketing approach to log any withheld documents or communications sent directly (but not copied) to outside counsel in relation to the lawsuits entitled *Andreyeyeva, et al. v. New York Health Care* (Sup. Ct. Kings Cnty., Index no. 14309/2011), *Lewis v. New York Health Care Inc.*, 21-cv-04333-CBA-CLP (E.D.N.Y. 2021), or any other wage and hour action, regardless of the date of the document or communication. The bucketed privilege log shall identify the action to which the withheld documents correspond, the number of emails in each bucket, the

13

    number of non-emailed documents or communications in each bucket, the date range of emails in each bucket, the date range of non-emailed documents or communications in each bucket, a list of the senders and recipients (including copied and blind copied) of all emails in each bucket, a list of the senders and recipients of all non-emailed documents or communications in each bucket.

    (c) Documents not responsive to the Requesting Party's substantive document requests and otherwise not required to be produced.

5. Privilege Logs should contain the following information:

    (a) a sequential number associated with each Privilege Log record;

    (b) the date of the document, which may be extracted in an automated fashion via available metadata;

    (c) the Bates numbers of documents redacted or withheld from a family and replaced with a slipsheet, or document identification numbers of other withheld documents;

    (d) the author(s) of the document, which may be extracted in an automated fashion via available metadata, and identification of which of them are attorneys and the relationship of the author, addressees, and recipients to each other;

    (e) if an email, the sender(s), addressee(s) and/or recipient(s) (including "cc" and "bcc" recipients) and subject line (to the extent it does not contain privileged information), which may be extracted in an automated fashion via available metadata, along with other information about them necessary for the Requesting Party to assess the privilege (e.g., title, company/organization, etc.) and identification of which of them are attorneys;

    (f) In-house attorney names shall be designated with an asterisk; outside counsel attorney names will be designated with a double asterisk;

    (g) the type of document, *e.g.*, letter or memorandum;

    (h) a description of the nature of the document that, without revealing information itself privileged or protected, will enable other parties to understand the basis of the claim of privilege or immunity;

    (i) the type or nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine);

    (j) These same requirements shall apply to oral communications except that the log shall identify (i) the name of the person making the communication and the names of the persons present while the communication was made and, where not apparent, the

relationship of the persons present to the person making the communication; (ii) the date and place of the communication.

## VI. OTHER

1. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

2. This Discovery Plan shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

3. Nothing in this Discovery Plan shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other disclosed and applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

4. Nothing in this Discovery Plan is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

5. Counsel executing this Discovery Plan warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

STIPULATED TO AND RESPECTFULLY submitted this 23 day of February 2022.

Dated: February 23, 2022

WITTELS MCINTURFF PALIKOVIC

By: __/s/ J. Burkett McInturff___
     J. Burkett McInturff
     Ethan D. Roman

*Counsel for Plaintiffs and the Proposed FLSA Collective and Rule 23 Class*

HODGSON RUSS LLP

By: /s/Joshua Feinstein
     Peter C. Godfrey
     Joshua Feinstein
     Sarah N. Miller

*Counsel for Defendants*


PURSUANT TO STIPULATION, IT IS SO ORDERED

Dated:  February 24, 2022
          New York, New York

_____
JAMES L. COTT
United States Magistrate Judge