USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/17/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

LOUIS FRANCK, *et al.,*                        :
                                               :
                        Plaintiffs,            :        **<u>MEMORANDUM ORDER</u>**
                                               :
            -v-                                :        21-CV-4955 (GHW) (JLC)
                                               :
                                               :
NEW YORK HEALTH CARE INC., *et al.,*           :
                                               :
                        Defendants.            :

-------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

On February 25, 2022, Plaintiffs filed a letter-motion seeking a pre-motion conference in advance of an anticipated motion to compel production of (1) certain documents without anonymizing identifying information of potential class and collective members, and (2) signed arbitration agreements for any individual who defendants contend agreed to arbitrate claims in this case (Dkt. Nos. 89 and 90).[1] Defendants opposed the motion in a letter-motion filed on March 7, 2022 (Dkt. No. 101). The parties have provided sufficient information regarding this dispute in their submissions to enable the Court to resolve it without further proceedings. For the reasons which follow, Plaintiffs' letter-motion is denied.

---

[1] Plaintiffs filed a letter-motion (Dkt. No. 89) and then an amended letter-motion (Dkt. No. 90) seeking the same relief.

1.          **Background**

In November 2021, Plaintiffs filed a letter-motion after learning of Defendants' circulation of arbitration agreements ("Fact-Finding and Issue Resolution" Program Agreements, or "FAIR Agreements") to their employees. They sought leave to file a motion requesting that the Court: (1) invalidate any signed agreements; (2) direct Defendants to provide Plaintiffs with the detailed information for absent Class and Collective members given the arbitration agreement so they may distribute corrective notice and inform them they may join the lawsuit and are protected against retaliation; and (3) conditionally certify the collective. Dkt. No. 45. Defendants objected. Dkt. No. 46.

On November 18, 2021, the Court directed Plaintiffs to raise these issues in their anticipated motion for conditional certification and equitable tolling, because the record needed to be more fully developed and the issue presented fully briefed. Dkt. No. 47. On December 3, 2021, Plaintiffs wrote on consent to sever the motion to invalidate the arbitration agreements from the conditional certification briefing. Dkt. No. 52. The Court granted this request. Dkt. No. 53. Plaintiffs subsequently filed their motion for conditional certification and equitable tolling on December 21, 2021. Dkt. No. 61. That motion practice is currently ongoing.

2. **Current Dispute**

Plaintiffs now seek relief with respect to arbitration-related document

requests they served on Defendants on November 17, 2021.  Dkt. No. 90, Exhibit

(Exh.") A.  Specifically, Plaintiffs have requested the following:

1. Non-privileged documents and communications concerning the drafting of the
   FAIR Agreements distributed to NYHC employees, including drafts of the
   agreement, comments to draft agreements, and documents otherwise
   reflecting proposed or actual changes made to the agreement and the
   rationale for those proposed or actual changes;

2. Documents and communications concerning NYHC's rollout and distribution
   of the FAIR Program, including any timetables regarding the agreement, and
   documents and communications discussing distribution of the agreement and
   obtaining signatures;

3. Non-privileged documents and communications concerning the reason for the
   FAIR Program, including pre-meeting materials distributed to NYHC
   decision-makers regarding the agreement, notes from meetings where the
   agreement was discussed, and communications regarding the agreement; and

4. Non-privileged documents and communications with NYHC employees
   concerning the FAIR Program agreement, including communications
   accompanying the agreement when it was distributed to employees, and
   subsequent communications with NYHC employees related to the agreement.

Notwithstanding various objections, Defendants agreed to produce the

requested information "in anonymized form," and except for signed FAIR Program

agreements for putative class or collective members.  Dkt. No. 90, Exh. A at 4–

8.  Plaintiffs now seek to compel Defendants to produce (1) responsive documents

without anonymizing identifying information of potential Class and Collective

members, and (2) signed arbitration agreements for any individual who allegedly agreed to arbitrate claims in this case.  Dkt. No. 90, at 1.

### 3. <u>Discussion</u>

While the requested documents are relevant to a determination about the validity of the FAIR Program agreement, Plaintiffs have not explained how the identifying information sought is relevant at the current stage of the litigation or to the claims in the case.  Parties seeking discovery "bear[] the burden of initially showing relevance," *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020) (citing, *inter alia, Mandell v. The Maxon Co., Inc.*, No. 06-CV-460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007)), and as such, they "must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."  *O'Garra v. Northwell Health*, No. 16-CV-2191 (DRH) (AYS), 2018 WL 502656, at *2 (E.D.N.Y. Jan. 22, 2018) (quoting *Mamakos v. United Airlines, Inc.,* No. 14-CV-7294, 2018 WL 4861392, at *2 (E.D.N.Y. Sept. 28, 2018)).  It is well-established that a motion to compel is "left to the court's sound discretion."  *Mirra v. Jordan*, No. 13-CV-5519 (AT) (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) (citing *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999)).  Moreover, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group, Inc.*, 328 F.R.D. 450,

452 (S.D.N.Y. 2018) (alteration in original) (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012)).

Importantly, "it is incumbent upon the moving party to provide the necessary connection between the discovery sought and the claims or defenses asserted in the case." *United States v. Novartis Pharmaceuticals Corp.*, No. 11-CV-8196 (CM) (JCF), 2014 WL 6655703, at *3 (S.D.N.Y. Nov. 24, 2014) (citing *287 Franklin Avenue Residents' Association v. Meisels*, No. 11-CV-976 (KAM) (JO), 2012 WL 1899222, at *4 (E.D.N.Y. May 24, 2012). Plaintiffs have not done so here.

