USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __9/21/2022____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

LOUIS FRANCK and LI ZHEN FENG,                    :
*Individually and on Behalf of All Others*        :
*Similarly Situated,*                             :
                                                  :
                            Plaintiffs,           :        **REPORT &**
                                                  :        **RECOMMENDATION**
        -v-                                       :        21-CV-4955 (GHW) (JLC)
                                                  :
NEW YORK HEALTH CARE, INC.,                        :
MURRY ENGLARD, and GLEN PERSAUD,                   :
                                                  :
                            Defendants.           :
                                                  :
-------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Gregory H. Woods, United States District Judge:**

        Louis Franck and Li Zhen Feng ("Plaintiffs"), individually and on behalf of all

others similarly situated, bring this action for violations of the Fair Labor

Standards Act ("FLSA") and New York Labor Law ("NYLL") against New York

Health Care, Inc. ("NYHC"), Murry Englard, and Glen Persaud (collectively,

"Defendants").  Plaintiffs allege that Defendants willfully engaged in various

unlawful employment practices, including failing to pay required overtime and

travel time wages, undercounting hours through time-shaving, failing to promptly

pay employees, failing to pay agreed-upon rates for holiday work, failing to pay for

uniforms and expense shifting, and failing to provide accurate wage statements.

        Defendants now move for judgment on the pleadings pursuant to Rule 12(c)

of the Federal Rules of Civil Procedure.  They contend that the Court should dismiss

1

Franck from the action as a result of his acceptance of an offer of judgment, and that the Court should dismiss the First Amended Complaint in its entirety, or, in the alternative, stay any proceedings brought on behalf of individuals with overlapping claims in an ongoing New York state court case (the "Andryeyeva matter").  For the reasons which follow, I recommend that Defendants' motion be granted, Franck be dismissed from the action, and Feng be granted leave to amend certain claims.

## I.     BACKGROUND

### A. Facts

The following facts are taken from the First Amended Complaint ("FAC") dated September 21, 2021 and are accepted as true for purposes of the pending motion.  *See, e.g., Johnson v. Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009) ("To survive a Rule 12(c) motion, [a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (cleaned up).

Defendants allegedly operate one of the largest home care companies in New York, whose workers provide home-based aid to individuals in need of medical care or other home care assistance.  FAC, Dkt. No. 20, ¶¶ 1–2.[1]  NYHC is a New York corporation "in the business of placing home health and personal care aides at the homes of patients in the New York metropolitan area with medical and personal

---

[1] Plaintiffs do not specify whether NYHC is one of the largest home care companies in New York City or New York State.  *See id.*  In response to this allegation, Defendants state that they "provide[] services to individuals in and around the New York City metropolitan area."  Defendants' Answer to the FAC, Dkt. No. 42, ¶ 2.

care needs." *Id*. ¶ 13.  At all relevant times, Englard was the Chief Executive

Officer of NYHC, and Persaud was the Director of Human Resources.  *Id*. ¶¶ 14–15.

On March 17, 2020, a former NYHC Payroll Manager filed a complaint in state

court alleging that 1) the same three Defendants in this action "unlawfully

retaliated against, demoted, and terminated the Payroll Manager;" and 2) Persaud

"personally and intentionally committed numerous systematic wage and hour

violations." *Id*. ¶ 16.

Defendants employed approximately 10,000 home care workers and had

revenues in excess of $500,000 each year from 2015 through 2021.  *Id*. ¶ 22.  NYHC

employed Franck from approximately late-January 2019 until mid-July 2019 as a

home care worker in Manhattan and Brooklyn.  *Id*. ¶¶ 9–10.  NYHC employed Feng

from approximately May 2016 until July 2021 as a home care worker in Brooklyn

and Queens; Feng also frequently travelled to NYHC's offices in the Bronx.  *Id*.

¶¶ 11–12.  According to Plaintiffs, "many, if not most, of Defendants' current and

former employees do not realize they are victims of wage and hour violations." *Id*.

¶ 7.

Defendants are alleged to impose on their workers the following pay

practices: falsifying employees' time records; failing to track and count all hours

worked; failing to pay wages promptly and on time; failing to pay the full amounts

owed under New York's Wage Parity Law; illegally frustrating workers' ability to

enjoy the benefits they are owed under New York's Wage Parity Law; failing to

track and pay overtime; failing to pay the correct overtime rate; failing to pay

agreed-upon wage premiums for holiday work; failing to reimburse employees for necessary uniform expenses; shifting other NYHC business-related expenses onto employees; and failing to pay for workers' travel time between two patients on the same work day.  *Id.* ¶ 2.  The details of these allegations are as follows.

### 1.   Time-Shaving

Plaintiffs contend that Defendants "systematically undercount their home care workers' actual hours worked" in three ways.  *Id.* ¶ 25.  First, they say that their wage statements demonstrate that the "overwhelming majority of shifts that Plaintiffs worked for NYHC are in exact whole-or half-hour increments," which is "not plausible."  *Id.*     ¶ 26.  Specifically, 97.4% of Franck's time clock entries, and 98% of Feng's time clock entries from March 10, 2018 through July 16, 2019, are in exact whole or half hour increments despite "routine fluctuations."  *Id.* ¶¶ 26–27, 35.  Defendants allegedly "know" their home care workers are not working exact whole-or half-hour increments.  *Id.* ¶ 28.  According to Plaintiffs, Defendants lose money when aides work beyond an allotted number of hours, so either they or an agent alter the actual times recorded by the required telephone call-in system used to record clock in and out times.  *See id.* ¶¶ 29–31.  Feng alleges that she "would at times arrive early and use NYHC's telephonic time clock to clock in before her scheduled shift," and further that "it was not uncommon for [her] to clock out and leave well after her scheduled shift, as she was instructed by NYHC [in the employee handbook] to never leave her client alone and would sometimes have to wait until a client's family member arrived at the client's house."  *Id.* ¶¶ 32, 34; *see*

4

*id.* ¶ 33.  The NYHC employee handbook states that "[w]ithout prior authorization for extra hours, you will not be paid for those extra hours."  *Id.* ¶ 36.  Such time-shaving practices allegedly "result in the substantial under-compensation of NYHC's home care workers."  *Id.* ¶ 37

Second, Plaintiffs contend that NYHC "fails to compensate home care workers for time travelled between two or more NYHC[] clients on the same day."  *Id.* ¶ 38.  They cite the following as an example: Franck served two clients on April 22, 2019, two clients on April 24, 2019, and two clients on May 1, 2019.  *Id.*  On each of those days, he spent approximately 45 minutes traveling between the clients' residences, but he received no compensation for that travel time.  *Id.*  To the extent such travel time amounts to either overtime or straight time, they allege that NYHC "failed to compensate the Class" at the required FLSA and NYLL overtime rate, or at the regular rate required by NYLL and the Wage Parity Law, respectively.  *Id.* ¶ 40.  Third and finally, NYHC's employee handbook requires aides not assigned to a case to "call in" to check for potential work "at least three times a week," but, according to Plaintiffs, Defendants do not track or compensate this time.  *Id.* ¶ 42.

