

**Joshua Feinstein**
Partner
Direct Dial: 716.848.1318
*jfeinste@hodgsonruss.com*

March 28, 2023

<u>Via CM/ECF</u>

Hon. James L. Cott
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Dear Magistrate Judge Cott:

      Re:    <u>*Franck et al. v. New York Health Care, Inc. et al.*, No. 1:21-cv-4955</u>

      We write in response to Plaintiffs' March 20, 2023 request for a pre-motion conference, seeking conditional certification of an FLSA collective.  Doc. No.167.  Defendants believe that the Court's consideration of the Plaintiffs' motion should occur together with that of Defendants' forthcoming motion to dismiss the recently filed Second Amended Complaint ("SAC").  Like its predecessor, the SAC is seriously deficient.  Not only are the Plaintiffs' individual claims infirm, but — despite having had access to records for over one hundred employees representing approximately 6,522 weeks of payroll data — they still not have been able to make out any actual "policy or plan" to deprive the putative collective of statutorily mandated compensation that would justify conditional certification.  Accordingly, the Court should deny Plaintiffs' motion in light of the SAC's serious deficiencies,[1] among the other reasons stated below.[2]

      To justify notice, and before subjecting an employer to the burdens of a collective action, plaintiffs must demonstrate both that they are "similarly situated" to collective members and that they "together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Ali v. New York City Health and Hosps. Corp.*, 2013 WL 1245543, at *2 (S.D.N.Y. Mar. 27, 2013) (there must be "some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice"); *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 479 (S.D.N.Y. 2016)

---

[1]     Defendants' motion to dismiss is not subject to the pre-motion conference motion procedures set forth under Section II.B. of Your Honor's Individual Practices.  The grounds for Defendants' planned motion, however, substantially overlap with those set forth in this letter for denying conditional certification.  Additionally, the motion will seek to dismiss Plaintiff Frank from the action on *res judicata* grounds.

[2]     Defendants also incorporate by reference the arguments they previously advanced in opposition to the Plaintiffs' prior conditional certification motion.  Doc. Nos. 86 and 127.

Hon. James L. Cott
March 28, 2023
Page 2



("While the proposed collective need not be 'identical in every possible respect,' its potential members must be similarly situated with respect to the allegedly unlawful policy or practice.").

Here, the Plaintiffs allege that Defendants are liable for five pay practices that they claim violate the FLSA. Doc. No 167 at 2. In each case, despite their access to ample data, the Plaintiffs are not similarly situated either because they themselves do not allege actionable FLSA violations or because they rely on at best isolated examples of alleged non-compliance that do not support the existence of a common policy or plan, or both.

<u>Alleged time shaving</u>. The Plaintiffs allege that Defendants violated the FLSA "by paying workers based on their schedule rather than the time clock." Doc. No. 167 at 2. Nevertheless, the Plaintiffs are not claiming that they themselves were deprived of overtime premiums during the applicable FLSA limitations period, which extends back no further than June 4, 2018. Second Amended Complaint ¶¶ 34-53 (hereinafter "SAC"); 29 U.S.C. § 255. So, at most, they are alleging so-called "gap time," which is not recoverable under the FLSA. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). The Plaintiffs likewise point to alleged examples from data for 50 initially sampled employees, comprising some 13,021 visit days and 2906 weeks of payroll data. But this demonstrates only the absence of any policy or plan, because Plaintiffs have specifically identified all of 14 alleged examples. SAC ¶ 53; *see also* Doc. No. 86 at pgs. 9-10. Moreover, there are numerous lawful reasons for variances between hours paid and those reflected on time keeping systems, including lawful rounding practices, and early or late punches by employees.

<u>Alleged failing to count in-service hours</u>. Only one Plaintiff specifically alleges not having in-service training hours counted towards overtime. SAC ¶ 119. And this occurred in November 2017, well beyond the FLSA statute of limitations. Further, Plaintiffs incorrectly assume that all training time is compensable under the FLSA. 29 C.F.R §§ 785.27-785.32; U.S. DOL Opin. Ltr., 1996 WL 1031798 (Sept. 9, 1996) (state-mandated training was not compensable time); U.S. DOL Opin. Ltr., FLSA 2009-1, 2009 WL 648993 (Jan. 7, 2009) (in-service training that provided instruction of general applicability was for the benefit of the employee and not compensable). So, Plaintiffs' bare-bone allegations do not show a company-wide policy or plan to falsely classify in-service time. SAC ¶ 119.

