**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUIS FRANCK, LI ZHEN FENG, YERALDIN REYES, CHARISMA BARBER, CASSONDRA FLOYD, and ELIZABETH GUERRERO, | Case No. 21-CV-4955 (GHW) (JLC) |
| Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | |
| v. | **Oral Argument Requested** |
| NEW YORK HEALTH CARE INC., MURRY ENGLARD, and GLEN PERSAUD | |
| Defendants. | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND COURT-FACILITATED NOTICE**

---

**WITTELS MCINTURFF PALIKOVIC**

305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com

*Counsel for Plaintiffs, the Collective, and the Class*

Dated:  May 12, 2023

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

RELEVANT PROCEDURAL BACKGROUND ...................................................................... 6

   I.   NYHC SHORTED MORE THAN 1,000 WORKERS ON OVERTIME PAY .................. 8

   II.   NYHC VIOLATED THE FLSA'S PROMPT PAYMENT REQUIREMENT
       MORE THAN 1,000 TIMES ................................................................................ 11

ARGUMENT ........................................................................................................................ 12

   I.   PLAINTIFFS HAVE MET THEIR CONDITIONAL CERTIFICATION
      BURDEN ...................................................................................................... 12

   II.   DEFENDANTS' ARGUMENTS AGAINST CONDITIONAL CERTIFICATION
       THUS FAR DO NOT WITHSTAND EVEN THE SLIGHTEST SCRUTINY .............. 12

      A.  The Data Reveals Between 27,630 and 31,865 Workweeks with Overtime
          Violations and 9,251 and 12,000 Workweeks with Prompt Payment
          Violations. ............................................................................................. 12

      B.  Plaintiffs Have Identified Five Pay Practices that Cause FLSA Violations
          and Defendants' Contrary Factual Arguments Are Not Plausible. ................ 13

      C.  The Named Plaintiffs All Suffered FLSA Violations From At Least One of
          the Five Challenged Practices and a "Class Representative" for Each Practice
          Is Not Required For Conditional Certification. .......................................... 15

      D.  NYHC's Merits Defenses Are Both Premature and Unpersuasive ............ 18

      E.  Defendants Misstate the Applicable FLSA Limitations Period ................ 18

   III.  THE COURT SHOULD ADOPT PLAINTIFFS' NOTICE PLAN AND ORDER
       NYHC TO PRODUCE POTENTIAL OPT-INS' CONTACT INFORMATION. ........... 19

      A.  Plaintiffs' Proposed Notice Is Fair and Adequate .................................... 19

      B.  The Notice Distribution Plan Is Standard and Furthers the FLSA's Purpose ........... 21

      C.  Plaintiffs' Requested Discovery Is Standard and Appropriate ................. 23

      D.  Imposing a Third-Party Administrator Is Still Disfavored In This Circuit ........... 24

   IV.  EQUITABLE TOLLING IS APPROPRIATE AND WARRANTED HERE .................. 25

CONCLUSION .................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Cases**

*Ali v. N.Y.C. Health & Hosps. Corp.*,
   No. 11-CV-6393 (PAC), 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013) ................................ 14

*Amador v. Morgan Stanley & Co. LLC*,
   No. 11-CV-4326 (RJS), 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) ....................................... 14

*Ballast v. Workforce7 Inc.*,
   No. 20-CV-3812 (ER), 2021 WL 5999202 (S.D.N.Y. Dec. 20, 2021) ........................ 22, 23, 24

*Benavides v. Serenity Spa NY Inc.*,
   166 F. Supp. 3d 474 (S.D.N.Y. 2016) ............................................................................ 23, 24

*Bethel v. BlueMercury, Inc.*,
   No. 21-CV-2743 (KPF), 2022 WL 3594575 (S.D.N.Y. Aug. 22, 2022)............... 21, 22, 23, 24

*Blum v. Merrill Lynch & Co.*,
   No. 15-CV-1636 (GBD), 2015 WL 6685357 (S.D.N.Y. Oct. 22, 2015)..................................... 5

*Bittencourt v. Ferrara Bakery & Cafe Inc.*,
   310 F.R.D. 106 (S.D.N.Y. 2015) ............................................................................................ 20

*Bocel v. Patzeria Fam. & Friends Inc.*,
   No. 21-CV-7384 (LGS), 2022 WL 1125624 (S.D.N.Y. Apr. 15, 2022) ..................... 21, 22, 24

*Chicas v. Kelco Constr., Inc.*,
   No. 21-CV-9014 (PAE)(SDA), 2023 WL 2072026 (S.D.N.Y. Feb. 19, 2023)....................... 21

*Coley v. Vannguard Urban Improvement Ass'n, Inc.*,
   No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018)..................... 11

*Conte v. Metro. Transportation Auth.*,
   No. 21-CV-2516 (VEC), 2022 WL 35474 (S.D.N.Y. Jan. 4, 2022)................................... 21, 24

*Conzo v. City of N.Y.*,
   667 F. Supp. 2d 279 (S.D.N.Y. 2009) .................................................................................... 11

*Cordova v. SCCF, Inc.*,
   No. 13-CV-5665 (LTS) (HBP), 2014 WL 3512820 (S.D.N.Y. July 16, 2014)...................... 16

*Cuaya v. VI Dev. Grp., LLC*,
   No. 19-CV-4290 (JLC), 2020 WL 5494371 (S.D.N.Y. Sept. 10, 2020) ................................ 24

*Diaz v. N.Y. Paving*,
   No. 18-CV-4910 (ALC), 2022 WL 14743898 (S.D.N.Y. Sept. 30, 2022) .............................. 13

*Foster v. City of New York*,
   No. 14-CV-4142 (PGG) (RWL), 2020 WL 8173266 (S.D.N.Y. Oct. 30, 2020) ...................... 4

*Gonzalez v. Hanover Ventures Marketplace LLC*,
   No. 21-CV-1347 (ER), 2022 WL 193004 (S.D.N.Y. Jan. 21, 2022) ......................... 23, 24, 25

*Guevara v. Fine & Rare Operations LLC*,
   No. 20-CV-5330 (BCM), 2022 WL 103376 (S.D.N.Y. Jan. 10, 2022) ............................. 21, 24

*Guzman v. Three Amigos SJL Inc.*,
   117 F. Supp. 3d 516 (S.D.N.Y. 2015) .................................................................................. 14

*Han v. Madison Ave. Realties, LLC*,
   No. 22-CV-382 (LJL), 2022 WL 2609003 (S.D.N.Y. July 8, 2022) ...................................... 21

*Hong v. Haiku @ WP Inc.*,
   582 F. Supp. 3d 117 (S.D.N.Y. 2022) ................................................... 19, 21, 22, 24

*Imbarrato v. Banta Mgmt. Servs., Inc.*,
   No. 18-CV-5422 (NSR), 2022 WL 1210868 (S.D.N.Y. Apr. 25, 2022) ...................... 21, 24, 25

*Katz v. Equinox Holdings, Inc.*,
   No. 20-CV-9856 (VEC), 2022 WL 1292262 (S.D.N.Y. Apr. 29, 2022) ...................... 21, 22, 24

*King v. Fedcap Rehab. Servs., Inc.*,
   No. 20-CV-1784 (VSB), 2022 WL 292914 (S.D.N.Y. Feb. 1, 2022) ..................................... 14

*Knox v. John Varvatos Enter., Inc.*,
   282 F. Supp. 3d 644 (S.D.N.Y. 2017) .................................................................................. 23

*Korenblum v. Citigroup, Inc.*,
   195 F. Supp. 3d 475 (S.D.N.Y. 2016) .................................................................................. 14

*Kucker v. Petco Animal Supplies Stores, Inc.*,
   No. 14-CV-9983 (DF), 2016 WL 237425 (S.D.N.Y. Jan. 19, 2016) ...................................... 24

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
   897 F.3d 88 (2d Cir. 2018) .................................................................................................. 17

*Lewis v. New York Health Care Inc.*,
   No. 21-CV-4333 (CBA) (CLP), Dkt. 42 .................................................................................. 4

*Lewis v. Wells Fargo & Co.*,
   669 F. Supp. 2d 1124 (N.D. Cal. 2009) ............................................................................... 24

*Lijun Geng v. Shu Han Ju Rest. II Corp.*,
  No. 18-CV-12220 (PAE) (RWL), 2019 WL 4493429 (S.D.N.Y. Sept. 9, 2019)................... 16

*Lipstein v. 20X Hospitality LLC*,
  No. 22-CV-4812 (JLR) (JW), 2023 WL 1928860 (S.D.N.Y. Jan. 25, 2023) ......................... 16

*Mangahas v. Eight Oranges Inc.*,
  No. 22-CV-4150 (LJL), 2022 WL 10383029 (S.D.N.Y. Oct. 18, 2022)............... 14, 21, 22, 23

*Martinenko v. 212 Steakhouse Inc.*,
  No. 22-CV-518 (LJL), 2022 WL 1227140 (S.D.N.Y. Apr. 26, 2022) .............................. 21, 24

