**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LOUIS FRANCK, LI ZHEN FENG, YERALDIN REYES, CHARISMA BARBER, CASSONDRA FLOYD, and ELIZABETH GUERRERO,

Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

NEW YORK HEALTH CARE INC., MURRY ENGLARD, and GLEN PERSAUD,

Defendants.

Case No. 21-CV-4955 (GHW) (JLC)

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT AND RELATED RELIEF

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff (JM-4564)
Ethan D. Roman (ER-5569)
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com

*Counsel for Plaintiffs, the Collective, and the Class*

**KHEYFITS BELENKY LLP**
Andrey Belenky (AB-1976)
Dmitry Kheyfits (DK-9799)
80 Broad Street, 5th Fl
New York, NY 10004
Phone: (212) 203-5399
abelenky@kblit.com
dkheyfits@kblit.com

*Co-Counsel for Plaintiffs, the Collective, and the Class*

Dated: March 15, 2024

# TABLE OF CONTENTS

INTRODUCTION ..... 1

I. FACTUAL AND PROCEDURAL BACKGROUND ..... 2

A. Factual Allegations and Plaintiffs' Investigation ..... 2

B. Litigation and Settlement Negotiations ..... 2

C. The Settlement Amount and Allocation Formula ..... 3

D. Eligible Class Members ..... 4

E. Distribution of the Settlement Fund ..... 4

F. Releases ..... 5

G. Named Plaintiffs Service Awards ..... 5

H. The Settlement Administrator ..... 6

II. RULE 23 CLASS ACTION SETTLEMENT PROCEDURE ..... 6

III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..... 8

A. Adequacy of Representation: Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class ..... 9

B. Adequate Relief for the Class: The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation ..... 11

1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ..... 11

2. Plaintiffs Face Real Risks if the Case Proceeds (*Grinnell* Factors 4 and 5) ..... 12

3. Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6) ..... 13

C. Effectiveness of the Proposed Method of Distributing Relief: Direct Payments to Class Members Without a Claims Process Is the Preferred Method and the Parties' Allocation Plan Is Reasonable and Fair ..... 14

D. The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Award Was Negotiated at Arm's Length and Is Well Within the Norms of this Circuit ..... 15

E. Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Actual Damages and Is Reasonable ..... 18

    F. The Remaining Grinnell Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate ..... 19

1. The Reaction of the Class Is Too Early to Gauge and Therefore Neutral (*Grinnell* Factor 2) ..... 19

2. Discovery Is Advanced Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ..... 19

3. Defendants Likely Could Not Withstand a Greater Judgment (*Grinnell* Factor 7) ..... 20

4. The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ..... 21

IV. THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED ..... 22

A. Numerosity ..... 24

B. Commonality ..... 24

C. Typicality ..... 25

D. Adequacy of the Named Plaintiffs and Proposed Class Counsel ..... 26

E. Certification Is Proper Under Rule 23(b) ..... 27

1. Common Questions Predominate ..... 27

2. A Class Action Is a Superior Mechanism for Adjudicating Claims ..... 29

V. THE FLSA COLLECTIVE SHOULD BE CONDITIONALLY CERTIFIED ..... 30

VI. THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED ..... 32

CONCLUSION ..... 34

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Alves v. Affiliated Care of Putnam, Inc.*,
No. 16-cv-1593 (KMK), 2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022)................... *passim*

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................ 27, 29

*Asare v. Change Grp. of New York, Inc.*,
No. 12-cv-3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)............................ 27

*Ballinger v. Advance Magazine Publrs., Inc.*,
No. 13-cv-4036 (HBP), 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014)........................... 20

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................ 16

*Brazier v. Real Hosp. Grp., LLC*,
No. 20-cv-8239 (VM), 2021 WL 7210088 (S.D.N.Y. Nov. 12, 2021) ........................... 34

*Bryant v. Potbelly Sandwich Works, LLC*,
No. 17-cv-7638 (CM), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020).......................... *passim*

*Chambery v. Tuxedo Junction Inc.*,
No. 12-cv-6539 (EAW), 2014 WL 3725157 (W.D.N.Y. July 25, 2014) ......................... 21

*Cheeks v. Freeport Pancake House, Inc.*,
796 F.3d 199 (2d Cir. 2015)........................................................................ 30, 31, 32

*Christine Asia Co. v. Yun Ma*,
No. 15-md-02631 (CM), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................... 15, 22

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).................................................................................. 24

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)............................................................................. 10, 27

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008)..................................................................... 26, 30

*Falberg v. Goldman Sachs Grp., Inc.*,
No. 19-cv-9910 (ER), 2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) ................................... 24

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .......................... 16, 17

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................... 20

*Garcia v. Good for Life by 81, Inc.*,
No. 17-cv-7228 (BCM), 2018 WL 3559171 (S.D.N.Y. July 12, 2018)............................... 30

*George v. Shamrock Saloon II, LLC*,
No. 17-cv-6663 (SLC), 2021 WL 3188314 (S.D.N.Y. July 28, 2021) ................................ 33

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................................... 17

*Gonzalez v. PB Hudson LLC*,
No. 17-cv-2010 (VSB), 2018 WL 11255318 (S.D.N.Y. Oct. 10, 2018).............................. 23

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968) ................................................................................... 29

*Hezi v. Celsius Holdings, Inc.*,
No. 21-cv-9892 (JHR), 2023 WL 2786820 (S.D.N.Y. Apr. 5, 2023) ............................ 15, 16

*Hoffman-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989) ............................................................................................. 33

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
239 F.R.D. 363 (S.D.N.Y. 2007)................................................................... 24, 28, 29

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................... 12, 13, 19, 21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)............................... 15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ..................................................................... 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-cv-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................. 17

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................. 9, 10

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
No. 18-cv-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) .......................... 13, 14

*In re Merrill Lynch Tyco*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......... 18, 34

*In re Namenda Direct Purchaser Antitrust Litig.*,
No. 15-cv-7488 (CM), 2020 WL 2749223 (S.D.N.Y. May 27, 2020) .......... 15, 19

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008) .......... 17

*In re Painewebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y 1997) .......... 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .......... 9, 10, 18, 19

*In re Polaroid ERISA Litig.*,
No. 03-cv-8335 (WHP), 2007 WL 2116398 (S.D.N.Y. July 19, 2007) .......... 6

*In re Visa Check/Master Money Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) .......... 27, 29

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152 (S.D.N.Y. 2014) .......... 10

*Johnson v. Brennan*,
No. 10-cv-4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .......... 16, 21, 29

*Johnson v. Nextel Commc'ns Inc.*,
780 F.3d 128 (2d Cir. 2015) .......... 24

*Larrea v. FPC Coffees Realty Co.*,
No. 15-cv-1515 (RA), 2017 WL 1857246 (S.D.N.Y. May 5, 2017) .......... 32

*Lawrence v. NYC Med. Prac., P.C.*,
No. 18-cv-8649 (GHW), 2021 WL 2026229 (S.D.N.Y. May 20, 2021) .......... 23

*Lawrence v. NYC Med. Prac., P.C.*,
No. 18-cv-8649 (GHW), 2024 WL 307842 (S.D.N.Y. Jan. 26, 2024) .......... 25, 26

*Lliguichuzhca v. Cinema 60, LLC*,
948 F. Supp. 2d 362 (S.D.N.Y. 2013) .......... 31

*Lopez v. Fashion Nova*,
No. 20-cv-9238 (LGS), 2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) .......... 17

*MacNamara v. City of New York*,
275 F.R.D. 125 (S.D.N.Y. 2011) .......... 25

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)........................................................................ 23, 25

*Marisol v. Giuliani*,
185 F.R.D. 152 (S.D.N.Y. 1999) ........................................................................ 13

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) ........................................................................ 28

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015)........................................................................ 15, 19

