UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS FRANCK, LI ZHEN FENG, YERALDIN REYES, CHARISMA BARBER, CASSONDRA FLOYD, and ELIZABETH GUERRERO,<br><br>Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW YORK HEALTH CARE INC., MURRY ENGLARD, and GLEN PERSAUD,<br><br>Defendants. | Case No. 21-CV-4955 (GHW) (JLC) |

**DECLARATION OF J. BURKETT MCINTURFF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT AND RELATED RELIEF**

I, J. Burkett McInturff, declare as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.      I am a partner at Wittels McInturff Palikovic ("WMP").  WMP and Kheyfits Belenky LLP are counsel for Plaintiffs and the proposed Class.  Based on my active participation in and supervision of all material aspects of the prosecution and settlement of this wage and hour class action, I have personal knowledge of the matters set forth herein.

2.      I make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement and Related Relief (the "Preliminary Approval Motion").  Through Plaintiffs' Preliminary Approval Motion, Plaintiffs seek an Order: (1) granting preliminary approval of the terms set forth in the parties' Class Action Settlement Agreement ("Settlement Agreement"), attached hereto as **Exhibit A**; (2) preliminarily certifying the proposed "Rule 23 Class" and "FLSA Collective" for settlement purposes; (3) approving the proposed Notice of Proposed Class Action Settlement and Final Approval Hearing (the "Notice") and directing its distribution; (4) appointing WMP and Kheyfits Belenky LLP as Class Counsel ("Class Counsel"); (5) scheduling the Final Approval Hearing; and (6) granting such other relief as the Court deems just and proper.[1]

## I.      Class Counsel's Background

3.      I am the partner responsible for handling this matter for my law firm.  I have been admitted to practice law in New York for 12 years.  I graduated from New York University School of Law in 2010.  For the last 12 years more than 90% of my practice has been devoted to litigating employment and consumer protection class actions.

4.      My law firm, WMP, has deep experience handling class actions, including

---

[1] The proposed Order granting preliminary approval is attached hereto as **Exhibit B**.  The proposed Notice and notice transmittal envelope are attached as **Exhibits C** and **D**, respectively.

prosecuting and settling wage and hour class actions generally, with particularized expertise in home care wage and hour matters.  For example, in 2017, WMP obtained a $1,500,000 settlement on behalf of home care workers who brought claims for overtime and other wages, which settlement was approved by Magistrate Judge Cheryl L. Pollak in the Eastern District of New York.  In 2020, WMP was appointed as Plaintiffs' Coordinating Counsel in a class-wide arbitration involving more than forty home care agencies.  And in 2021, WMP obtained a wage and hour settlement of $6,500,000 on behalf of home care workers, which was approved by Magistrate Judge Lois Bloom in the Eastern District of New York.

5. Further, WMP currently serves as lead counsel in *Diaz v. New York Paving, Inc.*, No. 18-cv-4910 (ALC) (GWG) (S.D.N.Y.), a large and complex wage and hour dispute where the firm obtained class and collective action certification and is currently overseeing all expert discovery and trial preparation efforts.

6. The lawyers assigned to this matter are also well-versed in wage and hour law and in class action law and are highly qualified to represent the interests of the Class.  Lawyers at WMP have represented classes of employees and consumers in more than a dozen class action lawsuits in state and federal courts throughout the United States, including many in this District.  Their backgrounds and qualifications are detailed in WMP's firm resume.

7. Attached to this Declaration as **Exhibit E** is a true and correct version of WMP's 2024 Firm Resume.

8. In addition, Kheyfits Belenky LLP has extensive experience in wage and hour matters, and in home care wage and hour litigation specifically.  For example, attorneys at Kheyfits Belenky were co-counsel to WMP in all three of the class action wage and hour matters referenced in Paragraph 4.  Attorneys at Kheyfits Belenky have also represented plaintiffs in

more than a dozen individual wage and hour matters. Additionally, attorneys at Kheyfits Belenky have served as co-counsel to WMP in four consumer protection class actions, including two which are currently ongoing.

9. Further, the team of attorneys and staff litigating this matter on behalf of Class Members dedicated substantial time and resources, investigating, prosecuting, and settling this case. The work that Class Counsel has performed in this case demonstrates our skill and commitment to representing the interests of the Class.

## II. Introduction to the Proposed Settlement and Relief Sought by this Motion

10. The proposed settlement resolves the claims brought by Plaintiffs Louis Franck, Li Zhen Feng, Yeraldin Reyes, Charisma Barber, Cassondra Floyd, and Elizabeth Guerrero ("Plaintiffs") against Defendants New York Health Care Inc., Murry Englard, and Glen Persaud (collectively, "NYHC" or "Defendants").

