USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/19/2024

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LOUIS FRANCK, LI ZHEN FENG,
YERALDIN REYES, CHARISMA BARBER,
CASSONDRA FLOYD, and ELIZABETH
GUERRERO,

Individually and on Behalf of All Others
Similarly Situated,

                                    Plaintiffs,    Case No. 21-cv-4955 (GHW) (JLC)

                    v.

NEW YORK HEALTH CARE INC., MURRY
ENGLARD, and GLEN PERSAUD,

                                    Defendants.

---

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT,**
**PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS AND**
**COLLECTIVE, APPOINTMENT OF CLASS COUNSEL, AND APPROVAL OF THE**
**NOTICE PLAN**

The above-entitled matter came before the Court on Plaintiffs' Motion for Preliminary

Approval of the Class and Collective Action Settlement and Related Relief ("Preliminary

Approval Motion").  Pursuant to the terms of the parties' Settlement Agreement and Release

submitted to the Court on March 15, 2024 ("Settlement Agreement"), Defendants do not oppose

the Preliminary Approval Motion.

**I.     Preliminary Approval of the Class and Collective Action Settlement**

1.      Based upon the Court's review of Plaintiffs' Memorandum of Law in Support of

their Motion for Preliminary Approval, the Declaration of J. Burkett McInturff ("McInturff

Declaration"), both dated March 15, 2024, all other papers submitted in connection with

Plaintiffs' Preliminary Approval Motion, and the relevant legal standards, the Court grants preliminary approval of the settlement memorialized in the Settlement Agreement made by and among Plaintiffs Louis Franck, Li Zhen Feng, Yeraldin Reyes, Charisma Barber, Cassondra Floyd, and Elizabeth Guerrero and Defendants New York Health Care Inc., Murry Englard, and Glen Persaud and "so orders" all of its terms.

2.     The law strongly favors compromise and settlement of class actions, and courts encourage prompt settlement of class actions "because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Azogue v. 16 for 8 Hospitality LLC*, No. 13-cv-7899 (TPG), 2016 WL 4411422, at *3 (S.D.N.Y. Aug. 19, 2016) (cleaned up); *see also Clem v. KeyBank, N.A.*, No. 13-cv-789 (JCF), 2014 WL 2895918, at *5 (S.D.N.Y. June 20, 2014) (commending parties for acting responsibly in reaching early settlement).

3.     Fed. R. Civ. P. 23(e) requires court approval of a class action settlement.  The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  In exercising this discretion, courts give deference to the consensual decision of the parties.  *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

4.     The class action settlement approval procedure is well-established and occurs in two stages: (1) preliminary approval, where "prior to notice to the class a court makes a preliminary evaluation of fairness," and (2) final approval, where "notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be

heard on the question of final court approval." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-cv-5450 (NRB), 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016).

5.    To grant preliminary approval, which Plaintiffs seek here, under the 2018 amendments to Federal Rule of Civil Procedure 23(e) the Court must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii).

6.    "To be likely to approve a proposed settlement under Rule 23(e)(2)," the Court must find that the settlement "is fair, reasonable, and adequate." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  As amended, "Rule 23 enumerates four factors for the Court to consider as part of this inquiry: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. *Id.* (citing Fed. R. Civ. P. 23(e)(2)).  "Prior to the 2018 amendments, courts in the Second Circuit considered whether a settlement was 'fair, reasonable, and adequate' under nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)."  *Id.*  "The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these '*Grinnell*' factors.  *Id.* (citing 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2)).  Accordingly, the Court "considers both sets of factors in its analysis . . . ."  *Id.*[1]

---

[1]  The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant

7.     The Court has considered: (i) Plaintiffs' preliminary approval motion, and the papers filed and arguments made in connection therewith; (ii) the Settlement Agreement; and (iii) Rule 23(e) and the *Grinnell* factors.  Considering these factors, the Court concludes that it will likely be able to approve the settlement under Rule 23(e)(2) and certify the class for purposes of judgment.  Fed. R. Civ. P. 23(e)(1)(B)(i–ii),

8.     The Court also finds that the Settlement Agreement is the result of extensive, arm's-length negotiations by counsel experienced in the prosecution and defense of wage and hour class and collective actions.  The parties held two mediation sessions with an experienced third-party mediator and conducted lengthy post-mediation negotiations regarding the settlement.

## II.     Preliminary Certification of the "Rule 23 Class" Pursuant to Rule 23

9.     Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement, and setting the date and time of the final approval hearing.  *Dorn v. Eddington Sec., Inc.*, No. 08-cv-10271 (LTS), 2011 WL 382200, at *1 (S.D.N.Y. Jan. 21, 2011).

10.    For settlement purposes only, the Court provisionally certifies the following class under Federal Rule of Civil Procedure 23(e): All persons employed by NYHC as home care workers any time between June 4, 2015 through November 8, 2023.

