# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

LOUIS FRANCK, LI ZHEN FENG,
YERALDIN REYES, CHARISMA BARBER,
CASSONDRA FLOYD, and ELIZABETH
GUERRERO,

Individually and on Behalf of All Others
Similarly Situated,

                                         Plaintiffs,

                                       v.

NEW YORK HEALTH CARE INC., MURRY
ENGLARD, and GLEN PERSAUD,

                                    Defendants.

Case No. 21 Civ. 4955 (GHW) (JLC)

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT AND RELATED RELIEF

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff (JM-4564)
Ethan D. Roman (ER-5569)
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com

*Counsel for Plaintiffs, the Collective, and
the Class*

**KHEYFITS BELENKY LLP**
Andrey Belenky (AB-1976)
Dmitry Kheyfits (DK-9799)
80 BROAD STREET, 5TH FL
NEW YORK, NY 10004
Phone: (212) 203-5399
abelenky@kblit.com
dkheyfits@kblit.com

*Co-Counsel for Plaintiffs, the Collective,
and the Class*

Dated:  August 6, 2024

## TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................................................1

**FACTUAL AND PROCEDURAL BACKGROUND**................................................................3

I.    SUMMARY OF THE ACTION, SETTLEMENT NEGOTIATIONS, AND NOTICE........3

     A.    Factual Allegations and Plaintiffs' Investigation...........................................3

     B.    Litigation and Settlement Negotiations.........................................................3

     C.    The Notice Campaign .....................................................................................5

II.    SUMMARY OF SETTLEMENT TERMS .......................................................................6

     A.    Eligible Class Members ..................................................................................6

     B.    The Settlement Amount and Allocation Plan ................................................6

     C.    Distribution of the Settlement Fund................................................................7

     D.    Releases...........................................................................................................8

III.    CLASS MEMBERS' POSITIVE RESPONSE TO THE SETTLEMENT ..........................8

**ARGUMENT** ........................................................................................................................8

I.    LEGAL STANDARD FOR FINAL CLASS ACTION SETTLEMENT APPROVAL ........8

II.    THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL ...............10

     A.    The Settlement Is Procedurally Fair..............................................................10

          1.    Rule 23(e)(2)(A)'s Adequacy of Representation Requirement:  Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class........................................................................................10

          2.    Rule 23(e)(2)(B)'s Requirement of Arm's Length Negotiations:  The Parties' Vigorous Negotiations Were Arm's Length at All Times and Overseen by an Experienced Mediator............................................11

     B.    The Settlement Is Substantively Fair ..............................................................12

          1.    Rule 23(e)(2)(C)(i) and the Grinnell Factors: The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery ...........................12

         2.     The Remaining Rule 23(e)(2)(C) Factors Are Easily Satisfied......................18

         3.     Rule 23(e)(2)(D)'s Equitable Treatment Requirement:  The Parties'
               Allocation Plan Correlates with Actual Damages and Is Reasonable.............21

III.    NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS ........................22

IV.    CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE........22

V.     THE FLSA SETTLEMENT MERITS FINAL APPROVAL ...........................................22

VI.    THE COURT SHOULD DIRECT SERVICE AWARDS TO PLAINTIFFS.....................24

VII.  THE COURT SHOULD GRANT THE REQUESTED FEES AND EXPENSES.............26

    A.    Class Counsel Should Be Adequately Compensated for their Substantial Efforts
         and the Tremendous Financial Risk They Took for the Class's Benefit .................27

    B.    The Standard for Awarding Attorneys' Fees in Class Actions................................28

         1.     The Goldberger Factors Support Plaintiffs' One-Third Requested Fee
               Award ...............................................................................................................29

         2.     The Lodestar Cross Check Further Supports Class Counsel's Fee and
               Expense Request...............................................................................................36

**CONCLUSION** ...............................................................................................................**40**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.H. Phillips v. Walling,*
    324 U.S. 490 (1945)...............................................................................................35

*Adams v. Rose,*
    No. 03 Civ. 7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003)..............................31

*Alves v. Affiliated Care of Putnam, Inc.,*
    No. 16 Civ. 1593 (KMK), 2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022) ...............10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
    222 F.3d 52 (2d Cir. 2000) ....................................................................................10

*Ballinger v. Advance Magazine Publrs., Inc.,*
    2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) ........................................................15

*Beckman v. KeyBank, N.A.,*
    293 F.R.D. 467 (S.D.N.Y. 2014) ......................................................................32, 34

*Bryant v. Potbelly Sandwich Works*
    No. 17 Civ. 7638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020)....................*passim*

*Cates v. Trustees of Columbia Univ. in City of N.Y.,*
    No. 16 Civ. 6524 (GBD), 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ...............30

*Chambery v. Tuxedo Junction Inc.,*
    No. 12 Civ. 6539 (EAW), 2014 WL 3725157 (W.D.N.Y. July 25, 2014) ...............17

*Cheeks v. Freeport Pancake House, Inc.,*
    796 F.3d 199 (2d Cir. 2015) .............................................................................23, 24

*Christine Asia Co. v. Yun Ma,*
    No. 15 MDL 631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................9, 19

*Cruz v. Local Union No. 3 of IBEW,*
    34 F.3d 1148 (2d Cir. 1994) ...................................................................................39

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) .....................................................................................13

*Davenport v. Elite Model Mgmt. Corp.,*
    No. 13 Civ. 01061 (AJN), 2014 WL 12756756 (S.D.N.Y. May 12, 2014)..............40

*DeLeon v. Wells Fargo Bank, N.A.,*
    No. 12 Civ. 4494 (RLE), 2015 WL 2255394 (S.D.N.Y. May 11, 2015) ...........26, 29

*Delgado v. Ocwen Loan Servicing LLC,*
    No. 13 Civ. 4427 (E.D.N.Y. Aug. 20, 2019) ..........................................................40

*Delijanin v. Wolfgang's Steakhouse Inc.*,
   No. 18 Civ. 7854 (LJL) (KHP), 2021 WL 535635 (S.D.N.Y. Feb. 12, 2021) .............14, 16, 20

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)................................................................................................................35

*Dornberger v. Metro. Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ..........................................................................................22

*Emeterio v. A&P Rest. Corp.*,
   No. 20 Civ. 970 (KHP), 2022 WL 274007 (S.D.N.Y. Jan. 26, 2022) ...............................*passim*

*Espinosa v. Perez*,
   No. 18 Civ. 8855, 2020 WL 2950978 (S.D.N.Y. Jan. 27, 2020)............................................39

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 14 Civ. 8714 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................7, 21, 32

*Flores v. One Hanover, LLC*,
   No. 13 Civ. 5184 (AJP), 2014 WL 2567912 (S.D.N.Y. June 9, 2014) ...................................27

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)...........................................................................................15

*Fresno Cty. Emps' Ret. Ass'n v. Isaacson/Weaver Family Tr.*,
   925 F.3d 63 (2d Cir. 2019) .....................................................................................................29

*Garcia v. Good for Life by 81, Inc.*,
   No. 17 Civ. 7228 (BCM), 2018 WL 3559171 (S.D.N.Y. July 12, 2018)................................23

*Garcia v. Pancho Villa's of Huntington Village, Inc*,
   No. 09 Civ. 486 (ETB), 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012)....................................38

*Gascho v Glob. Fitness Holdings, LLC*,
   822 F3d 269 (6th Cir 2016) ...................................................................................................28

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ................................................................................................*passim*

*Gonqueh v. Leros Point To Point, Inc.*,
   No. 14 Civ. 5883 (GHW) (GWG), 2016 WL 791295 (S.D.N.Y. Feb. 26, 2016)..........20, 25, 33

*Hall v. ProSource Techs., LLC*,
   No. 14 Civ. 2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016)...................................30

*Hezi v. Celsius Holdings, Inc.*,
   No. 21 Civ. 9892 (JHR), 2023 WL 2786820 (S.D.N.Y. Apr. 5, 2023) ...................................33

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
   239 F.R.D. 363 (S.D.N.Y. 2007) ...........................................................................................28

*In re Abrams & Abrams, P.A.*,
   605 F.3d 238 (4th Cir. 2010) .................................................................................................31

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................................13, 14, 17

*In re Bear Stearns Co., Inc. Sec., Derivative, and ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..........................................................................19

*In re Deva Concepts Prod. Liab. Litig.*,
   No. 20 Civ. 1234 (GHW), 2022 WL 3716541 (S.D.N.Y. Jan. 3, 2022) ............................20, 33

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................19

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ....................................................................16, 19

*In re Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02 Civ. 3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................34, 35, 37

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...................................................................9, 10, 16

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   No. 18 Civ. 8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) .................................16

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ............................26

*In re Merrill Lynch Tyco*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ...............................................................................35

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020) ...................................................................16, 19, 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................10, 21, 34

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ....................................................................................37

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152 (S.D.N.Y. 2014) ...............................................................................10

*Johnson v. Brennan*,
   No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sep. 16, 2011) ........................30, 34, 39

*Karic v. Major Automotive Cos., Inc.*,
   No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ................................25

*Khait v. Whirlpool Corp.*,
   No. 06 Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ............................35, 38

*Kurtz v. Kimberly-Clark Corp.*,
   No. 14 Civ. 1142 (PKC) (RML), 2024 WL 184375 (E.D.N.Y. Jan. 17, 2024) ........................13

*Larrea v. FPC Coffees Realty Co.*,
   No. 15 Civ. 1515 (RA), 2017 WL 1857246 (S.D.N.Y. May 5, 2017) ....................................24

*Little v. Ambit Energy Holdings, LLC*,
   No. 16 Civ. 8800 (D.N.J. July 2, 2020) ...............................................................................40

*Lliguichuzhca v. Cinema 60, LLC*,
   948 F. Supp. 2d 362 (S.D.N.Y. 2013) .................................................................................23

