**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUIS FRANCK, LI ZHEN FENG, YERALDIN REYES, CHARISMA BARBER, CASSONDRA FLOYD, and ELIZABETH GUERRERO,<br><br>Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW YORK HEALTH CARE INC., MURRY ENGLARD, and GLEN PERSAUD,<br><br>Defendants. | Case No. 21-CV-4955 (GHW) (JLC) |

**DECLARATION OF J. BURKETT MCINTURFF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT AND RELATED RELIEF**

I, J. Burkett McInturff, declare as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am a partner at Wittels McInturff Palikovic ("WMP"). WMP and Kheyfits Belenky LLP are counsel for Plaintiffs and the proposed Rule 23 Class and FLSA Collective. Based on my active participation in and supervision of all material aspects of the prosecution and settlement of this wage and hour class action, I have personal knowledge of the matters set forth herein.

2. I make this Declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Class and Collective Action Settlement and Related Relief (the "Final Approval Motion"). Through Plaintiffs' Final Approval Motion, Plaintiffs seek an Order: (1) granting final certification to the Rule 23 Class under Federal Rule of Civil Procedure 23 and final certification of the FLSA Collective under 29 U.S.C. § 216(b), for settlement purposes; (2) granting final approval of all terms applicable to the Rule 23 Class set forth in the Settlement Agreement; (3) approving all terms applicable to the FLSA Collective set forth in the Settlement Agreement; (4) finding that the court-authorized notice was the best notice practicable under the circumstances; (5) approving the Service Awards to Plaintiffs; (6) awarding Class Counsel reimbursement of litigation expenses and attorneys' fees; (7) approving the parties' proposed final settlement procedure; (8) incorporating all terms of the Settlement Agreement, including the release; and (9) dismissing this action with prejudice and entering final judgment.[1]

I. **Class Counsel's Background**

3. I am the partner responsible for handling this matter for my law firm. I have been admitted to practice law in New York for 12 years. I graduated from New York University

---

[1] The proposed Order granting preliminary approval is attached hereto as **Exhibit A**.

School of Law in 2010. For the last 12 years more than 90% of my practice has been devoted to litigating class action employment and consumer protection cases.

4. My law firm, WMP, has deep experience handling class actions, including prosecuting and settling wage and hour class actions generally, with particularized expertise in home care wage and hour matters. For example, in 2017, WMP obtained a $1,500,000 settlement on behalf of home care workers who brought claims for overtime and other wages, which settlement was approved by Magistrate Judge Cheryl L. Pollak in the Eastern District of New York. In 2020, WMP was appointed as Plaintiffs' Coordinating Counsel in a class-wide arbitration involving more than forty home care agencies. And in 2021, WMP obtained a wage and hour settlement of $6,500,000 on behalf of home care workers, which was approved by Magistrate Judge Lois Bloom in the Eastern District of New York.

5. Further, WMP currently serves as lead class counsel in *Diaz v. New York Paving, Inc.*, No. 18-cv-4910 (ALC) (GWG) (S.D.N.Y.), a large and complex wage and hour dispute where the firm obtained class and collective action certification and is currently overseeing all expert discovery and trial preparation efforts.

6. The lawyers assigned to this matter are also well-versed in wage and hour law and in class and collective actions and are highly qualified to represent the interests of the Rule 23 Class and FLSA Collective (together "Class Members"). The lawyers at WMP have represented classes of employees and consumers in more than a dozen class action lawsuits in state and federal courts throughout the United States, including many in this District, and have secured more than $100 million in recoveries to class members. Their backgrounds and qualifications are detailed in WMP's firm resume.

7. Attached to this Declaration as **Exhibit B** is a true and correct version of WMP's 2024 Firm Resume.

8. In addition, WMP's co-counsel Kheyfits Belenky LLP has extensive experience in wage and hour matters, and in home care wage and hour litigation specifically. For example, attorneys at Kheyfits Belenky were co-counsel to WMP in all three of the class action wage and hour matters referenced in Paragraph 4. Attorneys at Kheyfits Belenky have also represented plaintiffs in more than a dozen individual wage and hour matters. Additionally, attorneys at Kheyfits Belenky have served as co-counsel to WMP in four consumer protection class actions, including two which are currently ongoing.