Because Plaintiffs have already moved for conditional certification, the discovery sought is plainly not requested in order to facilitate that motion.[2] Rather, Plaintiffs claim that complete responses to these discovery requests will support the development of the record ahead of a fuller briefing on the subject of the arbitration agreement's propriety "as the Court ordered." Notably, however, Plaintiffs served the requests the day before the Court issued its order to that effect. Dkt. No. 90, at 2.

---

[2] Plaintiffs' reliance on the Court's decision in *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474 (S.D.N.Y. 2016) is misplaced, because its conclusions there were made with respect to contact information that would be relevant to a Rule 23 inquiry, which is not the case here. Dkt. No. 90, at 2; *Benavides*, 166 F. Supp. 3d at 491–92. In particular, in that case the Court directed defendants to produce documents, records, and text messages that would "support findings" on questions required by Rule 23, but found that Benavides was not entitled to production of contact information for putative class members when she had made no showing that communication would be necessary to support her assertions under Rule 23. *Id.* at 492.

5

Plaintiffs make the following arguments:

1. The discovery sought is "necessary for the parties and the Court to assess the validity of arbitration agreements that purport to affect the scope of the Class and Collective."  Dkt. No. 90, at 1.

2. The requested "[i]dentifying information will help Plaintiffs evaluate the propriety of NYHC's arbitration campaign—an important issue in this case."  Dkt. No. 90, at 2.

3. They "are entitled to test NYHC's claim that workers freely and knowingly agreed to forgo the wages sought in this case. If NYHC obscures workers' identities, it will restrict Plaintiffs' ability to contact potential witnesses and develop evidence—limits which Defendants themselves do not have. This puts Plaintiffs at a litigation disadvantage and adds unnecessary burden to the investigatory process."  Dkt. No. 90, at 2.

Defendants counter that at the pre-certification stage, anonymizing contact information of putative collective members is appropriate, particularly as here where they have provided sampled data to facilitate the already-filed conditional collective certification motion.  Dkt. No. 101, at 2.  They also claim that producing this information is not justified because any contention that the FAIR agreements were coercive is speculative.  Dkt. No. 101, at 2–3.[3]

---

[3] Defendants request, in a footnote, that the Court "strike from the record the plaintiffs' insinuations" based on their citation to a case in the Eastern District of New York in which, Plaintiffs allege in attempting to justify production here, a handwriting expert demonstrated that the employer in that case "forged a signature on an arbitration agreement drafted by the same defense counsel here."  Dkt. No. 101, at 3 n.1 (citing Dkt. No. 90, at 3).  While the Court will not strike the reference at this time, it is concerned that Plaintiffs would so cavalierly make such a serious accusation in summary fashion.  Plaintiffs are admonished to avoid such accusations unless they are supported by substantial evidence that is provided to the Court.  In any event, the citation to the Eastern District case, which has nothing

Contrary to Plaintiffs' assertion, the arbitration campaign is only an important issue in the case if a collective or class is certified, which has not yet occurred. Plaintiffs accurately point out that (1) Defendants asserted arbitration as an affirmative defense, and (2) the Court has not bifurcated class and merits discovery. Dkt. No. 90, at 3. However, the affirmative defense was raised only with respect to the putative class or collective members, not the named plaintiffs. Dkt. No. 42, ¶ 249. "[D]etermining the enforceability of an arbitration agreement is the type of fact-bound merits inquiry that should not take place at the first stage of the conditional collective action approval process." *Oconner v. Agilant Solutions*, No. 18-CV-6937 (GHW), 2019 WL 6879178, at *1 (S.D.N.Y. Dec. 17, 2019) (quoting *Lijun Geng v. Shu Han Ju Restaurant II Corp.*, 18-CV-12220 (PAE) (RWL), 2019 WL 4493429, at *15 (S.D.N.Y. Sept. 9, 2019)).

Further, many courts "hesitate[] to determine the enforceability of agreements "between [Defendants] and third parties not before the Court." *Geng,* 2019 WL 4493429, at *15 (cleaned up). Thus, discovery related to the agreements would be most appropriate at the "second stage of certification." *Id.* at *16. At that time, if appropriate, Defendants could "move to decertify the collective or to compel arbitration of the claims of any arbitration opt-in who does, in fact, join the action" after a decision on the conditional collective has been made and once "the composition of the collective is known." *Id.* If they were to do so, the validity of the

---

to do with this case, had no bearing on the resolution of the issues presented by the current dispute.

agreement would then be properly before the Court.  Because notice at stage one would not be precluded by any such arbitration agreement, potential opt-in plaintiffs would still receive notice, and any who are interested but may have signed a FAIR agreement would be able to contest the agreement, as Defendants themselves acknowledge.  Dkt. No. 101, at 3.  *See Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2021 WL 4460632, at *10 (S.D.N.Y. Sept. 28, 2021) ("the weight of law in this Circuit holds that a collective may be conditionally certified, and notice given, notwithstanding that some or all of the prospective members of the collective may have signed arbitration agreements") (collecting cases).

## 4.  Conclusion

In sum, Plaintiffs have not met their burden of demonstrating that the identifying information sought is relevant to the claims of the case itself – FLSA wage-and-hour claims – or otherwise appropriate to be produced at this stage in the litigation.  Therefore, the relief sought is denied without prejudice to a future application should it be warranted once the underlying motions are decided.

The Clerk is respectfully directed to close Docket Nos. 89 and 90 and mark them as "denied."  Defendants' letter-motion at Docket No. 101 should be marked "denied as moot."

**SO ORDERED.**

Dated: March 17, 2022
       New York, New York

JAMES L. COTT
United States Magistrate Judge

8