### 2.    Overtime Violations

Defendants also allegedly implemented policies that violated the FLSA and NYLL's requirements that Defendants pay home care workers an overtime premium of 1.5 times their regular rate for hours worked over 40 in a work week.  *See id.* ¶ 92.  Their failure to pay proper overtime compensation was allegedly

"willful" and "occurred pursuant to a corporate policy and/or practice." *Id.* ¶¶ 98–99. Specifically, Defendants are alleged to have "deprived" Plaintiffs and Class Members of an overtime premium when they falsified time clock entries (discussed above) and also "failed to pay Class Members an overtime premium of one and a half times the regular hourly rate" from January 1, 2015 through at least October 2015. *Id.* ¶¶ 95, 97.[2]

Feng alleges that she was denied overtime when she worked 38 hours in addition to the regular 40 during the week reflected on her January 19, 2018 pay statement. *Id.* ¶ 93. She contends that her overtime rate was calculated pursuant to Defendants' "shaving of overtime rates": she was paid $15.00 per hour for 40 hours of work, but on the pay statement, Defendants split the $15.00 per hour rate into 40 hours of $11.00 per hour base wages and 40 hours of $4.00 per hour for "Travel Time," even though those were the same 40 hours. *Id.*[3] This split resulted in her overtime premium being calculated based on an $11.00 per hour regular rate rather than $15.00 per hour, resulting in her being paid $19.50 per hour for overtime hours instead of $22.50 per hour. *Id.*[4] She contends that her pay

---

[2] This time period ends before either of the two named Plaintiffs is alleged to have begun their employment with NYHC. *See id.* ¶ 9 (Franck began employment in 2019), ¶ 11 (Feng began employment in 2016).

[3] Plaintiffs refer to this practice as "rate splitting." *See id.* ¶ 102.

[4] Feng alleges that "NYHC calculated her overtime premium based on an $11.00 per hour regular rate and paid $19.50 per hour for overtime hours," but an overtime premium based on an $11.00 per hour regular rate would be $16.50 per hour instead ($11.00 x 1.5 = $16.50). *Id.*

6

statements from January 26, February 2, and February 9, 2018 also reflect overtime and this "regular rate time shaving." *Id.* ¶¶ 93–94. Plaintiffs allege that based on subsequent pay statements, "Defendants' practice of splitting workers' regular rates between the base wage and supposed "Travel Time" continued at least through July 19, 2019." *Id.* ¶ 94.

### 3. Prompt Payments

Plaintiffs allege that Defendants failed to pay wages in a timely manner as required by NYLL, and delayed payment for longer than is reasonable under the FLSA. *Id.* ¶¶ 50–51. They claim that they and the Class are "manual workers" under NYLL, and as such are required to be paid weekly and not longer than seven calendar days after the end of the week in which wages are earned. *Id.* ¶¶ 43, 48. NYHC's uniform payroll practice was to pay employees "like Plaintiffs" every Friday, "but to delay all payments by one week." *Id.* ¶ 52. However, NYHC "routinely" delayed payment more than the seven-calendar day lag permitted under NYLL. *Id.* ¶ 53. Franck identifies 11 distinct pay statements, which included payment for hours worked on previous days that were between seven and 70 days delayed from what the law required. *See id.* ¶¶ 54–64. For example, Feng alleges that her February 23, 2018 pay statement "supposedly covers the pay period from February 10 to February 16," but also contains payment for February 3 and February 5, rendering the payment for those latter two dates delayed by seven days beyond what the law required. *Id.* ¶ 65.

4.     **Wage Parity Law Earned Compensation**

According to Plaintiffs, New York's Wage Parity Law, Public Health Law
§ 3614-c, applies to NYHC, and Plaintiffs were home care aides as defined by that
law. *Id.* ¶¶ 67–70.  Plaintiffs allege that NYHC failed to pay them and the Class
the compensation required by the Wage Parity Law in five ways. *Id.* ¶ 80.  First,
wage statements show NYHC paid "only the base rate per hour," which is
insufficient to meet its obligation also to account for "Additional Wages" and
"Supplemental Wages." *Id.* ¶¶ 75–79, 81.  Second, Franck's pay statements from
February 8, February 15, and March 15, 2019, reveal a $12.00 per hour base wage
when New York law required a per hour base wage of $15.00 in that time period.
*Id.* ¶¶ 79, 82.  Third, according to Plaintiffs, NYHC was required to pay Franck a
$15.00 base wage plus $4.09 per hour consisting of Additional Wages of up to $1.69
per hour and Supplemental Wages of up to $2.40 per hour. *Id.* ¶¶ 79, 85.  However,
NYHC produced a letter from a benefits administrator addressed to Franck in
which it denoted two "tiers" of benefits amounting to additional benefits of either
$2.40 or $3.60 per hour based on the number of hours worked; neither of which is
the required $4.09 per hour. *See* ¶¶ 83–86.

Fourth, Plaintiffs allege that they "were victimized" by Defendants' "policy
and practice of blocking and frustrating employees' use and enjoyment" of their
benefits. *Id.* ¶ 87.  Franck and Feng claim that they did not know until September
7 and 16, 2021, respectively, that NYHC "supposedly provided [them] with health

insurance." *Id.* Feng also asserts that Defendants advised her during her employment that NYHC did not provide health insurance and that she needed to purchase her own if she wanted it. *See id.* Fifth and finally, Plaintiffs allege that "new home care workers must go through a probationary period" of three months before being entitled to medical benefits. *See id.* ¶¶ 90, 91.

### 5.    Additional NYHC Payment Practices

Plaintiffs also allege violations of various other New York state wage laws, including Defendants' failure to pay agreed upon rates for holiday work, failure to pay for uniforms and expense shifting, and failure to provide accurate wage statements. *See id.* ¶¶ 100–15. First, Feng contends that her September 14, 2018 pay statement demonstrates that due to "rate splitting" (described above), NYHC paid her only a $19.50 holiday premium for her work on Labor Day of that year, although it was required to pay her $22.50 per hour worked on Labor Day. *Id.* ¶ 102. Thus, Defendants "failed to pay [Feng] and the Class in accordance with NYHC's holiday policy" of being paid time and one half for hours worked. *Id.* ¶¶ 101–02. Second, both Franck and Feng were required to purchase a uniform for work, and neither was reimbursed. *Id.* ¶¶ 103–05. Third, none of Feng or Franck's pay statements shows that Defendants paid a weekly uniform washing payment. *Id.* ¶¶ 106–08. Fourth, Plaintiffs and the Class were required to purchase stamps to comply with NYHC's policy that they mail time and duty sheets every week, and Defendants did not reimburse Plaintiffs and Class Members for the stamps. *Id.* ¶¶

106, 109–12.  Fifth and finally, Plaintiffs assert that NYHC failed to provide accurate wage statements or accurate annual wage notices.  *Id.* ¶¶ 114–15.

### 6.    Class and Collective Action Allegations

Plaintiffs define the proposed collective as all "similarly situated current and former home health and personal care aides" who were "employed by NYHC at any time within the three years prior to the date of the filing of this action and thereafter.  *Id.* ¶ 116.  According to Plaintiffs, NYHC's conduct "is pursuant to a corporate policy or practice of minimizing labor costs."  *Id.* ¶ 118.  Further, Plaintiffs contend that Defendants "are aware or should have been aware that the FLSA requires: 1) "prompt payment of wages[;]" 2) payment of workers' travel time between clients served during the same workday[;]" and 3) "payment of an overtime premium for overtime hours equal to one and one half times the employee's regular rate."  *Id.* ¶¶ 119–21.  Plaintiffs define the proposed class as "[a]ll persons who were employed by NYHC as home care workers at any time from June 6, 2015 to the present."  *Id.* ¶ 125.  They exclude "any claims owing to Defendants' unlawful use of the '13-hour' rule for 24-hour live-in shifts."  *Id.* ¶ 126.