<u>Alleged travel time violations</u>. Again, the Plaintiffs have not sufficiently alleged a policy or plan and the allegations on their face do not reflect the facts necessary to establish compensable travel time. Despite having access to over 6,500 weeks of payroll data, they point to only 15 instances where an alleged failure to account for travel time allegedly resulted in a deprivation of overtime nor is it even clear how many of these occurred within the FLSA limitations period. SAC ¶¶ 57-58. Otherwise, only one named Plaintiff alleges a loss of less than ten hours of overtime premiums on this basis. SAC ¶¶ 121-128. Such isolated incidents hardly demonstrate any company-wide policy in relation to travel-time, let alone one which is unlawful. *See Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 941 (D. Minn. 2009) ("The mere fact that a small fraction of employees allege that they did not receive the compensation to

Hon. James L. Cott
March 28, 2023
Page 3



which they were entitled provides almost no evidence that the reason that these employees were underpaid was because of an unlawful companywide policy.").

<u>Alleged miscalculation of overtime rates</u>. Only one named Plaintiff claims not to have been paid overtime at the proper rate within the FLSA limitations period and this amounted to four hours. SAC ¶ 115. The Plaintiffs further allege four additional instances affecting three employees where an incorrect rate was purportedly used based on sampled data. SAC ¶ 114. Again, these alleged isolated incidents hardly establish a "common policy or plan" as necessary to support conditional collective certification.

<u>Alleged delayed payments</u>. The Plaintiffs alleged FLSA prompt payment violations likewise reduce to a relative handful of examples across thousands weeks of data. SAC ¶¶ 71-84. There are also any number of legitimate reasons why payment may be delayed. Except in conclusory fashion, Plaintiffs do not allege NYHC unreasonably delayed payment longer than reasonably necessary to compute and process payment. Plaintiffs further admit a lack of personal knowledge regarding the circumstances affecting other aides. Dkt. 63-1 ¶ 3; Dkt. 63-2 ¶ 3. Collective resolution of this claim therefore would require thousands of fact-specific inquiries and the Court should decline to conditionally certify it.

<u>Tolling</u>. Recognizing the infirmity of their FLSA claims, the Plaintiffs include lengthy tolling allegations. SAC ¶¶ 152-196. But these reduce to little more than generic allegations about lack of education and time or Defendants' purported failure to post notices concerning FLSA requirement — which is patently insufficient. *See Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (equitable tolling is permitted only in "rare and exceptional circumstances" where a party is "prevented in some extraordinary way from exercising his rights."); *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014); *Sun v. China*, 2015 WL 5542919, at *7 (S.D.N.Y. Aug. 12, 2015) ("The law is clear that lack of education, limited financial means, and ignorance of the law are not extraordinary circumstances[.]"); *Zhongwei Zhou v. Wu*, 2017 WL 1233994, at *4-5 (S.D.N.Y. Mar. 31, 2017) (employer's failure to post required postings informing workers of their rights, even when combined with inaccurate paystubs and multiple other factors, did not toll claims).

In sum, despite having had access to copious amounts of data, the Plaintiffs cannot demonstrate that they are similarly situated to the putative collective let alone they were victims of a common policy or plan so as to justify conditional certification. Certainly, there is no basis to forgo additional briefing on this issue, as the Plaintiffs urge. Doc. No. 167 at pg. 3. Rather, the Court should consider the Plaintiffs' application in conjunction with Defendants' forthcoming motion to dismiss, in order to avoid the potential confusion, unnecessary disruption

Hon. James L. Cott
March 28, 2023
Page 4



to Defendants' business operation, and unnecessary expenditure of Court's and parties' resources, which could result from hastily issued notices to the putative collective.

                                                  Respectfully submitted,

                                                  Joshua Feinstein

cc:     All counsel of record (via CM/ECF)