*Martinez v. JLM Decorating Inc.*,
  No. 20-CV-2969 (AJN), 2021 WL 4253395 (S.D.N.Y. Sept. 17, 2021) ................................ 20

*Martinez v. JVA Indus. Inc.*,
  No. 20-CV-7977 (LJL), 2021 WL 1263133 (S.D.N.Y. Apr. 6, 2021) .............................. 12, 18

*McCoy v. RP, Inc.*,
  No. 14-CV-3171 (PMD), 2015 WL 6157306 (D.S.C. Oct. 19, 2015).................................... 24

*Medina v. Happy's Pizza Franchise, LLC*,
  No. 10-CV-3148, 2012 WL 379751 (N.D. Ill. Feb. 3, 2012) ................................................. 17

*Mikityuk v. Cision US Inc.*,
  No. 21-CV-510 (LJL), 2021 WL 1750370 (S.D.N.Y. May 4, 2021) ..................................... 22

*Mota v. Inter Connection Elec., Inc.*,
  No. 20-CV-7530 (GBD), 2021 WL 3188336 (S.D.N.Y. July 28, 2021)................................ 25

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ............................................................................................... 4, 8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) .................................................................................................. 17

*Pettenato v. Beacon Health Options, Inc.*,
  425 F. Supp. 3d 264 (S.D.N.Y. 2019) .................................................................................... 20

*Pierre v. City of New York*,
  No. 20-CV-5116 (ALC) (VF), 2022 WL 4482295 (S.D.N.Y. Sept. 27, 2022) ....................... 25

*Qing Tian Zhuo v. Jia Xing 39th Inc.*,
  No. 14-CV-2848 (SHS), 2015 WL 1514950 (S.D.N.Y. Apr. 1, 2015) ..................................... 5

*Richards v. Empire Scaffolding Sys.*, Inc.,
  No. 21-CV-6638 (VEC), 2022 WL 2384154 (S.D.N.Y. July 1, 2022) .............................. 21, 22

*Santiago v. Info. Res. Inc.*,
    No. 20-CV-7688 (AT) (SN), 2022 WL 476091 (S.D.N.Y. Feb. 16, 2022) ...................... 16, 25

*Scott v. Chipotle Mexican Grill*,
    954 F.3d 502 (2d Cir. 2020) ................................................................................................ 5

*Shockey v. Huhtamaki, Inc.*,
    730 F. Supp. 2d 1298 (D. Kan. 2010) ................................................................................ 13

*Smith v. Fam. Video Movie Club, Inc.*,
    No. 11-CV-1773, 2012 WL 580775 (N.D. Ill. Feb. 22, 2012) ............................................ 13

*Stanley v. Direct Energy Servs., LLC*,
    466 F. Supp. 3d 415 (S.D.N.Y. 2020) ................................................................................ 17

*Taveras v. PSD Freeport Inc.*,
    No. 19-CV-6243 (MKB) (RER), 2021 WL 1405994 (E.D.N.Y. Apr. 14, 2021) .................... 14

*Zambrano v. Strategic Delivery Sols., LLC*,
    No. 15-CV-8410 (ER), 2022 WL 3369597 (S.D.N.Y. Aug. 16, 2022) ................................. 24

**Statutes**

29 U.S.C. § 206 .......................................................................................................................... 2

29 U.S.C. § 216(b) ................................................................................................................... 26

**Rules**

Federal Rule of Civil Procedure 20 ............................................................................................ 5

Federal Rule of Civil Procedure 23 ............................................................................. 5, 16, 17

Federal Rule of Civil Procedure 42 ............................................................................................ 5

Federal Rule of Civil Procedure 68 ............................................................................................ 5

**Regulations**

29 C.F.R. § 778.106 ................................................................................................................. 11

29 C.F.R. § 785.27 ................................................................................................................... 18

In accordance with the Court's April 11, 2023 Order (Dkt. 175), Plaintiffs hereby renew their motion for conditional certification of an FLSA Collective and court-facilitated notice.

## PRELIMINARY STATEMENT

As set forth in Plaintiffs' original opening papers (Dkt. 62 at 1–6), ***all*** of Defendants New York Health Care Inc., Murry Englard, and Glen Persaud's ("NYHC" or the "Defendants") alleged FLSA violations are evident on the face of NYHC's pay data.  In other words, to determine whether a particular NYHC pay practice caused an FLSA violation, all the factfinder needs to do is examine that data.  It is thus no surprise that Plaintiffs have been pointing to this uncontested data from the outset of this case.  Indeed, the first proof of FLSA violations came via paystubs attached to the first two complaints.  Dkt. 1-2–1-4, 20-2.  This proof was later definitely confirmed via Plaintiffs' analysis of a 50-worker sample of 2,423 potential opt-ins' payroll data.  Dkt. 40; Dkt. 64, ¶ 3.  Now, having updated their analysis to reflect Your Honor's guidance regarding the scope of Plaintiffs' FLSA claims, Plaintiffs unquestionably show that in addition to the six Named Plaintiffs there are ***more than 1,400*** similarly situated workers who were subject to five pay practices that caused the transparent FLSA violations evident in NYHC's pay records.  Specifically, projecting the FLSA violations from the 50-worker sample to all 2,423 workers, there are between 1,445 and 2,069 potential opt-ins who suffered FLSA violations from the following five pay practices:

1. Time shaving, by paying workers for their scheduled hours rather than the hours reflected in NYHC's time clock, and thus failing to pay overtime.  Second Amended Complaint, Dkt. 166 ("SAC") ¶ 224(a).
2. Failing to count in-service hours toward overtime.  *Id.* ¶ 224(c).
3. Not paying for travel time, and thereby shorting workers on overtime.  *Id.* ¶ 224(d).
4. Miscalculating overtime rates.  *Id.* ¶¶ 224(b) and (e).[1]

---

[1] This practice combines the miscalculations identified in SAC ¶ 224(e) with NYHC's practice identified in ¶ 224(b) of misclassifying certain straight time as travel time (paid at a lower rate) and then basing the overtime premium calculations on only the straight time hourly rate.

5.   Violating the FLSA's prompt payment requirement.  *Id.*, ¶¶ 227–32.

Dkt. 112 at 4–5; *see also* SAC ¶¶ 222–32 (outlining claims).  The practices identified in items 1 through 4 caused overtime violations, Supplemental Decl. of Andrey Belenky, dated May 12, 2023 ("Belenky Supp. Decl.") ¶ 4, 6–19, 51–67, while the prompt payment violations in item 5 are standalone FLSA violations, *id.* ¶ 4, 20–50; *see also* Sept. 21, 2022 Report & Recommendation of Magistrate Judge James L. Cott, Dkt. 142 ("R&R") at 14 (recognizing an independent FLSA entitlement to prompt wage payment under 29 U.S.C. § 206).  In total, the data shows that 40% (20 employees) in the sample suffered overtime violations and 68% (34 employees) have prompt payment violations apparent in their pay data.  Belenky Supp. Decl. ¶ 4.  The violations also pervade the approximately 2,906 workweeks that were sampled, with overtime violations affecting 21.09% of overall workweeks and prompt payment violations in 7.5% of weeks.  *Id.* ¶ 7.

But there is more.  When projected to the full 2,423-member pool, Plaintiffs' analysis reveals that NYHC's overtime and prompt payment violations were repeated ***between 36,000 and 41,000*** times.  Decl. of Alexander Vekker, Ph.D., dated May 12, 2023 ("Vekker Decl.") ¶ 13.  Specifically, between 27,630 and 31,865 workweeks in the full data set are estimated to show overtime violations from the four practices identified in the SAC.  *Id.* ¶ 19.  Similarly, NYHC's full data is projected to contain between 9,251 and 12,000 weeks showing prompt payment violations.  *Id.* ¶ 18.  A 95% confidence level applies to these projections.  *Id.* ¶¶ 13, 18, 19.

Considered individually, the data for each of the five challenged practices likewise shows the existence of similarly situated workers.  To assist the Court, Table 1 below lists the five challenged pay practices, the number and percentage of affected workers in the 50-person sample, the number of times the practice caused sampled employees to suffer an FLSA violation, and the extrapolation of that data across the pool of 2,423 workers.  Totals across the overtime violations and all FLSA violations are also provided.