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
No. 06-cv-4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .......................... 17

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023) ........................................................................ 8, 9

*Murphy v. LaJaunie*,
No. 13-cv-6503 (RJS), 2015 WL 4528140 (S.D.N.Y. July 24, 2015)............................. 28

*Penney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)........................................................................ 10

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
772 F.3d 111 (2d Cir. 2014)........................................................................ 24

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)........................................................................ 25

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986)........................................................................ 27

*Sanchez v. Kambousi Rest. Partners, LLC*,
No. 15-cv-5880 (CM), 2016 WL 11717105 (S.D.N.Y. Aug. 5, 2016)................ 25, 26, 30

*Schear v. Food Scope Am., Inc.*,
297 F.R.D. 114 (S.D.N.Y. 2014) ........................................................................ 28, 30

*Siddiky v. Union Square Hosp. Grp., LLC*,
No. 15-cv-9705 (JCF), 2017 WL 2198158 (S.D.N.Y. May 17, 2017)............................ 32

*Soler v. Fresh Direct, LLC*,
No. 20-cv-3431 (AT), 2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023)................. 11, 12, 13

*Solis v. OrthoNet LLC*,
No. 19-cv-4678 (VSB), 2021 WL 2678651 (S.D.N.Y. June 30, 2021).......................... 16

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
No. 15-cv-3538 (VSB), 2023 WL 3749996 (S.D.N.Y. June 1, 2023) ..................... 8, 9, 10

*Spencer v. No Parking Today, Inc.*,
No. 12-cv-6323 (AJP), 2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013) ..................... 24, 25

*Sukhnandan v. Royal Health Care of Long Island LLC*,
No. 12-cv-4216 (RLE), 2013 WL 4734818 (S.D.N.Y. Sep. 3, 2013) ..................... 8

*Surdu v. Madison Glob., LLC*,
No. 15-cv-6567 (HBP), 2018 WL 1474379 (S.D.N.Y. Mar. 23, 2018) ..................... 5, 31

*Sykes v. Harris*,
No. 09-cv-8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ..................... 16, 27

*Torres v. Gristede's Operating Corp.*,
No. 04-cv-3316 (PAC), 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..................... 14, 30

*Toure v. Cent. Parking Sys.*,
No. 05-cv-5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sep. 28, 2007) ..................... 10, 26

*Vargas v. Howard*,
324 F.R.D. 319 (S.D.N.Y. 2018) ..................... 25

*Vecchio v. Quest Diagnostics, Inc.*,
No. 16-cv-5165 (ER), 2023 WL 2842702 (S.D.N.Y. Apr. 7, 2023) ..................... 8, 23

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ..................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ..................... 17

*Wolinsky v. Scholastic Inc.*,
900 F. Supp. 2d 332 (S.D.N.Y. 2012) ..................... 31, 32

*Zivkovic v. Laura Christy LLC*,
329 F.R.D. 61 (S.D.N.Y. 2018) ..................... 25, 28, 30

**Statutes**

29 U.S.C. § 216(b) ..................... 32

N.Y. Aband. Prop. Law § 1406 ..................... 14

**Other Authorities**

Advisory Notes to Fed. R. Civ. P. 23 (2018) ..................... 18

Federal Judicial Center,
*Judges' Class Action Notice and Claims Process Checklist* (2010)............................ 4, 33

Federal Judicial Center,
*Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed. 2010) ................ 16

American Law Institute,
*Principles of the Law of Aggregate Litigation* (Mar. 1, 2010) ........................................ 16

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................ 10, 23, 26, 27

Fed. R. Civ. P. 23(b) ................................................................................................... 23, 27, 29

Fed. R. Civ. P. 23(c) ........................................................................................................ 32, 34

Fed. R. Civ. P. 23(e) .........................................................................................................*passim*

**Treatises**

Herbert B. Newberg & Alba Conte,
*Newberg on Class Actions* (4th ed. 2002)................................................................. 7, 22

Charles A. Wright & Arthur R. Miller,
*Fed. Prac. & Proc.* (3d ed.) ............................................................................................ 10

## INTRODUCTION

Plaintiffs Louis Franck, Li Zhen Feng, Yeraldin Reyes, Charisma Barber, Cassondra Floyd, and Elizabeth Guerrero ("Plaintiffs") brought this wage and hour class and collective action against Defendants New York Health Care Inc., Murry Englard, and Glen Persaud (collectively, "NYHC" or "Defendants") to recover unpaid wages and other benefits.  Following three years of extensive investigation and hard-fought litigation, the parties have agreed to a $3,500,000 cash settlement that achieves a substantial portion of this lawsuit's goal.

This settlement was no easy achievement.  It is the result of voluminous discovery and vigorous litigation, followed by four months of forceful negotiations overseen by a noted class action mediator with specific expertise in home care wage and hour class actions.  As set forth below, this three-year process resulted in a fair and reasonable settlement for the workers included in the Class and Collective ("Class Members" unless noted otherwise).

The settlement also satisfies the criteria for preliminary approval under federal law. Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the settlement as described in the Class Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit A to the accompanying Declaration of Burkett J. McInturff ("McInturff Decl."); (2) preliminarily certify the proposed "Rule 23 Class" and "FLSA Collective" for settlement purposes; (3) approve the proposed Notice of Proposed Class Action Settlement and Final Approval Hearing (the "Notice") and direct its distribution; (4) appoint Wittels McInturff Palikovic and Kheyfits Belenky LLP as Class Counsel ("Class Counsel"); (5) schedule the Final Approval Hearing; and (6) grant such other relief as the Court deems just and proper.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Allegations and Plaintiffs' Investigation

Plaintiffs and Class Members are current and former home health aides. Plaintiffs allege that certain of Defendants' pay practices violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq*. and New York Labor Law ("NYLL"). Second Amended Class and Collective Action Compl. ("SAC") ¶¶ 222–98, ECF No. 166. Defendants employed 5,157 aides in New York during the applicable limitations period. McInturff Decl. ¶ 22.

Prior to commencing this action, Class Counsel conducted a thorough investigation into Class Members' claims, their damages, and the likelihood of obtaining class certification. *Id.* ¶ 16. Further, Class Counsel performed extensive background research on Defendants and obtained information on Defendants' compensation policies and practices. *Id.* ¶ 17. Class Counsel also conducted in-depth interviews with Plaintiffs and other former NYHC employees concerning, *inter alia*, the number of hours aides worked, Defendants' pay practices, and other information pertinent to Plaintiffs' claims. *Id.* Counsel obtained and reviewed numerous documents from Plaintiffs and other aides, researched prior home care wage and hour cases, and conducted extensive research and analysis of the pay practices at issue in this action. *Id.*

## B. Litigation and Settlement Negotiations

Following a four-month investigation, on June 4, 2021, Plaintiffs filed their Class and Collective Action Complaint (ECF No. 1), which was later amended on September 21, 2021 (ECF No. 20) and March 17, 2023 (ECF No. 166). The litigation spawned substantial discovery, including: written discovery; third-party discovery; the production and analysis of over a hundred and forty thousand payroll, time, and other electronic records and documents; numerous interviews with Plaintiffs, Class Members, and potential witnesses; a deposition of one of Defendants' employees; and the negotiation of a protective order (ECF No. 51), an ESI Protocol

(ECF No. 88), a search term protocol (ECF No. 135), and protracted search term negotiations. The parties also conducted extensive motion practice, including multiple court hearings and two rounds of conditional certification (ECF Nos. 61 and 185) and dismissal briefing (ECF Nos. 85 and 95, 178), raised numerous discovery disputes (ECF Nos. 72, 73, 78, 89, 123), and undertook preparations for proceedings on class certification, summary judgment, and trial.