11. Plaintiffs' Preliminary Approval Motion seeks preliminary approval of the settlement of this wage and hour class action—a settlement achieved after three years of extensive investigation, hard-fought litigation, and forceful negotiations overseen by a third-party mediator. The final terms of the parties' settlement were memorialized in the Settlement Agreement that is now being submitted for the Court's preliminary approval. At all times, the parties' negotiations have been vigorous, adversarial, and conducted at arms-length.

12. The proposed settlement provides a monetary benefit to the Class in the form of a $3,500,000.00 Settlement Fund, with the settlement payments (net of expenses and fees) to be distributed directly to Class Members. As described herein, each Class Member is entitled to a *pro rata* share of the Settlement Fund based on each individual's aggregate damages. Further, the parties agree that as a result of this action, NYHC reformed its pay practices to further ensure

4

that aides are paid in accordance with the law.  With the assistance of their third-party mediator, the parties negotiated the value of these enhancements at not less than $1,300,000, thus yielding a class and collective action settlement valued at not less than $4,800,000.

13. In arriving at this favorable result, Plaintiffs also recognized the expense and length of a trial and potential appellate process, and further acknowledged that both certification of the class and ultimate success on the merits remain uncertain.

14. Pursuant to the terms of the Settlement Agreement, Plaintiffs now move for entry of the proposed preliminary approval order which accomplishes the following:

> (i) grants preliminary approval of the proposed settlement;
>
> (ii) approves the form and content of the Notice and the parties' plan for its distribution; and
>
> (iii) schedules the final farness hearing so the Court can assess Class Members' reaction to the settlement.

15. In the paragraphs that follow, I will describe the factual background and procedural history of this lawsuit and summarize the terms of the proposed Settlement Agreement. Accompanying this Declaration is Plaintiffs' supporting Memorandum of Law that demonstrates why, under governing law, this Court should preliminarily approve the settlement and grant the relief requested in Plaintiffs' Motion.

### III. Thorough Investigation of Class Members' Claims

16. Before the initiation of this action, I, along with a team of attorneys, conducted a thorough investigation into the merits of the potential claims and defenses.  Our investigation and legal research focused on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.

17. Our team also conducted in-depth background research on NYHC, obtaining information on NYHC's compensation policies and practices.  We conducted in-depth interviews

with Plaintiffs and other former NYHC home care workers regarding Defendants' payment policies and practices, the number of hours home care aides worked, and other information pertinent to Plaintiffs' claims in this action.  In addition, we obtained and reviewed numerous documents and communications from Plaintiffs and others, and conducted research and investigation into the pertinent and changing case law and the facts developed in other home care wage and hour class actions that informed this case.  Our team also performed extensive legal research and analysis concerning the particular legal complexities attendant to home-care wage and hour claims.

### IV.     Plaintiffs' Complaint, Discovery, and the Parties' Settlement Negotiations

18.     On June 4, 2021, Plaintiffs filed their Class and Collective Action Complaint against Defendants in the United States District Court for the Southern District of New York (ECF No. 1), which was later amended on September 21, 2021 (ECF No. 20) and March 17, 2023 (ECF No. 166).

19.     The litigation spawned substantial discovery, including: written discovery; third-party discovery; the production and analysis of over a hundred and forty thousand payroll, time, and other electronic records and documents; numerous interviews with Plaintiffs, Class Members, and potential witnesses; a deposition of one of Defendants' employees; and the negotiation of a protective order (ECF No. 51), an ESI Protocol (ECF No. 88), a search term protocol (ECF No. 135), and protracted search term negotiations.  The parties also conducted extensive motion practice, including multiple court hearings and two rounds of conditional certification (ECF Nos. 61 and 185) and dismissal briefing (ECF Nos. 85 and 95, 178), raised numerous discovery disputes (ECF Nos. 72, 73, 78, 89, 123), and undertook preparations for proceedings on class certification, summary judgment, and trial.

20. In late 2023, the parties agreed to participate in private mediation. The parties then engaged in extensive pre-mediation damages analysis, including preparing comprehensive reports on liability and damages. This analysis encompassed the review of eight years of time and payroll records for 100 Class Members selected via a sampling methodology that Plaintiffs and their statistics expert negotiated with Defendants. The parties thereafter engaged in arms-length mediation on November 8, 2023 with the assistance of Martin F. Scheinman, Esq., a noted mediator with extensive experience in home care class action litigation. With Mr. Scheinman's assistance, the parties reached agreement on most material settlement terms and negotiated a memorandum of understanding, which was executed on November 10, 2023. Following additional hard-fought negotiations and another mediation session with Mr. Scheinman on February 15, 2024, the Settlement Agreement was fully executed by Defendants on March 5, 2024 and provided to Class Counsel the following day.