11.    Plaintiffs meet the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b).

---

risks of litigation.  *Grinnell*, 495 F.2d at 463.  These factors are not to be applied in a rigid, formalistic manner.  Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice."  *Id.* at 468.

12.     Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1)'s numerosity requirement because there are more than 5,000 members of the proposed Class ("Class Members").  McInturff Declaration ¶ 22; *see also Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) ("Numerosity is presumed for classes larger than forty members.").  The class here far exceeds the 40-member threshold.

13.     Plaintiffs also satisfy Federal Rule of Civil Procedure 23(a)(2)'s commonality requirement because Plaintiffs and the Class Members share common issues of fact and law, including whether Defendants properly paid Plaintiffs and Class Members and whether Defendants issued required wage statements and notices.  Courts in this District routinely find commonality when presented with the same common questions as those at issue here.  *See Lawrence v. NYC Med. Prac., P.C.*, No. 18-cv-8649 (GHW), 2024 WL 307842, at *5 (S.D.N.Y. Jan. 26, 2024) ("In wage cases the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."); *Alves v. Affiliated Care of Putnam, Inc.*, No. 16-cv-1593 (KMK), 2022 WL 1002817, at *21 (S.D.N.Y. Mar. 30, 2022) (same); *Spencer v. No Parking Today, Inc.*, No. 12-cv-6323 (AJP), 2013 WL 1040052, at *15 (S.D.N.Y. Mar. 15, 2013) (same).

14.     Federal Rule of Civil Procedure 23(a)(3)'s typicality requirement is likewise satisfied here.   "Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Lawrence*, 2024 WL 307842, at *6 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997))).  "[T]he typicality criterion does not require that the factual predicate of each claim be identical to that of all class members." *MacNamara v. City of New York*, 275 F.R.D. 125, 138 (S.D.N.Y. 2011) (cleaned up); *see also Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d

Cir. 1993) (typicality is not defeated by "minor variations in the fact patterns underlying individual claims").  Typicality under Rule 23(a)(3) should also "be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."  *Sanchez v. Kambousi Rest. Partners, LLC*, No. 15-cv-5880 (CM), 2016 WL 11717105, at *5 (S.D.N.Y. Aug. 5, 2016) (quoting *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-cv-4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007)).

15.     Plaintiffs' claims are typical because those claims arise from the same factual and legal circumstances that form the basis of the Class Members' claims.  *Vargas v. Howard*, 324 F.R.D. 319, 326 (S.D.N.Y. 2018) ("The representatives' claims against Defendants, like the claims of the absent class members, arise out Defendants' policies and course of conduct regarding the ways in which PTSTs were paid for their labor."); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 71 (S.D.N.Y. 2018) ("[T]he members of the putative subclasses were subject to the same policies regarding tip credits, overtime, spread of hours pay, and wage notices and statements."); *Lawrence*, 2024 WL 307842, at *6 ("Their claims against Defendants, like the claims of the absent class members, arise out Defendants' policies and course of conduct regarding timekeeping and how receptionists and patient coordinators were paid.").

16.     Plaintiffs also satisfy Federal Rule of Civil Procedure 23(a)(4)'s adequacy requirement; to wit that "the representative parties will fairly and adequately protect the interests of the class."  "Adequate representation is a two-part test: class counsel must be qualified and able to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members."  *Sanchez*, 2016 WL 11717105, at *5 (cleaned up).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to

the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05-cv-5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sep. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quoting Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.) (internal quotation marks omitted)).

17.     In this case, Plaintiffs and Class Counsel are both adequate.  Plaintiffs meet the adequacy requirement because there is no evidence that they have interests that are antagonistic to or at odds with 'the Class and because the seek to maximize its recovery.  *Sanchez*, 2016 WL 11717105, at *5; *see also Lawrence*, 2024 WL 307842, at *7 (adequacy satisfied where Plaintiffs "share[d] their claims with absent class members" and were therefore "capable of vigorously pursuing the claims of the class"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.").  Further, Class Counsel satisfies Rule 23(a)(4)'s adequacy requirement because Class Counsel are experienced in wage and hour class actions, have ably litigated this case for nearly three years, and because Class Counsel have achieved a commendable result given the complexities and risk of this litigation.

18.     Federal Rule of Civil Procedure 23(b)'s requirements are also satisfied here. Plaintiffs request certification of a Rule 23(b)(3) damages class.  Plaintiffs satisfy Rule 23(b)(3)'s requirement that common questions of law or fact be present and that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); *see also Asare v. Change Grp. of New York, Inc.*, No. 12-cv-3371 (CM), 2013 WL 6144764, at *7 (S.D.N.Y. Nov. 18, 2013) (predominance satisfied where "the Settlement Class [wa]s unified by common factual allegations"—namely, the defendant's allegedly illegal pay practices).