*Medvedeva v. Assistcare Home Health Servs. LLC*,
   No. 17 Civ. 5739 (E.D.N.Y. June 1, 2021) ..........................................................................40

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) .............................................................................19, 21

*Mirkin v. Viridian Energy, Inc.*,
   No 15 Civ. 1057 (SRU) (D. Conn. June 27, 2018), ..............................................................40

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ................................34

*Moreira v. Sherwood Landscaping Inc.*,
   No. 13 Civ. 2640 (AKT), 2015 WL 1527731 (E.D.N.Y. Mar. 31, 2015) ................................28

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ...............................................................................................13

*Oleniak v. Time Warner Cable Inc.*,
   No. 12 Civ. 3971 (KPF), 2013 WL 12447094 (S.D.N.Y. Dec. 17, 2013)................................31

*Raniere v. Citigroup, Inc.*,
   No. 11 Civ. 2448 (RWS), 2015 WL 5724669 (S.D.N.Y. Sept. 29, 2015)................................35

*Rasulev v. Good Care Agency, Inc.*,
   No. 16 Civ. 1993 (LDH) (CLP) (E.D.N.Y. July 28, 2017) ....................................................40

*Reyes v. Summit Health Mgmt., LLC*,
   No. 22 Civ. 9916 (VSB), 2024 WL 472841 (S.D.N.Y. Feb. 6, 2024)...............................*passim*

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
   No. 15 Civ. 3651 (S.D.N.Y. Jan. 8, 2016) ...........................................................................40

*Siddiky v. Union Square Hosp. Grp., LLC*,
   No. 15 Civ. 9705 (JCF), 2017 WL 2198158 (S.D.N.Y. May 17, 2017)...................................24

*Simmons v. Ambit Energy Holdings, LLC*,
   No. 503285/2015, NYSCEF No. 205 (N.Y. Sup. Ct. July 16, 2018) ......................................40

*Solis v. OrthoNet LLC*,
   No. 19 Civ. 4678 (VSB), 2021 WL 2678651 (S.D.N.Y. June 30, 2021) ...........................33, 37

*Steiner v. Williams*,
   No. 99 Civ. 10186 (JSM), 2001 WL 604035 (S.D.N.Y. May 31, 2001)..................................27

*Sykes v. Harris*,
    No. 09 Civ. 8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016)............................................33

*Taft v. Ackermans*,
    No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...............................32

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316 (PAC), 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..........................16, 23

*Torretto v. Donnelley Financial Solutions, Inc.*,
    No. 20 Civ. 02667 (GHW) 2023 WL 123201 (S.D.N.Y. Jan. 5, 2023) ............................31, 35

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391 (RLM), 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)................................35

*Velez v. Novartis Pharm. Corp.*,
    No. 04 Civ. 9194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .................................7

*Viafara v. MCIZ Corp.*,
    No. 12 Civ. 7452 (RLE), 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ...................................30

*Wal-Mart Stores v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................8, 22, 36

*Westerfield v. Washington Mut. Bank*,
    No. 06 Civ. 2817 (JMA), 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) ...................................32

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .......................35

*Wolinsky v. Scholastic Inc.*,
    900 F. Supp. 2d 332 (S.D.N.Y. 2012) ...............................................................23, 24

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*................................................*passim*

N.Y. Aband. Prop. Law § 1406 ...........................................................................18

New York Labor Law, Article 19.................................................................3, 18, 35

New York Wage Parity Law ...................................................................................3

**Rules**

Rule 23.............................................................................................................*passim*

**Treatises**

Principles of the Law of Aggregate Litigation § 3.13(b) (2010)............................................20, 32

William B. Rubenstein, On What A "Private Attorney General" Is—and Why It Matters, 57 Vand. L.Rev. 2129 (2004) ........................................................................................27

William B. Rubenstein, Why Enable Litigation?: A Positive Externalities Theory of the Small Claims Class Action, 74 UMKC L.Rev. 709 (2006) ........................................27

**Other Authorities**

2018 Advisory Notes to Fed. R. Civ. P. 23 .................................................................21

Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 3d. Ed., 35 (2010) ........................................................................................32

Judges' Class Action Notice and Claims Process Checklist ...........................................7

# INTRODUCTION

Plaintiffs Louis Franck, Li Zhen Feng, Yeraldin Reyes, Charisma Barber, Cassondra Floyd, and Elizabeth Guerrero ("Plaintiffs") hereby submit this Memorandum of Law supporting their unopposed motion for final approval of the parties' class and collective action settlement approval.

This settlement was no easy achievement. It is the result of voluminous discovery and vigorous litigation, followed by four months of forceful negotiations overseen by a noted class action mediator with specific expertise in home care wage and hour class actions. As set forth below, this three-year process resulted in a fair and reasonable settlement for the workers included in the Class and Collective ("Class Members," unless noted otherwise).

 The settlement provides an excellent result—substantial $3,500,000 monetary relief and reforms that have a present and future value of an additional $1,300,000. One of the keystones of the settlement is that Class Members' settlement payments will be automatically distributed without the requirement of a claims process. The allocation plan also fairly and adequately accounts for the value of each Class Member's alleged individual damages, and the settlement represents a reasonable compromise of highly contested claims, especially given the material risks inherent in this action and the delays of continued litigation.

Class Members have been given notice of the settlement and their response also supports final approval. Following the Court's April 19, 2024 preliminary approval order (ECF No. 234), on June 21, 2024 the court-approved notice packets were mailed to the 5,170 current and former home care workers employed during the relevant period by Defendants New York Health Care Inc., Murry Englard, and Glen Persaud (collectively, "NYHC" or "Defendants"). Declaration of Lead Class Counsel J. Burkett McInturff, dated August 6, 2024 ("McInturff Decl.") ¶ 50. In addition, prior to issuing notice the parties and the Settlement Administrator set up a dedicated

hotline for responding to Class Member inquiries and received and responded to 239 calls, while Class Counsel has responded to an additional 8 inquiries from Class Members. *Id.* ¶¶ 49, 51. The response by Class Members has been overwhelmingly positive with 5,077 individuals—98.2% of the Class—having successfully received notice of the settlement. *Id.* ¶ 52. Each Class Member will be mailed their settlement payment without any further effort required by the Class Member. *Id.* ¶ 53. In addition, there have been no objections to the settlement, and only 1 individual (or 0.02% of the Class) has asked to be excluded. *Id.* ¶ 50.

As more fully described in this memorandum and the accompanying declaration of Lead Class Counsel, the settlement is highly favorable to the Class, which includes two groups of workers: (1) all individuals who have been employed by Defendant as Home Health Care Attendants at any time from June 4, 2015 through November 8, 2023 (the "Rule 23 Class"); and (2) all individuals who worked for Defendant as Home Health Care Attendants at any time from June 4, 2018 through November 8, 2023 (the "FLSA Collective").

Accordingly, to effectuate this relief and the other payments agreed upon in the Settlement Agreement, Plaintiffs request that the Court endorse the proposed order enclosed as ECF No. 239-1, which order will have the effect of: (1) granting final certification to the Rule 23 Class under Federal Rule of Civil Procedure 23 and final certification of the FLSA Collective under 29 U.S.C. § 216(b), for settlement purposes; (2) granting final approval of all terms applicable to the Rule 23 Class set forth in the Settlement Agreement; (3) approving all terms applicable to the FLSA Collective set forth in the Settlement Agreement; (4) finding that the court-authorized notice was the best notice practicable under the circumstances; (5) approving the requested service awards; (6) awarding Class Counsel reimbursement of litigation expenses and attorneys' fees; (7) approving the parties' proposed final settlement procedure, including the proposed procedure

for allowing FLSA Collective members to consent to join this action and be bound by the settlement; (8) incorporating all terms of the Settlement Agreement, including the release; and (9) dismissing this action with prejudice and entering final judgment.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

I.      **SUMMARY OF THE ACTION, SETTLEMENT NEGOTIATIONS, AND NOTICE**

     A.      <u>**Factual Allegations and Plaintiffs' Investigation**</u>

Plaintiffs and Class Members are current and former home health aides. Plaintiffs allege that certain of Defendants' pay practices violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* and New York Labor Law ("NYLL"). Second Amended Class and Collective Action Compl. ("SAC") ¶¶ 222–98, ECF No. 166. Defendants employed 5,170 aides in New York during the applicable limitations period. McInturff Decl. ¶ 22.

Prior to commencing this action, Class Counsel conducted a thorough investigation into Class Members' claims, their alleged damages, and the likelihood of obtaining class certification. *Id.* ¶ 16. Further, Class Counsel performed extensive background research on Defendants and obtained information on Defendants' compensation policies and practices. *Id.* ¶ 17. Class Counsel also conducted in-depth interviews with Plaintiffs and other former NYHC employees concerning, *inter alia*, the number of hours aides worked, Defendants' pay practices, and other information pertinent to Plaintiffs' claims. *Id.* Counsel obtained and reviewed numerous documents from Plaintiffs and other aides, researched prior home care wage and hour cases, and conducted extensive research and analysis of the pay practices at issue in this action. *Id.*

     B.      <u>**Litigation and Settlement Negotiations**</u>

Following a four-month investigation, on June 4, 2021, Plaintiffs filed their Class and Collective Action Complaint (ECF No. 1), which was later amended on September 21, 2021 (ECF

No. 20) and March 17, 2023 (ECF No. 166). The litigation spawned substantial discovery, including written discovery; third-party discovery; the production and analysis of over one hundred and forty thousand payroll, time, and other electronic records and documents; numerous interviews with Plaintiffs, Class Members, and potential witnesses; a deposition of one of Defendants' employees; and the negotiation of an ESI Protocol (ECF No. 88), a search term protocol (ECF No. 135), and protracted search term negotiations. The parties also conducted extensive motion practice, including multiple court hearings and two rounds of conditional certification (ECF Nos. 61 and 185) and dismissal briefing (ECF Nos. 85 and 95, 178), raised numerous discovery disputes (ECF Nos. 72, 73, 78, 89, 123), and undertook preparations for proceedings on class certification, summary judgment, and trial. McInturff Decl. ¶ 19.