9. Further, the team of attorneys and staff litigating this matter on behalf of Class Members dedicated substantial time and resources, investigating, prosecuting, and settling this case. The work that Class Counsel have performed in this case demonstrates our skill and commitment to representing the interests of the Class.

II. **Introduction to the Proposed Settlement and Relief Sought by this Motion**

10. The proposed settlement resolves the claims brought by Plaintiffs Louis Franck, Li Zhen Feng, Yeraldin Reyes, Charisma Barber, Cassondra Floyd, and Elizabeth Guerrero ("Plaintiffs") against Defendants New York Health Care Inc., Murry Englard, and Glen Persaud (collectively, "NYHC" or "Defendants").

11. Plaintiffs' Unopposed Final Approval Motion seeks final approval of the settlement of this wage and hour class and collective action—a settlement achieved after three years of extensive investigation, hard-fought litigation, and forceful negotiations overseen by a third-party mediator. The final terms of the parties' settlement were memorialized in the Settlement

4

Agreement that is now being submitted for the Court's final approval. At all times, the parties' negotiations have been vigorous, adversarial, and conducted at arm's length.

12. The proposed settlement provides a monetary benefit to the Class in the form of a $3,500,000.00 Settlement Fund, with the settlement payments (net of expenses and fees) to be distributed directly to Class Members. As described herein, each Class Member is entitled to a *pro rata* share of the Settlement Fund based on each individual's tenure, which the parties agree reasonably approximates alleged aggerate damages. Further, the parties agree that as a result of this action, NYHC reformed its pay practices to further ensure that aides are paid in accordance with the law. With the assistance of their third-party mediator, the parties negotiated the value of these enhancements at not less than $1,300,000, thus yielding a class and collective action settlement valued at not less than $4,800,000.

13. In arriving at this favorable result, Plaintiffs also recognized the expense and length of a trial and potential appellate process, and further acknowledged that both certification of the class and ultimate success on the merits remain uncertain.

14. Pursuant to the terms of the Settlement Agreement, Plaintiffs now move for entry of the proposed final approval order which accomplishes the following:

(i) Grants final certification to the Rule 23 Class under Federal Rule of Civil Procedure 23 and final certification of the FLSA Collective under 29 U.S.C. § 216(b), for settlement purposes;

(ii) Grants final approval of all terms applicable to the Rule 23 Class set forth in the Settlement Agreement;

(iii) Approves all terms applicable to the FLSA Collective set forth in the Settlement Agreement

(iv) Finds that the court-authorized notice was the best notice practicable under the circumstances;

(v) Approves the Service Awards to Plaintiffs;

(vi) Awards Class Counsel reimbursement of litigation expenses and attorneys' fees

5

(vii)   Approves the parties' proposed final settlement procedure;

(viii)  Incorporates all terms of the Settlement Agreement, including the release; and

(ix)    dismisses this action with prejudice and enters final judgment.

15. In the paragraphs that follow, I will describe the factual background and procedural history of this lawsuit and summarize the terms of the proposed Settlement Agreement. Accompanying this Declaration is Plaintiffs' supporting Memorandum of Law that demonstrates why, under governing law, this Court should grant final approval of the settlement and grant the related relief requested in Plaintiffs' Motion.

### III.    Thorough Investigation of Class Members' Claims

16. Before the initiation of this action, I, along with a team of attorneys, conducted a thorough investigation into the merits of the potential claims and defenses. Our investigation and legal research focused on the underlying merits of Class Members' claims, the alleged damages to which they were entitled, and the propriety of class certification.

17. Our team also conducted in-depth background research on NYHC, obtaining information on NYHC's compensation policies and practices. We conducted in-depth interviews with Plaintiffs and other former NYHC home care workers regarding Defendants' payment policies and practices, the number of hours home care aides worked, and other information pertinent to Plaintiffs' claims in this action. In addition, we obtained and reviewed numerous documents and communications from Plaintiffs and others, and conducted research and investigation into the pertinent and changing case law and the facts developed in other home care wage and hour class actions that informed this case. Our team also performed extensive legal research and analysis concerning the particular legal complexities attendant to home-care wage and hour claims.