### B. Procedural History

Franck initiated this action against NYHC on June 4, 2021.  Complaint ("Compl."), Dkt. No. 1.  On the same date, Franck filed his consent to join the collective action portion of this action.  *See* Dkt. No. 1-1.  NYHC made Franck an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure on September 7, 2021.  *See* Dkt. Nos. 18, 105, 122, 125, 134.  NYHC filed an Answer to

the Complaint on September 10, 2021.  Dkt. No. 17.  Franck accepted the offer of

judgment on September 21, 2021.  *See* Dkt. Nos. 105, 122, 125, 134.  Also on

September 21, 2021, Plaintiffs filed an Amended Complaint, naming Feng as an

additional Lead Plaintiff and naming Persaud and England as individual

Defendants.  First Amended Complaint ("FAC"), Dkt. No. 20.  Feng filed her

consent to join on September 21, 2021.  Dkt. No. 20-1.  Defendants submitted their

Answer to the FAC on October 19, 2021.  Dkt. No. 42.

Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure on February 22, 2022.  Motion to Dismiss

Plaintiff Franck Individually and to Dismiss the Complaint in its Entirety, Dkt. No.

95 (entered March 3, 2022; dated February 22, 2022); Memorandum of Law in

Support of the Motion, Dkt. No. 96; ("Def. Mem."); Declaration of Peter C. Godfrey

in Support of the Motion ("Godfrey Decl."), Dkt. No. 97; *see also* Dkt. No. 85.

Plaintiffs filed its opposition on April 8, 2022.  Memorandum of Law in Opposition

("Pl. Opp."), Dkt. No. 114; Declaration of J. Burkett McInturff in Opposition

("McInturff Decl."), Dkt. No. 115.  The undersigned granted leave for Plaintiffs to

submit a supplemental brief on April 22, 2022.  Dkt. No. 119.  Plaintiffs filed the

supplemental brief on April 25, 2022.  Supplemental Memorandum of Law in

Opposition ("Pl. Supp. Opp."), Dkt. No. 120; Declaration of Ethan D. Roman in

Opposition ("Roman Decl."), Dkt. No. 121.  On May 9, 2022, Defendants filed their

reply.  Reply Memorandum of Law in Support ("Def. Rep."), Dkt. No. 127.

Six opt-in plaintiffs filed consent forms to join the action as party plaintiffs between March 3 and 14, 2022, while the briefing of this motion was underway. Dkt. Nos. 93, 94, 98, 102, 103, 104.  Also pending before the Court is Plaintiffs' separate motion for conditional certification of the FLSA collective action, court-facilitated notice, and equitable tolling.  Dkt. Nos. 61–65, 86, 112–13.  On August 15, 2022, the Clerk of Court was ordered to enter judgment in favor of Franck in the amount of $50,000.  Dkt. No. 134.

The case was referred to me for general pre-trial supervision and a report and recommendation on all dispositive motions on September 22, 2021.  Dkt. No. 24.

## II.    DISCUSSION

### A. Legal Standards on a Motion for Judgment on the Pleadings

Under the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial[.]"  Fed. R. Civ. P. 12(c).  "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party."  *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999)).  "To survive a Rule 12(c) motion, [a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Johnson*, 569 F.3d at 43–44 (cleaned up).

"On a [Rule] 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Rusis v. Int'l Business Machines Corp.*, 529 F. Supp. 3d 178, 191 (S.D.N.Y. 2021) (quoting *L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (cleaned up)). "A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Id.* (cleaned up).

To survive dismissal, plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Moreover, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Analysis

Defendants move to dismiss Franck from the case, to dismiss the FLSA claims for failure to state a claim, and to dismiss the remaining state law claims (counts IV through XIII) as lacking an independent basis for the Court's jurisdiction. *See* Def. Mem. at 2–3. Because Plaintiffs did not provide the precise statutory predicates for their claims, the Court interprets Plaintiffs' FLSA claims to be for overtime compensation pursuant to 29 U.S.C. § 207(a)(1) (Count I), FAC ¶¶ 134–38, prompt payment pursuant to 29 U.S.C. § 206 (Count II), FAC ¶¶ 139–44, and to be paid for "travel time" pursuant to 29 C.F.R. § 785.38 (Count III), FAC ¶¶ 39, 145–50.[5] Plaintiffs oppose Defendants' motion in its entirety. *See* Pl. Opp. at 3. For the following reasons, Defendants' motion should be granted.

### 1. Franck Should be Dismissed Because He Accepted a Rule 68 Offer of Judgment

Defendants contend that "the Court should dismiss Franck as a party to this lawsuit" because he was "accorded complete relief" when he accepted an offer of judgment on September 21, 2021. Def. Mem. at 2–3. In response, Plaintiffs argue that "the Rule 68 offer does not moot this class action," because: 1) the Supreme Court in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016), determined that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted[;]" 2) Franck has not been

---

[5] With respect to the prompt pay claims, "although the FLSA 'does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt pay requirement.'" *Sarit v. Westside Tomato, Inc.*, No. 18-CV-11524 (RA), 2020 WL 1891983, at *4 (S.D.N.Y. Apr. 16, 2020) (quoting *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998)).

"accorded complete relief[;]" 3) the additional plaintiff and six opt-ins prevent dismissal; 4) the offer of judgment applies only to NYHC, not to Englard or Persaud; and 5) NYHC has not complied with Rule 68's requirements or paid Franck his money.  Pl. Opp. at 3–7.

Rule 68 provides that: "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued."  Fed. R. Civ. P. 68(a).  If the opposing party accepts the offer in writing within 14 days, either party may file the offer and notice of acceptance, plus proof of service, and "[t]he clerk must then enter judgment."  *Id.*  Here, the parties do not dispute that NYHC made a Rule 68 offer on September 7, 2021, or that Franck timely accepted the offer on September 21, 2021.  *See* Dkt. Nos. 105, 122, 125.

As a threshold matter, Franck's acceptance of the Rule 68 offer is appropriately considered on a motion for judgment on the pleadings.  Courts may take judicial notice of "public documents on a motion to dismiss to determine whether claims are barred by prior litigation . . . [and] if [a] Settlement Agreement would dispose of th[e] matter . . . it makes no sense to deny dismissal simply because it was not referenced in the Complaint."  *Deyli v. Novartis Pharmaceuticals Corp.*, No. 13-CV-6669 (NSR), 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (cleaned up).  Here, both Plaintiffs and Defendants have filed notice that Franck accepted an offer of judgment on September 21, 2021.  *See* Dkt. Nos. 105, 122, 125. The proposed judgment was approved on August 15, 2022, and the Clerk was

directed to enter judgment for Franck.  Dkt. No. 134.  Thus, here, the Court may take judicial notice of these filings and can consider them even though they were not referred to in the Complaint.

With respect to Plaintiffs' initial contention, it is true that Franck's acceptance of the Rule 68 offer does not necessarily moot the <u>entire</u> case.  Pl. Opp. at 3*; see, e.g., Sanders v. Houslanger and Associates, PLLC*, No. 17-CV-8985 (DC), 2018 WL 6444921, at *3 (S.D.N.Y. Sept. 6, 2018) (""[i]f the parties agree that a judgment should be entered against the defendant, then the district court should enter such judgment. Then, *after* judgment is entered, the plaintiff's *individual* claims will become moot for purposes of Article III.") (quoting *Tanasi v. New All. Bank*, 786 F.3d 195, 200 (2d Cir. 2015) (emphasis added in part)).  However, Plaintiffs have not demonstrated that despite his acceptance of the offer of judgment, Franck remains a proper party to the action either individually or as a would-be class representative, as is required for Franck to remain a party to the action.