**Table 1**

| Pay Practice Causing FLSA Violations | Number and Percent of Affected Workers in Sample | Number of Violations in Sample and Percent of Workweeks in Sample With Violations | Number and Percent of Affected Workers Out of 2,423 Workers in Sample Pool | Number of Workweeks with Violations in Payroll Data for 2,423 Workers in Sample Pool |
|---|---|---|---|---|
| Overtime lost from paying based on schedules rather than time clock. | 16 (32%) | 1,032 (8.77%) | Between 473 and 1,132 or between 20% and 47% | Between 10,942 and 13,891 weeks |
| Overtime lost from failing to count in-service time towards overtime. | 10 (20%) | 27 (.58%) | Between 243 and 817 or between 10% and 34% | Between 480 and 1,316 weeks |
| Overtime lost due to unpaid travel time. | 7 (14%) | 247 (4.40%) | Between 141 and 648 or between 6% and 27% | Between 5,193 and 7,344 weeks |
| Miscalculated overtime rates. | 13 (26%) | See footnote[2] (12.90%) | Between 356 and 978 or between 15% and 40% | Between 16,483 and 19,969 weeks |
| Prompt payment violations. | 34 (68%) | 218 (7.5%) | Between 1,291 and 1,950 or between 53% and 80% | Between 9,251 and 12,00 weeks |
| **Total Overtime Violations.** | **20 (40%)** | **613 weeks with violations or 21.09% of all weeks[3]** | **Between 640 and 1,328 or between 26% and 55%** | **Between 27,630 and 31,865** |
| **Total FLSA Violations.** | **37 (74%)** | **792 weeks with violations or 27.25% of all weeks** | **Between 1,445 and 2,069 or between 60% and 85%** | **Between 36,102 and 40,725** |

[2] The number of violations cannot be listed because miscalculated overtime rates can only be ascertained in view of all the shifts an employee worked in a given workweek and the respective rates of pay for those shifts.

[3] Because multiple instances of violations occurred within individual workweeks, when compiling totals Plaintiffs focused on the number of workweeks that were underpaid.

The Court should also note that because the proposed collective period beginning September 21, 2018 continues to this day, the number of potentially harmed workers has likely increased since Defendants' sample data production on November 19, 2021.  Dkt. 64, ¶ 3.

Such figures should come as no surprise to NYHC, as there is ample additional circumstantial evidence of its widespread FLSA violations.  For example, Plaintiffs' original papers cited three other recent FLSA lawsuits against NYHC in this District (including one assigned to Your Honor), and a State Court complaint by NYHC's former payroll manager accusing it and Defendant Persaud of purposely reclassifying aides overtime hours as straight time.  Dkt. 62 at 3–4.  In addition, after Plaintiff Franck filed this lawsuit, NYHC made him a $50,000 Rule 68 offer of judgment (more than ten times his total NYHC earnings), and NYHC sought to have workers sign arbitration agreements purportedly barring them from this case.  Dkt. 112 at 1.[4]

Since the original conditional certification briefing, the circumstantial evidence of similarly situated workers has only grown.  For example, NYHC claimed that a later-filed FLSA case in the Eastern District of New York, *Lewis v. New York Health Care Inc.*, No. 21-CV-4333, "involves substantially the same parties and substantially the same claims and issues" as this matter.  Dkt. 42 at ¶ 262.  On April 11, 2023, the *Lewis* court approved FLSA settlements between the four *Lewis* plaintiffs and NYHC, *Lewis*, Dkt. 38, further evidence of similarly situated workers.

It is well established that the conditional certification burden is quite modest.  Plaintiffs need only show there are "potential opt-in plaintiffs who ***may*** be 'similarly situated' . . . with respect to whether a FLSA violation has occurred."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (emphasis added).  Indeed, while "similarly situated" is not defined by statute, the "requirement is a low bar."  *Foster v. City of New York*, No. 14-CV-4142 (PGG) (RWL), 2020

---

[4] NYHC later agreed not to try enforce these agreements at conditional certification.  Dkt. 101 at 1.

WL 8173266, at *7 (S.D.N.Y. Oct. 30, 2020). "[T]he FLSA not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 520 (2d Cir. 2020). Plaintiffs have cleared that low bar.

Finally, because Plaintiffs first sought to issue notice in September 2021 but were delayed by NYHC's failed Rule 68 pickoff attempt that stalled this case until March 11, 2023, prompt authorization of the notice campaign and granting Plaintiffs' request for equitable tolling (also first made in September 2021) will further the FLSA's broad remedial purpose and minimize prejudice to potential opt-ins. *Qing Tian Zhuo v. Jia Xing 39th Inc.*, No. 14-CV-2848 (SHS), 2015 WL 1514950, at *3 (S.D.N.Y. Apr. 1, 2015) ("Courts throughout this district have endorsed [sending notice] early in the [] proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management." (cleaned up)); *Blum v. Merrill Lynch & Co.*, No. 15-CV-1636 (GBD), 2015 WL 6685357, at *2 (S.D.N.Y. Oct. 22, 2015) ("Delayed notice would make it more difficult to locate class and collective members, and delay in the progress of this action would itself constitute substantial injury to Plaintiffs.").

Accordingly, Plaintiffs respectfully renew their request for authorization to issue notice and thus ask that that the Court:

1. Authorize Plaintiffs issue notice to all persons who worked as home care workers at NYHC between June 4, 2015 and the date of final judgment in this matter;

2. Direct Defendants to produce the full names, last-known addresses, email addresses, phone numbers, job position(s), languages spoken, present or last known place of employment, and dates of employment for all home health and personal care aides from June 4, 2015 to the present;

3. Approve Plaintiffs' proposed notice plan; and

4. Toll the FLSA statute of limitations for potential opt-in plaintiffs from September 21, 2021 until ten days after the expiration of the notice and opt-in period.

## **RELEVANT PROCEDURAL BACKGROUND**

This case was filed on June 4, 2021.  Dkt. 1.  On September 21, 2021, Plaintiffs applied to Judge Woods for conditional certification and tolling of the FLSA statute of limitations.  Dkt. 21. The next day, this matter was referred to Your Honor and Plaintiffs were directed to address their application to Your Honor, Dkt. 25, which Plaintiffs did that same day, Dkt. 26.

On October 18, 2021, at the conference on Plaintiffs' application, Your Honor requested further briefing and ordered production of a sample of 2,423 potential opt-ins' pay data.  Dkt. 40. Your Honor also directed Plaintiffs to raise their equitable tolling request in the briefing, noting "it can be granted retroactively to the date [Plaintiffs] propose."  Dkt. 49 at 27:11–12.  On November 19, 2021, NYHC produced data for 50 workers, Dkt. 64, ¶ 3, and Plaintiffs filed their formal conditional certification motion on December 21, 2021, Dkt. 61.  That motion was fully briefed on April 25, 2022, with the briefing including the following memoranda: (1) Dkt. 62, Plaintiffs' opening brief ("Opening"); (2) Dkt. 86, NYHC's opposition ("Opp."); (3) Dkt. 112, Plaintiffs' reply brief ("Reply"); and (4) Dkt. 120, Plaintiffs' supplemental reply ("Supp. Reply").

Concurrently with Plaintiffs' motion, the parties also briefed NYHC's motion for judgment on the pleadings, which was referred to Your Honor by Judge Woods.  On September 21, 2022, Your Honor issued the R&R recommending that NYHC's motion be granted, Dkt. 142, and denied as moot the original conditional certification motion, Dkt. 143.  The instant motion is made pursuant to the following ruling in that September 21, 2022 conditional certification order:

> I have recommended that Defendants' motion for judgment on the pleadings be granted, and Plaintiffs' First Amended Complaint be dismissed, with leave to amend certain claims.  Given this recommendation, the Court hereby denies the motion for conditional certification and the related relief requested without prejudice.  The motion for conditional certification may be renewed if the case runs its course in a manner that would justify such relief.

*Id.* Pending Judge Woods' action on the R&R, on October 26, 2022, Your Honor stayed this case. Dkt. 150. On February 17, 2022, the stay was lifted in part regarding two discovery matters not relevant here, Dkt. 159, and on March 11, 2023 Judge Woods adopted the R&R in large part but refused to dismiss Plaintiff Franck from this case, Dkt. 165.

Six days later, Plaintiffs filed the SAC and on March 20 moved for a pre-motion conference to renew their original conditional certification motion, Dkt. 167. Plaintiffs' application noted that the parties had already briefed the three key disputed questions on conditional certification: (1) whether Plaintiffs have offered enough evidence of potentially similarly situated workers; (2) whether equitable tolling is appropriate; and (3) the contours of the notice campaign. *Id.* at 1. At the ensuing April 11, 2023, conference the Court ruled that, considering the intervening SAC, the parties should file supplemental briefing to reflect "the current posture." Dkt. 176 at 20:16–24.

This memorandum is Plaintiffs' factual and legal update to reflect this case's current posture. Because Plaintiffs are renewing their original motion, Dkt. 61, Plaintiffs incorporate by reference the legal analysis contained therein. The analysis of NYHC's payroll data contained in this memorandum, however, supersedes the prior briefing as it reflects Your Honor's guidance on Plaintiffs' FLSA claims and addresses NYHC's critiques of Plaintiffs' original data analysis.

To situate Plaintiffs' arguments in this memorandum within this case's overall posture it is also important to note that the topics discussed herein reflect three developments since Plaintiffs' original motion was briefed: (1) the Court's R&R rulings on Plaintiffs' FLSA claims, later adopted by Judge Woods; (2) changes to the SAC, including adding four Named Plaintiffs, an analysis of their payroll data, and conforming the SAC to the R&R; and (3) over a year of caselaw that can inform the Court's analysis of the issues raised in Plaintiffs' original motion. This current posture, along with the supplemental facts and caselaw cited below, demonstrates that Plaintiffs easily

hurdle the low bar of showing that other similarly situated workers "may" exist and should be given an opportunity to join this action. *Myers*, 624 F.3d at 555.