In late 2023, the parties agreed to participate in private mediation. The parties then engaged in extensive pre-mediation damages analysis, including preparing comprehensive reports on liability and damages. This analysis encompassed the review of eight years of time and payroll records for 100 Class Members selected via a sampling methodology that Plaintiffs and their statistics expert negotiated with Defendants. The parties thereafter engaged in arms-length mediation on November 8, 2023 with the assistance of Martin F. Scheinman, Esq., a noted mediator with extensive experience in home care class action litigation. With Mr. Scheinman's assistance, the parties reached agreement on most material settlement terms and negotiated a memorandum of understanding, which was executed on November 10, 2023. Following additional hard-fought negotiations and another mediation session with Mr. Scheinman on February 15, 2024, the Settlement Agreement was executed on March 5, 2024.

**C. <u>The Settlement Amount and Allocation Formula</u>**

Under the Settlement Agreement, Defendants will establish a cash fund of $3,500,000 ("Settlement Fund"). Settlement Agreement § 4.1. Each Class Member will then be issued a direct settlement payment without the need to submit a claim. *Id.* § 4.4. Class Members' share of the settlement will be calculated based on their *pro rata* share of all hours worked by Class Members as reflected in Defendants' payroll records. *Id.* § 4.2. This formula reasonably correlates with Plaintiffs' claims for unpaid wages and will fairly compensate Class Members in relation to their alleged damages. McInturff Decl. ¶ 24. In addition, each Class Member will be afforded a

minimum allocation of $75 to account for Plaintiffs' claims arising from NYHC's statutory wage disclosure obligations. Settlement Agreement § 4.2; McInturff Decl. ¶ 23.

Notably, the $3,500,000 Settlement Fund represents more than 74% of the $4,703,062 in pecuniary class-wide harm that Class Counsel calculated prior to mediation. McInturff Decl. ¶ 24. After accounting for deductions for attorneys' fees and expenses, settlement administration expenses, and a reserve fund to cover administration issues, the average payment to the 5,157 Class Members is expected to be $417.56. *Id.* ¶ 26. This amounts to roughly 31 hours' pay without Class Members having to take additional action to obtain relief. *Id.*

Further, the parties agree that as a result of this action, NYHC reformed its pay practices to further ensure that aides are paid in accordance with the law. Settlement Agreement § 4.6. With the assistance of Mediator Scheinman, the parties negotiated the value of these enhancements at not less than $1,300,000. McInturff Decl. ¶ 12.

**D. <u>Eligible Class Members</u>**

Two groups of current and former NYHC aides are entitled to Settlement Fund payments: the "Rule 23 Class" and the "FLSA Collective" (together, "Class Members"). Settlement Agreement §§ 1.14, 1.25. The "Rule 23 Class" consists of aides employed by NYHC at any time from June 4, 2015 through November 8, 2023. *Id.* § 1.25. The "FLSA Collective" consists of aides employed by NYHC at any time from June 4, 2018 through November 8, 2023. *Id.* § 1.14.

**E. <u>Distribution of the Settlement Fund</u>**

Critically, Class Members will not be required to submit a claim to receive payment and instead will be issued checks directly. Settlement Agreement §§ 4.4(A), (C); *see also* The Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist" ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms."); *id.* (directing

courts to question if "a claims process [is] actually necessary"). Following the Court's final approval and the expiration of the appeal deadline (the "Effective Date" defined in Settlement Agreement § 1.9), Defendants will deposit the Settlement Fund in escrow. *Id.* §§ 4.1, 4.3. Each Class Member will then receive a check based on the allocation formula. *Id.* § 4.4(C).

### F. Releases

Upon the Effective Date, Plaintiffs and each Rule 23 Class Member who does not timely opt out will fully release and discharge Defendants from all New York state law claims asserted in the action. *Id.* § 4.11(A). In addition, each FLSA Collective Member who negotiates their settlement check releases Defendants from the FLSA claims asserted in the action. *Id.*

### G. Named Plaintiffs Service Awards

In recognition of the services they rendered on behalf of the more than 5,000 other aides, seven workers will apply for service awards as follows: $3,000 (two opt-ins), $4,000 (two Plaintiffs), $6,000 (two Plaintiffs), and $9,000 (one Plaintiff). McInturff Decl. ¶ 28. These amounts are reflective of their contributions to the litigation, with the total amount of all service awards set at $35,000. Settlement Agreement § 4.8. Service awards "are common in class actions" and "serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts." *Surdu v. Madison Glob., LLC*, No. 15-cv-6567 (HBP), 2018 WL 1474379, at *13 (S.D.N.Y. Mar. 23, 2018). Moreover, in wage and hour cases, workers that come forward publicly take on the risk of being "black balled" in their industry. *Id.*

As detailed in the McInturff Declaration, before joining this action these workers agreed to shoulder the responsibilities of representative plaintiffs, reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement, at all times encouraging Class Counsel to obtain the best possible result for Class Members. McInturff Decl. ¶ 29. Indeed, these aides' participation in this case was significant and critical, as they alerted

Class Counsel to valuable claims not unearthed in the initial investigatory phase. *Id.*

The requested service awards are well-deserved and are well within the range of awards approved in similar cases. *See, e.g.*, *In re Polaroid ERISA Litig.*, No. 03-cv-8335 (WHP), 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (case law supports service awards of between $2,500 and $85,000). Moreover, the award application was subject to arms-length negotiations, was facilitated by an experienced mediator, and will be disclosed to the Class. McInturff Decl. ¶ 30. In sum, both the facts and law support the requested service awards. The Court need not rule on the awards now, however, as per the Settlement Agreement Plaintiffs will move for final court approval of the service awards with the Motion for Final Approval of the Settlement.

### H.    The Settlement Administrator

Following a competitive bidding process, the parties jointly selected Arden Claims Services to provide notice to the Class and administer payments to Class Members. Settlement Agreement § 1.26. The Settlement Administrator's fee of up to $70,000 will be paid from the Settlement Fund. *Id.* § 3.12. Based on Class Counsel's experience and defense counsel's input, Class Counsel recommends Arden Claims Services and believes its fee is reasonable for a wage and hour case of this size and the multi-faceted and multi-lingual notice process described below. McInturff Decl. ¶ 43.

## II.    RULE 23 CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a motion for preliminary approval;

2. Dissemination of mailed notice of settlement to class members; and

3. A final settlement approval hearing for the court to consider the settlement's fairness, adequacy, and reasonableness.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

§§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").  Consistent with these steps, the parties submit the following proposed schedule for final resolution and dismissal:

1. Within fifteen (15) days after entry of the Preliminary Approval Order, Defendants will provide the Settlement Administrator with a Class List, containing, *inter alia*, the full names, social security numbers, last known addresses, phone numbers, primary language, and hours worked during the Class Period of each Class Member.  Settlement Agreement § 3.6(B).

2. In advance of the mailing of any Notice, the Settlement Administrator will set up a case-specific call center, including live operator and voicemail, to provide telephone support address questions from and otherwise provide information to Class Members.  *Id.* § 3.6(C).  Class Members will be able to have their questions answered and speak to someone in English or their primary language.  McInturff Decl. ¶ 45.

3. In advance of the mailing of any Notice, counsel will negotiate in good faith (1) a list of frequently asked questions and answers to be used by the Settlement Administrator in responding to inquiries from Class Members, and (2) the Settlement Administrator's recorded message to callers. Settlement Agreement § 3.6(D).  These documents will also be translated as necessary by certified translators.  McInturff Decl. ¶ 46.

4. The Settlement Administrator will take reasonable and customary efforts to ensure the Class List is as up-to-date as practicable, including running the Class List through the National Change of Address Database, which provides updated addresses for individuals who filed an address change with the United States Postal Service.  Settlement Agreement § 3.6(F).

5. Within thirty (30) days of receiving the Class List, the Settlement Administrator will mail the Notice.  *Id.* § 3.6(G).