21. At all times, the parties' negotiations have been vigorous, adversarial, and at arms-length.

## V. Settlement Terms and Allocation Formula

22. According to Defendants' records, there are 5,157 Class Members.

23. Under the Settlement Agreement, Defendants will establish a cash fund of $3,500,000 ("Settlement Fund"). Settlement Agreement § 4.1. Each Class Member will then be issued a direct settlement payment without the need to submit a claim. *Id.* § 4.4. Class Members' share of the settlement will be calculated based on their *pro rata* share of all hours worked by Class Members as reflected in Defendants' payroll records. *Id.* § 4.2. In addition, each Class Member will be afforded a minimum allocation of $75 to account for Plaintiffs' claims arising from NYHC's statutory wage disclosure obligations. *Id.* § 4.2. The parties

7

negotiated heavily over the settlement amount, taking into account Defendants' ability to pay a settlement that would both compensate Class Members and allow NYHC to remain solvent.

24. The chosen distribution plan reasonably correlates with Plaintiffs' claims for unpaid wages and will fairly compensate Class Members in relation to their alleged damages. Notably, the $3,500,000 Settlement Fund represents more than 74% of the $4,703,062 in pecuniary class-wide harm that Class Counsel calculated prior to mediation.

25. There is a *possibility* that at trial the Class could obtain amounts in excess of their calculated out-of-pocket losses, including that the Court would allow Plaintiffs' $9.3 million damages model or that Plaintiffs would achieve multiples in the form of liquidated damages and interest. Plaintiffs' $9.3 million damages model includes their FLSA and NYLL Prompt Payment claims, but collecting the full measure of damages on these claims would require a liquidated damages award of 100% of allegedly late wages, which wages, however, were ultimately paid. These possible outcomes are not guaranteed and would require Class Members to wait additional years for payment from this matter, assuming such payments were even ordered and collected from Defendants.

26. After accounting for deductions for attorneys' fees and expenses, settlement administration expenses, and a reserve fund to cover administration issues, the average payment to the 5,157 Class Members is expected to be $417.56. This amounts to roughly 31 hours' pay without Class Members having to take additional action to obtain relief.

27. Further, the parties agree that as a result of this action, NYHC reformed its pay practices to further ensure that aides are paid in accordance with the law. Settlement Agreement § 4.6.

28. As for the other settlement payments, at the final approval stage Class Counsel

will request that in recognition of the services they rendered on behalf of the more than 5,000 other aides, seven workers be granted service awards as follows: $3,000 for opt-in plaintiffs Blankumsee and D. Reyes, $4,000 for Plaintiffs Guerrero and Y. Reyes, $6,000 for Plaintiffs Barber and Floyd, and $9,000 for Plaintiff Feng.

29. These proposed awards are intended to compensate these workers for their valuable efforts in assisting counsel in developing the theories of the case and obtaining evidence used to convince NYHC of its risks in defending against liability. Before joining this litigation, these workers all agreed to shoulder the responsibilities of representative plaintiffs. They also reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement, at all times encouraging Class Counsel to obtain the best possible result for Class Members. Plaintiffs also assisted with preliminary settlement negotiations and lent support during two mediation sessions and various follow-up calls. Their participation in this case was significant and critical, as they alerted Class Counsel to valuable claims not unearthed in the initial investigatory phase.

30. The service award request was subject to arms-length negotiations between the parties, was facilitated by an experienced mediator, and will be disclosed to the Class. Plaintiffs will move for Court approval of the Service Award simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

31. In connection with their Motion for Final Approval of the Settlement, Plaintiffs will also request that the Court approve litigation expenses and attorneys' fees of no more than one third of the Settlement Fund (i.e. $1,166,666). This sum is consistent with fee awards in the Second Circuit. In Class Counsel's experience, law firms that represent plaintiffs in contingency employment matters in this Circuit typically charge their clients at least one third (33.33%) of

9

their gross recoveries, exclusive of litigation expenses, and as set forth in the accompanying Memorandum of Law, many courts in this District and elsewhere routinely approve one-third fee awards.