19.     District courts "have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices."  *Murphy v. LaJaunie*, No. 13-cv-6503 (RJS), 2015 WL 4528140, at *7 (S.D.N.Y. July 24, 2015) (collecting cases).  Numerous courts have found that wage claims are especially suited to class litigation—in fact, courts have concluded that these claims "***are about the most perfect questions for class treatment***."  *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (emphasis added); *see also Alves*, 2022 WL 1002817, at *22 (same).  "[T]he types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each plaintiff might be entitled, are inevitable and do not defeat the predominance requirement."  *Alves*, 2022 WL 1002817, at *22 (quoting *Zivkovic*, 329 F.R.D. at 79).

20.     Here, Class Members' common factual allegations and common legal theory— that Defendants allegedly violated New York's wage and hour laws—predominate over any factual or legal variations among Class Members.  Thus, for all Class Members, the issue of whether they were the victims of alleged unlawful wage and hour practices will predominate

over any individualized inquiries "because if Plaintiffs succeed in showing" the alleged violations, "each of the class plaintiffs will likely prevail." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (cleaned up).  A finding of predominance in this case is therefore squarely in line with the majority of cases in this District. *See, e.g.*, *id.* (predominance met in class action alleging NYLL and FLSA claims); *Alves*, 2022 WL 1002817, at *22 (predominance met in class action alleging failure to pay overtime and provide required wage notices and statements); *Iglesias-Mendoza*, 239 F.R.D. at 373 (predominance met in class action alleging failure to pay minimum wage and overtime); *Zivkovic*, 329 F.R.D. at 75 (predominance met in class action alleging "unlawful common payment policies").

21.     Regarding Rule 23(b)(3)'s superiority requirement, the rule provides a list of non-exhaustive facts the Court may consider in determining the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing the case as a class action.  Fed. R. Civ. P. 23(b)(3).  Here, these factors strongly weigh in favor of certification.  Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions.  It is also "extremely unlikely" that a meaningful number of proposed Class Members would bring separate actions given that they are "almost exclusively low-wage workers with limited resources" and have little "familiarity with the legal system." *Iglesias-Mendoza*, 239 F.R.D. at 373 (finding superiority requirement "easily satisfied"); *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 335 (S.D.N.Y. 2009) (same).

22.     Further, courts "have consistently held that 'a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants.'"  *Zivkovic*, 329 F.R.D. at 76 (quoting *Schear*, 297 F.R.D. at 126).

23.     Adjudicating separate actions all arising from the same operative facts also poses a significant burden on the courts.  To date, no difficulties have occurred in managing this action and this District is an appropriate forum for adjudicating this case as many of the Class Members performed work for Defendants in this District.  Additionally, there is "overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions." *Damassia*, 250 F.R.D. at 164.

24.     Employing the class action device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources, prevent inconsistent adjudications of similar issues and claims, and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings.  *See, e.g.*, *Sanchez*, 2016 WL 11717105, at *6.  "Therefore, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Plaintiffs' and Class Members' claims." *Id.*

**III.     Conditional Certification of the "FLSA Collective" Pursuant to 29 U.S.C. § 216(b)**

25.      The Court also provisionally certifies the following FLSA Collective under 29 U.S.C. § 216(b) for settlement purposes only: All persons employed by NYHC as home care workers any time between June 4, 2018 through November 8, 2023.

26.     Under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) an FLSA settlement should be approved if it reflects "a reasonable compromise over disputed issues."

*Garcia v. Good for Life by 81, Inc.*, No. 17-cv-7228 (BCM), 2018 WL 3559171, at *2 (S.D.N.Y. July 12, 2018). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Torres v. Gristede's Operating Corp.*, 04-cv-3316 (PAC), 2010 WL 5507892, at *6 (S.D.N.Y. Dec. 21, 2010). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).

27.      "In determining whether a proposed FLSA settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal citations omitted).

28.      Critically, even after *Cheeks* courts in this District have held that because "an FLSA settlement is examined with less scrutiny than a class action settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Surdu v. Madison Glob., LLC*, No. 15-cv-6567 (HBP), 2018 WL 1474379, at *6 (S.D.N.Y. Mar. 23, 2018) (cleaned up); *Bryant v. Potbelly Sandwich Works, LLC*, No. 17-cv-7638 (CM), 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020) (same). This is because "settlement of a collective action does not implicate the same due process concerns as the settlement of a class action." *Surdu*, 2018 WL 1474379, at *6.