In late 2023, the parties agreed to participate in private mediation. *Id.* ¶ 20. The parties then engaged in extensive pre-mediation damages analysis, including preparing comprehensive reports on liability and damages. *Id.* This analysis encompassed the review of eight years of time and payroll records for 100 Class Members selected via a sampling methodology that Plaintiffs and their statistics expert negotiated with Defendants. *Id.* The parties thereafter engaged in arm's length mediation on November 8, 2023 that was overseen by Martin F. Scheinman, Esq., a noted mediator with extensive experience in home care class action litigation. *Id.* With Mr. Scheinman's assistance, the parties reached agreement on most material settlement terms and negotiated a memorandum of understanding, which was executed on November 10, 2023. *Id.* Following additional hard-fought negotiations and another mediation session with Mr. Scheinman on February 15, 2024, the Settlement Agreement was executed on March 5, 2024. *Id.* At all times, the parties' negotiations have been vigorous, adversarial, and at arm's length. *Id.* ¶ 21.

C.    **The Notice Campaign**

Following the Court's preliminary approval order, the parties and the Settlement Administrator implemented the notice plan outlined in the Settlement Agreement. *Id.* ¶ 46. Specifically, on May 22, 2024 Defendants provided the class list, which included each Class Member's full name, social security number, last known address, phone number, primary language (where available from Defendants' records) and hours worked within the Class Period as that information exists on file with Defendants. *Id.* ¶ 47. Defendants also provided a written certification that the class list represents the "most current and up to date information that Defendants have for Class Members." *Id.* ¶ 48; Settlement Agreement § 3.6(B); McInturff Decl. Ex. C (Defendants' May 22, 2024 certification). During this same period, the parties finalized the notice, the notice's transmittal envelope, the FAQs for Class Members who called the Settlement Administrator's hotline, and the recorded message to greet hotline callers. *Id.* ¶ 49.

On June 21, 2024, the court-approved notice packets were mailed to the 5,170 individuals in the Class. *Id.* ¶ 50. The overwhelming majority (98.2%) were successfully delivered. *Id.* While the Settlement Administrator has re-issued more than 400 notices with updated addresses and/or emails, to date the Settlement Administrator has been unable to reach only 93 Class Members (or 1.8% of the class). *Id.* In addition, as of today's date only 1 Class Member has submitted an opt-out statement, and no objections have been received by the Settlement Administrator. *Id.* In other words, only .02% of the Class has chosen not to participate in the settlement.

Based on the June 21, 2024 notice date, the deadline for Class Members to object or opt out of the settlement is August 20, 2024. *Id.* ¶ 51. In the more than six weeks since notice was issued, the Settlement Administration hotline has received 239 calls, while Class Counsel has

responded to over 8 inquiries from Class Members. *Id.* In sum, the notice process approved by Your Honor has been successfully implemented and Class Members have had a positive response.

## II.    SUMMARY OF SETTLEMENT TERMS

### A.    Eligible Class Members

Current and former NYHC aides who are entitled to receive payments from the Settlement Fund include two groups of workers: the "Rule 23 Class" and the "FLSA Collective." Settlement Agreement §§ 1.14, 1.25. The "Rule 23 Class" consists of aides employed by NYHC at any time from June 4, 2015 through November 8, 2023. *Id.* § 1.25. The "FLSA Collective" consists of aides employed by NYHC at any time from June 4, 2018 through November 8, 2023. *Id.* § 1.14.

### B.    The Settlement Amount and Allocation Plan

Under the Settlement Agreement, Defendants will establish a cash fund of $3,500,000 ("Settlement Fund"). Settlement Agreement § 4.1. Each Class Member will then be issued a direct settlement payment without the need to submit a claim. *Id.* § 4.4. Class Members' share of the settlement will be calculated based on their *pro rata* share of all hours worked by Class Members as reflected in Defendants' payroll records. *Id.* § 4.2. This formula reasonably correlates with Plaintiffs' claims for unpaid wages and will fairly compensate Class Members in relation to their alleged damages. McInturff Decl. ¶ 24. In addition, each Class Member will be afforded a minimum allocation of $75 to account for Plaintiffs' claims arising from NYHC's statutory wage disclosure obligations. Settlement Agreement § 4.2; McInturff Decl. ¶ 23.

Notably, the $3,500,000 Settlement Fund represents more than 74% of the $4,703,062 in pecuniary class-wide harm that Class Counsel calculated prior to mediation. McInturff Decl. ¶ 24. After accounting for deductions for attorneys' fees and expenses, settlement administration expenses, and a reserve fund to cover administration issues, the average payment to the 5,170 Class

Members is expected to be $416.51. *Id.* ¶ 26. This amounts to roughly 31 hours' pay without Class Members having to take additional action to obtain relief. *Id.*

Further, the parties agree that as a result of this action, NYHC reformed its pay practices to further ensure that aides are paid in accordance with the law. Settlement Agreement § 4.6. With the assistance of Mediator Scheinman, the parties negotiated the value of these enhancements at not less than $1,300,000. McInturff Decl. ¶ 12. The total value of the settlement is therefore $4,800,000. *See Fleisher v. Phoenix Life Ins. Co.*, Nos. 11 Civ. 8405, 2015 WL 10847814, at *10 (S.D.N.Y. Sep. 9, 2015) ("The overall value of the settlement comprises monetary as well as non-monetary relief."); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 9194, 2010 WL 4877852, at *8, *18 (S.D.N.Y. Nov. 30, 2010) (both monetary and non-monetary relief considered in calculating value of settlement).

### C.  Distribution of the Settlement Fund

Critically, Class Members will not be required to submit a claim to receive payment and instead will be issued checks directly. McInturff Decl. ¶ 53; Settlement Agreement §§ 4.4(A), (C); *see also* The Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist" ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms."); *id.* (directing courts to question if "a claims process [is] actually necessary"). Following the Court's final approval and the expiration of the appeal deadline (the "Effective Date" defined in Settlement Agreement § 1.9), Defendants will deposit the Settlement Fund in escrow. *Id.* §§ 4.1, 4.3. Each Class Member will then receive a check based on the allocation formula. *Id.* § 4.4(C).

### D.    <u>Releases</u>

Upon the Effective Date, Plaintiffs and each Rule 23 Class Member who does not timely opt out will fully release and discharge Defendants from all New York state law claims asserted in the action.  *Id.* § 4.11(A).  In addition, each FLSA Collective Member who negotiates their settlement check releases Defendants from the FLSA claims asserted in the action.  *Id.*

### III.    CLASS MEMBERS' POSITIVE RESPONSE TO THE SETTLEMENT

As discussed above, the deadline for Class Members to opt out of and/or object to the settlement is August 20, 2024.  McInturff Decl. ¶ 51; Preliminary Approval Order (ECF No. 234) ¶¶ 39–40.  To date, only 1 Class Member has opted-out and none have objected to the settlement.  McInturff Decl. ¶ 50.  Moreover, given that 247 eligible Class Members contacted the Settlement Administrator or Class Counsel (approximately 4.78% of Class Members), this participation rate reflects the Class Members' resoundingly positive reaction to the settlement.

<u>ARGUMENT</u>

### I.    LEGAL STANDARD FOR FINAL CLASS ACTION SETTLEMENT APPROVAL

In the Second Circuit there is a "strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  To grant final approval under Rule 23(e)(2), as amended on December 1, 2018, a court must find the settlement "fair, reasonable, and adequate" after considering the following factors:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

    (i)      the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

8

> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Prior to the 2018 amendments, courts in this Circuit reviewed class settlements under the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). Because the amendments did not "displace any of the *Grinnell* factors . . . the Court's assessment of [a] settlement under Rule 23(e) is guided and informed by the *Grinnell* factors."[1] *Emeterio v. A&P Rest. Corp.*, No. 20 Civ. 970 (KHP), 2022 WL 274007, at *6 (S.D.N.Y. Jan. 26, 2022) (quotation omitted).

Thus, courts break the Rule 23(e)(2) final approval factors down into a procedural fairness analysis under Rules 23(e)(2)(A) and (B) and substantive fairness assessment under Rules 23(e)(2)(C) and (D), with the substantive analysis under Rule 23(e)(2)(C)(i) incorporating all of the *Grinnell* factors. *Christine Asia Co. v. Yun Ma*, No. 15 MDL 631 (CM) (SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019). As set forth below, all factors are clearly satisfied here.

---

[1] The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand greater judgment; (8) the range of reasonableness in light of the best possible recovery; and (9) the range of reasonableness in light of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. These factors are not to be applied in a rigid, formalistic manner; rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 468.

## II.    THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL

### A.    The Settlement Is Procedurally Fair

#### 1.    *Rule 23(e)(2)(A)'s Adequacy of Representation Requirement:   Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class*

Rule 23(e)(2)(A) requires a finding that "the class representatives and class counsel have adequately represented the class."  This "typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *In re GSE Bonds*, 414 F. Supp. 3d at 692 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).[2] "[O]nly a conflict that goes to the very subject matter of the litigation will defeat . . . representative status."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quotation omitted).