6

**Plaintiffs' Complaint, Discovery, and the Parties' Settlement Negotiations**

18. On June 4, 2021, Plaintiffs filed their Class and Collective Action Complaint against Defendants in the United States District Court for the Southern District of New York (ECF No. 1), which was later amended on September 21, 2021 (ECF No. 20) and March 17, 2023 (ECF No. 166).

19. The litigation spawned substantial discovery, including: written discovery; third-party discovery; the production and analysis of over a hundred and forty thousand payroll, time, and other electronic records and documents; numerous interviews with Plaintiffs, Class Members, and potential witnesses; a deposition of one of Defendants' employees; and the negotiation of an ESI Protocol (ECF No. 88), a search term protocol (ECF No. 135), and protracted search term negotiations. The parties also conducted extensive motion practice, including multiple court hearings and two rounds of conditional certification (ECF Nos. 61 and 185) and dismissal briefing (ECF Nos. 85 and 95, 178), raised numerous discovery disputes (ECF Nos. 72, 73, 78, 89, 123), and undertook preparations for proceedings on class certification, summary judgment, and trial.

20. In late 2023, the parties agreed to participate in private mediation. The parties then engaged in extensive pre-mediation damages analysis, including preparing comprehensive reports on liability and damages. This analysis encompassed the review of eight years of time and payroll records for 100 Class Members selected via a sampling methodology that Plaintiffs and their statistics expert negotiated with Defendants. The parties thereafter engaged in arm's length mediation on November 8, 2023 that was overseen by Martin F. Scheinman, Esq., a noted mediator with extensive experience in home care class action litigation. With Mr. Scheinman's assistance, the parties reached agreement on most material settlement terms and negotiated a

7

memorandum of understanding, which was executed on November 10, 2023. Following additional hard-fought negotiations and another mediation session with Mr. Scheinman on February 15, 2024, the Settlement Agreement was fully executed by Defendants on March 5, 2024 and provided to Class Counsel the following day.

21.     At all times, the parties' negotiations have been vigorous, adversarial, and at arm's length.

### IV.     Settlement Terms and Allocation Formula

22.     According to Defendants' records, there are 5,170 Class Members.[2]

23.     Under the Settlement Agreement, Defendants will establish a cash fund of $3,500,000 ("Settlement Fund"). Settlement Agreement § 4.1. Each Class Member will then be issued a direct settlement payment without the need to submit a claim. *Id.* § 4.4. Class Members' share of the settlement will be calculated based on their *pro rata* share of all hours worked by Class Members as reflected in Defendants' payroll records. *Id.* § 4.2. In addition, each Class Member will be afforded a minimum allocation of $75 to account for Plaintiffs' claims arising from NYHC's statutory wage disclosure obligations. *Id.* § 4.2. The parties negotiated heavily over the settlement amount, taking into account Defendants' ability to pay a settlement that would both compensate Class Members and allow NYHC to remain solvent. Moreover, Class Counsel have gone to great lengths to ensure that Class Members cash their settlement checks, including negotiating for a reminder notice which the Settlement Administrator will send out to "[a]ny Class Member who has not cashed their check within 45 days of the date of mailing of the checks." Settlement Agreement § 4.4(C). Any check that is

---

[2] The small discrepancy between the number of workers identified in the Settlement Agreement (5,157) and the number of workers identified on the Class List (5,170) is due to a clerical error made by Defendants in compiling employee records. It does not materially impact the average expected payment to each Class Member, reducing it from $417.56 to $416.51. *See infra* ¶ 26.

8

not cashed will escheat and therefore remain available to Class Members indefinitely. *Id.*; N.Y. Aband. Prop. Law § 1406.

24. The chosen distribution plan reasonably correlates with Plaintiffs' claims for unpaid wages and will fairly compensate Class Members in relation to their alleged damages. Notably, the $3,500,000 Settlement Fund represents more than 74% of the $4,703,062 in pecuniary class-wide harm that Class Counsel calculated prior to mediation.

25. There is a possibility that at trial the Class could obtain amounts in excess of their calculated out-of-pocket losses, including that the Court would allow Plaintiffs' $9.3 million damages model or that Plaintiffs would achieve multiples in the form of liquidated damages and interest. Plaintiffs' $9.3 million damages model includes their FLSA and NYLL Prompt Payment claims, but collecting the full measure of damages on these claims would require a liquidated damages award of 100% of allegedly late wages, which wages, however, were ultimately paid. These possible outcomes are not guaranteed and would require Class Members to wait additional years for payment from this matter, assuming such payments were even ordered and collected from Defendants.