The legal authority Plaintiffs cite to suggest Franck should remain in the case is inapposite.  None of the cases on which they rely involves facts in which an offer of judgment was accepted by the plaintiff, as is the situation here.  Instead, the cases to which Plaintiffs cite each involve unaccepted offers of judgment or no offers of judgment at all.  Pl. Opp. at 3–6; s*ee, e.g., Campbell-Ewald Co.*, 577 U.S. at 165 (ruling only that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case"); *Chen v. Allstate Ins. Co.,* 819 F.3d 1136, 1140–41 (9th Cir. 2016)

(defendants' unilateral deposit of funds into plaintiffs' account prior to acceptance of offer does not moot case prior to plaintiffs' opportunity to certify); *Polk v. Del Gatto, Inc.*, No. 21-CV-129 (PAE), 2021 WL 3146291, at *5, *5 n.6 (S.D.N.Y. July 23, 2021) (subject matter jurisdiction maintained despite defendant sending plaintiff check when no offer of judgment and plaintiff "rejected all individual settlement offers before resolution of a class-certification motion"); *Bais Yaakov of Spring Valley v. Educ. Testing Serv.,* No. 13-CV-4577 (KMK), 2021 WL 323262, at *9 (S.D.N.Y. Feb. 1, 2021) ("the Court does not find that Defendant's offer of judgment or tender of payment moots the case.  Instead, it finds that the case is moot after entering judgment on all of Plaintiff's claims for relief"); *Ortiz v. Ciox Health LLC*, No. 17-CV-4039 (DLC), 2018 WL 1033237, at *3 (S.D.N.Y. Feb. 22, 2018) (motion to dismiss based on mootness denied when defendant made unilateral refund and plaintiff had not accepted offer of judgment); *Brady v. Basic Research, LLC*, No. 13-CV-7169 (SJF) (ARL), 2016 WL 1735856, at *1 (E.D.N.Y. May 2, 2016) (no ground for appeal from denial of motion to dismiss for lack of subject matter jurisdiction based on unaccepted offer of judgment).

In the Second Circuit, no question exists as to whether judgment will eventually be entered following a party's acceptance of an offer of judgment, as "judicial approval is not required of a Rule 68(a) offer of judgment settling FLSA claims." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019); *see also Dellamedaglia v. Zemak LLC*, No. 20-CV-6753 (VSB), 2021 WL 260023, at *1 (S.D.N.Y. Jan. 25, 2021) (even when parties' actions are "inconsistent with the

purpose of Rule 68" and noting that holding in *Mei Xing Yu* "threatens to dramatically curtail the impact of the holding in *Cheeks* and its attempts to protect workers' wages," court was "compel[ed]" to enter judgment in accordance with parties' Rule 68 offer and acceptance "in light of [*Mei Xing Yu*'s] unqualified language"); *De Jesus Torres v. HWF Realty Mgmt., Inc.*, No. 18-CV-994 (PAC), 2020 WL 995861, at *2 (S.D.N.Y. Mar. 2, 2020) (although *Mei Xing Yu* "create[s] a real potential for abuse," courts are "forced to direct the Clerk of the Court to enter judgments submitted pursuant to Rule 68").  Because the entry of judgment is not subject to approval after an offer has been accepted, *see, e.g., Mei Xing Yu,* 944 F.3d at 413, it follows that a case such as this one, in which the offer has indisputably been accepted, is more akin to a case in which judgment has been entered than one in which an offer has not yet been accepted.  Thus, Plaintiffs' reliance on cases in which offers were not yet accepted is unavailing.

Furthermore, Plaintiffs appear to rely on both *Nyarko v. M&A Projects Restoration Inc.*, No. 18-CV-5194 (FB) (ST), 2021 WL 4472618 (E.D.N.Y. Sept. 30, 2021) and *Gonyer v. Vane Line Bunkering, Inc.*, No. 13-CV-8488 (RJS), 2014 WL 10250861 (S.D.N.Y. Oct. 14, 2014) for the proposition that it is appropriate to add a named plaintiff after an offer of judgment has been accepted.  *See* Pl. Opp. at 5–6. However, this issue is not in dispute.  Defendants do not contest the addition of Feng, or the opt-ins, to the case even after Franck's acceptance of the offer of judgment, nor do they argue that the case is moot on subject-matter jurisdiction grounds.  Thus, while Plaintiffs are correct that the offer of judgment "does not end

this action," such argument does not provide a basis on which to maintain Franck's individual claims in the case, as the case can proceed with Feng's claims. *Id*. at 5.

Notably, in *Nyarko*, "[t]he same day that the acceptance [of the offer of judgment as to the original plaintiffs, Nyarko and Jaiteh] was filed with the Court, Plaintiffs' counsel filed an Amended Complaint adding an unnamed plaintiff, John Doe 1, in the place of Nyarko and Jaiteh." *Nyarko*, 2021 WL 4472618, at *1. In that case, plaintiffs had advised the Court when they sought to add a new plaintiff that "[i]n light of [original named Plaintiffs' accepting the Rule 68 offer], th[e] Amended Complaint also removes allegations relating to those two plaintiffs' individual circumstances." *Nyarko v. M&A Projects Restoration Inc*., No. 18-CV-5194 (FB) (ST), Dkt. No. 14 at 1. Here, too, Franck and the allegations relating to his individual circumstances should be removed from the First Amended Complaint given his acceptance of the offer of judgment.

Plaintiffs' second argument is equally unavailing, as Franck has been accorded complete relief. Franck accepted an offer of judgment that was "in full satisfaction of all claims against NYHC" and "inclusive of all amounts potentially recoverable in this action, including without limitation actual damages, liquidated damages, costs and expenses." Dkt. No. 122; Def. Mem. at 2. "[W]here the language of the contract [i.e., the Rule 68 offer and acceptance thereof] is clear and unambiguous, the contract is to be given effect according to its terms." *Steiner v. Lewmar, Inc*., 816 F.3d 26, 31 (2d Cir. 2016) (markings in original) (cleaned up). Plaintiffs argue that "NYHC's offer applies only to damages," and not to injunctive

19

relief or collective or class actions.  Pl. Opp. at 4.  However, by its own terms, the judgment was offered and accepted "in full satisfaction of all claims against NYHC." Dkt. No. 122.  Such language is not ambiguous, and no indication exists that it applies only to damages.  Based on a plain reading of the offer, Franck's acceptance renders him to have resolved "all claims" "without limitation[.]"  *Id.*  Any argument that he should remain a party so as to ensure the putative class and collective claims could move forward is without merit as the case can proceed without him due to the addition of Feng as a named Plaintiff on the same day as his acceptance of the offer of judgment.  *See, e.g., Nyarko*, 2021 WL 4472618, at *1.

Finally, the addition of Englard and Persaud as Defendants does not change the impact of the Rule 68 offer and acceptance in this case.  Plaintiffs contend that Franck's acceptance of the offer of judgment is not valid because "the offer was from *only* NYHC—not Defendants Englard and Persaud—and did not require [him] to terminate claims against all Defendants."  Pl. Opp. at 6.  However, when the offer of judgment was accepted, Englard and Persaud were not yet parties to the case and could not have been included as offerors of the judgment.[6]  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."  *Creative Kids Far East Inc. v. Griffin*, No. 15-CV-6027 (NSR), 2016 WL 8710479, at *3 (S.D.N.Y. Jan. 22, 2016) (quoting

---

[6] Plaintiffs themselves concede that Franck first accepted the offer of judgment "and *then* amended his complaint."  Pl. Opp. at 6 (emphasis added).

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)).

"[J]ust listing a person as a defendant, without valid service on that person, can

have no legal consequences." *Felders v. Bairett*, 885 F.3d 646, 655 (10th Cir. 2018).

Here, Franck accepted the offer of judgment on September 21, 2021.  *See* Dkt.

Nos. 105, 122, 125.  The summonses for Englard and Persaud were issued on

September 22, 2021, and they each signed a waiver of service on September 24,

2021.  *See* Dkt. Nos. 27, 28, 32, 33.  Franck was thus no longer properly named as a

party himself to the case before the new Defendants became parties.  *See Felders*,

885 F.3d at 656 ("the language of Rule 68 dictates that a defendant must be made a

party to the litigation, by service of a summons and the complaint, or waiver of

service, before that defendant can make a valid Rule 68 offer to allow judgment

against him.").  Thus, Plaintiffs are incorrect that Franck cannot be dismissed

because he has asserted claims against Englard and Persaud.