The caselaw developments likewise favor Plaintiffs regarding the two other disputes from the earlier briefing: equitable tolling and the notice campaign. *See* Opening at 18–25 (Plaintiffs' notice campaign and tolling arguments); *see also* Opp. at 16–25 (NYHC's arguments challenging the scope of the proposed collective, equitable tolling, and notice campaign); Reply at 10–15 (Plaintiffs' responses to NYHC's tolling and notice arguments). Thus, and as set forth below, Plaintiffs' renewed conditional certification motion should be granted in full.

## I.     NYHC SHORTED MORE THAN 1,000 WORKERS ON OVERTIME PAY

NYHC's payroll data shows four pay practices that cause FLSA overtime violations. ***First***, NYHC engaged in systematic time shaving that undercounted aides' overtime hours. SAC ¶¶ 34–53, 116. Although aides are required to use NYHC's telephonic time clock for each shift, NYHC disregarded this data and instead paid workers based on their scheduled hours. *Id.* ¶¶ 40–44. Yet the time clock data shows that NYHC's aides often work more hours than scheduled. *Id.* ¶¶ 34–52; *see also id.* ¶ 53 (describing six instances of sampled employees not receiving overtime from time shaving). Comparing NYHC's time clock records with its pay data shows that NYHC's practice caused FLSA overtime violations. *See* Table 1 *supra*. NYHC's data shows that this practice caused FLSA violations for 16 of 50 sampled employees and that it occurred 1,032 times within the sample. Belenky Supp. Decl. ¶ 4. These instances resulted in 255 workweeks with FLSA overtime violations, which reflects 8.77% of the 2,906 workweeks in the sample. *Id.* ¶ 7.[5]

---

[5] The reason for the discrepancy between the number of instances where the violation occurred and the number of workweeks with overtime violations is due to many instances where an employee suffered multiple violations within a single workweek (*e.g.*, the employee had time shaved on Monday, Tuesday, and Thursday), but those multiple violations are combined into one paycheck with improper compensation (*e.g.*, the worker with violations on Monday, Tuesday, and Thursday would have all of the time shaving taken out of her pay for the same week).

As shown in Table 1, this practice caused FLSA violations affecting between 473 and 1,132 potential opt-ins over between 10,942 and 13,891 workweeks in the full data set.  Vekker Decl. ¶ 14.  For example, Defendants failed to pay Employee 721 the proper rate of at least $19.50 per hour for at least 40 minutes of overtime worked from 1/7/2020–1/10/2020.  Belenky Supp. Decl. Ex. 6; *see also id.* ¶¶ 24–25 (additional examples).

**Second**, NYHC's aides must undergo periodic "in-service" training, which NYHC tracked and paid but did not count toward the 40-hour straight time limit.  SAC ¶ 119.  For example, if an aide worked 40 hours and also did 6-hours of in-service training, NYHC paid 46 hours of straight time with no overtime premium.  *See* Belenky Supp. Decl. Exs. 51–59 (showing this violation).  NYHC's data shows that this practice caused FLSA violations for 10 of 50 sampled employees and that it occurred 27 times within the sample.  *Id.* ¶ 4.  These instances resulted in 17 workweeks with FLSA overtime violations, which reflects only 0.58% of the 2,906 workweeks in the sample, though there were less than 100 episodes of in-service in the entire sample.  *Id.* ¶ 7.  As shown in Table 1 above, this practice caused FLSA violations affecting between 243 and 817 potential opt-ins occurring during between 480 and 1,316 workweeks in the full data set.  Vekker Decl. ¶ 16.  For example, Defendants underpaid Employee 111 by failing to pay overtime for 6 in-service hours worked on 1/25/2019, resulting in only 25 hours of a 71-hour work week counted as overtime.  Belenky Supp. Decl. Ex. 59; *see also id.* ¶¶ 78–79 (additional examples).

**Third**, NYHC's data shows that aides were not paid for the travel time between two jobsites on the same workday.  SAC ¶¶ 54–58, 120–28.  Compensable travel time frequently occurs when a worker cares for different patients residing at different sites during a single workday; this time is unquestionably compensable.  Opening at 9–10.  NYHC's data shows that this practice caused

overtime violations for 7 of 50 sampled aides. Belenky Supp. Decl. ¶ 4.[6] These instances resulted in 128 workweeks with FLSA overtime violations, which reflects 4.40% of the 2,906 weeks in the sample. *Id.* ¶ 7. As shown in Table 1 above, this practice caused FLSA violations affecting between 141 and 648 potential opt-ins over between 5,193 and 7,344 weeks in the full data set. Vekker Decl. ¶ 15. For example, NYHC failed to pay Employee 934 for the 45 minutes of travel time between two sites on 2/21/2019, when Employee 934 cared for patients at different sites. Belenky Supp. Decl. Ex. 49; *see also id.* ¶¶ 66–67 (additional examples).

*Fourth*, NYHC's data reveals that even when it properly tracked hours, it still failed to correctly calculate and pay overtime. SAC ¶¶ 112–115. For example, during the pay period from 9/19/2020–9/25/2020, Plaintiff Barber worked 44 hours but was not paid any overtime premium. *Id.* ¶ 115. Plaintiffs' analysis shows that NYHC's miscalculations caused overtime violations for 13 of 50 sampled employees. Belenky Supp. Decl. ¶ 4. These instances resulted in 375 workweeks with FLSA overtime violations, which reflects 12.90% of the 2,906 workweeks in the sample. *Id.* ¶ 7. As shown in Table 1 above, this practice caused FLSA violations affecting between 356 and 978 potential opt-ins over between 16,483 and 19,969 workweeks in the full data set. Vekker Decl. ¶ 17. For example, NYHC failed to pay Employee 40 the proper overtime rate of at least $18 per hour for at least 19.5 hours of overtime worked from 6/10/2018–6/14/2018. Belenky Supp. Decl. Ex. 61; *see also id.* ¶¶ 84–85 (additional examples).

In total, Plaintiffs calculate at a 95% confidence level that between 640 and 1,328 potential opt ins' pay data will demonstrate at least one of the four categories of overtime violations. Vekker Decl. ¶ 19. These overtime violations are estimated to have occurred between 27,630 and 31,865 times in NYHC's time and payroll data for the 2,423 potential opt-ins. *Id.*

---

[6] Plaintiffs used each patient's service address to calculate the commute time and derive the amount of unpaid travel time using Google Maps. *Id.* ¶ 8.

## II.    NYHC VIOLATED THE FLSA'S PROMPT PAYMENT REQUIREMENT MORE THAN 1,000 TIMES

As set forth in Plaintiffs' opening brief at p. 8–9, and recognized in the R&R at p. 14, the FLSA establishes an independent prompt payment requirement whereby a worker's wages "may not be delayed for a period longer than is reasonably necessary to compute and arrange for payment of the amount due." *Conzo v. City of N.Y.*, 667 F. Supp. 2d 279, 288 (S.D.N.Y. 2009) (quoting 29 C.F.R. § 778.106).   "Courts in this Circuit and elsewhere have held that two weeks is an unreasonable amount of time for an employer to delay a paycheck." *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018).   Here, NYHC routinely delayed paychecks for well over two weeks.  SAC ¶¶ 66–85.  For example, Plaintiffs Floyd, Guerrero, Reyes, and Barber suffered 20 separate prompt payment violations. *Id.* ¶ 83.  Plaintiff Floyd's pay for May 8, 2019, was delayed by 37 days, and Plaintiff Guerrero's pay for June 14, 2019 was delayed by 77 days. *Id.*  Similarly, Plaintiff Reyes's pay for July 23 and August 5, 2019 was delayed 38 and 25 days, while Plaintiff Barber's pay for October 5, 6, 8, 9, 13, 15, and 16, 2020 was delayed by 53, 52, 50, 49, 45, 43, and 42 days, respectively. *Id.*  These are clear prompt payment violations.

Plaintiffs' analysis shows that this practice caused FLSA violations for 34 of 50 sampled employees and occurred 1,046 times within the sample.  Belenky Supp. Decl. ¶ 4.  These instances resulted in 218 workweeks with prompt payment violations, which reflects 7.50% of the 2,906 weeks in the sample. *Id.* ¶ 7.  As shown in Table 1, this practice caused violations affecting between 1,291 and 1,950 potential opt-ins over between 9,251 and 12,000 workweeks.  Vekker Decl. ¶ 18.  For example, Employee 658 was paid on 4/5/2019 for work on 2/12/2019, a 52-day delay.  Belenky Supp. Decl. Ex. 27; *see also id.* ¶¶ 58–59 (additional examples).

In sum, NYHC's data shows that similarly situated workers exist.