6. Undeliverable Notices will be skip traced and re-mailed.  *Id.* § 3.6 (H)–(I).

7. Class Members will have sixty (60) days after the date the Notice is mailed to opt out or object to the settlement (the "Bar Date").  *Id.* §§ 1.2.

8. A final Fairness Hearing will be held as soon as convenient for the Court. *Id.* § 3.9.

9. No later than three (3) business days prior to the Fairness Hearing the Settlement Administrator shall certify the completion of its responsibilities that can be accomplished prior to the Fairness Hearing.  *Id.* § 3.6(K).

10. Plaintiffs will file a Motion for Final Approval of Settlement no later than fourteen (14) days before the Bar Date. *Id.* § 3.9.

11. After the final Fairness Hearing, if the Court grants the Motion for Final Approval, the Court will issue a Final Order and Judgment. *Id.* § 3.10.

12. Not later than twenty-one (21) days after the settlement's Effective Date, Class Members' settlement checks will be mailed. *Id.* § 4.4(C).

## III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-cv-3538 (VSB), 2023 WL 3749996, at *1 (S.D.N.Y. June 1, 2023) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). The approval of a class action settlement is a matter of discretion for the trial court. *Id*. "The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle." *Id.*; *see also Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) ("[T]he arms-length quality of the [settlement] negotiations remain[s] a factor in favor of approving the settlement.").

Preliminary approval "requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Vecchio v. Quest Diagnostics, Inc.*, No. 16-cv-5165 (ER), 2023 WL 2842702, at *6 (S.D.N.Y. Apr. 7, 2023) (quoting *Sanders v. CJS Solutions Group, LLC*, No. 17-cv-3809, 2018 WL 1116017, at *2 (S.D.N.Y. Feb 28, 2018)). In fact, "[c]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-cv-4216 (RLE), 2013 WL 4734818, at *1 (S.D.N.Y. Sep. 3, 2013).

To grant preliminary approval, the Court "must consider whether the court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

judgment on the proposal.'" *Sonterra*, 2023 WL 3749996, at *2 (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019)); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) ("To be likely to approve a proposed settlement under Rule 23(e)(2)," the Court must find that the settlement "is fair, reasonable, and adequate.").

Rule 23 "enumerates four factors for the Court to consider as part of this inquiry: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *In re GSE Bonds*, 414 F. Supp. 3d at 692 (citing Fed. R. Civ. P. 23(e)(2)). As recently clarified by the Second Circuit, the latter two factors are "core factors" to be considered "when reviewing the substantive fairness of a settlement." *Moses*, 79 F.4th at 244. However, the Rule 23 factors "overlap" with the *Grinnell* factors "[h]istorically" used to evaluate settlements.[1] *Id.*; *see also In re GSE Bonds*, 414 F. Supp. 3d at 692 ("The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these '*Grinnell*' factors."). Accordingly, this memorandum addresses both sets of factors.

### A. Adequacy of Representation: Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement.

[1] The *Grinnell* factors are (1) the litigation's complexity, expense and likely duration; (2) the class's reaction to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) Defendants' ability to withstand a greater judgment; (8) the settlement's range of reasonableness in light of the best possible recovery; and (9) the settlement's range of reasonableness to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

"Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (cleaned up); *accord Sonterra*, 2023 WL 3749996, at *3.[2]

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05-cv-5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sep. 28, 2007) (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat . . . representative status." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quoting Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.)) (internal quotation marks omitted).

Here, Plaintiffs are adequate because their "interests are aligned with other class members' interests because they suffered the same injuries—monetary losses resulting from [Defendants' allegedly unlawful pay practices]." *In re GSE Bonds*, 414 F. Supp. 3d at 692. Because of these injuries, Plaintiffs have an "interest in vigorously pursuing the claims of the class." *Penney*, 443 F.3d at 268; *see also Alves v. Affiliated Care of Putnam, Inc.*, No. 16-cv-1593 (KMK), 2022 WL 1002817, at *21 (S.D.N.Y. Mar. 30, 2022) (plaintiffs who "vigorously pursued the claims of the class" in wage and hour litigation are adequate).

Moreover, Plaintiffs have contributed significant time and effort to the case by

---

[2] "This adequate representation factor is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context." *In re Payment Card*, 330 F.R.D. at 30 n.25. "As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor." *Id.*

participating in numerous in-person meetings and telephone conferences with Class Counsel, providing Class Counsel with detailed information regarding aides' job duties, and reviewing and discussing the pleadings and case strategy. McInturff Decl. ¶ 29. Plaintiffs also assisted with preliminary settlement negotiations and lent support during two mediation sessions and various follow-up calls. *Id.* In sum, Plaintiffs have been excellent representatives.

Class Counsel also meet the adequacy requirement. Wittels McInturff Palikovic and Kheyfits Belenky LLP have extensive experience in successfully prosecuting wage and hour class actions. McInturff Decl. ¶¶ 4–8. The attorneys leading this action have served as Class Counsel in multiple wage and hour and consumer protection class actions and have secured millions of dollars in recoveries to class members. *Id.* ¶ 4. Further, Wittels McInturff Palikovic and Kheyfits Belenky LLP have dedicated substantial time and resources investigating, prosecuting, and settling Class Members' claims. *Id.* ¶ 9. The work performed on this case demonstrates the firms' skill and commitment to representing the interests of the Class. *Id.*

### B. Adequate Relief for the Class: The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation

Rule 23(e)(2)(C) looks to whether relief for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

This inquiry overlaps significantly with several *Grinnell* factors, including factors 1 and 4–6 which help guide the Court's application of Rule 23(e)(2)(C)(i). *Soler v. Fresh Direct, LLC*, No. 20-cv-3431 (AT), 2023 WL 2492977, at *3 (S.D.N.Y. Mar. 14, 2023).

1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement, Plaintiffs seek to avoid significant risk, expense, and

delay and instead ensure a substantial recovery for the Class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *Bryant v. Potbelly Sandwich Works, LLC*, No. 17-cv-7638 (CM), 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)).  "Particularly in complex wage and hour litigation like this one, involving both federal and state statutory rights, protracted litigation is costly and burdensome, and includes motion practice and potential appeals over class certification."  *Id.*  This case is no exception, with 5,157 Class Members and novel and complex claims under federal and state law.

Continued litigation will only add expense and delay.  While significant discovery has occurred, extensive additional discovery will be required for class certification, summary judgment, and trial.  This would consume tremendous time and resources for the parties and the Court.  Further, any judgment would likely be appealed, adding further uncertainty and delay.  In contrast, the settlement bestows substantial monetary relief to Class Members in a prompt manner, has led to improved NHYC pay practices, and avoids the risks of class litigation.  The first *Grinnell* factor thus weighs heavily in favor of approval.  *See, e.g.*, *id.* ("This settlement provides monetary relief to Class Members in a prompt and efficient manner. Thus, the first factor weighs in favor of judicial approval of the settlement."); *Soler*, 2023 WL 2492977, at *4 ("[T]he Settlement would avoid significant costs, risks, and delay, ensuring timely relief for class members.").

2.  Plaintiffs Face Real Risks if the Case Proceeds
   (*Grinnell* Factors 4 and  5)

Although Plaintiffs believe their case is strong, they are nevertheless cognizant of the risks of proceeding to trial.  First, "[l]itigation inherently involves risks."  *Bryant*, 2020 WL 563804, at *3 (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y 1997)).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty

of the outcome." *Id.* (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)). In weighing the risks of establishing liability and damages, the court "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'" *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 177 (quoting *Marisol v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)).