32. Class Counsel's requested fee and expense award is also reasonable in relation to the result achieved for the Class. Here, Class Counsel together are requesting one-third of ***only*** the monetary value obtained for Class Members (i.e. the $3,500,000 fund), yielding a total fee award of $1,166,666. The requested fee does not account for the $1,300,000 in value of the significant equitable relief Class Counsel obtained in this litigation. If the value of these additional sums obtained from Class Counsel's prosecution of this lawsuit is factored into the $4,800,000 gross benefit fund created by Class Counsel's work in this matter—as is customary in calculating class action contingency fees—the requested fee represents 24.29% of the total recovery. Class Counsel's requested fee is thus at the low end of fees approved in comparable cases, as a fee of one-third of the total value obtained for the Class has repeatedly been deemed reasonable and consistent with the norms of class litigation in the Second Circuit.

33. Class Counsel's fee and expense request was also subject to arms-length negotiations between the parties, was facilitated by Mr. Scheinman, and will be disclosed to the Class.

34. Class Counsel have also committed significant resources to the three-year investigation and litigation of this case, brought viable claims and aggressively pursued the facts necessary to prevail on the merits in the event that this case had not settled.

35. Altogether, WMP and Khefits Belenky LLP devoted over 2,345 hours in the three years they spent investigating, prosecuting, and settling this case. The chart below summarizes the billable time each firm performed on behalf of Plaintiffs and the Class.

| SUMMARY OF CLASS COUNSEL'S LODESTAR | | |
|---|---|---|
| **FIRM** | **TOTAL HOURS** | **TOTAL FEES** |
| Wittels McInturff Palikovic | 1,902.5 | $1,377,441.38 |
| Kheyfits Belenky LLP | 442.7 | $234,094.84 |
| **TOTAL** | 2,345.3 | $1,611,536.21 |

36. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from time records maintained by each attorney participating in the case. Based on my knowledge and experience in cases of this kind, the time spent was reasonable and necessary to achieve the excellent result Class Counsel's efforts achieved here.

37. Class Counsel's attorneys' fees are not based solely on the extensive time and effort thus far expended but are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future. Class Counsel anticipate spending additional time with respect to continuing communications with the Settlement Administrator in administering the settlement, and responding to Class Members' inquiries, especially after checks are issued. In Class Counsel's experience, administering class settlements of this nature requires non-negligible post-Fairness Hearing attorney and staff time.

38. In total, the aggregate lodestar of the two law firms that prosecuted this matter for Plaintiffs and the Class amounts to $1,611,536.21. As described more fully in Plaintiffs' accompanying Memorandum of Law, Plaintiffs' counsel are not asking for a multiplier, although as can be seen from the years of work which yielded the remarkable results of this settlement, this is certainly a case that would have warranted a significant multiplier had Plaintiffs' lodestar not exceeded legal fees incurred.

39. In addition, Class Counsel's requested fee—for two law firms that investigated and prosecuted this case for three years without any guarantee of compensation—is 27.6% less than the fair-market value of their lodestar. This represents a substantially discounted charge for the services Class Counsel rendered to Class Members and the public on a purely contingency basis.

40. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case in the face of significant risk. Hybrid wage and hour class and collective actions involving thousands of class members and millions of dollars at stake are, by their very nature, complicated and time-consuming, and attorneys representing clients in these types of class actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery on behalf of all Class Members. Class Counsel stood to gain no compensation in the event the case was unsuccessful.

41. To date, Class Counsel has worked without compensation of any kind, and their compensation is wholly contingent upon the result achieved.

42. The majority of Class Counsel's cases are taken on pure contingency, and Class Counsel cover all out-of-pocket costs and expenses incurred. Thus, when Class Counsel spends time on contingency matters, they do so at significant cost and risk for the firm. Class Counsel frequently turns away cases, including hourly litigation matters and other contingency matters, in

order to enable its attorneys to work on pending contingency matters, primarily class or collective actions.

43. The Parties have agreed on the selection of the firm Arden Claims Services as Settlement Administrator to provide notice to the Class and administer payment of the settlement to Class Members. The Settlement Administrator's fee of up to $70,000 will be paid from the Settlement Fund. Based on the experience of Class Counsel, the Settlement Administrator's fee in this matter is reasonable for a case of this size.

## VI.  The Notice and Settlement Fund Distribution Plan

44. Within fifteen (15) days after entry of the Preliminary Approval Order, Defendants will provide the Settlement Administrator with a Class List, containing, inter alia, the full names, social security numbers, last known addresses, phone numbers, primary language, and hours worked during the Class Period of each Class Member. Settlement Agreement § 3.6(B).

45. In advance of the mailing of any Notice, the Settlement Administrator will set up a case-specific call center, including live operator and voicemail, to provide telephone support address questions from and otherwise provide information to Class Members. *Id.* § 3.6(C). Class Members will be able to have their questions answered and speak to someone in English or their primary language.