29.     Here, Plaintiffs' evidence of Class Members' range of possible recovery demonstrates that the parties have reached a reasonable compromise of contested FLSA claims. Even considering only the $3,500,000 in payments to Class Members, this sum is more than 74% of the $4,703,062 damages model Plaintiffs used in negotiating settlement. Class Members are thus giving up only 26% of their claimed out-of-pocket losses in exchange for forgoing the risks of litigating this case through trial and appeals. Indeed, the recovery here is well within the range that Courts in this District have found fair and reasonable. *See Siddiky v. Union Square Hosp. Grp., LLC*, No. 15-cv-9705 (JCF), 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (collecting FLSA cases approving settlements where range of recovery for class members ranged from 13% to 25%); *Larrea v. FPC Coffees Realty Co.*, No. 15-cv-1515 (RA), 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (recovery of 43% was fair and reasonable).

30.     Turning to the other *Wolinsky* factors, the settlement will enable the parties to avoid further protracted litigation and appeals, both sides faced serious litigation risks if this litigation were to continue, and the settlement is the product of arm's-length bargaining between experienced counsel and is untainted with fraud or collusion. In short, this settlement easily satisfies the criteria for preliminary *Cheeks* and *Wolinsky* review.

**IV.     Appointment of Plaintiffs' Counsel as Class Counsel**

31.     The Court appoints Wittels McInturff Palikovic and Kheyfits Belenky, LLP as Class Counsel because they meet the requirements of Federal Rule of Civil Procedure 23(g). In evaluating the adequacy of proposed counsel, the Court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;"

(3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

32.     Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and the lawyers assigned to this matter are well-versed in wage and hour law and class action law and are well-qualified to represent the interests of the Class.  Further, the work that Class Counsel have done identifying, investigating, pursuing, and settling Plaintiffs' and Class Members' claims demonstrates their skill and commitment to representing the interests of the Class.

**V.     Notice to Class Members**

33.     The Court approves, as to form and content, the Notice of Proposed Class Action Settlement and Final Approval Hearing submitted in connection with the Preliminary Approval Motion (the "Notice").

34.     The content of the Notice fully complies with due process and Federal Rule of Civil Procedure 23.

35.     Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), a notice must provide:

[T]he best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

36.     The Notice satisfies each of these requirements and adequately puts Class Members on notice of the proposed settlement.  The Notice is based on the Federal Judicial Center's Illustrative Forms of Class Action Notices and informs its recipients about how the members of the Class can exclude themselves from the Settlement or object, and the

consequences of inaction.  The notice also describes the material terms of the Settlement, informs Class Members about the attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.  Courts in this district have approved class notices even when they provided only general information about a settlement.  *See, e.g.*, *George v. Shamrock Saloon II, LLC*, No. 17-cv-6663 (SLC), 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021) ("Class notice "need only describe the terms of the settlement generally," which is a "minimal requirement." (quoting *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993))); *see also Brazier v. Real Hosp. Grp., LLC*, No. 20-cv-8239 (VM), 2021 WL 7210088, at *3 (S.D.N.Y. Nov. 12, 2021) ("The proposed Settlement Notice is satisfactory because it describes the terms of the settlement, informs the Class Members about the allocation of attorneys' fees, and provides specific information regarding the date, time and place of the final approval hearing.").

37.    The Notice also satisfies the requirements of the FLSA.  To serve the "broad remedial purpose" of the FLSA, courts can order notice to other potentially similarly situated individuals.  *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).  In *Hoffmann-La Roche*, the Supreme Court held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  493 U.S. at 170.  Courts are encouraged to become involved in the notice process early, to ensure "timely, accurate, and informative" notice and to help facilitate the litigation moving forward.  *Id.* at 171–72.

38.    For the reasons set forth above, the Court approves the Notice.

**VI.**  **Class Action Settlement Procedure**

39.    The Court hereby adopts the settlement procedure set forth in the Settlement

Agreement.

40.    The Court directs the mailing, by first class mail, of the Notice to Class Members

in accordance with the schedule set forth in the Settlement Agreement.  The Court finds that the

method and date selected for distributing the Notice meet the requirements of due process,

provide the best notice practicable under the circumstances, and constitute due and sufficient

notice to all persons entitled to notice.

41.    Pending the Court's final approval of the Settlement Agreement, all proceedings

in this action, except those related to approval of the Settlement Agreement, are stayed.

42.    Plaintiffs shall file a Motion for Final Approval of all Settlement Agreement

terms no later than fourteen (14) days before the deadline for Class Members to object to or opt

out of the Settlement.

43.    Should final approval of the Settlement not be granted, or should the Effective

Date, as that term is defined in the Settlement Agreement, not occur, this Order shall be null and

void and of no further force and effect, and the parties shall be restored to their respective

positions prior to the execution of the Settlement Agreement.

44.    The final approval hearing will be held on September 12, 2024, at 9 a.m.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 231.


It is so ORDERED this 19th day of April, 2024.


_____
Hon. Gregory H. Woods