Plaintiffs are adequate as their "interests are aligned with other class members' interests because they suffered the same injuries—monetary losses resulting from [Defendants' allegedly unlawful practices]."  *In re GSE Bonds*, 414 F. Supp. 3d at 692.  Because of these injuries, Plaintiffs have an "interest in vigorously pursuing the claims of the class."  *Penney*, 443 F.3d at 268; *see also Alves v. Affiliated Care of Putnam, Inc.*, No. 16 Civ. 1593 (KMK), 2022 WL 1002817, at *21 (S.D.N.Y. Mar. 30, 2022) (plaintiffs who "vigorously pursued the claims of the class" in wage and hour litigation are adequate).  Further, Plaintiffs "demonstrated their commitment to this litigation by retaining qualified and experienced counsel."  *Emeterio*, 2022 WL 274007, at *4; *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480 (KHP), 2021 WL 5578665, at *6 (S.D.N.Y. Nov. 30, 2021). Plaintiffs also invested substantial time and effort to the case: participating in numerous in-person

---

[2] The "adequate representation factor is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 n.25 (E.D.N.Y. 2019); *see also In re GSE Bonds*, 414 F. Supp. 3d at 701 (finding adequacy under Rule 23(e)(2)(A) was likely met for same reasons as adequacy under Rule 23(a)(4)).

meetings and telephone conferences with Class Counsel, providing Class Counsel with detailed information regarding aides' job duties, assisting Class Counsel with obtaining evidence, and reviewing and discussing the pleadings and case strategy. McInturff Decl. ¶ 29. Plaintiffs also assisted with preliminary settlement negotiations and lent support during two mediation sessions and various follow-up calls. *Id.* In sum, Plaintiffs have been excellent class representatives.

Class Counsel also meets the adequacy requirement. Wittels McInturff Palikovic attorneys and Kheyfits Belenky LLP have extensive experience successfully prosecuting wage and hour class actions. McInturff Decl. ¶¶ 4–8. The attorneys leading this action have served as Class Counsel in multiple wage and hour and consumer protection class actions and have secured millions of dollars in recoveries to class members. *Id.* ¶ 4. Further, Wittels McInturff Palikovic and Kheyfits Belenky LLP have dedicated substantial time and resources investigating, prosecuting, and settling Class Members' claims. *Id.* ¶ 9. The work performed on this case demonstrates the firms' skill and commitment to representing the interests of the Class. *Id.*

    2. *Rule 23(e)(2)(B)'s Requirement of Arm's Length Negotiations: The Parties' Vigorous Negotiations Were Arm's Length at All Times and Overseen by an Experienced Mediator*

Rule 23(e)(2)(b) requires procedural fairness and requires a court to consider whether a proposed settlement "was negotiated at arm's length." *Reyes v. Summit Health Mgmt., LLC*, No. 22 Civ. 9916 (VSB), 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024). The Settlement here satisfies that requirement because it was reached after "extensive pre-negotiation discovery, including [Plaintiffs'] pre-filing investigation, and then [over two years] of discovery," including production and analysis of over a hundred and forty thousand payroll, time, and other electronic records and documents, and "[g]iven this discovery, the Parties had a full opportunity to acquaint themselves with the strength of the case prior to initiating negotiations," and "were represented by experienced counsel who were then aided in their negotiations by an experienced mediator," which

"culminated in an agreement in principle after a day-long mediation followed by further negotiations [as well as another mediation session]to draft the Settlement Agreement." *Id.* at *3; *see also Emeterio*, 2022 WL 274007, at *3 (finding Rule 23(e)(2)(B) satisfied where parties were represented by experienced counsel, conducted a thorough investigation and evaluation of claims and damages, and participated in a full-day mediation with a mediator); *Lea*, 2021 WL 5578665, at *4 (same). "All of this suggests that the Settlement is the result of good faith arm's-length negotiations." *Reyes*, 2024 WL 472841, at *3.

### B.    The Settlement Is Substantively Fair

The substantive factors likewise favor final approval.  Settlements require the balancing of the claims' merits and the defenses against the attendant risks of continued litigation and delay. Plaintiffs believe their claims have merit and that they would prevail if this matter proceeded to trial.  Defendants do not agree, deny any potential liability, and up to the point of settlement indicated a willingness to continue to litigate vigorously.  The parties, with the continued assistance of a noted mediator, concluded that the benefits of settlement outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expense associated therewith.  McInturff Decl. ¶ 56.

#### 1.    *Rule 23(e)(2)(C)(i) and the Grinnell Factors: The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery*

Rule 23(e)(2)(C)(i) requires examining whether relief for the class is adequate, considering: the costs, risks, and delay of trial and appeal.  "Importantly, 'the revised Rule 23(e)(2) does not displace' the nine-factor test set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors") that courts have traditionally applied, 'which remain a useful framework for considering the substantive fairness of a settlement.'" *Kurtz v. Kimberly-*

*Clark Corp.*, No. 14 Civ. 1142 (PKC) (RML), 2024 WL 184375, at *3 (E.D.N.Y. Jan. 17, 2024) (citing *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023)).

       a.  Litigation Through Trial Would Be Complex and Costly (*Grinnell* Factor 1)

Through this settlement, Plaintiffs seek to avoid significant risk, expense, and delay and instead ensure a substantial recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Bryant v. Potbelly Sandwich Works*, No. 17 Civ. 7638 (CM) (HBP), 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). "Particularly in complex wage and hour litigation like this one, involving both federal and state statutory rights, protracted litigation is costly and burdensome, and includes motion practice and potential appeals over class certification." *Id.* This case is no exception, with 5,170 Class Members and novel and complex claims under federal and state law.

Continued litigation will only add expense and delay. While significant discovery has occurred, extensive additional discovery will be required for class certification, summary judgment, and trial. This would consume tremendous time and resources for the parties and the Court. Further, any judgment would likely be appealed, adding further uncertainty and delay. In contrast, the settlement bestows substantial monetary relief to Class Members in a prompt manner, has led to improved NHYC pay practices, and avoids the risks of class litigation. The first *Grinnell* factor thus weighs heavily in favor of approval. *See, e.g.*, *id.* ("This settlement provides monetary relief to Class Members in a prompt and efficient manner. Thus, the first factor weighs in favor of judicial approval of the settlement."); *Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431 (AT), 2023

WL 2492977, at *4 (S.D.N.Y. Mar. 14, 2023) ("[T]he Settlement would avoid significant costs, risks, and delay, ensuring timely relief for class members.").[3]

### b. The Class's Reaction Is Overwhelmingly Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). This factor overlaps with Rule 23(e)(4), on the opportunity for exclusion, and Rule 23(e)(5), on the opportunity to object, both of which the settlement provides. No Class Member has objected, and only one of over 5,000 Class Members—less than 0.02% of the Class—has opted out. McInturff Decl. ¶ 50.

### c. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although litigating to trial would likely require many hundreds (if not thousands) of hours of additional discovery, the parties have completed more than enough discovery to recommend settlement. The question raised by this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Bryant*, 2020 WL 563804, at *3 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement but [are] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176) (cleaned up).

The discovery taken here easily meets this standard. As set forth *supra* at p. 3, Class Counsel undertook in-depth pre-litigation investigation, and the parties litigated extensively, engaging in substantial discovery, including written discovery, third-party discovery, a deposition,

---

[3] *See, e.g.*, *Lea*, 2021 WL 5578665, at *4 ("[S]ettlement brings to a close litigation that could have lasted several more years[.]"); *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 7854 (LJL) (KHP), 2021 WL 535635, at *3 (S.D.N.Y. Feb. 12, 2021) (favoring approval because "litigation through trial would be complex, expensive, and long").

and extensive analysis of payroll records. McInturff Decl. ¶¶ 16–19. The parties also undertook significant pre- and post-lawsuit legal research and analysis concerning Plaintiffs' claims, and conducted extensive motion practice, including multiple court hearings and two rounds of conditional certification and dismissal briefing. *Id.* As a result of this and vigorous settlement discussions during two mediation sessions overseen by an experienced class action mediator, Class Counsel were able to evaluate the strengths and weaknesses of Class Members' claims against Plaintiffs' damages model.

Based on this record, the parties were well-equipped to make the compromises necessary to resolve this litigation. *Bryant*, 2020 WL 563804, at *3 (approving settlement after similar discovery in wage and hour litigation where "parties were well-positioned to evaluate the strength of their respective positions and potential damages recoverable"); *Reyes*, 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024) (granting preliminary approval where parties conducted discovery over seven months and no depositions were conducted); *Ballinger v. Advance Magazine Publrs., Inc.*, No. 13 Civ. 4036 (HBP), 2014 WL 7495092, at *2 (S.D.N.Y. Dec. 29, 2014) (granting approval where case "settled before depositions were conducted" but "both sides were well acquainted with the facts and the nature of the various internships at issue"); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to defendants' time and pay practices and where counsel's negotiations had "been in no way collusive").

            d.  Plaintiffs and the Class Face Real Risks if the Case Proceeds (*Grinnell* Factors 4 to 6)

Although Plaintiffs believe their case is strong, they appreciate the risks ahead. In assessing this factor, the court "must only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Emeterio*, 2022 WL 274007, at *7 (quotation omitted);

*Lea*, 2021 WL 5578665, at *9 (same).  Here, without settlement,  "the primary purpose of [which] is to avoid the uncertainty of a trial on the merits," *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 313 (S.D.N.Y. 2020) (quotation omitted), extensive litigation remained, including more depositions, expert discovery, and lengthy briefing.  Then there would be a trial on the merits, which is  "is inherently risky," *Delijanin*, 2021 WL 535635, at *4, followed by "lengthy appeals even if Plaintiffs prevailed," *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 412 (S.D.N.Y. 2018).