26. After accounting for deductions for attorneys' fees and expenses, settlement administration expenses, and a reserve fund to cover administration issues, the average payment to the 5,170 Class Members is expected to be $416.51. This amounts to roughly 31 hours' pay without Class Members having to take additional action to obtain relief.

27. Further, the parties agree that as a result of this action, NYHC reformed its pay practices to further ensure that aides are paid in accordance with the law. Settlement Agreement § 4.6.

28. Pursuant to the Settlement Agreement, Class Counsel request that in recognition of the services they rendered on behalf of the more than 5,000 other aides, seven workers be granted service awards as follows: $3,000 for opt-in plaintiffs Blankumsee and D. Reyes, $4,000 for Plaintiffs Guerrero and Y. Reyes, $6,000 for Plaintiffs Barber and Floyd, and $9,000 for Plaintiff Feng.

29. These proposed awards are intended to compensate these workers for their valuable efforts in assisting counsel in developing the theories of the case and obtaining evidence used to convince NYHC of its risks in defending against liability.  Before joining this litigation, these workers all agreed to shoulder the responsibilities of representative plaintiffs.  Plaintiffs invested substantial time and effort to the case: participating in numerous in-person meetings and telephone conferences with Class Counsel, and providing Class Counsel with detailed information regarding aides' job duties.  They also reviewed and discussed the pleadings, repeatedly conferred with Class Counsel on case progress, litigation strategy, and settlement, at all times encouraging Class Counsel to obtain the best possible result for Class Members.  Plaintiffs also assisted with preliminary settlement negotiations and lent support during two mediation sessions and various follow-up calls.  Their participation in this case was significant and critical, as they alerted Class Counsel to valuable claims not unearthed in the initial investigatory phase.

30. The service award request was subject to arm's length negotiations between the parties, was facilitated by an experienced mediator, and was disclosed to the Class.  No Class Member has objected to the proposed service awards.  Plaintiffs are hereby moving for Court approval of the Service Award simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

31. Pursuant to the Settlement Agreement, Plaintiffs also request that the Court approve litigation expenses and attorneys' fees of no more than one third of the Settlement Fund (i.e. $1,166,666). This sum is consistent with fee awards in the Second Circuit. In Class Counsel's experience, law firms that represent plaintiffs in contingency employment matters in this Circuit typically charge their clients at least one third (33.33%) of their gross recoveries, exclusive of litigation expenses, and as set forth in the accompanying Memorandum of Law, many courts in this District and elsewhere routinely approve one-third fee awards.

32. Class Counsel's requested fee and expense award is also reasonable in relation to the result achieved for the Class. Here, Class Counsel together are requesting one-third of *only* the monetary value obtained for Class Members (i.e. the $3,500,000 fund), yielding a total fee award of $1,166,666. The requested fee does not account for the $1,300,000 in value of the significant equitable relief Class Counsel obtained in this litigation, or the $70,254.58 in expenses incurred. *See infra* ¶ 44. If the value of the equitable relief obtained from Class Counsel's prosecution of this lawsuit is factored into the gross benefit fund created by Class Counsel's work in this matter—as is customary in calculating class action contingency fees—and the litigation expenses paid by Class Counsel are subtracted from the fee award, the requested fee represents 22.84% of the total recovery. Class Counsel's requested fee is thus at the low end of fees approved in comparable cases, as a fee of one-third of the total value obtained for the Class has repeatedly been deemed reasonable and consistent with the norms of class litigation in the Second Circuit.

33. Class Counsel's fee and expense request was also subject to arm's length negotiations between the parties, was facilitated by Mr. Scheinman, and was disclosed to the Class. No Class Member has objected to the fee and expense request.

11

34. Class Counsel have also committed significant resources to the three-year investigation and litigation of this case, brought viable claims and aggressively pursued the facts necessary to prevail on the merits in the event that this case had not settled.