In sum, because it is undisputed that Franck accepted a valid offer of

judgment against NYHC, he and his individual claims should be dismissed from the

case.[7]

### 2. Feng Has Not Stated an FLSA Claim for Relief

#### a. Count I for Unpaid Overtime is Barred by the Statute of Limitations

Defendants argue that Feng's overtime claim (Count I) should be dismissed

because she "does not allege that she suffered . . . denial of overtime" within the

---

[7] As to their fifth argument, Plaintiffs cite no case law for the proposition that
"there are no grounds for dismissing [Franck] until Rule 68's requirements are
met."  Pl. Opp. at 7.

applicable three-year statute of limitations period. Def. Mem. at 4. Plaintiffs counter that "dismissal of Plaintiff Feng's overtime claim, which is less than eight months outside the FLSA three-year limitations period (and timely under NYLL), is premature because she has not yet had the opportunity to be heard on the issue of whether her FLSA claims can be tolled." Pl. Opp. at 8. They further appear to contend that the timeliness of Feng's overtime claim is not relevant due to the potentially timely claims of opt-in plaintiffs. *See* Pl. Opp. at 9. For the following reasons, the overtime claim should be dismissed because Feng has not alleged a denial of overtime within the applicable statute of limitations.

Subject to certain exceptions, both the FLSA and NYLL require that employees who work more than 40 hours per week be compensated for overtime work at a rate of one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1); NYLL §§ 650 et seq.; *see also Kim v. 511 E. 5th St., LLC*, 133 F. Supp. 3d 654, 659 (S.D.N.Y. 2015); *Williams v. Bier Int'l, LLC*, No. 14-CV-3894 (LTS) (JCF), 2015 WL 4461668, at *1–2 (S.D.N.Y. July 21, 2015). Overtime claims under NYLL "are evaluated under the same standards as claims under the [FLSA]." *Hobbs v. Knight-Swift Transportation Holdings, Inc.*, No. 21-CV-1421 (AT), 2022 WL 118256, at *3 (S.D.N.Y. Jan. 12, 2022). To state a plausible overtime claim pursuant to the FLSA, a plaintiff must "sufficiently" allege: (1) "40 hours of work in a given workweek," and (2) "some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Those requirements are not met by "general assertions" that a plaintiff

"typically, occasionally, or regularly worked more than forty hours a week, without more . . . ." *Limauro v. Consolidated Edison Co. of New York, Inc.*, No. 20-CV-3558 (CM), 2021 WL 1226872, at *2 (S.D.N.Y. Mar. 31, 2021) (cleaned up).  Rather, a plaintiff must "provide sufficient detail about the length and frequency of [his or her] unpaid work to support a reasonable inference that [he or she] worked more than forty hours in a given week." *Hobbs*, 2022 WL 118256, at *3 (citing *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)).  A plaintiff has not provided sufficient detail when "there is no way to identify from the allegations which weeks [Plaintiff] was required to work more than forty hours." *Limauro*, 2021 WL 1226872, at *2 (citing *Nakahata*, 723 F.3d at 201).

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)); *see also, e.g., Guzman, et al. v. Primo Installation, Inc., et al.*, No. 18-CV-7226 (AT) (BCM), 2022 WL 3230095, at *9 (S.D.N.Y. June 8, 2022), *adopted by* 2022 WL 3229219 (Aug. 10, 2022).  "A court accordingly may dismiss a claim on statute-of-limitations grounds at the pleadings stage if the complaint clearly shows the claim is out of time." *Whiteside*, 995 F.3d at 319 (cleaned up)*; see also Contrera v. Langer*, 290 F. Supp. 3d 269, 277 (S.D.N.Y. 2018) ("[A]t the motion to dismiss stage, a claim may be dismissed on statute of limitations grounds only if the defense appears on the face of the complaint.") (cleaned up).  Such is the case here.

23

Feng joined this action and filed the FAC on September 21, 2021.  *See FAC*, Dkt. No. 20.  She alleges first that her "payroll records demonstrate programmatic shaving of overtime rates," and then specifically states that she worked "38 additional overtime hours" during the work week reflected on her January 19, 2018 pay statement.  *Id*.  Feng then goes on to allege that her "January 26, February 2, and February 9 [2018] pay statements demonstrate the same systematic regular rate time shaving," presumably, but not explicitly, referring to an unspecified number of overtime hours worked during the weeks reflected in those pay statements.  *Id*.  Plaintiffs concede that "the pay statements [she] possesses do not reflect overtime after February 9, 2018," but assert that they "do demonstrate that Defendants' practice of splitting workers' regular rates between the base wage and supposed 'Travel Time' continued at least through July 19, 2019."  *Id*. ¶ 94.  For this proposition, Feng cites to a July 19, 2019 pay statement that reflects a total of 40 hours of work.  *Id*. (referring to Dkt. No. 20-2, Exhibit B, at 35).

Assuming without deciding that Feng's claims are subject to the more expansive three-year limitations period, as Defendants themselves do for purposes of their motion, any overtime claims she asserts would have needed to arise after September 21, 2018 to be cognizable.  *See, e.g.*, Def. Mem. at 4, n.2.  However, the only week in which Feng alleges to have worked more than 40 hours was the pay period ending on January 19, 2018, approximately eight months outside of the three-year limitations period.  FAC ¶¶ 93–94.  Even when alleging time shaving, nowhere does Feng indicate that any specific incidents resulted in unpaid overtime

work, or even overtime at all. *Id.* ¶¶ 26–27, 32, 34–35 (contending that 98% of her time clock entries from March 10, 2018 through July 16, 2019 are in exact whole or half hour increments despite "routine fluctuations" in which she "would at times arrive early" or that "it was not uncommon for [her] to clock out and leave well after her scheduled shift"). Perhaps most importantly, Plaintiffs themselves concede that Feng's only unpaid overtime claim is "outside the FLSA three-year limitations period." Pl. Opp. at 8. Thus, it is "app[arent] on the face of the complaint" that the overtime claim is barred by the statute of limitations, and therefore appropriate to consider at this stage of the proceedings. *Contrera*, 290 F. Supp. 3d at 277; *see also, e.g., Darowski v. Wojewoda*, No. 3:15-CV-803 (MPS), 2016 WL 4179840, at *11, n.5 (D. Conn. Aug. 7, 2016) (on motion to dismiss, FLSA claims barred by statute of limitations) (cleaned up).

Contrary to Plaintiffs' argument, Feng's overtime claim should not be sustained merely "because she has not yet had the opportunity to be heard on the issue of whether her FLSA claims can be tolled." Pl. Opp. at 8. "The doctrine of equitable tolling allows a court to extend a statute of limitations on a case-by-case basis to prevent inequity . . . [it] applies as a matter of fairness where a party has been prevented in some extraordinary way from exercising [her] rights." *Contrera v. Langer*, 278 F. Supp. 3d 702, 723 (S.D.N.Y. 2017) (cleaned up). Equitable tolling is "a drastic remedy applicable only in rare and exceptional circumstances." *Katz v. Equinox Holdings, Inc.*, No. 20-CV-9856 (VEC), 2022 WL 2952143, at *2 (S.D.N.Y. July 26, 2022) (cleaned up). "Generally, a litigant seeking equitable tolling bears

the burden of establishing two elements: (1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Contrera*, 278 F. Supp. 3d at 723 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The application of equitable tolling is "highly case-specific," *id.* at 726, and "when a movant does not provide any grounds showing equitable tolling may be appropriate, it will not be applied." *Id.* at 723 (cleaned up).