## ARGUMENT

### I.   PLAINTIFFS HAVE MET THEIR CONDITIONAL CERTIFICATION BURDEN

As set forth in Plaintiffs' opening brief at pp. 10–13, issuing notice requires only a modest showing—typically based on allegations, not the substantial evidence adduced here—and courts routinely order notice in home care cases.  After discovery, the Court can reevaluate the initial certification ruling.  *Martinez v. JVA Indus. Inc.*, No. 20-CV-7977 (LJL), 2021 WL 1263133, at *4 (S.D.N.Y. Apr. 6, 2021) ("[A]t this stage, the Court ought not 'resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations ....  The time to make such credibility determinations will occur after stage one.") citations omitted)).

### II.   DEFENDANTS' ARGUMENTS AGAINST CONDITIONAL CERTIFICATION THUS FAR DO NOT WITHSTAND EVEN THE SLIGHTEST SCRUTINY

Despite the abundant evidence of similarly situated workers, NYHC continues to claim that Plaintiffs cannot meet their modest burden.  To date, NYHC has offered five arguments in support of their claim.  As set forth below, each of Defendants' arguments fail.

#### A.   The Data Reveals Between 27,630 and 31,865 Workweeks with Overtime Violations and 9,251 and 12,000 Workweeks with Prompt Payment Violations.

NYHC tries to ignore its payroll data by claiming that only a small fraction of the workweeks or visit days in the sample show FLSA violations.  Opp. at 7–12, 14 and Dkt. 174 at 1–3.  NYHC's argument is based on the false assumption that Plaintiffs' previous papers identified **all** instances of FLSA violations in the sample data.  For example, because Plaintiffs' original papers cited records for 14 workers showing FLSA overtime violations from time shaving, Dkt. 64-1–14, NYHC argued that only "0.5% of the workweeks or 0.1% of the sampled visits" contain this violation.  Opp. at 9.  But Plaintiffs never claimed that **only** these 14 violations were present.  *See* Dkt. 113 at ¶ 3.  Instead, Plaintiffs stopped examining a worker's data once a violation was found.  *Id.*  Nevertheless, to moot NYHC's invalid argument, Plaintiffs' have dedicated substantial

time and resources to identify *all* FLSA violations present in NYHC's sample payroll production. *See* Belenky Supp. Decl. ¶ 4.  The results of that analysis are set forth in Table 1 *supra*.

Plaintiffs' updated analysis also exposes the fallacy in a related NYHC defense: the recurring claim that workers should not be properly paid because NYHC only violated the law a little bit.  This defense is both factually and legally incorrect.  It is factually incorrect because the data shows between 36,102 and 40,725 workweeks with FLSA violations affecting between 1,445 and 2,069 of the workers in the 2,423 member data pool.  Vekker Decl. ¶ 13.  It is legally flawed because "the mere fact that there may be some employees who did not" suffer violations "does not relieve" an employer from its liability "to the employees who contend that they were" paid illegally.  *Smith v. Fam. Video Movie Club, Inc.*, No. 11-CV-1773, 2012 WL 580775, at *4 (N.D. Ill. Feb. 22, 2012); *see also id*. at *4 (granting conditional certification).  Indeed, "the presence of intermittent lawfulness does not negate [P]laintiffs' allegations that there was a general pattern of unlawfulness."  *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1304 (D. Kan. 2010).

### B.   Plaintiffs Have Identified Five Pay Practices that Cause FLSA Violations and Defendants' Contrary Factual Arguments Are Not Plausible.

NYHC incorrectly claims Plaintiffs have not shown "a common policy or practice that violates the law."  Opp. at 6; Dkt. 174 at 1.  Plaintiffs have clearly shown *five* practices that cause FLSA violations—all evident from NYHC's payroll data.  "The law is clear" that a "de facto policy" is sufficient.  *Diaz v. N.Y. Paving*, No. 18-CV-4910 (ALC), 2022 WL 14743898, at *1 (S.D.N.Y. Sept. 30, 2022) (declarations and deposition testimony "highlight[ed] the pervasive nature of the policy at issue").  Moreover, "the existence of a formal policy that is facially unlawful is not a prerequisite for conditional certification," rather "it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA

violations." *Amador v. Morgan Stanley & Co. LLC*, No. 11-CV-4326 (RJS), 2013 WL 494020, at

*6 (S.D.N.Y. Feb. 7, 2013) (quotation omitted and collecting cases).

Further, as here, time records can be used to establish a pattern or practice of FLSA

violations. *See Taveras v. PSD Freeport Inc.*, No. 19-CV-6243 (MKB) (RER), 2021 WL 1405994,

at *5 (E.D.N.Y. Apr. 14, 2021) (timesheets showing eight other employees were not paid overtime

established "common policy or plan that violated the law"); *see also King v. Fedcap Rehab. Servs.,*

*Inc.*, No. 20-CV-1784 (VSB), 2022 WL 292914, at *7 (S.D.N.Y. Feb. 1, 2022) (timesheets and

affidavits sufficient to establish policy).  Indeed, a "policy" for conditional certification purposes

can be established by as little as the "personal observations of one plaintiffs' affidavit."  *Mangahas*

*v. Eight Oranges Inc.*, No. 22-CV-4150 (LJL), 2022 WL 10383029, at *5 (S.D.N.Y. Oct. 18,

2022); *see also Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 524 (S.D.N.Y. 2015) ("It

is beyond dispute that courts regularly determine that two or three declarations corroborating each

other constitute a sufficient amount of evidence to conditionally certify a collective action under

the FLSA." (quotation omitted)).  Where, as here, identifiable payroll practices affect a substantial

number of workers, such evidence shows that the violations were not the result of isolated acts.[7]

---

[7] NYHC's cases are not to the contrary.  NYHC's March 28, 2023, letter, Dkt. 174, cites *Ali v. N.Y.C. Health &*
*Hosps. Corp.*, No. 11-CV-6393 (PAC), 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013), but in that case the **only**
evidence offered for the existence of other similarly situated workers was "uncorroborated, anecdotal hearsay about
the hours [p]laintiff believes others worked."  That is plainly not the case here.  NYHC also cites *Korenblum v.*
*Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016), but there the plaintiffs sought to notify workers employed
by **forty** different staffing companies that contracted with Citi under a program where Citi (not the employers)
systematically wrote off workers' billable time. *Id.* at 484.  While Citi considered the time unbillable, the *Korenblum*
plaintiffs failed to provide adequate proof that their direct employers (the staffing agencies) refused to pay for those
hours.  *Id.*  For thirty-eight agencies, the plaintiffs offered no proof of agency pay practices while Citi submitted
evidence that at least three did pay the disputed hours. *Id.*  For one of the two remaining agencies, the plaintiffs offered
evidence of underpayment for only one worker and not others. *Id.* at 485.  For the final agency, the *Korenblum* court
refused to credit the plaintiffs' affidavits regarding pay practices because they conflicted with deposition testimony.
*Id.* at 486–87.  Further, the court found conditional certification inefficient because the plaintiffs had already sued
(and settled with) this agency but inexplicably failed to name Citi as a party in the prior action. *Id.* at 487–88.  Here,
Defendants' own records of their payroll practices is hardly comparable to the facts in *Korenblum*.

      **C.**      **The Named Plaintiffs All Suffered FLSA Violations From At Least One of the Five Challenged Practices and a "Class Representative" for Each Practice Is Not Required For Conditional Certification.**

NYHC suggests that before notice can issue every practice that can cause an FLSA violation needs a "Named Plaintiff" with a live FLSA claim attributable to that practice.  Dkt. 174 at 2 ("Plaintiffs are not similarly situated . . . because they themselves do not allege actionable FLSA violations[.]").  Based on this assumption NYHC argues that each of the Named Plaintiffs' FLSA claims are either too small or too late to be "live."  *Id.*

There are factual, practical, and strictly legal reasons why the Court need not wade into NYHC's (incorrect) claim that certain of the five challenged practices do not have a "Class Representative."  Factually, NYHC is simply wrong: there *is* a Named Plaintiff with a live FLSA claim attributable to each of the five challenged practices, as shown in Table 2 below:

**Table 2**

| PAY PRACTICE CAUSING FLSA VIOLATIONS | PLAINTIFF | RELEVANT SAC CITE | INJURY DATE | TIMELY UNDER FLSA AND NYLL | FLSA TOLLING NEEDED OR ALLEGED |
|---|---|---|---|---|---|
| Overtime lost from paying based on schedules rather than time clock. | Reyes | SAC ¶ 116 | Jan. & Feb. 2018 | FLSA – Tolling required.  NYLL – Timely. | FLSA Tolling alleged in SAC ¶¶ 176–96. |
| Overtime lost from failing to count in-service time towards overtime. | Floyd | SAC ¶ 116 | Nov. 2017 | FLSA – Tolling required.  NYLL – Timely. | FLSA Tolling alleged in SAC ¶¶ 152–75. |

| Overtime lost due to unpaid travel time. | Barber & Franck | Barber - SAC ¶¶ 121–28<br><br>Franck - SAC ¶ 54 | Barber – Sept. & Nov. 2020<br><br>Franck – April 2019 | FLSA – Timely<br><br>NYLL - Timely | None needed |
|---|---|---|---|---|---|
| Miscalculated overtime rates. | Barber | SAC ¶ 115 | Sept. 2020 | FLSA – Timely<br><br>NYLL - Timely | None needed |
| Prompt payment violations. | Reyes, Floyd, Barber, Franck, and Guerrero | Franck - SAC ¶¶ 71–81<br><br>All others - SAC ¶ 83 | Franck – Feb. to July 2019<br><br>All others – June 2019 to Nov. 2020 | FLSA – Timely<br><br>NYLL - Timely | None needed. |

Legally, conditional certification does not require a "Class Representative" for each challenged practice. *See Cordova v. SCCF, Inc.*, No. 13-CV-5665 (LTS) (HBP), 2014 WL 3512820, at *3 (S.D.N.Y. July 16, 2014) ("Courts do not require a named plaintiff to show an actual FLSA violation, but rather that a factual nexus exists between the plaintiff's ***situation*** and the situation of other potential plaintiffs.") (emphasis added).[8]  As set forth above, at least one Plaintiff was harmed by each challenged practice.  That is more than adequate at this stage.