Moreover, class certification is not guaranteed, as Defendants would likely "argue that individualized questions . . . predominate over common questions." *Soler*, 2023 WL 2492977, at *4. Plaintiffs would have to overcome, among other things, defenses (i) that certain claims are time-barred; (ii) that Defendants did not act willfully; and (iii) that certain of Plaintiffs' claims are not actionable. While Plaintiffs are confident in their prospects, Class Counsel are both experienced and realistic and understand that the resolution of liability issues, the outcome of trial, and the inevitable appeals are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties and therefore weighs in favor of preliminary approval.

3. Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the Class and, to obtain certification, Plaintiffs would have to overcome defenses that that individual questions predominate, that the challenged pay practices were not uniform, and that Plaintiffs cannot prove class-wide damages. *See, e.g.*, *Soler*, 2023 WL 2492977, at *4 ("Plaintiffs would encounter real risks to . . . maintaining the class action through trial" and "obtaining class certification"); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) (similar).

While Class Counsel are dedicated class action litigators, certification would occur only after further extensive litigation, including substantial additional discovery, expert discovery, and

extensive briefing.  *See, e.g.*, *In re Hudson's Bay Co.*, 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) ("A contested motion would have increased the parties' expenses and further delayed proceedings.").  Further, Defendants would likely challenge those determinations after the close of discovery.  *See, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) *aff'd,* 519 F. App'x 1 (2d Cir. 2013) ("The risk of maintaining class status throughout trial also weighs in favor of final approval.  Defendants would likely move to decertify, requiring another round of briefing.").  "Settlement eliminates the risk, expense, and delay inherent in this process."  *Id.*  This factor strongly favors preliminary approval.

### C.     Effectiveness of the Proposed Method of Distributing Relief: Direct Payments to Class Members Without a Claims Process Is the Preferred Method and the Parties' Allocation Plan Is Reasonable and Fair

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Here, Plaintiffs have secured the best possible distribution method: Class Members will be issued checks directly without the need to file a claim, which is without question the optimal method.  *See supra* at pp. 4–5 (collecting authorities).

Moreover, the Settlement Administrator will send a reminder notice to "[a]ny Class Member who has not cashed their check within 45 days of the date of mailing of the checks."  Settlement Agreement § 4.4(C).  Further, any check that is not cashed will escheat and therefore remain available to Class Members indefinitely.  *Id.*; N.Y. Aband. Prop. Law § 1406.

Regarding the method of dividing settlement funds among the Class, while the allocation plan "must be fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (quoting *In re Bear Stearns Co., Inc. Sec., Derivative, and ERISA*

*Litig.*, 909 F.Supp.2d 259, 270 (S.D.N.Y. 2012)). "[C]ourts look primarily to the opinion of counsel in determining the reasonableness and fairness of a plan of allocation." *Id.* (quotation marks omitted). "As numerous courts have held, a plan of allocation need not be perfect." *Christine Asia Co. v. Yun Ma*, No. 15-md-02631 (CM), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

Here, the payment allocation plan tracks Plaintiffs' damages model and yields a fair result. Further, each Class Member's allocation is based on their *pro rata* share of the settlement fund. Such allocation plans are routinely accepted. *See In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (CM), 2020 WL 2749223, at *7–8 (S.D.N.Y. May 27, 2020) (collecting cases and approving *pro rata* distribution plan as "efficient[] and fair[]" which is "like many similar plans in analogous cases"); *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity").

### D. The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Award Was Negotiated at Arm's Length and Is Well Within the Norms of this Circuit

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." Class Counsel will request that the Court approve litigation expenses and attorneys' fees of one-third of the $3,500,000 Settlement Fund (i.e. $1,166,666). Settlement Agreement § 4.7. This sum is consistent with fee awards in the Second Circuit. *See Hezi v. Celsius Holdings, Inc.*, No. 21-cv-9892 (JHR), 2023 WL 2786820, at *5 (S.D.N.Y. Apr. 5, 2023) (fee award of 33% of settlement fund was "consistent with fee awards in other similar settlements approved in this District").

Class Counsel's requested fee and expense award is also reasonable in relation to the result

achieved: $3,500,000 in monetary benefits as well as non-monetary relief reasonably valued at $1,300,000. While Class Counsel will only seek payment based on the settlement's cash component, in awarding attorneys' fees, it is well settled that "courts include the value of both the monetary and non-monetary benefits conferred on the Class." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at *15 (S.D.N.Y. Sept. 9, 2015); *see also id.* at *10 ("The overall value of the settlement comprises monetary as well as non-monetary relief."). "Leading authorities agree, as do courts in this Circuit and nationwide." *Id.* at *15 (collecting authorities); *see also Sykes v. Harris*, No. 09-cv-8486 (DC), 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (considering value of non-monetary relief in setting class counsel fees); Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, 35 (3d Ed. 2010); The American Law Institute, *Principles of the Law of Aggregate Litigation*, § 3.13 (Mar. 1, 2010).

When considering the $1,300,000 non-monetary benefit, the requested attorneys' fee and expense award represents just 24.3% of the $4,800,000 total settlement benefit. McInturff Decl. ¶ 32. Class Counsel's requested fee is thus at the low end of fees approved in comparable cases, as a fee of one-third of the total value obtained for the class has repeatedly been deemed reasonable in the Second Circuit. *See Hezi*, 2023 WL 2786820, at *5. It is thus no surprise that Courts in this District frequently approve class action fee requests for one third of the value obtained in cases of a similar size to the instant matter. *See, e.g.*, *Solis v. OrthoNet LLC*, No. 19-cv-4678 (VSB), 2021 WL 2678651, at *2, 4 (S.D.N.Y. June 30, 2021) (one-third of $3 million wage and hour settlement and noting that "[c]ourts in this district have routinely approved requests for one-third of the settlement fund in cases with settlement funds that are the same or larger than this fund").[3] Class

[3] *See also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (awarding 33% of $4,900,000 settlement because "the requested amount [was] consistent with the norms of class litigation in this circuit") (internal quotation marks omitted); *Johnson v. Brennan*, No. 10-cv-4712 (CM), 2011 WL 4357376, at *19

*Footnote Continued on Next Page*

Counsel's fee and expense request was also subject to arms-length negotiations, was facilitated by an experienced mediator, and will be disclosed to the Class.  McInturff Decl. ¶ 33.

Application of the lodestar/multiplier method also confirms the reasonableness of Class Counsel's request.  Although courts in this District have found the percentage method "preferable" to the lodestar method, *Fleisher*, 2015 WL 10847814, at *14,[4] the Second Circuit has advised that the lodestar method remains potentially useful as a "cross-check" of the percentage method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Here, Class Counsel's lodestar to date is $1,611,536.21, which reflects the over 2,345 hours counsel reasonably devoted in three years of investigation and litigation.  McInturff Decl. ¶¶ 35–36.  Class Counsel are thus ***not*** asking for a multiplier, although the result achieved from three years of pure contingency work certainly would have warranted one.[5]  In fact, comparing Class Counsel's lodestar with the requested fee here yields a ***negative*** multiplier of .72, or a 28% discount on the fair-market value of their legal services.

Finally, Class Counsel's requested fee and expense request is consistent with public policy, because if the "important public policy [of remedial statutes] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010); *see also In re Merrill Lynch*

---

(S.D.N.Y. Sept. 16, 2011) (collecting cases with settlements in excess $6 million and noting that "courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds substantially larger than this one"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-cv-4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 settlement).

[4] *See also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." (cleaned up)).

[5] *See, e.g.*, *Lopez v. Fashion Nova*, No. 20-cv-9238 (LGS), 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) ("In this Circuit, courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." (cleaned up)); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir. 2008) (stating that a "2.04 lodestar multiplier, is toward the lower end of reasonable fee awards").

*Tyco*, 249 F.R.D. 124, 141–42 (S.D.N.Y. 2008) ("In order to attract well qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." (cleaned up)). This is especially true where, like here, there are no public enforcement actions.