46. In advance of the mailing of any Notice, counsel will negotiate in good faith (1) a list of frequently asked questions and answers to be used by the Settlement Administrator in responding to inquiries from Class Members, and (2) the Settlement Administrator's recorded message to callers. *Id.* § 3.6(D). These documents will also be translated as necessary by certified translators.

47. The Settlement Administrator will take reasonable and customary efforts to ensure the Class List is as up-to-date as practicable, including running the Class List through the National Change of Address Database, which provides updated addresses for individuals who filed an address change with the United States Postal Service. *Id.* § 3.6(F).

48. Within thirty (30) days of receiving the Class List, the Settlement Administrator will mail the Notice. *Id.* § 3.6(G).

49. Undeliverable Notices will be skip traced and re-mailed. *Id.* § 3.6 (H)–(I).

50. Class Members will have sixty (60) days after the date the Notice is mailed to opt out or object to the settlement (the "Bar Date"). *Id.* §§ 1.2.

51. A final Fairness Hearing will be held as soon as convenient for the Court. *Id.* § 3.9.

52. No later than three (3) business days prior to the Fairness Hearing the Settlement Administrator shall certify the completion of its responsibilities that can be accomplished prior to the Fairness Hearing. *Id.* § 3.6(K).

53. Plaintiffs will file a Motion for Final Approval of Settlement no later than fourteen (14) days before the Bar Date. *Id.* § 3.9.

54. After the final Fairness Hearing, if the Court grants the Motion for Final Approval, the Court will issue a Final Order and Judgment. *Id.* § 3.10.

55. Not later than twenty-one (21) days after the settlement's Effective Date, Class Members' settlement checks will be mailed. *Id.* § 4.4(C).

## VII. The Rule 23 Class Meets the Requirements for Conditional Class Certification for Settlement Purposes

56. Plaintiffs easily satisfy the numerosity requirement because according to Defendants' records there are 5,157 Class Members.

57. There exist questions of law or fact common to the entire Class. All of the Class Members' claims raise common questions and all arise under the FLSA and NYLL.

58. Plaintiffs' claims are typical of those of the Class. Plaintiffs and the Class challenge the same policies and practices under the same legal theories, share similar facts, and seek similar relief. Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of all Class Members' claims. Plaintiffs claim to have suffered the same injuries as Class Members did. Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement.

59. Plaintiffs are adequate representatives of the Class's interests. First, Plaintiffs have wage and hour claims identical to those of the Class they seek to represent, and thus, no conflicts of interest are present. Second, Plaintiffs' counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions. Further, the lawyers assigned to this matter are well-versed in wage and hour and class action law and are well-qualified to represent the interests of the Class.

60. Common issues present in this action predominate over any individual issues. This case centers on NYHC's alleged common employment policies and practices, which the comprehensive settlement seeks to address.

61. A class action is the superior method of adjudicating this action. Litigating the individual claims of the Class Members would be inefficient and cost prohibitive. Furthermore, especially given the complexity of proof in this case, many Class Members would be unable to maintain individual litigation and would be prevented from obtaining relief for their injuries. Further, Plaintiff and Class Members have limited financial resources with which to prosecute

individual actions.

62. The settlement provides a substantial benefit to Plaintiffs and the proposed Class. This benefit outweighs the risk that all or some of the claims in the Complaint could be dismissed, or that a smaller or no recovery might be achieved after a trial and appeals, possibly years in the future, during which NYHC would have had the opportunity to assert substantial defenses to the claims.

63. Accompanying this Declaration is a proposed Order (attached hereto as **Exhibit B**) and supporting Memorandum of Law that demonstrates why, under governing law, this Court should preliminarily approve the proposed Settlement and grant the relief requested in the instant motion.

WHEREFORE, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the proposed settlement as described in the Settlement Agreement attached hereto as Exhibit A; (2) conditionally certify the proposed "Rule 23 Class" and "FLSA Collective" for settlement purposes; (3) approve the proposed Notice and direct its distribution; (4) appoint Wittels McInturff Palikovic and Kheyfits Belenky LLP as Class Counsel; (5) schedule the Final Approval Hearing; and (6) grant such other relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:   New York, New York
            March 15, 2024                    /s/   *J. Burkett McInturff*
                                                    J. Burkett McInturff (JM-4564)

                                              **WITTELS MCINTURFF PALIKOVIC**
                                              305 BROADWAY, 7TH FLOOR
                                              NEW YORK, NEW YORK 10007
                                              Telephone: (914) 775-8862
                                              jbm@wittelslaw.com

                                              *Counsel for Plaintiffs and the Class*

16