Moreover, there is no guarantee that this case will lend itself to class certification, as Defendants would likely "argue that individualized questions . . . predominate over common questions."  *Soler*, 2023 WL 2492977, at *4.  Plaintiffs would have to overcome, among other things, defenses that: (1) certain claims are time-barred; (2) Defendants did not act willfully; (3) certain of Plaintiffs' claims are not actionable; (4) the challenged practices were not uniform; and (5) Plaintiffs cannot prove class-wide damages.  *See, e.g.*, *Soler*, 2023 WL 2492977, at *4 ("Plaintiffs would encounter real risks to . . . maintaining the class action through trial" and "obtaining class certification"); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18 Civ. 8472 (PKC), 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) (similar).  While Plaintiffs are confident in their prospects, Class Counsel are both experienced and realistic and appreciate "[t]here is no assurance that Lead Plaintiffs' motion for class certification would be granted." *Puddu v. 6D Global Techs.*, No. 15 Civ. 8061 (AJN), 2021 WL 1910656, at *5 (S.D.N.Y. May 12, 2021).   Moreover, either party could seek an interlocutory appeal of a certification order under Rule 23(f), *In re GSE Bonds*, 414 F. Supp. 3d at 693, and Defendants could seek to decertify the class.  "Settlement eliminates the risk, expense, and delay inherent in this process."  *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2010 WL 5507892, at *5 (S.D.N.Y. Dec.

21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013). *Grinnell* factors 4–6 thus strongly favor final approval.

      e.   Defendants Likely Could Not Withstand a Greater Judgment (*Grinnell* Factor 7)

The parties negotiated heavily over the settlement amount, taking into account Defendants' ability to pay a settlement that would both compensate Class Members and allow NYHC to remain solvent. McInturff Decl. ¶ 23. Settlement now, before further defense costs are incurred in this matter, will ensure Class Members receive settlement payments without the heightened risk of unavailability of funds to satisfy a judgment sometime in the future.

This factor therefore weighs strongly in favor of the Court's approval of the settlement. *Chambery v. Tuxedo Junction Inc.*, No. 12 Civ. 6539 (EAW), 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) (settlement strongly favored where defendant's finances played a large role in reaching settlement). Further, even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Bryant*, 2020 WL 563804, at *4; *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (same).

      f.   The Settlement Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

"Determining whether a settlement amount is reasonable 'is not susceptible of a mathematical equation yielding a particularized sum.'" *Bryant*, 2020 WL 563804, at *5 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, there is a range of reasonableness[,] a range which recognize[s] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* Here, Defendants have agreed to settle this case for a substantial amount: $3,500,000, plus non-monetary reforms valued at an additional $1,300,000. Even if the Court were to only consider the $3,500,000 monetary relief, this sum is more than 74% of the $4,703,062

in pecuniary harm Class Counsel calculated prior to mediation.  McInturff Decl. ¶ 24.  To be sure, there is a *possibility* that at trial the Class could obtain amounts in excess of their calculated out-of-pocket losses, including that the Court would allow Plaintiffs' $9.3 million damages model,[4] or that Plaintiffs would achieve multiples in the form of liquidated damages and interest.  *Id.* ¶ 25.  But those outcomes are not guaranteed and would require Class Members to wait additional years for payment, assuming such payments were even ordered and collected from Defendants.  *Id.*

Given the attendant risks of litigation, the settlement provides substantial value to each Class Member.  Every Class Member will receive a payment correlated to their out-of-pocket damages, a decidedly realistic potential recovery at trial.  Weighing the benefits of the settlement against the risks of proceeding with litigation, the settlement is reasonable.  *See Bryant*, 2020 WL 563804, at *5 ("The settlement amount represents substantial value given the risks of litigation.").

> 2. *The Remaining Rule 23(e)(2)(C) Factors Are Easily Satisfied*

> a. The Proposed Distribution Method Is Effective (Rule 23(e)(2)(C)(ii))

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Here, Plaintiffs have secured the best possible distribution method: Class Members will be issued checks directly without the need to file a claim, which is the most optimal method.  *See supra* at p. 7.

Moreover, Class Counsel have gone to great lengths to ensure that Class Members cash their settlement checks.  McInturff Decl. ¶ 23. This has resulted in a carefully planned notice process that benefited the Class in that Class Members will not need to fill out claims forms or take overt action to receive their share of the settlement.  *Id.*  To further minimize the number of

---

[4] Inclusion of Plaintiffs' FLSA and NYLL Prompt Payment claims would increase total potential class-wide damages to $9.3 million, but collecting the full measure of damages on these claims would require a liquidated damages award of 100% of allegedly late wages, which were ultimately paid.

recipients who do not cash their checks, Class Counsel also negotiated for a reminder notice which the Settlement Administrator will send out to "[a]ny Class Member who has not cashed their check within 45 days of the date of mailing of the checks." Settlement Agreement § 4.4(C). Any check that is not cashed will escheat and therefore remain available to Class Members indefinitely. *Id.*; N.Y. Aband. Prop. Law § 1406. *Id.*

Regarding the method of dividing settlement funds among the Class, while the allocation plan "must be fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (quoting *In re Bear Stearns Co., Inc. Sec., Derivative, and ERISA Litig.*, 909 F.Supp.2d 259, 270 (S.D.N.Y. 2012)). "[C]ourts look primarily to the opinion of counsel in determining the reasonableness and fairness of a plan of allocation." *Id.* (quotation marks omitted). "As numerous courts have held, a plan of allocation need not be perfect." *Christine Asia Co. v. Yun Ma*, No. 15 MD 2631 (CM), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

Here, as discussed *infra* at 6, Class Counsel were careful to ensure that the payment allocation plan tracks Plaintiffs' damages model and yields a fair result. Further, each Class Member's allocation is based on their *pro rata* share of the settlement fund. Such allocation plans easily hurdle the applicable standard and are routinely approved. *See In re Namenda*, 2020 WL 2749223, at *7–8 (S.D.N.Y. May 27, 2020) (collecting cases and approving *pro rata* distribution plan as "efficient[] and fair[]" which is "like many similar plans in analogous cases"); *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata

allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity").

> ### b. Class Counsel's Fee and Expense Award Is Well Within the Norms of this Circuit (Rule 23(e)(2)(C)(iii))

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including the timing of payment." Class Counsel have not been paid for their extensive efforts or reimbursed for the $70,000+ in litigation costs they advanced on behalf of the Class. Class Counsel request, and Defendants do not oppose, combined litigation expenses and attorneys' fees of one-third of *only* the $3,500,000 cash fund (*i.e.*, $1,166,666). Settlement Agreement § 4.7. A one-third fee is the standard in this Circuit. *See Delijanin*, 2021 WL 535635, at *5 (approving one-third fee in wage and hour class action and noting that it "is in line with amounts typically approved by courts in this Circuit for collective actions such as this"); *Bryant*, 2020 WL 563804, at *6 (approving one-third fee in wage and hour class action and finding it "consistent with the norms of class litigation in this circuit") (internal citation and quotation omitted); *Emeterio*, 2022 WL 274007, at *9 ("Fee awards representing one third of the total recovery are common in this District.") (quotation omitted); *see also In re Deva Concepts Prod. Liab. Litig.*, No. 20 Civ. 1234 (GHW), 2022 WL 3716541, at *2 (S.D.N.Y. Jan. 3, 2022) (Woods, J.) (approving one third fee in class action settlement); *Gonqueh v. Leros Point To Point, Inc.*, No. 14 Civ. 5883 (GHW) (GWG), 2016 WL 791295, at *3 (S.D.N.Y. Feb. 26, 2016) (Woods, J.) (same). Yet here, when the settlement's total value and litigation expenses are considered, the fee award amounts to just 22.84% of the $4,800,000 total settlement benefit. McInturff Decl. ¶ 32. Class Counsel's requested fee is thus well below the norm in this Circuit. *See, e.g.*, Principles of the Law of Aggregate Litigation § 3.13(b) (2010) ("[A] percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the

monetary and the nonmonetary value of the judgment or settlement."); *Fleisher v. Phoenix Life Ins. Co.*, No. 14 Civ. 8714 (CM), 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) ("The overall value of the settlement comprises monetary as well as non-monetary relief."). As discussed in the fee and expense application below, the requested sum is supported by the substantial results achieved for both Class Members, and the risks borne by Class Counsel to achieve these benefits.[5]

### 3.  *Rule 23(e)(2)(D)'s Equitable Treatment Requirement:  The Parties' Allocation Plan Correlates with Actual Damages and Is Reasonable*

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. advisory committee's note to 2018 amendment.

Here, the settlement treats Class Members fairly in relation to their alleged actual damages. As discussed *supra*, the allocation formula bases each Class Member's payment on their *pro rata* share of the fund.  Courts routinely find that such *pro rata* allocations are "fair," *In re Namenda*, 2020 WL 2749223, at *7–8, and "equitabl[e]," *Meredith Corp.*, 87 F. Supp. 3d at 667.  *See also Reyes*, 2024 WL 472841, at *5 (noting that "pro rata distribution is sufficient evidence of equitable treatment").  Moreover, the payment allocation plan correlates with Plaintiffs' damages model. McInturff Decl. ¶ 24.

Further, all Class Members will be bound by the same release.  Settlement Agreement § 4.11(A).  This release does not affect the apportionment of relief among class members, demonstrating equity.  *In re Payment Card*, 330 F.R.D. at 47.

---

[5] Rule 23(e)(2)(C)(iv) also requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal."  Here, there are "no agreements under Rule 23(e)(3) that the Court must review."  *In re Payment Card*, 330 F.R.D. at 36, n. 30.

### III.    NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS

In addition to having personal jurisdiction over Plaintiffs, the Court also has personal jurisdiction over the Class because they received the requisite notice. *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) ("Because adequate notice has been disseminated and all potential Class Members have been given the opportunity to opt out of this class action, the Court has personal jurisdiction over all Class Members."). As described *supra* and in Plaintiffs' preliminary approval brief, ECF No. 232 at 14–15, 32–34, the notice program was designed to provide the best notice practicable and to incorporate best practices for class action notices. The notice constituted sufficient notice to all persons entitled to notice and satisfied all applicable requirements of law, including Fed. R. Civ. P. 23 and constitutional due process. *Id.* Again, it effectively reached 98.2% of Class Members. McInturff Decl. ¶ 52.