35. Altogether, WMP and Kheyfits Belenky LLP devoted over 2,463 hours in the three years they spent investigating, prosecuting, and settling this case. There was no unnecessary expenditure of time, labor, or resources by Class Counsel. The chart below summarizes the billable time each firm performed on behalf of Plaintiffs and the Class.

| SUMMARY OF ATTORNEYS' FEES | | | |
|---|---|---|---|
| **INDIVIDUAL** | **HOURLY RATE** | **TOTAL HOURS** | **FEES** |
| Steven L. Wittels, Founding Partner | 1,130 | 72 | $ 81,360 |
| Tiasha Palikovic, Shareholder and Partner | 875 | 151.5 | $ 132,562.50 |
| J. Burkett McInturff, Shareholder and Partner | 845 | 593.4 | $ 501,423 |
| Ethan D. Roman, Counsel | 645 | 973.4 | $ 627,843 |
| Jessica L. Hunter, Counsel | 625 | 96.2 | $ 60,125 |
| Daniel J. Brenner, Senior Associate | 460 | 23.8 | $ 10,948 |
| Nathan A. Rice, Former Senior Associate | 480 | 103.3 | $ 49,584 |
| Andrey Belenky, Co-Counsel | 740 | 256.5 | $ 189,810 |
| Mary Itson, Paralegal | 255 | 193.3 | $ 49,291.50 |
| **TOTAL:** | | **2,463.4** | **$ 1,702,947** |

36. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from time records maintained by each attorney participating in the case. Based on my knowledge and experience in cases of this kind, the time spent was reasonable and necessary to achieve the excellent result Class Counsel's efforts achieved here. Before submitting this declaration, I carefully scrutinized Class Counsel's time records and eliminated or reduced various entries based upon my billing judgment. In addition, Class Counsel are not billing for certain time worked on this matter by junior attorneys. Should the Court require the

submission of Class Counsel's time records, I will have them submitted for *in camera* review after we take the necessary measures to protect the work product and client confidences contained in these records.

37.     The rates listed above are my firm's current billing rates and are supported by our extensive and specialized experience in these types of cases and recognized expertise in complex class action matters. Our hourly billing rates have been repeatedly approved by courts in this District and the Eastern District of New York.[3] I have personal knowledge of the hourly rates charged by other attorneys with comparable experience as well as the attorneys within the firm who worked on this matter. Based on that information, I believe that these rates are fully consistent with the market rate in this District for attorneys with comparable expertise, experience and qualifications, and that they are comparable to rates of attorneys specializing in complex litigation around the country. Based on the information I have, I believe that the rates charged for its partner and non-partner attorney time are reasonable and appropriate fees for those with comparable expertise, experience, and qualifications.

38.     Class Counsel's attorneys' fees are not based solely on the extensive time and effort thus far expended but are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future. Class Counsel anticipate spending

---

[3] *See, e.g.*, *Nichols v. Noom, Inc.*, No. 20 Civ. 3677 (KHP), 2022 WL 2705354, at *11 (S.D.N.Y. July 12, 2022) (approving Class Counsel's 2022 rates in consumer class action); *Medvedeva v. Assistcare Home Health Servs. LLC*, No. 17 Civ. 5739 (E.D.N.Y. June 1, 2021), ECF No. 151 (approving Class Counsel's 2021 rates in wage and hour class action); *Little v. Ambit Energy Holdings, LLC*, No. 16 Civ. 8800 (D.N.J. July 2, 2020), ECF No. 94 (approving Class Counsel's 2020 rates in consumer class action); *Delgado v. Ocwen Loan Servicing LLC, et al.*, No. 13 Civ. 4427 (E.D.N.Y. Aug. 20, 2019), ECF No. 429 (approving Class Counsel's 2019 rates in consumer class action); *Simmons v. Ambit Energy Holdings, LLC*, No. 503285/2015, NYSCEF No. 205 (N.Y. Sup. Ct. July 16, 2018) (approving Class Counsel's 2018 rates in consumer class action); *Mirkin v. Viridian Energy, Inc.*, No. 15 Civ. 1057 (D. Conn. June 27, 2018), ECF No. 185 (same); *Rasulev v. Good Care Agency, Inc.*, No. 16 Civ. 1993 (E.D.N.Y. July 28, 2017), ECF No. 70 (approving Class Counsel's 2017 rates in wage and hour class action); *Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (S.D.N.Y. Jan. 8, 2016), ECF No. 22 (approving Class Counsel's 2015 rates in wage and hour class action); *Davenport v. Elite Model Mgmt. Corp.*, No. 13 Civ. 1061, 2014 WL 12756756, at *11 (S.D.N.Y. May 12, 2014) (approving Class Counsel's 2014 rates in wage and hour class action).

additional time with respect to continuing communications with the Settlement Administrator in administering the settlement, and responding to Class Members' inquiries, especially after checks are issued. In Class Counsel's experience, administering class settlements of this nature requires non-negligible post-Fairness Hearing attorney and staff time.