Here, although Plaintiffs "bear[] the burden" to establish its applicability, *id.* at 723, the sole statement they make with respect to equitable tolling is: "dismissal of Plaintiff Feng's overtime claim, which is less than eight months outside the FLSA three-year limitations period (and timely under the NYLL), is premature because she has not yet had the opportunity to be heard on the issue of whether her FLSA claims can be tolled." Pl. Opp. at 8. Although it is true that Plaintiffs "did not need to plead equitable tolling" in the FAC, *id.* at 8, n.5 (citing *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007)), they have not made any argument to the Court that equitable tolling does, in fact, apply to Feng's claims.[8] Thus, no facts are alleged to demonstrate that, if determined in the future to be true, the statute of limitations should be tolled. *See, e.g., In re Level 8 Apparel, LLC*, 2021 WL 1977161, at *5 ("Since the Motion goes to the adequacy of the pleadings, the Trustee need not prove either prong of the equitable tolling test. However, she must demonstrate that, if

---

[8] A review of the briefing papers for the other pending motion in this case, in which Plaintiffs seek conditional certification and equitable tolling, reveals that Plaintiffs do not request equitable tolling as applicable to Feng even in that motion, but only as to the opt-in Plaintiffs. *See* Dkt. Nos. 61–65, 86, 112–13.

true, the facts she alleges would support her assertion that the statute of limitations should be tolled.").

A plain reading of the statement that Feng "has not yet had the opportunity to be heard on the issue of whether her FLSA claims can be tolled" cannot reasonably be understood to be an application for equitable tolling of her claims. Pl. Opp. at 8. Nor do Plaintiffs cite any law for the apparent proposition that the mere possibility of a future application for equitable tolling renders the denial of a claim brought outside of the statute of limitations inappropriate.

Plaintiffs' own authority is not to the contrary. In *Mandarino*, the plaintiff specifically argued that tolling should apply to his claims, which were outside the statute of limitations, on the basis that he suffered from a mental disability. *Mandarino v. Mandarino*, 180 F. App'x 258, 261 (2d Cir. 2006). The Second Circuit concluded that "mental incapacity, if satisfactorily shown, can be a proper basis for such tolling . . . [and therefore] in the circumstances presented, the District Court should not have resolved the fact-specific equitable tolling issue on defendants' motion to dismiss," recognizing that when "as here, the facts are disputed, the best practice is to analyze a question of mental incapacity in the context of summary judgment." *Id*. There, the plaintiff was "entitled to an opportunity to adduce evidence supporting his equitable tolling claim," which he had made to the Court. *Id*. Such an analysis is not applicable here, where Feng has not specifically argued or particularized a claim that tolling should apply to her allegations.

Next, in *Abbas*, the Second Circuit concluded that "[t]he District Court could not tell from the face of [the plaintiff's] complaint whether he might have meritorious tolling arguments," and so the complaint should not have been dismissed. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). However, there, the district court granted a motion to dismiss "on the basis of an anticipated statute-of-limitations defense," *sua sponte*, "without granting Abbas notice and an opportunity to be heard." *Id*. Here, the Court did not invoke the statute-of-limitations defense *sua sponte* without granting Plaintiffs notice and an opportunity to be heard. Rather, Plaintiffs had notice of Defendants' reliance on the defense from the motion papers, and they had an opportunity to be heard in both their opposition and their supplemental opposition. Moreover, the Second Circuit ultimately did not remand *Abbas* to the district court because through the course of further proceedings on the motion to dismiss and its appeal, the plaintiff "had a full and fair opportunity to brief, and to offer affidavits in support of, his tolling arguments" and they were found to be without merit. *Id*. So too here did Plaintiffs have the opportunity to argue equitable tolling. Nothing prevented them from making such arguments in opposing the motion. However, they chose not to assert that it applies to Feng's claims. *Abbas* does not support any purported proposition that equitable tolling need not be raised, or briefed, over the course of proceedings on a motion to dismiss on the grounds that it was not required to be pled in the complaint.

Finally, in *Glass*, the court granted a motion to dismiss on the grounds that plaintiff's FLSA claims were barred by the relevant statute of limitations, despite

plaintiff's equitable tolling argument. *See Glass v. A.K. Allen Co.*, No. 10-CV-804 (ADS) (ETB), 2010 WL 11632764, at *3 (E.D.N.Y. Oct. 21, 2010). There, "the plaintiff asserts in his memorandum of law and in a supporting affidavit—though not in his complaint—that the FLSA's statute of limitations should be equitably tolled." *Id.* at *2. Not so here, where Plaintiffs not only fail to assert in the FAC that the statute of limitations should be equitably tolled, but they do not do so in their memoranda of law or supporting declarations. Despite such a critical distinction between *Glass* and the instant case, even in *Glass* the motion to dismiss was granted, and the plaintiff was "given leave to replead facts in support of equitable tolling, and the parties [were] free to later revisit this issue." *Id.* at *3; *see also* Pl. Opp. at 8–9, n.5. So too here, then, should the motion to dismiss be granted, Plaintiffs be given leave to replead facts in support of equitable tolling if they exist (as discussed below), and the issue can be revisited if appropriate.[9]

---

[9] Plaintiffs make two additional arguments with respect to the overtime claims. First, they assert that the untimeliness of Feng's overtime claims is immaterial because "class plaintiffs have 'class standing' to allege sufficiently similar injuries suffered by potential class members." Pl. Opp. at 9 (citing *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 438 (S.D.N.Y. 2020) ("The Second Circuit has explicitly instructed that 'non-identical injuries of the same general character can support standing.")). However, as neither Franck nor Feng have asserted plausible claims, this argument is irrelevant. Franck cannot "ha[ve] class standing to assert claims on behalf of potential opt-ins even though he did not work 40+ hours per week" because he should be dismissed from the case. *Id.* Similarly, Feng cannot assert claims on behalf of potential opt-ins at all as each of her individual claims should likewise be dismissed. Second, Plaintiffs appear to argue that the overtime claims should not be dismissed as "permitting notice to other opt-ins is critical" because "the majority of affected workers are immigrants 'with limited English-language skills [who] are unlikely to learn of their FLSA rights other than through their employer.'" *Id.* at 9–10 (citing *Darowski*, 2016 WL 4179840, at *12). However, this contention does not address whether the FAC sufficiently stated an overtime

Thus, with respect to equitable tolling, the Court has "no basis for making a ruling at this time," and Plaintiffs, who have the burden to demonstrate its applicability, have not done so here. *Contrera*, 278 F. Supp. 3d at 723, 725 (denying motion for equitable tolling when plaintiffs "provide[d] no facts or even arguments regarding existing or potential opt-in plaintiffs that reflect that these employees of the defendants have been 'pursuing [their] rights diligently'").

Because the statute of limitations applies to the overtime claims and Feng's only alleged overtime claim falls outside of the relevant period, she has not plausibly pled an FLSA claim for overtime.

      b.  <u>Count II for Prompt Payment is also Barred by the Statute of Limitations</u>

Next, Defendants argue that "Feng individually does not allege an individual FLSA prompt pay claim," Def. Mem. at 7, except that they note that she alleges a prompt pay violation that occurred on February 23, 2018. *Id.* at 7, n.4. Plaintiffs counter only that Feng's claim should be sustained because "NYHC's timeliness claim as to Feng is premature," citing to their equitable tolling statement with respect to the overtime claim. Pl. Opp. at 10.

A review of the FAC demonstrates that Feng has only alleged one prompt pay violation, based on her February 23, 2018 pay statement that "supposedly cover[ed] the pay period from February 10 to February 16," but also contains payment for

---

claim for relief. Therefore, neither argument is a persuasive basis on which to deny the pending motion.