In fact, while it is clear that the strictures of Rule 23 do not apply to the FLSA, Rule 23 is ***less*** exacting than NYHC's view of the FLSA.  Rule 23 does not require a named plaintiff to have standing for every claim of every potential class member.  Instead, a named plaintiff has "class standing" to vindicate sufficiently similar injuries suffered by potential class members.  *See*

---

[8] *See also Lipstein v. 20X Hospitality LLC*, No. 22-CV-4812 (JLR) (JW), 2023 WL 1928860, at *2 (S.D.N.Y. Jan. 25, 2023) ("The test is whether there is a factual nexus between the claims of the named plaintiff and those who have chosen to opt-in to the action.") quotations omitted)); *Santiago v. Info. Res. Inc.*, No. 20-CV-7688 (AT) (SN), 2022 WL 476091, at *4 (S.D.N.Y. Feb. 16, 2022) (same); *cf. Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-CV-12220 (PAE) (RWL), 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019) (notice should be visible to ineligible employees because the "purpose of notice is to start a conversation among employees, so as to ensure that they are notified about potential violations of the FLSA." (quotation omitted)).

*Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 438 (S.D.N.Y. 2020) ("The Second Circuit has explicitly instructed that 'non-identical injuries of the same general character can support standing.'") (quoting *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 94 (2d Cir. 2018)).  Thus, even if FLSA collective actions were subject to Rule 23's higher standard an FLSA plaintiff could pursue all FLSA claims that "implicate the same set of concerns" as the challenged conduct.  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012).  Further, each FLSA claim does not need a representative "because opt-in plaintiffs are full parties."  *See Medina v. Happy's Pizza Franchise, LLC*, No. 10-CV-3148, 2012 WL 379751, at *5 (N.D. Ill. Feb. 3, 2012).

NYHC's attacks on each Plaintiffs' FLSA claims also make no practical sense.  Because the NYLL's and the FLSA's overtime provisions are identical save for the NYLL's 6-year limitations period, NYHC does not (and cannot) contend that Plaintiffs lack timely NYLL overtime claims.  Thus, for the four practices causing overtime violations, the factfinder will decide Plaintiffs' *class* claims even if they are untimely under the FLSA.  Thus, even assuming *arguendo* the Court found that that no Named Plaintiff had a timely FLSA overtime claim (which Table 2 above shows would be erroneous), the factfinder will still decide NYHC's other workers' NYLL overtime claims.  It thus makes no sense to bar the workers who also want to resolve their FLSA overtime claims from this action while adjudicating those same workers' NYLL overtime claims.

Further, because NYHC refused to produce payroll data for all potential opt-ins and instead produced only a 50-worker sample, NYHC prevented Plaintiffs from being able to identify only the subset of potential opt-ins with claims matching the "live" claims of the "Class Representative" NYHC wrongly contends is required.  Thus, if notice is to issue with respect to one FLSA claim, it should issue to all potential opt-ins or the parties risk leaving workers with viable FLSA claims.

In fact, even if the parties went back and did the work to identify which subset of potential opt-ins were "adequately represented" by the current Named Plaintiffs and then only notified that subset of workers, this process simply invites multiple rounds of notice, as once a worker with a "live" claim opted into this case, Plaintiffs would seek that worker's inclusion in an amended or supplemental complaint and then seek additional notice with their new "Class Representative." In short, NYHC's inadequate representation argument should be rejected.

### D.    NYHC's Merits Defenses Are Both Premature and Unpersuasive

It is well settled that "at this stage, the Court ought not 'resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. . . .  The time to make such credibility determinations will occur after stage one." *Martinez v. JVA Indus. Inc.*, No. 20-CV-7977 (LJL), 2021 WL 1263133, at *4 (S.D.N.Y. Apr. 6, 2021).  Nevertheless, NYHC offers a host of merits arguments.  For example, NYHC claims that any overtime attributable to NYHC's failure to count in-service hours is not owed because NYHC believes it was not obliged to pay for this time in the first place.  Dkt. 174 at 2.  Yet this merits argument is belied by the fact that NYHC actually ***paid*** for these hours and NYHC's job description for aides states that attending "staff meetings and in-service presentations, as required" is part of home care workers' "JOB DUTIES."  Dkt. 113, ¶ 4.  In addition to being required training during working hours, 29 C.F.R. § 785.27, NYHC's payment of straight time wages easily defeats its *post hoc* merits claim. NYHC's other stray assertions that "there are numerous lawful reasons for variances between hours paid and [worked]" and "any number of legitimate reasons why payment may be delayed," *see* Dkt. 174 at 2–3, are also premature merits arguments flatly contradicted by NYHC's own data.

### E.  Defendants Misstate the Applicable FLSA Limitations Period

Relying on its flawed "Class Representative" claim NYHC tries to disqualify several of Plaintiffs' individual FLSA claims.  *Id.*  Yet NYHC misreads the record.  First, the relevant FLSA

statute of limitations period is September 21, 2018—three years before Plaintiffs first moved for conditional certification, Dkt. 21—to the present.  After Plaintiffs requested equitable tolling at the October 18, 2021, conference, the Court directed that tolling be raised in certification briefing, noting that "it can be granted retroactively to the date [Plaintiffs] propose." Dkt. 49 at 27:11–12.[9]

Moreover, to the extent two Plaintiffs (Floyd and Reyes) seek to recover for FLSA violations that occurred prior to September 2018, SAC contains three separate sets of tolling allegations for these two workers: equitable tolling, fraudulent concealment tolling, and estoppel tolling based on *inter alia* NYHC's failure to post FLSA-required wage notices, material misrepresentations about employees' FLSA rights, including in NYHC's employee handbook, the allegations by NYHC's former payroll manager efforts to conceal potential FLSA claims, and other intentional efforts to conceal NYHC pay practices.  *See* SAC ¶¶ 152–175 (Floyd), ¶¶ 176–196 (Reyes).  Each Plaintiff also describes their specific personal circumstances that justify tolling. *See id.* ¶¶ 156–59, ¶¶ 162–67 (Floyd); *id.* ¶¶ 178–81; ¶¶ 185–88 (Reyes).  These allegations are more than sufficient and it is well-settled that tolling issues are not considered at this stage.  *Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 129 (S.D.N.Y. 2022) ("[C]ourts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint . . . .  Defendants will [later] have an opportunity to argue that each plaintiff's claim is untimely[.]") (cleaned up).

## III.   THE COURT SHOULD ADOPT PLAINTIFFS' NOTICE PLAN AND ORDER NYHC TO PRODUCE POTENTIAL OPT-INS' CONTACT INFORMATION.

### A.   Plaintiffs' Proposed Notice Is Fair and Adequate.

The centerpiece of Plaintiffs' proposed notice plan is the Notice attached hereto as **Exhibit A.**[10]  The Notice, which will be provided in both English and the worker's other language (where

---

[9] The parties also used September 21, 2018 to the present as the period for sampling.  Dkt. 63 at ¶¶ 9–10.
[10] Plaintiffs updated the notice (Dkt. 63) to reflect new contact information and changed dates.

available from NYHC records) explains this lawsuit, provides clear instructions on how to opt in, apprises potential opt-ins of the prohibition against retaliation, and supplies an opt-in form and pre-paid return envelope.  It also apprises potential opt-ins that if they join the lawsuit they may be asked to testify and provide discovery.  The Notice is designed in accordance with the Federal Judicial Center's ("FJC") Judges' Class Action Notice and Claims Process Checklist's guidance to "command class members' attention" and is written in "clear, concise, easily understood language."[11]  The notice will be delivered in a bi-lingual envelope designed to stand out.[12]  As emphasized by the FJC, "[a] good notice starts with the envelope design, examples of which are at www.fjc.gov." *Id.*  NYHC previously mounted a series of unpersuasive objections to the Notice.