The Settlement also provides substantial benefits to the public by compensating workers and deterring other employers, who will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they fail to properly compensate workers.

Moreover, the fee request does not bestow a windfall on Class Counsel (*see* lodestar cross-check discussion above) and represents fair compensation for the three years of contingency work they devoted to this case. Simply put, Class Counsel's requested fee is reasonable, as this amount falls well within the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar/multiplier methodology. The Court need not rule on fees and costs now, as pursuant to Rule 23(h), Plaintiffs will move for final court approval of Class Counsel's fee and expense request simultaneously with the Motion for Final Approval of the Settlement.[6]

### E. Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Actual Damages and Is Reasonable

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Notes to Fed. R. Civ. P. 23.

[6] Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Here, there are "no agreements under Rule 23(e)(3) that the Court must review." *In re Payment Card*, 330 F.R.D. at 36, n.30.

Here, the settlement treats Class Members fairly in relation to their actual damages. As discussed *supra*, the allocation formula bases each Class Member's payment on their *pro rata* share of the fund. Courts routinely find that such *pro rata* allocations are "fair," *In re Namenda*, 2020 WL 2749223, at *7–8, and "equitabl[e]," *Meredith Corp.*, 87 F. Supp. 3d at 667. Moreover, the payment allocation plan correlates with Plaintiffs' damages model. McInturff Decl. ¶ 24.

Further, all Class Members will be bound by the same release. Settlement Agreement § 4.11(A). This release does not affect the apportionment of relief among class members, demonstrating equity. *In re Payment Card*, 330 F.R.D. at 47.

### F. The Remaining Grinnell Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate

1. The Reaction of the Class Is Too Early to Gauge and Therefore Neutral (*Grinnell* Factor 2)

Notice has not yet been issued to the Class. The Court should therefore assess this factor after Class Members have had an opportunity to respond. At this early stage, this factor is neutral.

2. Discovery Is Advanced Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although litigating to trial would likely require many hundreds (if not thousands) of hours of additional discovery, the parties have completed more than enough discovery to recommend settlement. The question raised by this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Bryant*, 2020 WL 563804, at *3 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement but [are] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176) (cleaned up).

The discovery taken here easily meets this standard. As set forth *supra* at pp. 1–2, Class

Counsel undertook in-depth pre-litigation investigation, and the parties litigated extensively, engaging in substantial discovery, including written discovery, third-party discovery, a deposition, and extensive analysis of payroll records.  McInturff Decl. ¶¶ 16–19.  The parties also undertook significant pre- and post-lawsuit legal research and analysis concerning Plaintiffs' claims, and conducted extensive motion practice, including multiple court hearings and two rounds of conditional certification and dismissal briefing.  *Id.*  As a result of this and vigorous settlement discussions during two mediation sessions overseen by an experienced class action mediator, Class Counsel were able to evaluate the strengths and weaknesses of Class Members' claims against Plaintiffs' damages model.

Based on this record, the parties were well-equipped to make the compromises necessary to resolve this litigation.  *Bryant*, 2020 WL 563804, at *3 (approving settlement after similar discovery in wage and hour litigation where "parties were well-positioned to evaluate the strength of their respective positions and potential damages recoverable"); *Ballinger v. Advance Magazine Publrs., Inc.*, No. 13-cv-4036 (HBP), 2014 WL 7495092, at *2 (S.D.N.Y. Dec. 29, 2014) (granting approval where case "settled before depositions were conducted" but "both sides were well acquainted with the facts and the nature of the various internships at issue"); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to defendants' time and pay practices and where counsel's negotiations had "been in no way collusive").

   3.   Defendants Likely Could Not Withstand a Greater Judgment
        (*Grinnell* Factor 7)

The parties negotiated heavily over the settlement amount, taking into account Defendants' ability to pay a settlement that would both compensate Class Members and allow NYHC to remain

solvent. McInturff Decl. ¶ 23. Settlement now, before further defense costs are incurred in this matter, will ensure Class Members receive settlement payments without the heightened risk of unavailability of funds to satisfy a judgment sometime in the future.

This factor therefore weighs strongly in favor of the Court's approval of the settlement. *Chambery v. Tuxedo Junction Inc.*, No. 12-cv-6539 (EAW), 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) (settlement strongly favored where defendant's finances played a large role in reaching settlement). Further, even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Bryant*, 2020 WL 563804, at *4; *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (same).

4. The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation
(*Grinnell* Factors 8 and 9)

"Determining whether a settlement amount is reasonable 'is not susceptible of a mathematical equation yielding a particularized sum.'" *Bryant*, 2020 WL 563804, at *5 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, there is a range of reasonableness[,] a range which recognize[s] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974); *see also Brennan*, 2011 WL 4357376, at *11 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."). Here, Defendants have agreed to settle this case for a substantial amount: $3,500,000, plus non-monetary reforms valued at an additional $1,300,000. Even if the Court were to only consider the $3,500,000 monetary relief, this sum is more than 74% of the $4,703,062 in pecuniary harm Class Counsel

calculated prior to mediation. McInturff Decl. ¶ 24. To be sure, there is a *possibility* that at trial the Class could obtain amounts in excess of their calculated out-of-pocket losses, including that the Court would allow Plaintiffs' $9.3 million damages model,[7] or that Plaintiffs would achieve multiples in the form of liquidated damages and interest. *Id.* ¶ 25. But those outcomes are not guaranteed and would require Class Members to wait additional years for payment from this matter, assuming such payments were even ordered and collected from Defendants. *Id.*

Given the attendant risks of litigation, the settlement provides substantial value to each Class Member. Every Class Member will receive a payment correlated to their out-of-pocket damages, a decidedly potential realistic recovery at trial. Weighing the benefits of the settlement against the risks of proceeding with litigation, the settlement is reasonable. *See Bryant*, 2020 WL 563804, at *5 ("The settlement amount represents substantial value given the risks of litigation.").

* * *

In sum, the relevant factors strongly favor preliminary approval. Because the settlement, "on its face, is fair, adequate, and reasonable, and not the product of collusion," the Court should grant preliminary approval. *Yun Ma*, 2019 WL 5257534, at *15 (cleaned up).

## IV. THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED

Plaintiffs seek to certify the following class under Federal Rule of Civil Procedure 23(e): all persons employed by NYHC as home care workers any time between June 4, 2015 through November 8, 2023. As discussed below, the Class meets the certification requirements, which Defendants do not oppose. Settlement Agreement § 3.4; *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class

---

[7] Inclusion of Plaintiffs' FLSA and NYLL Prompt Payment claims would increase total potential class-wide damages to $9.3 million, but collecting the full measure of damages on these claims would require a liquidated damages award of 100% of allegedly late wages, which wages, however, were ultimately paid.

action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

"Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *Gonzalez v. PB Hudson LLC*, No. 17-cv-2010 (VSB), 2018 WL 11255318, at *2 (S.D.N.Y. Oct. 10, 2018).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Plaintiffs request certification of a Rule 23(b)(3) damages class and thus must satisfy Rule 23(b)(3)'s requirements.  Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires courts to find that:

> [Q]uestions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Vecchio*, 2023 WL 2842702, at *4 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  Here, class certification is particularly appropriate—in fact, as Your Honor has recognized, numerous courts have found that wage claims "***are about the most perfect questions for class treatment***." *Lawrence v. NYC Med.*

*Prac., P.C.*, No. 18-cv-8649 (GHW), 2021 WL 2026229, at *11 (S.D.N.Y. May 20, 2021) (emphasis added) (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007)); *see also Alves*, 2022 WL 1002817, at *22 (same).