### IV.    CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE

On April 19, 2024, the Court preliminarily certified the Class for settlement purposes. ECF No. 234. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' preliminary approval brief, ECF No. 232 at 22–30, this Court should affirm its determinations in the Preliminary Approval Order and certify the Class under Rule 23.

### V.    THE FLSA SETTLEMENT MERITS FINAL APPROVAL

Plaintiffs seek to certify the following class under Section 216(b) of the FLSA (the "FLSA Collective"): "all persons employed by NYHC as home care workers any time between June 4, 2018 through November 8, 2023." Settlement Agreement § 1.14. As discussed below, the FLSA

Collective meets the certification requirements, and Defendants do not oppose certification for settlement purposes only.  Settlement Agreement § 3.4.

Under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) an FLSA settlement should be approved if it reflects "a reasonable compromise over disputed issues." *Garcia v. Good for Life by 81, Inc.*, No. 17 Civ. 7228 (BCM), 2018 WL 3559171, at *2 (S.D.N.Y. July 12, 2018).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Torres*, 2010 WL 5507892, at *6.  "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).

"In determining whether a proposed FLSA settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal citations omitted).

Critically, even after *Cheeks* courts in this District have held that because "an FLSA settlement is examined with less scrutiny than a class action settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Surdu v. Madison Glob., LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *6 (cleaned up); *Bryant*, 2020 WL 563804, at *2 (same).  This is because "settlement of a collective action does

23

not implicate the same due process concerns as the settlement of a class action." *Surdu*, 2018 WL 1474379, at *6.

As this Court found at the preliminary approval stage, the settlement satisfies *Cheeks* and *Wolinsky*. ECF No. 234, ¶ 30. For example, even if the Court were to only consider the $3,500,000 in payments to Class Members, this sum is more than 74% of the $4,703,062 damages model Plaintiffs used in negotiating settlement. Class Members are thus giving up only 26% of their out-of-pocket losses in exchange for foregoing the risks of litigating this case through trial and appeals. Indeed, the recovery here is well within the range that Courts in this district have found fair and reasonable. *See Siddiky v. Union Square Hosp. Grp., LLC*, No. 15 Civ. 9705 (JCF), 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (collecting FLSA cases approving settlements where range of recovery for class members ranged from 13% to 25%); *Larrea v. FPC Coffees Realty Co.*, No. 15 Civ. 1515 (RA), 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (recovery of 43% was fair and reasonable).

Turning to the other *Wolinsky* factors, that the settlement will enable the parties to avoid further protracted litigation and appeals is well documented *supra* at pp. 12–13; the seriousness of the litigation risks faced by both sides if this litigation were to continue is likewise established *supra* at pp. 15–16; and that the settlement is the product of arm's length bargaining between experienced counsel and is untainted with fraud or collusion is set forth *supra* at p. 4. In short, this settlement easily satisfies the criteria for preliminary *Cheeks* and *Wolinsky* review.

## VI.  THE COURT SHOULD DIRECT SERVICE AWARDS TO PLAINTIFFS

In recognition of the services they rendered on behalf of the more than 5,000 other aides, Plaintiffs seek service awards for the following seven workers: $3,000 (opt-in Plaintiffs Blankumsee and D. Reyes), $4,000 (Plaintiffs Guerrero and Y. Reyes), $6,000 (Plaintiffs Barber

and Floyd), and $9,000 (Plaintiff Feng).  McInturff Decl. ¶ 28.  These amounts are reflective of their contributions to the litigation, with the total amount of all service awards set at $35,000. Settlement Agreement § 4.8.  Service awards "are common in class actions" and "serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."  *Surdu*, 2018 WL 1474379, at *13.  Moreover, in wage and hour cases, workers that come forward publicly take on the risk of being "black balled" in their industry.  *Id.*

The requested awards are intended to compensate these workers for their valuable efforts in assisting counsel in developing the theories of the case, including alerting Class Counsel to valuable claims not unearthed in the initial investigatory phase, and in obtaining evidence used to convince NYHC of its risks in defending against liability.  McInturff Decl. ¶ 29.  Plaintiffs at all times encouraged Class Counsel to obtain the best possible result for the Class.  *Id.*

The requested service awards are well-deserved and are well within the range of approved awards.  *See, e.g.*, *In re Polaroid*, No. 03 Civ. 8335 (WHP), 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (case law supports service awards of up to $85,000); *Karic v. Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (collecting EDNY and SDNY cases and approving service awards of $20,000 each to seven plaintiffs); *see also Gonqueh*, 2016 WL 791295, at *3 (approving service awards of $13,000, $12,000, and $5,000).  Moreover, the award request was subject to arm's length negotiations, facilitated by an experienced mediator, and disclosed to the Class.  McInturff Decl. ¶ 30.  No Class Member has objected to the proposed service awards.  *Id.*  In sum, the service awards are reasonable.

## VII.   THE COURT SHOULD GRANT THE REQUESTED FEES AND EXPENSES

Class Counsel bore tremendous financial risk of employing a team of lawyers to investigate and litigate this action for more than three years. *Id.* ¶¶ 40–42; 34–35. This investment secured a substantial settlement that benefits the Class, Defendants' future workers, and the public at large. *Id.* ¶ 55. As compensation for their efforts Class Counsel requests the customary one-third legal fee, *but only* as measured against the $3,500,000 settlement cash fund, not the settlement's total value. *Id.* ¶ 32. Further, the request of one-third of the cash fund is for attorneys' fees *and* the more than $70,000 in litigation costs and expenses advanced for the Class's benefit.[6] *Id.* ¶ 44. It is well settled that a one-third fee is well within the percentage range that courts within the Second Circuit have awarded in similarly complex wage and hour litigations. *See supra* at p. 20. Yet, in basing their fee request on only the settlement's cash fund portion, and including expenses within it, Class Counsel here is requesting substantially *less* than the customary one-third of the settlement's total value.[7] When considering the $1,300,000 non-monetary benefit, and subtracting the costs and expenses, the requested attorneys' fee and expense award therefore represents just 22.84% of the $4,800,000 total settlement benefit. McInturff Decl. ¶ 32. Moreover, the fee request was subject to arm's length negotiations, facilitated by an experienced mediator, and disclosed to the Class. *Id.* ¶ 33. No Class Member has objected to the proposed fee and expense request. *Id.*

---

[6] Plaintiffs' litigation costs and expenses total $70,254.58. McInturff Decl. ¶ 44.

[7] "Courts typically allow counsel to recover their reasonable out-of-pocket expenses" *separately* from fees paid as a percentage of the common fund. *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494 (RLE), 2015 WL 2255394, at *6 (S.D.N.Y. May 11, 2015) (awarding costs separately, and in addition to, percentage-of-recovery attorneys' fees award of one-third of common fund); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) ("In this district alone, there are scores of common fund cases where fees alone (i.e., where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund.").

Considering these facts, as well as the authorities cited below, Class Counsel's fee and expense reimbursement request is reasonable, well in line with prior awards in this District, the risks incurred and the results obtained, and the terms sophisticated clients negotiate in contingent fee representation both in class actions and other complex matters.

### A. Class Counsel Should Be Adequately Compensated for their Substantial Efforts and the Tremendous Financial Risk They Took for the Class's Benefit

Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims." *Steiner v. Williams*, No. 99 Civ. 10186 (JSM), 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001); *see also Flores v. One Hanover, LLC*, No. 13 Civ. 5184 (AJP), 2014 WL 2567912, at *9 (S.D.N.Y. June 9, 2014) (Because "[c]ommon fund recoveries" such as this one "are contingent on a successful litigation outcome," class action contingency fees "transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the court would be difficult to achieve without compensating attorneys for that risk."). It is also well settled that contingency fee awards should be greater than the fees in non-contingency cases, as "[n]o one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success." *Grinnell*, 495 F.2d at 470; *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480 (KHP), 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021), 2021 WL 5578665 (same).

Moreover, courts recognize that fee awards discourage "future misconduct of a similar nature." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). "[C]lass actions . . . have value to society . . . both as deterrents to unlawful behavior . . . and as private law enforcement regimes that free public sector resources. If we are to encourage these positive societal effects, class counsel must be adequately compensated . . . ." *Gascho v. Glob. Fitness*

*Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016); *see also* William B. Rubenstein, *On What A "Private Attorney General" Is—and Why It Matters*, 57 VAND. L. REV. 2129, 2168 (2004) ("[Class Counsel's] clients are not just the class members, but the public and the class members; their goal is not just compensation, but deterrence and compensation."); William B. Rubenstein, *Why Enable Litigation?: A Positive Externalities Theory of the Small Claims Class Action*, 74 UMKC L. REV. 709, 724–25 (2006) ("[T]he class action has the structural consequence of dividing law enforcement among public agencies and private attorneys general and of shifting a significant amount of that enforcement to the private sector.").

This is especially important here, considering that the conduct covered by this litigation affected thousands of low-wage workers, spanned almost a decade, yet no public enforcement authority filed similar actions against Defendants. Indeed, without Class Counsel's willingness to risk scarce resources on this case it is "extremely unlikely" that a meaningful number of Class Members would have received any compensation at all, as they are "almost exclusively low-wage workers with limited resources . . . or familiarity with the legal system." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding superiority requirement "easily satisfied"); *Moreira v. Sherwood Landscaping Inc.*, No. 13 Civ. 2640 (AKT), 2015 WL 1527731, at *15 (E.D.N.Y. Mar. 31, 2015) (where "many potential class members are foreign-born, have limited reading and writing skills, and may fear reprisal from Defendants . . . a class action . . . is likely the only device by which many of the proposed class members would obtain relief.") (internal citations and quotations omitted).