39. In total, the aggregate lodestar of the two law firms that prosecuted this matter for Plaintiffs and the Class amounts to $1,702,947. As described more fully in Plaintiffs' accompanying Memorandum of Law, Plaintiffs' counsel are not asking for a multiplier, although as can be seen from the years of work which yielded the remarkable results of this settlement, this is certainly a case that would have warranted a significant multiplier had Plaintiffs' lodestar not exceeded legal fees incurred.

40. In addition, Class Counsel's requested fee—for two law firms that investigated and prosecuted this case for three years without any guarantee of compensation—is 31.5% less than the fair-market value of their lodestar. This represents a substantially discounted charge for the services Class Counsel rendered to Class Members and the public on a purely contingency basis.

41. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case in the face of significant risk. Hybrid wage and hour class and collective actions involving thousands of class members and millions of dollars at stake are, by their very nature, complicated and time-consuming, and attorneys representing clients in these types of class actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and

circumstances of this case presented numerous and substantial hurdles to a successful recovery on behalf of all Class Members.  Class Counsel stood to gain no compensation in the event the case was unsuccessful.  Thus, cases like this have not revealed themselves to be attractive to the greater wage and hour bar, likely because they are highly complex, much more risky than typical wage and hour cases, and require multi-year efforts.

42. To date, Class Counsel have worked without compensation of any kind, and their compensation is wholly contingent upon the result achieved.

43. The majority of Class Counsel's cases are taken on pure contingency, and Class Counsel cover all out-of-pocket costs and expenses incurred.  Thus, when Class Counsel spend time on contingency matters, they do so at significant cost and risk for the firm.  Class Counsel frequently turn away cases, including hourly litigation matters and other contingency matters, in order to enable its attorneys to work on pending contingency matters, primarily class or collective actions.

44. Additionally, Class Counsel's fee request is inclusive of the following costs and expenses, which were incidental to the representation of the class:

| SUMMARY OF EXPENSES | |
|---|---|
| EXPLANATION | AMOUNT |
| Mediation fees | $ 7,250.00 |
| Administrative costs (binding, mailing, etc.) | $ 907.47 |
| Corporate intelligence and investigative services | $ 4,769.00 |
| Court costs (court filings, process servers, etc.) | $ 743.91 |
| Expert fees | $ 43,471.00 |
| e-discovery costs | $ 5,472.77 |
| ESI consulting fees | $ 5,872.50 |
| Transcript costs | $ 922.43 |
| Translation costs | $ 836.00 |
| Travel (rail, parking, etc.) | $ 9.50 |
| **TOTAL:** | **$ 70,254.58** |

45. The Parties have agreed on the selection of the firm Arden Claims Services as Settlement Administrator to provide notice to the Class and administer payment of the settlement to Class Members. The Settlement Administrator's fee of up to $70,000 will be paid from the Settlement Fund. Based on the experience of Class Counsel, the Settlement Administrator's fee in this matter is reasonable for a case of this size.

## V.  The Notice and Settlement Fund Distribution Plan

46. Following the Court's preliminary approval order the parties and the Settlement Administrator implemented the notice plan outlined in the Settlement Agreement.

47. Specifically, on May 22, 2024 Defendants provided the class list containing, *inter alia*, the full names, social security numbers, last known addresses, phone numbers, primary language, and hours worked during the Class Period of each Class Member, as that information exists on file with Defendants. Settlement Agreement § 3.6(B).

48. Defendants also provided a written certification that the class list contained the "represents the most current and up to date information that Defendants have for Class Members." This certification is attached as **Exhibit C**.

49. During this same period, the parties finalized the notice, the notice's transmittal envelope, the FAQs for Class Members who called the Settlement Administrator's hotline, and the recorded message to greet hotline callers, and the Settlement Administrator set up a dedicated hotline for responding to Class Member inquiries.