February 3 and February 5, which meant that the payment for those latter two dates delayed by seven days beyond what the law required.  FAC ¶ 65.

Plaintiffs do not argue that Feng alleged any further violations, nor do they contest that the statute of limitations applies to a wage claim from February 23, 2018.  For the same reasons described in the preceding section, the February 23, 2018 claim is barred by the statute of limitations, and Plaintiffs have not demonstrated the potential applicability of equitable tolling.  Thus, because the statute of limitations applies and Feng's only alleged prompt payment claim falls outside of the relevant period, she has not plausibly pled an FLSA claim for prompt payment.

### c.  Count III for Travel Time is Without Merit

Finally, Defendants contend that "Plaintiffs' travel time claims should be dismissed as any alleged travel time does not constitute overtime under the FLSA and therefore is non-recoverable 'gap time'" for which the FLSA does not provide a cause of action.  Def. Mem. at 5–6.  Plaintiffs initially respond by observing that "[t]he FLSA requires employers like NYHC to pay for time traveling between patients . . . even if it is not FLSA overtime or minimum wages."  Pl. Opp. at 10.  Next, they make two arguments for the FLSA travel time claims to be sustained.  First, they contend that "[e]ven if NYHC's 'gap time' argument was correct (it is not), the sampled payroll data shows multiple instances of workers who lost overtime because of NYHC's illegal travel time policy."  *Id.* at 11 (citing to Dkt. Nos. 64-49, 64-53).  Second, they contend that Franck has alleged unpaid travel time,

and even if Feng has not, she can still represent the Collective because "both Plaintiffs have standing to bring claims on behalf of potential opt-ins . . . and no 'representative' plaintiff is required because opt-ins become parties." *Id.*

As a threshold matter, the Second Circuit has held that the FLSA does not provide for recovery for a "gap-time claim." *Lundy*, 711 F.3d at 116. "A gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Id.* at 115. In the Second Circuit, as long as an employee is being paid at minimum wage or higher, the FLSA "does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week." *Id.* at 116. The Circuit explicitly stated that "federal law [does not] create[] a federal remedy for all wage disputes." *Id.* As applied here, any unpaid travel time otherwise compensable is only recoverable under the FLSA if it is alleged to be overtime. Therefore, the issue with respect to travel time is not whether travel time itself merits compensation. *See* Pl. Opp. at 10. Defendants do not dispute that it does. Rather, the issue is whether the FAC plausibly alleges unpaid travel time that constitutes unpaid overtime.

In this case, Plaintiffs have not alleged a plausible unpaid travel time claim. First, because Franck should be dismissed from the case, any allegation that he was not paid for unpaid travel time that constitutes overtime is not relevant. Next, Feng does not allege any work week of more than 40 hours not subject to the statute

of limitations, and thus cannot assert claims for overtime.  Moreover, Plaintiffs do not contest that Feng has not alleged any travel time claims.  Finally, Plaintiffs' argument that sampled payroll data show multiple instances of workers who lost overtime because of the illegal travel time policy is not persuasive.  Not only are those allegations not properly considered on a motion for judgment on the pleadings as they are not alleged in the FAC, but no facts are provided to demonstrate that they constitute "overtime hours" that were lost rather than "unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week." *Lundy*, 711 F.3d at 116.[10]

In sum, because no plaintiff has plausibly alleged a recoverable travel time claim under the FLSA, the claim should be dismissed.

### 3. Opt-In Plaintiffs Cannot Proceed Absent Substitution if Franck and Feng's Claims are Dismissed

"[T]o survive a motion to dismiss, Plaintiffs must allege facts showing that each Lead Plaintiff was personally denied overtime by Defendants[.] . . . [p]leading facts that show that Defendants utilize a policy that violates the FLSA without showing that the Lead Plaintiffs were injured by that policy will not defeat a motion to dismiss." *Wolman v. Catholic Health System of Long Island, Inc.*, 853 F. Supp. 2d 290, 320 (E.D.N.Y. 2012) (citations omitted), *rev'd on other grounds sub nom. Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013); *see also, e.g., Doyle v. Mastercard International Incorporated*, 700 F. App'x 22, 24 (2d Cir.

---

[10] Further, at least part of the sample payroll data described refer to events that took place in June 2018, which is outside the statute of limitations.  *See* Dkt. No. 64-49.

2017) (not error to dismiss putative class claim prior to certification when plaintiff does not claim to have personally suffered injury).

As discussed above, Franck should be dismissed from the case because he accepted a Rule 68 offer of judgment, and Feng as the other named Plaintiff has failed to plausibly state an FLSA claim in the FAC. According to Plaintiffs, "even if [they] are dismissed, that would not end this matter, since opt-ins would substitute [for] the named plaintiffs." Pl. Opp. at 8. They further contend that "even in the unlikely event that Plaintiff Franck's and Feng's FLSA claims are dismissed, that will not end the FLSA portion of this case, as the opt-ins clearly have valid FLSA claims." Pl. Supp. Opp. at 2.

However, the legal authority Plaintiffs cite for this proposition dictates otherwise. *See* Pl. Opp. at 8. In *Bristol v. Cont'l Home Loans, Inc.,* No. 12-CV-1130 (LDW) (ETB), 2014 WL 12844081 (E.D.N.Y. July 14, 2014), for example, where the court considered a motion to substitute an opt-in for a named plaintiff who accepted a Rule 68 offer of judgment, the court explained that such a substitution is "necessary to protect the interests of the remaining members of the collective action" because "[a]bsent substitution, the remaining opt-in Plaintiffs are left without a suitable representative." *Id.* at *2. So too here are opt-in Plaintiffs left without a suitable representative if one or more are not specifically substituted for the named Plaintiffs. However, Plaintiffs have never moved to substitute any of the opt-ins for Feng or Franck as a named plaintiff, and they cite no authority to

indicate that such substitution would occur automatically "even if the Plaintiffs are dismissed." Pl. Opp. at 8.

In a class action, when "the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even [if] the facts set forth in the complaint may show that others might have a valid claim." *Goldberger v. Bear Stearns & Co., Inc.,* No. 98-CV-8677 (JSM), 2000 WL 1886605, at *1 (S.D.N.Y. Dec. 28, 2000) (citations omitted). *See also Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S,* 11 F.4th 90, 102 (2d Cir. 2021). Because this case cannot proceed without a named Plaintiff, any remaining claims based on current or prospective opt-ins, or future class members, are not sufficient to sustain the action in its current posture.

### 4. The State Law Claims Should be Dismissed Without Prejudice

In addition to their FLSA claims, Plaintiffs bring ten wage claims under New York State Law. FAC ¶¶ 151–223. Defendants argue that because Plaintiffs have "no independent basis for federal jurisdiction," "the Court should dismiss the remaining state-law claims as well." Def. Mem. at 8. Plaintiffs counter that the Court "has jurisdiction over Plaintiff Feng's NYLL claims from the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332." Pl. Opp. at 13; *see also* FAC ¶ 18. In support of their position, Defendants contend that two mandatory CAFA exceptions apply: the home state exception and the local controversy exception. Def. Rep. at 11–12.

a. <u>Federal Jurisdiction Pursuant to CAFA</u>

"CAFA provides federal district courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." *Stellato v. Hofstra University*, No. 20-CV-1999 (GRB) (ARL), No. 20-CV-3671 (GRB) (ARL), 2022 WL 2222875, at *1 (E.D.N.Y. Jun. 17, 2022) (cleaned up). "The Act's purpose was to expand the availability of federal jurisdiction over class actions with nationwide import even in the absence of complete diversity." *Id.* It "includes several exceptions," such as the "home state exception." *Gold v. New York Life Ins. Co.,* 730 F.3d 137, 141 (2d Cir. 2013) (cleaned up). The home state exception "provides that a district court shall decline to exercise jurisdiction over a class action in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id.* (cleaned up).

"Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it." *Bardsley v. Nonni's Foods LLC*, No. 20-CV-2979 (NSR), 2022 WL 814034, at *5 (S.D.N.Y. Mar. 16, 2022) (quoting *Blockbuster, Inc. v. Galeno,* 472 F.3d 53, 59 (2d Cir. 2006)). Then, "the party seeking to avail itself of an exception to CAFA jurisdiction over a case originally filed in federal court bears the burden of proving the exception applies." *Stellato*, 2022 WL 2222875, at *1 (cleaned up).

Plaintiffs have not established the CAFA requirements.  They allege CAFA jurisdiction by asserting that the "aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendants."  FAC ¶ 18.  CAFA

> requires only minimal diversity of the parties, which occurs when (A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

*Blockbuster, Inc.,* 472 F.3d at 58–59.  However, Plaintiffs have not pled any facts to demonstrate that diversity of citizenship exists between at least one member of the Class and Defendants.[11]  On the contrary, their pleadings demonstrate a lack of diversity, as the FAC alleges only the following regarding the citizenship of the various parties:

- "Franck is a New York citizen, residing in Brooklyn, NY."  FAC ¶ 9.
- "Feng is a New York citizen, residing in Brooklyn, NY."  FAC ¶ 11.
- "NYHC is a New York corporation with its headquarters [in] . . . Valley Stream, New York."  FAC ¶ 13.
- "At all relevant times, Defendant Murry England was the Chief Executive Officer of NYHC" and "Defendant Glen Persaud was the Director of Human Resources of NYHC[.]"  FAC ¶¶ 18–19.
- "NYHC is a New York corporation headquartered in New York and Defendants England and Persaud conduct NYHC's affairs in New York.

---

[11] Somewhat surprisingly, neither party addresses this issue.  However, the Court has seen nothing in the record, based on the pleadings or motion papers, to support CAFA jurisdiction for the reasons described herein.

NYHC admits that it is a New York corporation headquartered in New York."  FAC ¶ 20.

None of Plaintiffs' subsequent papers, including their Supplemental Opposition Brief, alleges the existence of putative class members who are not citizens of New York.  Therefore, on the record before the Court, each of the parties appears to be a citizen of New York, and no diversity exists.  Thus, as the ones asserting subject matter jurisdiction under CAFA, Plaintiffs have not met their "burden of proving it," and without more, their allegations are merely conclusory. *Bardsley*, 2022 WL 814034, at *5.

Moreover, the home state exception applies.  Defendants assert that "over 99% of the potential class members reside in New York," which is more than the home state exception's two-thirds requirement.  Def. Mem. at 11; *see also* Persaud Decl. ¶ 5 (based on NYHC state residence records, of the 3,930 individuals appearing on the class list provided to Plaintiffs, "approximately 3,893 have a home address located within the state of New York," and "over 99%" of NYHC employees are therefore residents of New York).  Courts may resolve disputed jurisdictional fact issues, as here, "by referring to evidence outside of the pleadings, such as affidavits." *Grgurev v. Licul,* No. 15-CV-9805 (GHW), 2020 WL 1922688, at *2 (S.D.N.Y. Apr. 21, 2020) (cleaned up).  A "court accepts all material factual allegations in the complaint as true unless contradicted by more specific allegations or documentary evidence." *Id.* (cleaned up).  Thus, because "a district court shall decline to exercise jurisdiction over a class action in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary

defendants, are citizens of the State in which the action was originally filed[,]" jurisdiction should not be exercised over these state law claims under CAFA. *Gold,* 730 F.3d at 141.[12]

b. Supplemental Jurisdiction

Plaintiffs also allege that the Court has supplemental jurisdiction over the state law claims. FAC ¶ 19. On issues of state law, federal courts exercise supplemental jurisdiction where the claims arise out of a "common nucleus of operative fact" as the federal claims over which they have original jurisdiction, such that they "form part of the same case or controversy." 28 U.S.C. § 1367; *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). Where, as recommended here, a district court dismisses all claims over which it has original jurisdiction, it "may decline to exercise supplemental jurisdiction" over state law claims. *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507 (PAC) (KHP), 2021 WL 4177209, at *3 (S.D.N.Y. Sept. 14, 2021) (citations omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)). Likewise here, jurisdiction should be declined over the remaining New York state law claims, which should be dismissed without prejudice. *See Whiteside,*

---

[12] Because CAFA jurisdiction does not exist for the reasons described in this section, the Court declines to consider whether the "local controversy exception" applies as a further basis for denying CAFA jurisdiction. *See* Def. Mem. at 11–12.

995 F.3d at 325 (court properly declined to exercise supplemental jurisdiction over state law claims when FLSA claims dismissed on statute of limitations grounds) (citing *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006)).

### 5. Leave to Amend

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, a district court should "freely give leave [to amend] when justice so requires," but "has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Claims barred by the statute of limitations are dismissed with prejudice. *See Romero v. Manhattan and Bronx Surface Transit Operating Authority*, No. 21-CV-4951 (LJL), 2022 WL 62445, at *6 (S.D.N.Y. Mar. 2, 2022) ("Because the FLSA claim is barred by the statute of limitations, it will be dismissed with prejudice" and the court "need not reach the issue of whether Plaintiffs pleaded sufficient facts to establish a[n] FLSA claim") (collecting cases). Thus, Feng's FLSA claims that accrued prior to September 21, 2018 should be dismissed with prejudice.

However, "[w]here a cause of action is dismissed due to deficient pleading, leave to amend should generally be granted." *Watkins v. City of New York Kings Cty.*, No. 14-CV-1512 (RRM) (LB), 2014 WL 4075769, at *4 (E.D.N.Y. Aug. 15, 2014) (collecting cases). The resolution of the pending motion will result in the first adjudication of the claims on the merits, and a second amended complaint would

not prejudice Defendants given the pretrial posture of the case, in which discovery is ongoing. *See Amponin v. Olayan America Corp.*, No. 14-CV-2008 (TPG), 2015 WL 1190080, at *4 (S.D.N.Y. Mar. 16, 2015) (leave to amend granted for overtime claims under the FLSA and NYLL when plaintiff had "never had the opportunity to amend her complaint"). Therefore, Feng should be given an opportunity to allege the requisite facts, if they exist, to "cure the deficiencies" identified above, and make her claims under the FLSA cognizable. *Sanchez v. L'Oreal USA, Inc.* No. 21-CV-3229 (VEC), 2022 WL 1556402, at *5 (S.D.N.Y. May 17, 2022) (dismissing with prejudice claims accrued outside three-year statute of limitations, but granting leave to file Second Amended Complaint to replead otherwise deficient unpaid overtime claim under FLSA and NYLL).[13]

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings should be granted. Franck should be dismissed from the case, and Feng's claims that accrued prior to September 21, 2018 should be dismissed with prejudice. The remainder of Feng's claims should be dismissed without prejudice, she should be granted leave to amend, and Plaintiffs should be granted leave to move to substitute an opt-in (or opt-ins) to be a named plaintiff (or plaintiffs).

---

[13] Defendants argue in the alternative that "should the Court not dismiss the Complaint in its entirety, it should abstain and stay all claims brought on behalf of aides who worked live-in shifts in light of the overlapping class that has already been certified in the long-pending Andryeyeva matter[,]" the New York state court case mentioned earlier. *See* Def. Mem. at 8. Because the Court recommends granting Defendants' motion, it does not reach the issue of whether abstention is warranted.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods, United States Courthouse, 500 Pearl Street, New York, NY 10007. Any requests for an extension of time for filing objections must be directed to Judge Woods.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: September 21, 2022
    New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

42