**First**, NYHC claimed the notice "falsely advise[s] potential opt-in plaintiffs that they must select Plaintiffs' counsel to participate in the lawsuit."  Opp. at 23.  It does not.  The Notice plainly states that "you can hire your own lawyer for your claim" and provides guidance on how to proceed with different counsel.  Ex. A at 2–3.[13]  **Second**, NYHC claims the Notice fails to accurately characterize the discovery and fee obligations of potential opt-ins or how Plaintiffs' counsel would be compensated. Opp. at 24.  These claims are unsupported by NYHC's cases and are simply an effort to chill participation.  Reply at 15.  There is nothing misleading about the Notice.  And NYHC's proposal to warn opt-ins about litigation costs is a scare tactic that has repeatedly been rejected in this District.[14]  Indeed, the chorus of courts warning of the "*in terrorem*" effect of such

---

[11] https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

[12] Plaintiffs' proposed notice transmittal envelope, attached as **Exhibit B**, is based on the FJC's sample class action notice envelope.  https://www.fjc.gov/sites/default/files/2015/ClaAct07.pdf.

[13] NYHC does not describe how the notices should be modified to address this supposed concern, and its cases shed no light.  *See* Opp. at 14, n.7.

[14] NYHC's two cases requiring such statements fail to explain why and are nearly 15 years old.  Today, courts regularly reject such scare tactics.  *See, e.g.*, *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 285 (S.D.N.Y. 2019) ("[T]he chilling effect of defendants' proposed language outweighs its utility. . . . '[L]anguage about potential costs [is] inappropriate.'" (quoting *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 117–18 (S.D.N.Y. 2015))).  Nor has NYHC asserted counterclaims or otherwise shown that plaintiffs will face costs.  *Martinez v. JLM Decorating Inc.*, No. 20-CV-2969 (AJN), 2021 WL 4253395, at *3 (S.D.N.Y. Sept. 17, 2021).

language has only gotten louder.[15]  **Third**, NYHC claims that using the Court's symbol on the envelope is "patently improper," Opp. at 25, but (1) provides no support for this claim; and (2) the FJC's sample envelope, on which Plaintiffs' envelope is based, includes the court symbol.[16]

### B.   The Notice Distribution Plan Is Standard and Furthers the FLSA's Purpose.

Plaintiffs' proposed distribution plan likewise reflects best practices.  Plaintiffs propose that the Notice and consent forms be distributed by first class mail, email, and text message and prominently posted in NYHC's offices.  NYHC only opposed text message and reminder notices and claimed that NYHC should not bear the cost of providing notice.  Opp. at 22–23.  Plaintiffs do not renew their request that NYHC bear the notice costs and as detailed in Plaintiffs' Motion, *see* Opening at 20; Reply at 13–14, text messages and reminder notices are standard ways of transmitting notice to workers and are all the more appropriate where, as here, there is high employee turnover and phones are the primary contact between the employer and employees.  *See* Opening at 20 (noting high industry turnover stats); Reply at 14, n.16 (same).  Indeed, the case for text notice has only strengthened with Southern District courts overwhelmingly approving requests for mail, email, and text message notice.[17]  This already standard protocol continues to be needed

---

[15] *Han v. Madison Ave. Realties, LLC*, No. 22-CV-382 (LJL), 2022 WL 2609003, at *6 (S.D.N.Y. July 8, 2022) (rejecting similar request because such language is "unnecessary and potentially confusing" and could have an "in terrorem effect" (quotation and citation omitted)); *Bethel v. BlueMercury, Inc.*, No. 21-CV-2743 (KPF), 2022 WL 3594575, at *15 (S.D.N.Y. Aug. 22, 2022) (same); *Chicas v. Kelco Constr., Inc.*, No. 21-CV-9014 (PAE)(SDA), 2023 WL 2072026, at *5 (S.D.N.Y. Feb. 19, 2023) (same).

[16] Federal Judicial Center, Products Liability Class Action Certification and Settlement: Language for Envelope for Construction Workers, https://www.fjc.gov/sites/default/files/2015/ClaAct07.pdf.

[17] *See, e.g.*, *Mangahas v. Eight Oranges Inc*., No. 22-CV-4150 (LJL), 2022 WL 10383029, at *9 (S.D.N.Y. Oct. 18, 2022) (notice via mail, email, and text message); *Richards v. Empire Scaffolding Sys.*, Inc., No. 21-CV-6638 (VEC), 2022 WL 2384154, at *3 (S.D.N.Y. July 1, 2022) (same); *Katz v. Equinox Holdings, Inc.*, No. 20-CV-9856 (VEC), 2022 WL 1292262, at *6 (S.D.N.Y. Apr. 29, 2022) (same); *Martinenko v. 212 Steakhouse Inc.*, No. 22-CV-518 (LJL), 2022 WL 1227140, at *7 (S.D.N.Y. Apr. 26, 2022) (same); *Imbarrato v. Banta Mgmt. Servs., Inc.*, No. 18-CV-5422 (NSR), 2022 WL 1210868, at *6 (S.D.N.Y. Apr. 25, 2022) (same); *Guevara v. Fine & Rare Operations LLC*, No. 20-CV-5330 (BCM), 2022 WL 103376, at *9 (S.D.N.Y. Jan. 10, 2022) (same); *Conte v. Metro. Transportation Auth.*, No. 21-CV-2516 (VEC), 2022 WL 35474, at *2 (S.D.N.Y. Jan. 4, 2022) (same); *see also Hong*, 582 F. Supp. 3d at 135 (mail, email, text message, and social media chat); *Bocel v. Patzeria Fam. & Friends Inc.*, No. 21-CV-7384 (LGS), 2022 WL 1125624, at *4 (S.D.N.Y. Apr. 15, 2022) (email, text message, and social media chat).

in cases like this "where there is rapid turnover in the employee base or where the members of the collective are likely to be transient such that whatever mail address the employer had in the past might not be effective to give the employee notice today." *Mangahas*, 2022 WL 10383029, at *9.

As for the reminder notice, "the weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA." *Mikityuk v. Cision US Inc.*, No. 21-CV-510 (LJL), 2021 WL 1750370, at *11 (S.D.N.Y. May 4, 2021) (citation omitted); *see also* Opening at 21; Reply at 14. [18]  In objecting to a reminder, NYHC ignores Plaintiffs' cases and asks the Court to adopt a notice plan that is at odds with current practice, since Southern District courts continue to authorize reminder notice, even largely approving the sending of multiple reminder notices via different channels.[19]

Plaintiffs propose a 60-day opt-in period.  Opening at 20–21.  NYHC did not object to this proposal, and it remains in line with Southern District practice.[20]

Plaintiffs propose a six-year limitations period for notifying workers, which NYHC opposed.  A six-year period is commonly used when employees have FLSA and NYLL claims. *See id*. at 21–22; Reply at 12–13.  Though courts are split, at least one additional court has held that "[w]hen a plaintiff's complaint also includes NYLL claims, courts in this District routinely deny requests to limit the Notice time period to three years, as even where claims are untimely under FLSA, they may shed light on the appropriateness of certifying a class action under the NYLL." *Bocel*, 2022 WL 1125624, at *3  (granting six-year notice period) (cleaned up).

---

[18] Plaintiffs' proposed reminder notice is attached hereto as **Exhibit C**.

[19] *Hong*, 582 F. Supp. 3d at 134 (authorizing dissemination of reminder notice via mail and email); *Bethel*, 2022 WL 3594575, at *15 (mail and email); *Katz*, 2022 WL 1292262, at *6 (mail, email and text); *Richards*, 2022 WL 2384154, at *3 (email and text message); *Mangahas*, 2022 WL 10383029, at *10 (mail); *Ballast v. Workforce7 Inc.*, No. 20-CV-3812 (ER), 2021 WL 5999202, at *9 (S.D.N.Y. Dec. 20, 2021) (mail).

[20] *E.g., Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-CV-1347 (ER), 2022 WL 193004, at *8 (S.D.N.Y. Jan. 21, 2022) (finding opt-in period of 90 days reasonable); *Ballast*, 2021 WL 5999202, at *10 (60 days).

Consistent with their equitable tolling application, *see infra* § IV, Plaintiffs propose keying notice to the date of the initial certification request, September 21, 2021.  Reply at 12.  In opposing this approach, NYHC relied on cases that are roundly inapplicable because none granted tolling.  Conversely, a large number of Southern District decisions issued since 2021 instead follow the "widespread approach" of keying notice to the even earlier date of the filing of the complaint.[21]

### C.    Plaintiffs' Requested Discovery Is Standard and Appropriate

Plaintiffs ask the Court to order Defendants to produce within 15 days of the Court's Order a computer-readable list of all home care workers who worked for NYHC at any point in the six years prior to this action.[22]  The production should contain: names, last-known addresses, email, home and cell phone numbers, job position(s), languages spoken, present or last known place of employment, and dates of employment.  As noted in Plaintiffs' Reply at 11, NYHC's "privacy" objection to the production of phone numbers runs headlong into Your Honor's recognition in *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016), that producing phone numbers is "common."  Indeed, even NYHC's case (*Knox v. John Varvatos Enter., Inc.*, 282 F. Supp. 3d 644, 663 (S.D.N.Y. 2017)) granted phone numbers.  NYHC's string cite of mostly 10+ year old out-of-circuit cases did not counsel otherwise.[23]  And, NYHC ignores *Benavides*.