**A. Numerosity**

"Numerosity is presumed for classes larger than forty members." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Plaintiffs easily satisfy this requirement because there are 5,157 Class Members. McInturff Decl. ¶ 22. In addition, "sheer size alone is not the only factor to consider when analyzing numerosity . . . and a finding of numerosity is supported where, as here, the potential class members are of limited financial means, or may fear retaliation by their employer." *Spencer v. No Parking Today, Inc.*, No. 12-cv-6323 (AJP), 2013 WL 1040052, at *13 (S.D.N.Y. Mar. 15, 2013) (collecting cases).

**B. Commonality**

The Rule 23 Class also satisfies the commonality requirement. "Commonality is satisfied where there are questions of law or fact common to the class." *Falberg v. Goldman Sachs Grp., Inc.*, No. 19-cv-9910 (ER), 2022 WL 538146, at *7 (S.D.N.Y. Feb. 14, 2022) (cleaned up). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("Their claims must depend upon a common contention—for example, the assertion of [unlawful conduct] on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

This case involves numerous common issues and courts in this District routinely find

commonality when presented with the same common questions as those at issue here. *See Lawrence v. NYC Med. Prac., P.C.*, No. 18-cv-8649 (GHW), 2024 WL 307842, at *5 (S.D.N.Y. Jan. 26, 2024) ("In wage cases the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."); *Alves*, 2022 WL 1002817, at *21 (same); *No Parking Today*, 2013 WL 1040052, at *15 (same).

### C. Typicality

Rule 23 requires that the claims of the representative party be typical of the class's claims. *Lawrence*, 2024 WL 307842, at *6. "Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (quoting *Giuliani*, 126 F.3d at 376)). "[T]he typicality criterion does not require that the factual predicate of each claim be identical to that of all class members." *MacNamara v. City of New York*, 275 F.R.D. 125, 138 (S.D.N.Y. 2011) (cleaned up); *see also Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (typicality not defeated by "minor variations in the fact patterns underlying individual claims"). Typicality should also "be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Sanchez v. Kambousi Rest. Partners, LLC*, No. 15-cv-5880 (CM), 2016 WL 11717105, at *5 (S.D.N.Y. Aug. 5, 2016).

Here, typicality is easily met because all Class Members' claims, including Plaintiffs', "arise out [of] Defendants' policies and course of conduct regarding the ways in which [class members] were paid for their labor." *Vargas v. Howard*, 324 F.R.D. 319, 326 (S.D.N.Y. 2018). In fact, this case is virtually indistinguishable from the many wage and hour class actions in this Circuit where courts have found typicality. *See., e.g.*, *id.* ("The representatives' claims against Defendants, like the claims of the absent class members, arise out Defendants' policies and course of conduct regarding the ways in which [employees] were paid for their labor."); *Zivkovic v. Laura*

*Christy LLC*, 329 F.R.D. 61, 71 (S.D.N.Y. 2018) ("[T]he members of the putative subclasses were subject to the same policies regarding tip credits, overtime, spread of hours pay, and wage notices and statements."); *Lawrence*, 2024 WL 307842, at *6 ("Their claims against Defendants, like the claims of the absent class members, arise out Defendants' policies and course of conduct regarding timekeeping and how receptionists and patient coordinators were paid.").

**D. <u>Adequacy of the Named Plaintiffs and Proposed Class Counsel</u>**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation is a two-part test: class counsel must be qualified and able to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." *Sanchez*, 2016 WL 11717105, at *5 (cleaned up); *see also Toure*, 2007 WL 2872455, at *7 ("The adequacy requirement exists to ensure that the named representative will have an interest in vigorously pursuing the claims of the class, and have no interests antagonistic to the interests of other class members." (cleaned up)).

Plaintiffs meet the adequacy requirement because there is no evidence that they have interests that are antagonistic to or at odds with those of the Class Members and they seek to maximize the Class's recovery. *Sanchez*, 2016 WL 11717105, at *5; *see also Lawrence*, 2024 WL 307842, at *7 (adequacy satisfied where Plaintiffs "share[d] their claims with absent class members" and were therefore "capable of vigorously pursuing the claims of the class"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class . . . ."). Moreover, as detailed on pp. 5–6 above, Plaintiffs have contributed significant time and effort to the case. In sum, Plaintiffs have been excellent class representatives.

Class Counsel also meet the adequacy requirement of Rule 23(a)(4). As set forth on pp. 1–

2, 11 above, Class Counsel have been zealous and able advocates for the Class. *Id.*

**E. Certification Is Proper Under Rule 23(b)**

Plaintiffs request certification of a Rule 23(b)(3) damages class for settlement purposes. Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); *see also Asare v. Change Grp. of New York, Inc.*, No. 12-cv-3371 (CM), 2013 WL 6144764, at *7 (S.D.N.Y. Nov. 18, 2013) (predominance satisfied where "the Settlement Class [wa]s unified by common factual allegations"—namely, the defendant's allegedly illegal pay practices).

1. Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007); *see also Asare*, 2013 WL 6144764, at *7 ("Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members . . . ." (quoting Fed. R. Civ. P. 23(b)(3))).

The essential predominance inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *In re Visa Check/Master Money Antitrust Litig.*, 280

F.3d 124, 139 (2d Cir. 2001)). Simply because a defense "may arise and . . . affect different class members differently . . . does not compel a finding that individual issues predominate over common ones." *In re Visa Check*, 280 F.3d at 138. Where class members' claims are "unified by a common legal theory . . . and by common facts," the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

District courts "have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices." *Murphy v. LaJaunie*, No. 13-cv-6503 (RJS), 2015 WL 4528140, at *7 (S.D.N.Y. July 24, 2015) (collecting cases). "[T]he types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each plaintiff might be entitled, are inevitable and do not defeat the predominance requirement." *Alves*, 2022 WL 1002817, at *22 (quoting *Zivkovic*, 329 F.R.D. at 79).

Here, Class Members' common factual allegations and common legal theory—that Defendants allegedly violated state wage and hour laws—predominate over any variations among Class Members. Thus, for all Class Members, the issue of whether they were damaged by the alleged unlawful wage and hour practices will predominate "because if Plaintiffs succeed in showing" the alleged violations, "each of the class plaintiffs will likely prevail." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (cleaned up). A finding of predominance in this case is therefore squarely in line with the majority of cases in this District. *See, e.g.*, *id.* (predominance met in class action alleging NYLL and FLSA claims); *Alves*, 2022 WL 1002817, at *22 (predominance met in class action alleging failure to pay overtime and provide required wage notices and statements); *Iglesias-Mendoza*, 239 F.R.D. at 373 (predominance met in class action alleging failure to pay minimum wage and overtime); *Zivkovic*, 329 F.R.D. at 75

(predominance met in class action alleging "unlawful common payment policies").

2. A Class Action Is a Superior Mechanism for Adjudicating Claims

The second part of the Rule 23(b)(3) analysis entails examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Rule 23(b)(3) sets forth non-exclusive superiority factors, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether the case would be manageable as a class action at trial; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[8]

Here, Class Members have limited financial resources with which to prosecute individual actions. McInturff Decl. ¶ 61. The settlement thus represents an optimal result for the low-wage workers that will undoubtedly benefit from their settlement payments. Indeed, it is also "extremely unlikely" that a meaningful number of proposed Class Members would bring separate actions given that they are "almost exclusively low-wage workers with limited resources" and have little "familiarity with the legal system." *Iglesias-Mendoza*, 239 F.R.D. at 373 (finding superiority requirement "easily satisfied"); *Alves*, 2022 WL 1002817, at *23 (same).