**B.    The Standard for Awarding Attorneys' Fees in Class Actions**

In common fund settlements such as this one, courts in this Circuit prefer the percentage-of-the-fund method for awarding attorneys' fees. *Goldberger v. Integrated Resources, Inc.*, 209

F.3d 43, 50 (2d Cir. 2000).  The percentage method is "the trend in this circuit," as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Lea*, 2021 WL 5578665, at *11 (quotation omitted). Class Counsel are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger*, 209 F.3d 50; *see also Fresno Cty. Emps' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019) ("The common-fund doctrine is . . . rooted in the courts' 'historic power of equity to permit' a person who secures a fund for the benefit of others to collect a fee directly from the fund." (citation omitted)).

### 1.    *The Goldberger Factors Support Plaintiffs' One-Third Requested Fee Award*

The requested one-third fee is reasonable when considering the following *Goldberger* guidelines: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  209 F.3d at 50.  In fact, all *Goldberger* factors weigh in favor of granting Class Counsel's one-third fee request here.

### a.  Class Counsel's Time and Labor

Class Counsel devoted over 2,463 hours throughout the nearly three years they spent investigating, prosecuting, and settling this case.  McInturff Decl. ¶¶ 35–36.  There can be no doubt that the extensive amount of time and labor expended by Class Counsel in this action weighs heavily in favor of the requested fee award.  Moreover, Class Counsel are certain to spend additional time aiding in the further administration of the settlement, *id.* ¶ 38, and the requested fee award is also meant to compensate them for that time.  *DeLeon*, 2015 WL 2255394, at *6.

### b.  Magnitude and Complexity of the Litigation

The magnitude and complexity of the litigation weighs in favor of approval. "In evaluating the second *Goldberger* factor, the size and difficulty of the issues in a case are significant factors

to be considered. . . .  To that end, among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Hall v. ProSource Techs., LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (internal citations and quotations omitted). "Courts have recognized that wage and hour cases involve complex legal issues." *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *17 (S.D.N.Y. Sep. 16, 2011) (citation omitted).  The instant case hinged on several mixed and complex questions of fact and law, which supports approval of the fee request. *See Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014 WL 1777438, at *11 (S.D.N.Y. May 1, 2014) ("FLSA claims typically involve complex mixed questions of fact and law.").

Here, the magnitude and complexity of this multi-year lawsuit is evident in almost every aspect of the case: the number of employees affected, the breadth of Class Counsel's investigation, the amount of computerized data and discovery involved, the extensive pleading and motion practice, and the hard-fought and lengthy settlement process.

c. Risks of the Litigation

"The risk of the litigation is often cited as the first, and most important, *Goldberger* factor." *Lea*, 2021 WL 5578665, at *12.  Generally, "little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Cates v. Trustees of Columbia Univ. in City of N.Y.*, No. 16 Civ. 6524 (GBD), 2021 WL 4847890, at *5 (S.D.N.Y. Oct. 18, 2021); *see also In re Veeco Instruments*, No. 05 MDL 1695 (CM), 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) ("[T]he risk of non-payment in complex cases . . . is very real.  There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. . . . [E]ven a victory at trial does not guarantee recovery.") (collecting cases); McInturff Decl. ¶ 41.

In addition, "[t]he Second Circuit has recognized that risk is inherently associated with a case undertaken on a contingent fee basis." *Lea*, 2021 WL 5578665, at *12; *see also Torretto v. Donnelley Financial Solutions, Inc.*, No. 20 Civ. 2667 (GHW), 2023 WL 123201, at *5 (S.D.N.Y. Jan. 5, 2023) (Woods, J.) (noting "the inherent risk involved in prosecuting a class action litigation on an entirely contingent basis").  Here, Class Counsel took this case on 100% contingency and zealously prosecuted it for over three years without payment.  The requested fee is in line with the substantial risks incurred, particularly considering that contingency work is entitled to greater compensation than non-contingency work; indeed, "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010); *Adams v. Rose*, No. 03 Civ. 7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier[.]").

As noted *supra* in connection with *Grinnell* factors four and five, success was far from assured.  Nevertheless, Class Counsel zealously prosecuted this action for more than three years, investing extensive time without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.  Thus, the "risks of the litigation" factor supports Class Counsel's attorneys' fee request.  *See Lea*, 2021 WL 5578665, at *12 (fact that counsel "undertook this litigation on a contingent basis and have received no payment for their work during the roughly three years that the case has remained pending . . . counsels in favor of approving the requested [one-third] fee."); *see also Oleniak v. Time Warner Cable Inc*., No. 12 Civ. 3971 (KPF), 2013 WL 12447094, at *9 (S.D.N.Y. Dec. 17, 2013) (fact that "Class Counsel

risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation" weighed in favor of a one-third fee).

### d. Quality of Representation

When evaluating the quality of representation, "courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). "Courts have viewed counsel's experience in wage and hour cases as directly responsible for a favorable settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 480–81 (S.D.N.Y. 2013) (collecting cases); *Westerfield v. Washington Mut. Bank*, No. 06 Civ. 2817 (JMA), 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) (granting fee award where "Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law"). As set forth *supra* on pp. 9–11 in connection with Rule 23 adequacy, Class Counsel have substantial experience successfully prosecuting wage and hour class actions, have served as Class Counsel in multiple wage and hour and consumer protection class actions and have secured more than $100 million in recoveries to class members. McInturff Decl. ¶¶ 4–8.

The recovery obtained equally justifies the requested fee award. As previously noted, Class Counsel achieved $3,500,000 in benefits as well as non-monetary relief reasonably valued at $1,300,000. Though the parties disagreed as to how much the litigation contributed to the improvements to its pay practices NYHC implemented after Class Counsel filed suit, they were able to agree on a reasonable valuation with the assistance of their mediator. While Class Counsel will only seek payment based on the settlement's cash component, it is well settled that courts include the value of both the monetary and non-monetary benefits conferred in calculating class action fee awards. *Fleisher v. Phoenix Life Ins. Co.*, No. 14 Civ. 8714 (CM), 2015 WL 10847814,

at *10, *15 (S.D.N.Y. Sept. 9, 2015).  "Leading authorities agree, as do courts in this Circuit and nationwide."  *Id.* at *15 (collecting authorities, including from the Federal Judicial Center); *see also Sykes v. Harris*, No. 09 Civ. 8486, 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (considering value of non-monetary relief in setting class counsel fees); Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 3d. Ed., 35 (2010) (basing fees on the "actual value to the class of any settlement fund **plus** the actual value of any nonmonetary relief") (emphasis added); Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010, § 3.13 (noting fee awards are to be "based on both the monetary and nonmonetary value of the judgment or settlement") (emphasis added).

When considering the $1,300,000 non-monetary benefit, the requested attorneys' fee and expense award represents just 22.84% of the $4,800,000 total settlement benefit.  McInturff Decl. ¶ 32.  Class Counsel's requested fee is thus at the low end of fees approved in comparable cases, as a fee of one-third of the total value obtained for the class has repeatedly been deemed reasonable in the Second Circuit.  *See Hezi v. Celsius Holdings, Inc.*, No. 21 Civ. 9892 (JHR), 2023 WL 2786820, at *5 (S.D.N.Y. Apr. 5, 2023); *see also Gonqueh v. Leros Point To Point, Inc.*, No. 14 Civ. 5883 (GHW) (GWG), 2016 WL 791295, at *3 (S.D.N.Y. Feb. 26, 2016) (Woods, J.) (approving one-third fee).  It is thus no surprise that Courts in this District frequently approve class action fee requests for one third of the value obtained in cases of a similar size to the instant matter. *See, e.g.*, *In re Deva Concepts Prod. Liab. Litig.*, No. 20 Civ. 1234 (GHW), 2022 WL 3716541, at *2 (S.D.N.Y. Jan. 3, 2022) (Woods, J.) (approving fee $1,733,160 fee "constituting 33 and 1/3% of the Common Fund"); *Solis v. OrthoNet LLC*, No. 19 Civ. 4678 (VSB), 2021 WL 2678651, at *2, 4 (S.D.N.Y. June 30, 2021) (approving fee of one-third of $3 million wage and hour settlement and noting that "[c]ourts in this district have routinely approved requests for one-third of the

settlement fund in cases with settlement funds that are the same or larger than this fund").[8]

      e.   The Requested Fee Is Reasonable in Relation to the Settlement

The $1,166,666 requested fee—which is inclusive of costs and amounts to one third of the $3,500,000 Settlement Fund—is also reasonable in light of the work performed and the results obtained and falls within the range of common fund awards in the Second Circuit, as noted above at pp. 20. Indeed, "it is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2013). Moreover, when considering the $1,300,000 non-monetary benefit conferred on the Class and the costs incurred by Class Counsel, the requested attorneys' fee and expense award represents just 22.84% of the $4,800,000 total settlement benefit. McInturff Decl. ¶ 32. Class Counsel's fee and expense request was also subject to arm's length negotiations between the parties, was facilitated by a noted mediator, and was disclosed to the Class. *Id.* ¶ 33.

      f.   Public Policy Considerations

Awarding one third of the cash fund is also consistent with public policy, because if the "important public policy [of remedial statutes] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 (CM), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010); *see also Torretto v. Donnelley*

---

[8] *See also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (awarding 33% of $4,900,000 settlement because "the requested amount [was] consistent with the norms of class litigation in this circuit") (internal quotation marks omitted); *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) (collecting cases with settlements in excess $6 million and noting that "courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds substantially larger than this one"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 settlement).

*Financial Solutions, Inc.*, No. 20 Civ. 02667 (GHW) 2023 WL 123201, at *5 (S.D.N.Y. Jan. 5, 2023) (Woods, J.) ("Public policy also favors an award of the agreed-upon fees, as it will incentivize dedicated and experienced counsel to bring these types of cases."); *In re Merrill Lynch Tyco*, 249 F.R.D. 124, 141–42 (S.D.N.Y. 2008) ("In order to attract well qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." (cleaned up)).  This is especially true where, like here, there are no public enforcement actions.