50. Following the Court's April 19, 2024 preliminary approval order (ECF No. 234), on June 21, 2024 the court-approved notice packets were mailed to the 5,170 current and former home care workers employed during the relevant period by Defendants. The overwhelming

majority (98.2%) were successfully delivered. While the Settlement Administrator has re-issued more than 400 notices with updated addresses and emails, to date the Settlement Administrator has been unable to reach only 93 Class Members (or 1.8% of the Class). In addition, as of today's date only 1 Class Member has elected to be excluded from the settlement, and no objections have been received by the Settlement Administrator. In other words, only 0.02% of the Class has chosen not to participate in the settlement.

51. Based on the June 21, 2024 notice date, the deadline for Class Members to object or opt out of the settlement is August 20, 2024. In the six weeks since notice was issued, the Settlement Administration hotline has received 239 calls, while Class Counsel have responded to an additional 8 inquiries from Class Members.

52. The response by Class Members has been overwhelmingly positive with 5,077 individuals—98.2% of the Class—having successfully received notice of the settlement. Based on the few Notices that were returned as undeliverable for which the Settlement Administrator was unable to obtain a more current mailing or email address, direct notice is presumed to have reached 5,077 of the 5,170 Class Members.

53. Each Class Member will be mailed their settlement payment without any further effort required by the Class Member.

54. In the event one of the 93 unreachable individuals comes forward in the 18 months following the Court's issuance of final settlement approval and the expiration of the appeal deadline (the "Effective Date" defined in Settlement Agreement § 1.9), they can still make a claim to a settlement payment.

55. The settlement provides a substantial benefit to Plaintiffs, the proposed Class, and the public at large. This benefit outweighs the risk that all or some of the claims in the

Complaint could be dismissed, or that a smaller or no recovery might be achieved after a trial and appeals, possibly years in the future, during which Defendants would have had the opportunity to assert substantial defenses to the claims.

56.     A review of the substantive factors related to the settlement's fairness, adequacy and reasonableness likewise demonstrates that final approval is warranted.  Settlements require parties to balance the claims' merits and the defenses asserted against the attendant risks of continued litigation and delay.  Plaintiffs believe they asserted meritorious claims and would prevail if this matter proceeded to trial.  Defendants do not agree, deny any potential liability, and up to the point of settlement indicated a willingness to continue to litigate forcefully.  The parties, with the continued assistance of a third-party neutral concluded that the benefits of settlement outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expense associated with contested class certification proceedings and possible interlocutory appellate review, completing class discovery, pretrial motion practice, trial, and finally appellate review.

57.     Accompanying this Declaration is a proposed Order (attached hereto as Exhibit A) and a supporting Memorandum of Law that demonstrates why, under governing law, this Court should grant final approval the proposed Settlement and grant the relief requested in the instant motion.

WHEREFORE, Plaintiffs respectfully request that the Court (1) grant final certification to the Rule 23 Class under Federal Rule of Civil Procedure 23 and final certification of the FLSA Collective under 29 U.S.C. § 216(b), for settlement purposes; (2) grant final approval of all terms applicable to the Rule 23 Class set forth in the Settlement Agreement; (3) approve all terms applicable to the FLSA Collective set forth in the Settlement Agreement; (4) find that the court-

authorized notice was the best notice practicable under the circumstances; (5) approve the Service Awards to Plaintiffs; (6) award Class Counsel reimbursement of litigation expenses and attorneys' fees; (7) approve the parties' proposed final settlement procedure, including the proposed procedure for allowing FLSA Collective members to consent to join this action and be bound by the settlement; (8) incorporate all terms of the Settlement Agreement, including the release; and (9) dismiss this action with prejudice and enters final judgment.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:   New York, New York
            August 6, 2024                    /s/   *J. Burkett McInturff*
                                              J. Burkett McInturff (JM-4564)

                                              **WITTELS MCINTURFF PALIKOVIC**
                                              305 BROADWAY, 7TH FLOOR
                                              NEW YORK, NEW YORK 10007
                                              Telephone: (914) 775-8862
                                              jbm@wittelslaw.com

                                              *Counsel for Plaintiffs and the Class*