In contrast, a plethora of cases have followed Your Honor's approach in *Benavides* and granted requests for disclosure of telephone numbers (and other information) since this issue was

---

[21] *Bethel*, 2022 WL 3594575, at *13 (measuring notice period from filing of complaint); *Gonzalez*, 2022 WL 193004, at *7 (same); *Ballast*, 2021 WL 5999202, at *8 (same); *see also Mangahas*, 2022 WL 10383029, at *8 (from filing of conditional certification motion).

[22] Plaintiffs' proposed order is filed at Dkt. 189.

[23] *See* Reply at 11, n.14.

last briefed.[24]  As for NYHC's complaint that 15 days is insufficient time to compile the collective

list, Plaintiffs note that 15 days is standard[25] but will agree to reasonable extensions.

### D.      Imposing a Third-Party Administrator Is Still Disfavored In This Circuit

Curiously, NYHC opposed the disclosure of any opt-in information to Plaintiffs' counsel

and instead requested that the Court impose a third-party administrator.   In doing so, NYHC

ignores Your Honor's repeated approvals of plaintiffs' counsel receiving opt-in forms.  *Benavides*,

166 F. Supp. 3d at 492; *Cuaya v. VI Dev. Grp., LLC*, No. 19-CV-4290 (JLC), 2020 WL 5494371,

at *9–10 (S.D.N.Y. Sept. 10, 2020).   Instead, NYHC relies on two out-of-circuit cases.  *McCoy v.

RP, Inc.*, No. 14-CV-3171 (PMD), 2015 WL 6157306, at *6 (D.S.C. Oct. 19, 2015); *Lewis v. Wells

Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009).   But, as noted in Plaintiffs' Reply at

12, "[g]enerally, within this Circuit, courts do not require a third-party administrator to distribute

notice."  *Kucker v. Petco Animal Supplies Stores, Inc.*, No. 14-CV-9983 (DF), 2016 WL 237425,

at *16 (S.D.N.Y. Jan. 19, 2016) (collecting cases).   Indeed, after a review of all cases addressing

motions for FLSA conditional certification in this District since December 2021, Plaintiffs'

counsel is unaware of any cases involving a request for a third-party administrator in this context.[26]

---

[24] *Hong*, 582 F. Supp. 3d at 131 (S.D.N.Y. 2022) (disclosure of names, employment dates, positions, addresses, telephone numbers, email addresses, and WhatsApp, WeChat and/or Facebook usernames, noting "it is increasingly clear that this information permits a more efficient means of providing notice than first class mail"); *Ballast*, 2021 WL 5999202, at *10 (names, addresses, email addresses, telephone numbers); *Conte*, 2022 WL 35474, at *2 (same); *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-CV-8410 (ER), 2022 WL 3369597, at *9 (S.D.N.Y. Aug. 16, 2022) (same); *Katz*, 2022 WL 1292262, at *7 (same); *Martinenko*, 2022 WL 1227140, at *9 (same); *Guevara*, 2022 WL 103376, at *9 (same); *Imbarrato*, 2022 WL 1210868, at *7 (same); *Gonzalez*, 2022 WL 193004, at *8; *Bethel*, 2022 WL 3594575, at *12; *Bocel*, 2022 WL 1125624, at *4 (same plus social security numbers, rates, hours worked).

[25] *See, e.g.*, *Bethel*, 2022 WL 3594575, at *12 (ordering disclosure within 14 days); *Zambrano*, 2022 WL 3369597, at *9 (15 days); *Katz*, 2022 WL 1292262, at *7 (15 days).

[26] In addition, for the reasons set forth in Plaintiffs' Reply at 10, and Judge Woods' ruling on Defendants' *Colorado River* abstention argument, Dkt. 165 at 16–19, aides who worked live-in shifts should not be excluded from recovering on claims not pursued in *Andreyeva*.  As Judge Woods noted, the two proceedings "are not parallel" and "[t]his federal action raises clams under the FLSA which are not at issue in the state action."  *Id.* at 18–19.

IV.     **EQUITABLE TOLLING IS APPROPRIATE AND WARRANTED HERE**

Plaintiffs request that the FLSA statute of limitations for absent collective members be tolled from September 21, 2021, the date of the initial certification request.  Plaintiffs previously showed that this approach is well-established in the Second Circuit and especially appropriate here given the significant amount of time that may elapse before all potential plaintiffs, most of whom are non-English speaking immigrants unlikely to be familiar with their rights or the avenues of pursuing redress, have had an opportunity to opt in.  Opening at 24–25.  In opposition, NYHC failed to address (much less rebut) Plaintiffs' arguments, making only conclusory claims that there are no "rare and exceptional circumstances" and no "particularized basis" for tolling,  Opp. at 18, and offered no contrary authority nor distinguished Plaintiffs' cases granting tolling.  *Id.* at 24–25.

The case for equitable tolling in this case has only gotten stronger since the issue was first briefed, both because of the lengthy delay and because additional courts in this district have agreed that the "delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine." *Pierre v. City of New York*, No. 20-CV-5116 (ALC) (VF), 2022 WL 4482295, at *10 (S.D.N.Y. Sept. 27, 2022) (citing *Mota v. Inter Connection Elec., Inc.*, No. 20-CV-7530 (GBD), 2021 WL 3188336, at *2 (S.D.N.Y. July 28, 2021); *Gonzalez*, 2022 WL 193004, at *8–9 (granting tolling due to 4-month delay between completion of conditional certification briefing and decision); *Santiago v. Info. Res. Inc.*, *et al.*, No. 20-CV-7688 (AT) (SN), 2022 WL 476091, at *6 (S.D.N.Y. Feb. 16, 2022) (granting tolling from date of filing conditional certification motion); *Imbarrato*, 2022 WL 1210868, at *5–6 (finding a "particularly strong basis" for tolling given year-long delay in ruling).

## **CONCLUSION**

For the foregoing reasons in this Memorandum and in the accompanying papers, Plaintiffs

respectfully request that the Court:

(i)     Conditionally certify this action as a collective action pursuant to 29 U.S.C. § 216(b);

(ii)    Order Defendants to produce their home care workers' contact information;

(iii)   Authorize Plaintiffs' proposed notice plan; and

(iv)    Toll the FLSA statute of limitations for potential opt-in plaintiffs from September 21, 2021 until ten days after the expiration of the notice and opt-in period.

Dated:  May 12, 2023
        New York, New York

                            Respectfully submitted,

                             /s/ J. Burkett McInturff
                            J. Burkett McInturff (JM-4564)
                            Ethan D. Roman (ER-5569)
                            **WITTELS MCINTURFF PALIKOVIC**
                            305 BROADWAY, 7TH FLOOR
                            NEW YORK, NEW YORK 10007
                            Telephone: (914) 775-8862
                            jbm@wittelslaw.com
                            edr@wittelslaw.com

                            *Counsel for Plaintiffs, the Collective, and the Class*

                            Andrey Belenky (AB-1976)
                            Dmitry Kheyfits (DK-9799)
                            **KHEYFITS BELENKY LLP**
                            80 BROAD STREET, 5TH FL
                            NEW YORK, NY 10004
                            Phone: (212) 203-5399
                            Facsimile: (212) 203-6445
                            abelenky@kblit.com
                            dkheyfits@kblit.com

                            *Co-Counsel for Plaintiffs, the Collective, and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the below-listed documents in support of Plaintiffs' Renewed Motion for Conditional Certification of FLSA Collective Action and for Court-Facilitated Notice was served via ECF this 12th day of May 2023 upon the following counsel of record:

1. Plaintiffs' Notice of Renewed Motion for Conditional Certification of FLSA Collective Action and for Court-Facilitated Notice, dated May 12, 2023;

2. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Renewed Motion for Conditional Certification of FLSA Collective Action and for Court-Facilitated Notice, dated May 12, 2023, with Exhibits;

3. Supplemental Declaration of Plaintiffs' counsel Andrey Belenky, dated May 12, 2023, with Exhibits; and

4. Declaration of Alexander Vekker, Ph.D., dated May 12, 2023, with Exhibits.

Peter C. Godfrey, Esq.
Joshua Feinstein, Esq.
Sarah N. Miller, Esq.
Hodgson Russ LLP
605 Third Avenue, Suite 2300
New York, NY 10158
(716) 848-1336
pgodfrey@hodgsonruss.com
jfeinstein@hodgsonruss.com
smiller@hodgsonruss.com

*Attorneys for Defendants New York Health Care Inc., Murry Englard, and Glen Persaud*

/s/  J. Burkett McInturff
J Burkett McInturff