Further, courts "have consistently held that 'a class action is superior where, as here,

---

[8] Another factor, trial manageability, "is not of consequence in the context of a proposed settlement." *Johnson*, 2011 WL 4357376, at *6 n.1; *see also Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."). "Moreover, denying class certification on manageability grounds is 'disfavored' and 'should be the exception rather than the rule.'" *Johnson*, 2011 WL 4357376, at *6 n.1 (quoting *In re Visa Check*, 280 F.3d at 140).

potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants.'" *Zivkovic*, 329 F.R.D. at 76 (quoting *Schear*, 297 F.R.D. at 126). Adjudicating separate actions all arising from the same operative facts also burdens the courts. To date, no difficulties have occurred in managing this action and this District is an appropriate forum for adjudicating this case as many of Class Members worked in this District. Additionally, there is "overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions." *Damassia*, 250 F.R.D. at 164.

Employing the class action device here will not only achieve economies of scale, but will also conserve judicial resources, prevent inconsistent adjudications, and preserve public confidence by avoiding the waste and delay of repetitive proceedings. *See, e.g.*, *Sanchez*, 2016 WL 11717105, at *6. "Therefore, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Plaintiffs' and Class Members' claims." *Id.*

## V.   THE FLSA COLLECTIVE SHOULD BE CONDITIONALLY CERTIFIED

Plaintiffs seek to certify the following collective under Section 216(b) of the FLSA (the "FLSA Collective"): "all persons employed by NYHC as home care workers any time between June 4, 2018 through November 8, 2023." Settlement Agreement § 1.14. As discussed below, the FLSA Collective meets the certification requirements, and Defendants do not oppose provisional certification for settlement purposes only. Settlement Agreement § 3.4.

Under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) an FLSA settlement should be approved if it reflects "a reasonable compromise over disputed issues." *Garcia v. Good for Life by 81, Inc.*, No. 17-cv-7228 (BCM), 2018 WL 3559171, at *2 (S.D.N.Y. July 12, 2018). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Torres*, 2010 WL 5507892, at *6. "Generally,

there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).

"In determining whether a proposed FLSA settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal citations omitted).

Critically, even after *Cheeks* courts in this District have held that because "an FLSA settlement is examined with less scrutiny than a class action settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Surdu*, 2018 WL 1474379, at *6 (cleaned up); *Bryant*, 2020 WL 563804, at *2 (same). This is because "settlement of a collective action does not implicate the same due process concerns as the settlement of a class action." *Surdu*, 2018 WL 1474379, at *6.

Here, Plaintiffs' evidence of Class Members' range of possible recovery underscores that the parties have reached a reasonable compromise of contested FLSA claims. Even if the Court were to only consider the $3,500,000 in payments to Class Members, this sum is more than 74% of the $4,703,062 damages model Plaintiffs used in negotiating settlement. Class Members are thus giving up only 26% of their out-of-pocket losses in exchange for foregoing the risks of litigating this case through trial and appeals. Indeed, the recovery here is well within the range

that Courts in this district have found fair and reasonable. *See Siddiky v. Union Square Hosp. Grp., LLC*, No. 15-cv-9705 (JCF), 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (collecting FLSA cases approving settlements where range of recovery for class members ranged from 13% to 25%); *Larrea v. FPC Coffees Realty Co.*, No. 15-cv-1515 (RA), 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (recovery of 43% was fair and reasonable).

Turning to the other *Wolinsky* factors, that the settlement will enable the parties to avoid further protracted litigation and appeals is well documented *supra* at pp. 11–12; the seriousness of the litigation risks faced by both sides if this litigation were to continue is likewise established *supra* at pp. 12–13; and that the settlement is the product of arms-length bargaining between experienced counsel and is untainted with fraud or collusion is set forth *supra* at p. 3. In short, this settlement easily satisfies the criteria for preliminary *Cheeks* and *Wolinsky* review.

## VI. THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED

The parties respectfully request that the Court approve the parties' agreed Class and Collective Action Notice (the "Notice," attached as McInturff Decl. Ex. C). The content of the Notice fully complies with due process, Federal Rule of Civil Procedure 23, and 29 U.S.C. § 216(b). Pursuant to Rule 23(c)(2)(B), notice must provide:

> [T]he best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice also satisfies the requirements of the FLSA. To serve the "broad remedial goal" of the FLSA, courts can order notice to other potentially similarly situated individuals. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). In *Hoffmann-La Roche*, the Supreme Court held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." 493 U.S. at 170.

Here, the Notice satisfies these requirements and adequately apprises Class Members of their rights. Because "[a] good notice starts with the envelope design,"[9] the Notice will be delivered in an envelope that is based on the Federal Judicial Center's sample notice envelope. *See* McInturff Decl. Ex. D (notice envelope).[10]

As for the Notice itself, it is based on the Federal Judicial Center's Illustrative Forms of Class Action Notices and informs Class Members how to exclude themselves from the Settlement, that they can object to the Settlement, and the consequences of inaction.[11] The Notice also describes the material terms of the Settlement, informs Class Members about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Courts in this District have approved class notices even when they provided only general information about a settlement. *See, e.g.*, *George v. Shamrock Saloon II, LLC*, No. 17-cv-6663 (SLC), 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021) ("Class notice need only

[9] "Judges' Class Action Notice and Claims Process Checklist," Federal Judicial Center, a*vailable at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

[10] *Available at* https://www.fjc.gov/sites/default/files/2015/ClaAct07.pdf.

[11] *Available at* https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction.

describe the terms of the settlement generally," which is a "minimal requirement." (cleaned up)); *see also Brazier v. Real Hosp. Grp., LLC*, No. 20-cv-8239 (VM), 2021 WL 7210088, at *3 (S.D.N.Y. Nov. 12, 2021) ("The proposed Settlement Notice is satisfactory because it describes the terms of the settlement, informs the Class Members about the allocation of attorneys' fees, and provides specific information regarding the date, time and place of the final approval hearing."). "Notice need not be perfect, but need be only the best notice practicable under the circumstances . . . so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008). The detailed information in the Notice far exceeds this standard and fully complies with the requirements of Rule 23(c)(2)(B) and the FLSA.

The parties' notice plan also satisfies Rule 23(c)(2)(B)'s requirement that the Court order "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In accordance with the Settlement Agreement the parties will distribute the Notice by U.S. Mail, and their notice plan complies fully with due process and Rule 23. As discussed above, the parties have agreed to a detailed notice process that reflects best practices for class action notices and contains numerous quality control measures to ensure that the notice will reach as many Class Members as possible. *See supra* at pp. 7–8.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and endorse the proposed Order.

Dated:  March 15, 2024
         New York, New York

Respectfully submitted,

 /s/ *J. Burkett McInturff*
J. Burkett McInturff (JM-4564)
Ethan D. Roman (ER-5569)
**WITTELS MCINTURFF PALIKOVIC**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com

*Counsel for Plaintiffs, the Collective, and the Class*

Andrey Belenky (AB-1976)
**KHEYFITS BELENKY LLP**
80 BROAD STREET, 5TH FL
NEW YORK, NY 10004
Phone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kblit.com

*Co-Counsel for Plaintiffs, the Collective, and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the following documents in support of Plaintiffs' Motion for Preliminary Approval of the Class and Collective Action Settlement and Related Relief was served via ECF this 15th day of March 2024 upon the below-listed counsel of record:

1. Plaintiffs' Notice of Unopposed Motion for Preliminary Approval of the Class and Collective Action Settlement and Related Relief, dated March 15, 2024;

2. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of the Class and Collective Action Settlement and Related Relief, dated March 15, 2024;

3. Declaration of Lead Class Counsel J. Burkett McInturff, dated March 15, 2024, with Exhibits; and

4. Proposed Order (Exhibit B to Declaration of J. Burkett McInturff).

Peter C. Godfrey, Esq.
Joshua Feinstein, Esq.
Hodgson Russ LLP
605 Third Avenue, Suite 2300
New York, NY 10158
(716) 848-1336
pgodfrey@hodgsonruss.com
jfeinstein@hodgsonruss.com

*Attorneys for Defendants*

/s/ J. Burkett McInturff
J. Burkett McInturff