Moreover, the FLSA and the NYLL are remedial statutes designed to protect workers' wages. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective—ensuring that every employee receives "a fair day's pay for a fair day's work"). "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (collecting cases brought under both the FLSA and NYLL).  "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.* (citing *Goldberger*, 209 F.3d at 51).  Consequently, courts have recognized that fee awards in wage and hour cases serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature.  *Id.* (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980)); *see also Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (same); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (same); *Raniere v. Citigroup, Inc.*, No. 11 Civ. 2448 (RWS), 2015 WL 5724669, at *9 (S.D.N.Y. Sept. 29, 2015) ("Approval [of one-third fee] forwards the public interest in deterring exploitation of workers by encouraging lawyers to represent their rights."); *In re Flag*

*Telecom*, 2010 WL 4537550, at *29 (holding that if the "important public policy [remedial statutes] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

The settlement also provides substantial benefits to the public as well as Class Members. It serves public policy as embodied in the wage and hour laws by compensating workers, holding Defendants accountable for their allegedly unlawful conduct, and deterring future similar conduct. This deterrent effect, moreover, will carry over to other market participants, who will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they engage in similar conduct.

Moreover, the requested fee does not bestow a windfall on Class Counsel (*see* the lodestar cross check discussion below) and represents reasonable remuneration for devoting over 2,463 hours and advancing more than $70,000 in costs in the more than three years they devoted to this case. McInturff Decl. ¶¶ 35; 44. Therefore, any concern about preventing windfalls is not at issue here. Simply put, Class Counsel's requested compensation is reasonable, as this amount falls below the range of fees normally approved within this Circuit. In sum, the *Goldberger* factors support the requested fee.

### 2. *The Lodestar Cross Check Further Supports Class Counsel's Fee and Expense Request*

Application of the lodestar/multiplier method also confirms the reasonableness of Class Counsel's request. Courts can award fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005). However, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Lea v. Tal Educ. Grp.*,

No. 18 Civ. 5480 (KHP), 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021). By contrast, the lodestar method has been criticized for creating "a temptation for lawyers to run up the number of hours for which they could be paid" which "created an unanticipated disincentive to early settlement." *Goldberger*, 209 F.3d at 48–49.

From the standpoint of judicial economy, "the primary source of dissatisfaction" with the lodestar method "was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits," which produced an "inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48–49. Thus, "[t]he trend in the Second Circuit is to apply the percentage method and loosely use the lodestar method as a baseline or as a cross check." *Solis v. OrthoNet LLC*, No. 19 Civ. 4678 (VSB), 2021 WL 2678651, at *4 (S.D.N.Y. June 30, 2021).

Under the lodestar cross-check, the number of hours each attorney worked is multiplied by that attorney's hourly rate. *Goldberger*, 209 F.3d at 47. "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or the court "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005).

In considering the lodestar, the court also determines the appropriate multiplier to "reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Flag Telecom*, 2010 WL 4537550, at *23; *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (explaining that the lodestar

"is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted).

Here, Class Counsel's reduced lodestar to date is $1,702,947, which reflects the over 2,463 hours of work in three years of investigation and litigation.  McInturff Decl. ¶¶ 35–36.[9]  As detailed above, this action was hotly contested: it involved substantial discovery, including the exchange of extensive documents and data, a deposition, third-party discovery, protracted search term negotiations and numerous discovery disputes, as well as extensive motion practice, including multiple court hearings and two rounds of conditional certification and dismissal briefing, raised numerous discovery disputes, and required multiple mediations.  Moreover, Class Counsel will have significant post-final approval work responding to Class Member inquiries. *See, e.g.*, *Garcia v. Pancho Villa's of Huntington Village, Inc*, No. 09 Civ. 486 (ETB), 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request."); *Khait*, 2010 WL 2025106, at *9 (same).

Critically, Class Counsel are **<u>not</u>** asking for a multiplier, although as can be seen from the more than three years of pure contingency work Class Counsel has dedicated to this case— exemplified by the tenacity Class Counsel have shown in persevering through demanding litigation and overcoming numerous settlement obstacles—the excellent result achieved certainly would have warranted a multiplier had Class Counsel's lodestar not exceeded the percentage recovery sought.  In this case, comparing the lodestar with the requested fee yields a ***negative multiplier*** of 0.685, or a 31.5% discount on the fair-market value of their legal services.

---

[9] Class Counsel used their billing discretion to lower their number of hours expended.  *Id.*

Detailed tables of the time expended by all attorneys and staff in this matter are set forth in McInturff Decl. ¶ 35. These attorneys' and paralegal's hourly rates are also included in the tables. *Id.* The hours reported are reasonable for a case of this complexity and magnitude and the hourly rates of the attorneys and staff that worked on this matter are commensurate with the rates charged by class action practitioners in this District with similar experience. *Id.* ¶ 37.

Turning to Class Counsel's hourly rates, they are in line with the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," *Cruz v. Local Union No. 3 of IBEW,* 34 F.3d 1148, 1159 (2d Cir. 1994), and are reasonable when analyzed under the "*Johnson* factors." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2008). The Second Circuit has identified the twelve *Johnson* factors as:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3. However, "separate findings as to each factor are unnecessary." *Espinosa v. Perez,* No. 18 Civ. 8855, 2020 WL 2950978 (LGS) (SN), at *1 (S.D.N.Y. Jan. 27, 2020).

Here, Class Counsel's rates are supported by the *Johnson* factors. This action was undertaken on pure contingency by highly specialized attorneys. *See, e.g.*, McInturff Decl. ¶¶ 3–8, 42. Due to the intense time commitment (here, over 2,463 hours), counsel was precluded from other work. *Id.* ¶ 43. Cases like this have also not revealed themselves to be attractive to the greater wage and hour bar, likely because they are highly complex, much more risky than typical wage and hour cases, and require multi-year efforts. *Id.*. Class Counsel's usual hourly rates are

also competitive with rates awarded in other complex class actions in this District and have been repeatedly approved by courts in this District and beyond. *Id.* ¶ 37.[10]

In sum, the lodestar cross-check further supports the reasonableness of the requested fee.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter the proposed Order and Final Judgment, ECF No. 239-1.

Dated:  August 6, 2024
      New York, New York

Respectfully submitted,

 /s/ *J. Burkett McInturff*
J. Burkett McInturff (JM-4564)
Ethan D. Roman (ER-5569)
**WITTELS MCINTURFF PALIKOVIC**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com

*Counsel for Plaintiffs, the Collective, and the Class*

Andrey Belenky (AB-1976)
**KHEYFITS BELENKY LLP**
80 BROAD STREET, 5TH FL
NEW YORK, NY 10004
Phone: (212) 203-5399
abelenky@kblit.com

*Co-Counsel for Plaintiffs, the Collective, and the Class*

---

[10] *See, e.g.*, *Nichols v. Noom, Inc.*, No. 20 Civ. 3677 (KHP), 2022 WL 2705354, at *11 (S.D.N.Y. July 12, 2022) (approving Class Counsel's 2022 rates in consumer class action); *Medvedeva v. Assistcare Home Health Servs. LLC*, No. 17 Civ. 5739 (E.D.N.Y. June 1, 2021), ECF No. 151 (approving Class Counsel's 2021 rates in wage and hour class action); *Little v. Ambit Energy Holdings, LLC*, No. 16 Civ. 8800 (D.N.J. July 2, 2020), ECF No. 94 (approving Class Counsel's 2020 rates in consumer class action); *Delgado v. Ocwen Loan Servicing LLC, et al.*, No. 13 Civ. 4427 (E.D.N.Y. Aug. 20, 2019), ECF No. 429 (approving Class Counsel's 2019 rates in consumer class action); *Simmons v. Ambit Energy Holdings, LLC*, No. 503285/2015, NYSCEF No. 205 (N.Y. Sup. Ct. July 16, 2018) (approving Class Counsel's 2018 rates in consumer class action); *Mirkin v. Viridian Energy, Inc.*, No. 15 Civ. 1057 (D. Conn. June 27, 2018), ECF No. 185 (same); *Rasulev v. Good Care Agency, Inc.*, No. 16 Civ. 1993 (E.D.N.Y. July 28, 2017), ECF No. 70 (approving Class Counsel's 2017 rates in wage and hour class action); *Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (S.D.N.Y. Jan. 8, 2016), ECF No. 22 (approving Class Counsel's 2015 rates in wage and hour class action); *Davenport v. Elite Model Mgmt. Corp.*, No. 13 Civ. 1061, 2014 WL 12756756, at *11 (S.D.N.Y. May 12, 2014) (approving Class Counsel's 2014 rates in wage and hour class action).

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the following documents in support of Plaintiffs' Motion for Final Approval of the Class and Collective Action Settlement and Related Relief was served via ECF this 6th day of August 2024 upon the below-listed counsel of record:

1. Plaintiffs' Notice of Unopposed Motion for Final Approval of the Class and Collective Action Settlement and Related Relief, dated August 6, 2024;

2. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Class and Collective Action Settlement and Related Relief, dated August 6, 2024;

3. Declaration of Lead Class Counsel J. Burkett McInturff, dated August 6, 2024, with Exhibits; and

4. Proposed Order (Exhibit A to Declaration of J. Burkett McInturff).

Peter C. Godfrey, Esq.
Joshua Feinstein, Esq.
Hodgson Russ LLP
605 Third Avenue, Suite 2300
New York, NY 10158
(716) 848-1336
pgodfrey@hodgsonruss.com
jfeinstein@hodgsonruss.com

*Attorneys for Defendants*

/s/  J. Burkett McInturff
J. Burkett McInturff